on the audio and/or video tape recordings, which may be why detective Kate has failed to provide petitioner with all audio and video recordings.

Petitioner contends, the duty to provide discovery is not limited to the time before trial; discovery is an ongoing responsibility, which extends throughout the duration of the trial and even after conviction See People -v- Garcia (1993) 17 Cal.App.4th 1169, 1179 (22 Cal.Rptr. 2nd 545]; Thomas -v- Goldsmith (9th Cir. 1992) 979 F.2d 746, 749-750). Thus, the information in which petitioner is seeking, must be provided for investigative purposes and litigation purposes.

As petitioner has shown, detective Katz has a past of concealing evidence (Exh. N). It is contended, the discovery of additional acts of concealing evidence is relevant to show detective Katz has a "habit" and custom" of hideing/covering-up evidence (People -v- Memro (Cal. 1985) 214 Cal.Rptr. 832, 38 Cal.3d 658, at p. 847--48), which will support why petitioner should be permitted to view the entire investigating file. Additionally, detective Katz having a "habit" or "custom" of fabricating evidence, coaching witnesses, testifying falsely, altering documents, or coercing witnesses, would be relevant to undermine the detective's cridibility, methods of investigation, and the reliability of the eyewitnesses testimony and/or detective's investigation (Memro, supra, at pp. 847-48). The same applies to all other officers involved in the crime. Denying such discovery would deprive petitioner of the possibility of presenting evidence on this issue (Memro, supra, at p. 850). Petitioner contends, the duty

143

1  to provide discovery is not limited to the time before trial, dis-

2  scovery is an ongoing responsibility, which extends throughout

3  the duration of the trial and "even after conviction" (See People

4  -v- Garcia (1993) 17 Cal.App.4th 1169, 1179 [22 Cal.Rptr.2d 545];

5  Thomas -v- Goldsmith (9th Cir. 1992) 979 F.2d 746, 749-750).

6      Thus, petitioner is entitled to and is requesting all Brady

7  Materials," the Personnel Record of the police officers involved

8  in the instate case, and all undisclosed evidence within the mea-

9  ning of §1054.1 of the California Penal Code.

10     A prosecutor is required to make available to the defense,

11 information, the felony convictions and misdemeanor misconduct of

12 material prosecution witnesses who's credibility is likely to be

13 criticle to the outcome of the trial (Pen. Code, §1054.1(b)-(e);

14 Brady -v- Maryland (1963) 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct.

15 1194; In re Pratt (1999) 69 CA. 4th 1294, 82 CR.2d 260; People

16 -v- Little (1997) 59 CA.4th 426, 68 CR.2d. 907). And although

17 Brady material is not included within 1054.1 of the Penal Code,

18 it's disclosure is required because it is mandated by the United

19 States Constitution (Pen. Code, §1054(e)(discovery required by

20 U.S. Constitution must be disclosed); Izazaga -v- Superior Court

21 (1991) 54 C.3d 356, 378, 285 CR. 231). And Brady material inclu-

22 des impeachment evidence (People -v- Hayes (1992) 3d CA.4th 1238,

23 5 CR.2d 105).

24     A legal rule requiring issuance of the writ will at least

25 often avoid the grievous wrong of holding a person in custody in

26 violation of the Constitution and will thereby both protect indi-

27 viduals from unconstitutional convictions and help to guarantee

28                              144

the integrity of the criminal process by assuring that trials are
fundamentally fair (O'Neal -v- McAninch (U.S. Ohio (1995), 513
U.S. 432; 130 L.Ed.2d 947, 63 USLW 4126, 115 S.Ct. 992, at pp.
993, 994, 995).

CONCLUSION

For the foregoing reasons, an order to show cause should be
issued as to why the judgment against petitioner should not be
reversed, and an evidentiary hearing should be granted.

DATED _October, 7_ (2010)

Respectfully Submitted,

/s/ _Johama Coleman_

Johama Coleman,

Petitioner.

# I

# THE PETITIONER HAS A CONSTITUTIONAL RIGHT TO ALL EXCULPATORY EVIDENCE, INCLUDING IMPEACHMENT EVIDENCE, POSSESSED BY THE PROSECUTION WHICH INCLUDES THE POLICE AGENCIES INVOLVED IN DEFENDANT'S CASE

The due process clause of the United States Constitution imposes a duty on the prosecution to disclose to the defense any information favorable to the accused and material on the issue of guilt or punishment. (*Brady v. Maryland* (1963) 373 U.S. 83, 86-87; *United States v. Agurs* (1976) 427 U.S. 97, 103-106.) It encompasses information that is directly exculpatory as well as evidence which undermines or impeaches any prosecution evidence. (*Strickler v. Greene* (1999) 527 U.S. 263, 280; *United States v. Bagley* (1985) 473 U.S. 667, 676.) It is clear that "[s]uppression of substantial material evidence bearing on the credibility of a key prosecution witness is a denial of due process." (*People v. Garcia* (1993) 17 Cal.App.4th 1169, 1182, citing *People v. Rutherford* (1975) 14 Cal.3d 399, 408.)

It is also beyond dispute that the defendant is entitled to all material evidence favorable to him whether it is in the actual possession of the prosecutor *or in the possession of a law enforcement agency and unknown to the prosecutor.* (*Kyles v. Whitley* (1995) 514 U.S. 419, 437-438.) The United States Supreme Court in *Kyles* specifically highlighted the importance of protecting a defendant's constitutional due process rights over the concern of unfairly holding the prosecution accountable for information known only to the police:

> "The State of Louisiana would prefer an even more lenient rule. It pleads that some of the favorable evidence in issue here was not disclosed even to the prosecutor until after trial, [citations omitted], and it suggested below that it should not be held accountable under *Bagley* and *Brady* for evidence known only to police investigators and not to the prosecutor. [footnote omitted] To accommodate the State in this manner would, however, amount to a serious

change of course from the *Brady* line of cases. In the State's favor it may be said that no one doubts that police investigators sometimes fail to inform a prosecutor of all they know. But neither is there any serious doubt that 'procedures and regulations can be established to carry [the prosecutor's] burden and to insure communication of all relevant information on each case to every lawyer who deals with it.' *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Since, then, the prosecutor has the means to discharge the government's *Brady* responsibility if he will, *any argument for excusing a prosecutor from disclosing what he does not happen to know about boils down to a plea to substitute the police for the prosecutor, and even for the courts themselves, as the final arbiters of the government's obligation to ensure fair trials.* (*Kyles, supra*, 514 U.S. at 438 (emphasis added).)

The California Supreme Court has spoken clearly and unequivocally in this area as well:

"Although the prosecutor had no actual knowledge of the information, the reviewing court found *Brady* error in light of the 'closely aligned' working relationship between the investigating officer and the prosecution. We believe that the purposes of *Brady* would not be served by allowing material exculpatory evidence to be withheld simply because the police, rather than the prosecutors, are responsible for the nondisclosure. The fact that the prosecutor in this case was blameless therefore does not justify the State's failure to produce . . ..

. . .

Despite any seeming unfairness to the prosecution, no other result would satisfy due process in this context. The principle is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused." (*In re Brown* (1998) 17 Cal.4th 873, 880-882.)

## II

## *PITCHESS* COMPLIANCE MUST INCLUDE AND BE CONSISTENT WITH THE DEFENDANT'S CONSTITUTIONAL RIGHT TO *BRADY* EVIDENCE

In California, discovery of evidence (including some, but not all, evidence of police misconduct) which is maintained by an officer's employer in a personnel file is governed by Evidence Code sections 1043 through 1047 and Penal Code sections 832.5, 832.7 and 832.8.

These statutes were enacted by the California Legislature several years after the

California Supreme Court recognized in *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, that an

accused is entitled to discover complaints of excessive force against the officers (Sheriff deputies

in the *Pitchess* case) who arrested him which are contained within those officers' personnel files

upon a showing that the information would "facilitate the ascertainment of the facts and a fair

trial." (*City of Los Angeles v. Superior Court (Brandon)* (2002) 29 Cal.4th1, 9-10, quoting

*Pitchess, supra*, 11 Cal.3d at 536.) The California Supreme Court ruled that the basic principle

underlying defense discovery in a criminal case stems from "the 'fundamental proposition that

[an accused] is entitled to a fair trial and an intelligent defense in light of all relevant and

reasonably accessible information.' [*Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 535.]"

(*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d. 74, 84.)

Notably, the codification of the *Pitchess* principles of discovery as they relate to police

personnel records (still commonly referred to as "*Pitchess* discovery") served not only to

reaffirm, but *expand*, the principles of criminal discovery articulated by the *Pitchess* court.

(*Santa Cruz, supra*, 49 Cal.3d at 84.)

Because a defendant's right to evidence which impeaches the credibility of prosecution

witnesses is a right guaranteed by the United States Constitution, however, nothing in these

California *Pitchess* statutes may be interpreted to procedurally or substantively deprive a

defendant of access to material evidence in police personnel files. Indeed, the California

Supreme Court has recognized that "[t]his procedural mechanism for criminal defense discovery

[] must be viewed against the larger background of the prosecution's constitutional obligation to

disclose to a defendant material exculpatory evidence so as not to infringe the defendant's right

to a fair trial." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1225-1226.)

The California Supreme Court has made it clear that the *Pitchess* discovery statutes in no way limit discovery under *Brady*. To the extent that *Brady* material exists within the materials responsive to a defendant's *Pitchess* motion, it must be provided to the defendant. "Because *Brady*'s constitutional materiality standard is narrower than the *Pitchess* requirements, any citizen complaint that meets *Brady*'s test of materiality necessarily meets the relevance standard for disclosure under *Pitchess*." (*Brandon, supra*, 29 Cal.4th at 10.)[16]

Moreover, because of the importance of the constitutional right to a fair trial and the concomitant right to disclosure of *Brady* evidence, a court in responding to a *Pitchess* motion may undertake to review complaints or other confidential documents outside the purview of those materials responsive to the motion. (*See Brandon, supra*, 29 Cal.4th at 15.) If those materials contain *Brady* material, the court may order their disclosure as well. (*Id.*) Thus, records that are older than the five years from the date of the incident that is the subject of a *Pitchess* motion may be ordered disclosed. (*Id.* at 13-15.)

## III

## THE DEFENDANT IS ENTITLED TO DISCOVERY OF THE PERSONNEL RECORDS

---

[16]The federal courts have also addressed the issue of the discovery of exculpatory evidence within officer personnel files holding that prosecuting attorneys are required to provide such evidence from officer personnel records. (*See United States v. Henthorn* (9th Cir. 1991) 931 F.2d 29, 30-31 (prosecutor is obligated to review and provide material evidence of perjurous conduct and other like dishonesty from officer personnel records upon request); *United States v. Brooks* (D.C. Cir. 1992) 966 F.2d 1500, 1503 (duty to search for and provide evidence that might bear on the conduct and character of an officer extends to information in the police department's homicide and Internal Affairs Division files.)

OF THE POLICE OFFICERS INVOLVED IN THIS CASE

A

## DEFENDANT HAS MADE AN ADEQUATE SHOWING OF GOOD CAUSE

In order to obtain discovery of the type requested in this case, a criminal defendant must first meet the requirements of Evidence Code section 1043.  When seeking discovery of an officer's personnel records, a defendant must file a written motion which, in addition to identifying the peace officer whose records are being sought and the governmental agency having custody of those records, describes "the type of records or information sought" and "[a]ffidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or the information from the records." (*Fletcher v. Superior Court* (2002) 100 Cal.App.4th 386, 394-395, quoting Evid. Code § 1043, subd. (b)(2) and (b)(3).)

The threshold showing for good cause here is, according to the California Supreme Court, "relatively low." (*Santa Cruz, supra*, 49 Cal.3d at 83.)  The Supreme Court has rejected the notion that a defendant must follow the rather strict requirements of the various civil discovery procedures, noting that such a procedure would run counter to the protections of the Fifth Amendment to the United States Constitution in many instances. (*Pitchess, supra*, 11 Cal.3d at 536.)

Thus, affidavits supporting good cause for discovery of peace officer personnel records may be made on information and belief, need not be based upon personal knowledge and need

not show that prior complaints in fact exist. (*Santa Cruz, supra,* 49 Cal.3d at 676.) "All that is required is that the information sought must have some factual basis and must be stated with 'specificity' to preclude the possibility of a defendant simply casting about for any information which might prove helpful to the defense." (*Fletcher, supra,* 100 Cal.App.4th at 395, quoting *Santa Cruz, supra,* 49 Cal.3d at 85.) If the trial court concludes the defendant has fulfilled these prerequisites and made a showing of good cause, "the custodian of records is obligated to bring to the trial court all 'potentially relevant' documents to permit the trial court to examine them for itself." (*Mooc, supra,* 26 Cal.4th at 1228-1229, citing *Santa Cruz, supra,* 49 Cal.3d at 84.) After reviewing the records in chambers, the trial court should then "disclose to the defendant 'such information [as] is relevant to the subject matter involved in the pending litigation,'" subject to certain exemptions and limitations outlined in Evidence Code section 1045. (*Fletcher, supra,* 100 Cal.App.4th at 396, citing Evid. Code § 1045, subd. (a) and (b).)

## B

## DEFENDANT HAS ESTABLISHED THE RELEVANCY OF THE INFORMATION REQUESTED FROM THE PEACE OFFICER PERSONNEL FILES IN THIS CASE

*Pitchess* discovery applies to all officers "directly involved in the fracas" regardless of whether the officer is named in the complaint or information or is considered a "victim." (*Hinojosa v. Superior Court* (1976) 55 Cal.App.3d 692, 696-697.) It does not matter whether or not the police agency sustained the complaints or exonerated the officer. The complaints remain discoverable regardless of any action or inaction taken by the police agency. (*People v. Zamora*

(1980) 28 Cal.3d 88, 93.)  The *Pitchess* discovery statutes also allow the discovery of records of officers who were not involved in the arrest or booking of a defendant if the materiality to the subject matter of the litigation of that officer is established.  (*See Alt v. Superior Court* (1999) 74 Cal.App.4th 950, 955-959, analyzing Evid. Code § 1047.)

The defendant is *not* required to show all defenses or to commit to a specific defense. In order to discover information from a peace officer's personnel file a defendant need only show possible defenses.  (*Kelvin L. v. Superior Court* (1976) 62 Cal.App.3d 823, 829.)  In fact, no personal statement of the intended defense by the defendant is required; an affidavit of counsel of what the defense "may" be (such as the defense may be self-defense) suffices.  (*People v. Memro* (1985) 38 Cal.3d 658, 676; *Kelvin L., supra,* 62 Cal.App.3d at 829.)

To be discoverable, it is irrelevant whether or not the information sought is or will be admissible in court.  It need only be something which will assist the defense in the preparation of the case or which may lead to relevant material.  (*Cadena v. Superior Court* (1978) 79 Cal.App.3d 212, 220; *Kelvin L., supra,* 62 Cal.App.3d at 828.)

Character traits of complaining witnesses for traits relevant to the defense may be shown by specific acts, opinion, or reputation evidence.  (Evid. Code § 1103.)  Once a defendant shows relevancy, that the material cannot be obtained otherwise, and generally specifies the material sought, the defendant is entitled to discovery of that material.  (*In re Valerie E.* (1975) 50 Cal.App.3d 213, 218-219.)

If a criminal defendant alleges that the defense to a charge where the police officer is an alleged victim may be self defense, the character of the officer for aggressiveness is placed in

issue. Discovery of prior citizen complaints against the officer for the character trait of excessive force is then mandatory. (*Pitchess*, *supra*, 11 Cal.3d at 537-538.) The defendant is *not* required to show that the officers used excessive force in this case or that the officers used excessive force in any other case in order to obtain the requested discovery. (*Caldwell v. Municipal Court* (1976) 58 Cal.App.3d 377, 380.)

Police personnel information is also discoverable in cases where self defense may not be a defense to the crimes charged. It has specifically been held that complaints of fabrication of probable cause and planting of evidence are discoverable when it would be a defense to the charge that the probable cause was fabricated and the evidence planted in order to cover up the officer's use of excessive force. (*People v. Gill* (1997) 60 Cal.App.4th 743, 750.) Defense counsel's declaration that the officer used excessive force and fabricated the evidence is sufficient to merit discovery. (*Id.*)

There can be no doubt that *Pitchess* discovery is not limited solely to issues of officer violence and includes discovery of an officer's dishonest and moral turpitude conduct:

> "In *People v. Memro* (1985) 38 Cal.3d 658, 214 Cal.Rptr. 832, 700 P.2d 446, the Supreme Court explained that the statues governing discovery motions 'do not limit discovery of such records to cases involving altercation between police officer and arrestees, the context in which *Pitchess* arose.' (*Memro*, *supra*, 38 Cal.3d at p. 679.) Indeed, the Court also noted that 'one legitimate goal of discovery is to obtain information 'for possible use to impeach or cross-examine an adverse witness . . . .' (*Foster v. Superior Court* (1980) 107 Cal.App.3d 218, 227, 165 Cal.Rptr. 701.)' (*Id.* at p. 677.) Likewise, other cases have held that *Pitchess* motions are proper for issues relating to credibility. (*See Larry E. v. Superior Court* (1987) 194 Cal.App.3d 25, 28-33, 239 Cal.Rptr. 264 [motion seeking discovery of complaints for 'aggressive behavior, violence or excessive force, improper police tactics, dishonest and racial or class prejudice' sufficient to require in camera review when minor alleged that he did not use force against the officers, that the officers lied about his actions and planted evidence, and the

information was relevant to show officers had a motive to lie and could show potential bias which would affect the officer's credibility as a witness]; *Pierre C. v. Superior Court* (1984) 159 Cal.App.3d 1120, 1122-1123, 206 Cal.Rptr. 82 [discovery motion for records pertaining to 'racial prejudice, false arrest, illegal search and seizure, the fabrication of charges and/or evidence, dishonesty and improper tactics . . . .' sufficient because the minor alleged a defense of false arrest and alleged that a substantial issue at trial 'would be the character, habits, customs and credibility of the officers.'].)" (*People v. Hustead* (1999) 74 Cal.App.4th 410, 417.)

A criminal defendant is also entitled to discover the discipline imposed upon a police officer as a result of citizen complaints of misconduct. (*City of San Jose v. Superior Court (Michael B.)* (1993) 5 Cal.4th 47, 55-56.)

A *Pitchess* motion is the proper vehicle to request the date of birth of officers who are material to defendant's arrest and where the defense will be that those officers committed misconduct. (*Garden Grove Police Department v. Superior Court (Reimann)* (2001) 89 Cal.App.4th 430, 434-435.) Such information clearly may lead to relevant material as it will allow the prosecutor in the pending litigation to comply with 1054.1(d) of the Penal Code and providing to defendant a complete criminal history for the material officer(s).

A criminal defendant is entitled to discover whether the law enforcement officers material to his case have been previously employed by another police department or law enforcement agency during the five years prior to defendant's arrest and what were those agencies. (*Fletcher, supra,* 100 Cal.App.4th at 406.)

IV

## THIS COURT MUST CONDUCT THE IN CAMERA REVIEW OF DOCUMENTS IN COMPLIANCE WITH *MOOC*

In *People v. Mooc, supra*, 26 Cal.4th 1216, the California Supreme Court set forth procedures which must be followed in every case in which a trial court conducts an *in camera* review of police personnel records pursuant to a *Pitchess* motion. The purpose of these procedures is to be "consistent with the premise of Evidence Code sections 1043 and 1045 that the locus of the decisionmaking is to be the trial court, *not the prosecution or the custodian or records*." (*Id.* at 1229 (emphasis added).)

> "Accordingly, both *Pitchess* and the statutory scheme codifying *Pitchess* require the intervention of a neutral trial judge, who examines the personnel records in camera, *away from the eyes of either party*, and orders disclosed to the defendant only those records that are found both relevant and otherwise in compliance with statutory limitations." (*Mooc, supra*, 26 Cal.4th at 1227 (emphasis added).)

Thus, the custodian of records must present to the court all "potentially relevant" documents. (*Mooc, supra*, 26 Cal.4th at 1228-1229.) If the custodian is uncertain whether a particular document is relevant, it should be presented for the court's review. (*Id.* at 1229.) The custodian of records must be prepared to tell the court for the record what other documents not presented to the court were included in the complete personnel record and why those were deemed irrelevant or otherwise nonresponsive to the *Pitchess* motion. (*Id.*)

p.155

The custodian of records must be examined *under oath* and with a court reporter taking down all the questions and answers regarding the documents that the custodian has reviewed and presented or chosen not to present to the court. (*Mooc, supra*, 26 Cal.4th at 1229.)

The trial court must make a record of all documents examined by the court. (*Mooc,supra*, 26 Cal.4th at 1229.) It can do so a number of ways. If the documents are not voluminous, the court may copy them and place them in a confidential file. The court may prepare a list, log, or index of all the documents reviewed. Or, the court may state for the record what documents have been examined. (*Id.*)

Finally, *Mooc* observed that to protect an "officer's privacy, the examination of documents and questioning of the custodian should be done in camera in accordance with . . . Evidence Code section 915." (*Mooc, supra*, 26 Cal.4th at 1229.) Thus, if an officer's privacy interests are *not* implicated by questioning the custodian  - such as questions regarding whether he or she has checked each location that relevant records might be found - it follows that such questioning may be done in open court.

## CONCLUSION

Petitioner urges this honorable court to order the sheriff department in position of the needed discovery, to provide such discovery to petitioner.

Furthermore, the judgment of conviction should be reversed, after the granting of an evidentary hearing.

THE SPECIFIED DISCOVERY REQUESTED:

1.) 911 audio recordings

2.) All audio and video tape recordings of person's interviewed/questioned during officer's investigation.

3.) The Personnel Records/complaints of the following officer's

     a.) Steven Katz,., employee # 223233

     b.) Mark Lillienfield., employee # 195921

     c.) Michael Valento., employee # 292886

     d.) Gustavo Rivera

Jofama R. Coleman

PLAINTIFF/PETITIONER

CASE NO: CV-10-2343 AHM(RNB)

)
)
)

Vs.

)
)
)

Kathleen Allison

)
)

DEFENDANT /RESPONDANT

**PROOF OF SERVICE BY MAIL**

I, the undersigned, hereby declare:

(1) I am a citizen of the United States; (2) I am over the age of 18 years; (3) I am a resident of Kings County, in California.

My mailing address is Post Office Box 5242 Corcoran, California 93212-5242.

On _October,_ _7_, 20_10_, I served a true copy or original copy of the following:

AMENDED PETITION FOR WRIT OF HABEAS CORPUS

by placing said document(s) in a sealed postage-paid envelope into the CSATF-State Prison at Corcoran mail box for delivery to the United States Post Office at Corcoran, California, addressed as follows: Jofama Coleman
c.d.c # V.27659
CSATF/State Prison @ Corcoran
P.O. Box 5242
Corcoran, CA. 93212

by placing said document(s) in a sealed Interdepartmental envelope into the California CSATF Facility Legal Mailbox for inner-institutional delivery to the below-listed person(s) at the following addresses: UNITED STATES DISTRICT COURT,
CENTRAL DISTRICT OF CALIFORNIA
ATTN: Intake/Docket Section
312 North Spring Street
Los Angeles, CA. 90012

And that this declaration was executed under the penalty of perjury at Corcoran, California 93212-5242, on _October, 7_, 20_10_.

Jofama Coleman

PRINTED NAME (DECLARANT)

Jofama Coleman

SIGNATURE (DECLARANT)

# INDEX of EXHIBITS

Exhibit A – Photographic Exhibits from Abel Soto's trial

Exhibit B – Declaration of Jofama Coleman

Exhibit C – Declaration of Ronald White, Esq.

Exhibit D – Declaration of Patricia Ihara

Exhibit E – Excerpts from the Reporter's Transcript of Abel
  Soto's trial

Exhibit F – Assessor's Plot Map

Exhibit G – 100 Feet Photograph

Exhibit I, 1-16-Request For A complete Copy of The
          Security Tape in Evidence.

Exhibit J1-Order For Complete Copy of The
          Security Tape in Evidence

Exhibit K1-Imaging Forensics Discovery, indicating
          what time Petitioner enters and leaves
          The Blockbuster Video Store

Exhibit L- Declaration of Jofama Coleman

Exhibit M- Police Report; pp. 7,8,9,10,18,19,20,29,31,39,41,56,62,63,64,
          162,163,164

Exhibit N. 1-8 - Information concerning Detective Steven
          Katz's Past Acts of Concealing/hiding
          "Evidence"

Exhibit O, 1-Jesse Robles's Prior History of Drug's and
          Crime

Exhibit P. 1- Carlos Lopez'S Prior History of Drug
          Possession

Exhibit Q-Declaration of Jofama Coleman

Exhibit R-Police Notes

Exhibit S-22-26. Crime Justice & America, By Martin
          Blinder, Forensic Psychiatrist, California
          Past Adjunct Professor of Law.

Exhibit T,- Charge Evaluation Worksheet, pp. 94,95.

Exhibit U. Minute Order, information filed.

INDEX OF EXHIBITS

Exhibit V, 1-3...Request for discovery from Trial Counsel.

Exhibit W, 1-3...Request for discovery, District Attorney.

Exhibit X, 1-3...Request for discovery, District Attorney's Office.

Exhibit Y--------Letter from Appellant's counsel.

Exhibit Y-2------Letter from Appellant's counsel.

Exhibit Z,-------Declaration.

Exhibit AA,------Motion Requesting Order of Discovery.

Exhibit BB,------Denial of Post-Conviction Discovery.

Exhibit CC,------Letter Brief adding additional points & authority.

Exhibit DD,------Cal. Supreme Ct. denial.

Exhibit EE,------Cal. Supreme Ct. denial.



EXHIBIT A















I Jofama Coleman declare the following :

I am the defendant currently housed at CSATF/STATE PRISON, P.O. BOX 7100. CORCORAN, CA. 93212. Patricia Ihara, P.M.B # 139 is counsel for appellant.

The statement below is true and correct to the best of my knowledge.

I descovered through Abel Soto that in his second trial the prosecutor introduced evidence that contained impeachment value in regards to the testimony and identification of Ms. Renteria. The material was that of a large truck blocking her view.

I had a verbal conversation with trial attorney Ronald White in regards to this issue. His response was to the following affect.

"I did not follow Abel's case, If theres an issue with the D.A not handing over evidence then thats something for your appeal."

I declare under penalty of perjury that the foregoing is ~~true~~ true and correct.

at CSATF.

Executed on this day 7.29.2008

*Jofama Coleman*

**EXHIBIT B**

## DECLARATION OF RONALD WHITE, ESQ.

I, RONALD WHITE, declare as follows:

1.  I am an attorney at law duly admitted and licensed to practice before courts of this State.  I was trial counsel for Jofama Coleman in Superior Court Case No. YA059765.

2.  The facts contained herein are true of my own knowledge and if called as a witness I could testify competently thereto.

3.  The prosecution's witness Maria Renteria told the police she was parking her car when the shooting occurred in the street.  She saw the driver of the van and the shooter but was unable to pick Mr. Coleman's photo out from the photo line-up.

4.  When Ms. Renteria testified at trial, she said Mr. Coleman looked like the van driver.  Her identification testimony was unexpected.

5.  Abel Soto's trial took place after Mr. Coleman's trial.  When Mr. Coleman informed me that Ms. Renteria's testimony was impeached at Mr. Soto's trial – she was parked much farther away from the van and behind a large truck that would have obstructed her view – I told him it would help his appeal.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 22nd day of July 2008 at Gardena, California.

Ronald White

**EXHIBIT C**

## DECLARATION OF PATRICIA IHARA, ESQ.

I, PATRICIA IHARA, declare as follows:

1.    I am an attorney at law duly admitted and licensed to practice before courts of this State.  I was appointed to represent petitioner Jofama Coleman in his appeal from his conviction in Court of Appeal Case B202597, Superior Court Case No. YA059765.

2.    The facts contained herein are true of my own knowledge and if called as a witness I could testify competently thereto.

3.    I went to the Google homepage and clicked on maps.  I typed the Robles's address [1115 W. 101st Street, Los Angeles, CA] into the search box.  I then clicked on "street view."  Using copies of People's Exhibits 6, 9, 58 and 59 from Abel Soto's trial, I located the Robles house. I then clicked on the white arrow and moved the street view west.  I found the location where the victim was shot.

I also typed in the address across the street from the Robles house [1117 W. 101st Street, Los Angeles, CA] into the search box.  I then clicked on "street view."  This street scene shows the location of the street lamp on the south side of the street.

4.    I then went to the Los Angeles county assessor maps at http://maps.assessor.lacounty.gov and typed into the search box the intersection of Budlong and 101st Street.  Exh. F is a true and correct copy of the plot maps showing the length and width of the lots.  I compared the plot map to the "street view" on Google maps and the assessor records.  I determined that lot 13 is where the Robles house was located.  According to Sergeant Katz, Jose Robles was killed on the west perimeter of lot 15.  The plot map shows that if Renteria was parked on the west perimeter of lot 13 and Jose Robles was shot at the west perimeter of lot 15, the closest distance between Renteria's vehicle and the white van would have been 128 feet.

# EXHIBIT D