Jofama Coleman,
CDC-#: V-27659, D4-137-U.,
CSATF/at Corcoran State
Prison,
P.O. Box-5242
Corcoran, California
                    93212



IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL  DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOFAMA COLEMAN,<br><br>              Petitioner,<br><br>     -v-<br><br>KATHLEEN ALLISON, (Acting Warden),<br><br>              Respondent. | ) CV-10-2343-AHM (RNB)<br>)<br>) PETITIONER'S REPLY TO RESPOND-<br>) ENT'S OPPOSITION MOTION TO AM-<br>) END PETITIONER'S WRIT OF HAB-<br>) EAS CORPUS.<br>)<br>) The Honorable Robert N. Block,<br>) U.S. Magistrate Judge.<br>)<br>) |

     Pursuant to this honorable court's order filed November 23, 2010, petitioner hereby files this Reply to Respondent's (Kathleen Allison) acting warden's motion of opposition (to the Amendment of petitioner's habeas corpus), dated December 21, 2010.

     In this honorable court's order dated November 23, 2010, inform- ing petitioner to serve and file a reply (if any) thereto withing 30 days of service of the opposition. Petitioner files the instant motion in dispute of the Respondent's allegations, claims, and/or position.

     This motion will be based on the following points and authority.

## (ARGUMENT)

### POINTS AND AUTHORITY

1. Respondent claims petitioner's motion to amend the petition sho-
uld be denied because the additional claims are untimely and do
not relate back to the claims in the original petition, and that
adding the additional claims to the petition would be futile or
otherwise (useless/frivolous).

### REPLY......(TIMELINESS):

### PETITIONER CONTENDS HIS PETITION IS TIMELY:
### THE INDEPENDENT AND ADEQUATE STATE GROUND DOCTRINE

Petitioner contends, in order for a State procedural default to
prevent the petitioner from being heard in federal court, it must
first be shown the State procedural default rule in question "was
actually the basis for the State Court denial;" and that the rule in
question was sufficiently "well-established" and regularly and consis-
tently followed by the State court that it is fair to expect the pet-
itioner to have known about the rule and followed it.

This principle is called the "independent and adequate State gro-
und doctrine." It provides the "State carries the burden" of showing
that the State law ruling is both inpendent of federal law, and "ade-
quate" to hold the petitioner responsible for violating it.

In the present case, it cannot be concluded that the alleged
default (timeliness) was actually the basis for the State Supreme
Court's denial, (In accordance with the independent and Adequate State
Ground Doctrine). Furthermore, the California Supreme Court's denial
"simply states that the Petition for writ of habeas corpus is denied,
and cites the case of In re Clark (1993) 5 Cal.4th 750." Therefore,
such a denial does not show a "time bar" was actually the basis for
the State Court denial. Therefore, such a denial is inadequate beca-
use the California Supreme Court failed to show or point out "how the
Clark case applies to petitioner's case. The Clark case discusses
several issues, such as "late filing, second/successive petitions,
repetitious and piecemeal claims, as well as other matters,(See "In re
Clark (1993) 5 Cal.4th 750.)

Respondent in the opposition appears to somewhat express uncer-

tainty as to what was the <u>actual basis</u> for the State Court denial, because not only does Respondent claim the amended petition is "time barred, but also indicate that the state "<u>may have</u>" denied the petition because it was alleged to be successive (See Respondent's opposition motion (R.O.M) at pp. 6-7). This assumption/guessing position does not show the State Court denial was <u>clear</u> and <u>actually the basis</u>" for it's denial. Thus, Respondent has not met it's burden of showing what was actually the basis for the State Court's denial.

Petitioner contends: "the California Supreme Court's denial citing (In re Clark) but "<u>offering no rational</u>" constitutes an adjudication on the merits. (See <u>Luna -v- Cambra</u> (C.A. 9 (Cal.) 2002) 306 F.3d 954 at 960, citing <u>Hunter -v- Aispuro,</u> 982 F.2d 344, 347-48 (9th Cir. 1992).

Nevertheless, the lack of a reasoned explanation is relevant to this Court's scope of review. When we are confronted with a State Court's "post-card denial," such as the one issued by the California Supreme Court in the case at bar, this court has nothing to which it can defer. Accordingly, the court must conduct an independent review of the record to determine whether the State court clearly erred in it's application of controlling federal law, (<u>Luna</u>, <u>supra</u>, at 961). Thus, we must look to the merits of petitioner's "constitutional claims", (Claims 10-21 of proposed Amended petition, pp. 66-221)

Even more crucial, the cumulative effect of all the errors petitioner suffers from, operated to deny petitioner his constitutional rights, in violation of the 5th, 6th, and 14th Amendments to the U.S. Constitution. Therefore, it is crucial that this honorable court rule on the merits of petitioner's constitutional claims.

Although a procedural rule was not specifically identified and relied upon here. However, petitioner contends that even where a violation of a procedural rule is specifically identified and relied on by the state court to deny relief, the "<u>rule</u>" must have been "<u>clearly</u>" and "<u>uniformly</u>" applied at the time of the alleged violation to deny relief in all cases, not just that of the individual petitioner; and the petitioner must have had a fair chance to comply with the rule. For example, California's "timeliness rule" has been pretty much of

a hodge-podge, unclear, and/or not well established, especially in non-capital cases." The law simply says that the petition "should be filed without" substantial delay." Whether a delay "is justifiable depends on the individual circumstances of each case (See In re Clark (1993) 5 Cal.4th 750, 765 fn. 5, 768, 780 (Claims should be filed as promptly as the circumstances allow, and without substantial delay).)

Relevant factors in assessing whether there has been a "substantial delay" include not only when the Factual basis for the claim was discovered, but also (1) whether the petitioner delayed filing the claim at issue because he was conducting an "ongoing investigation" of other possible claims, so that all claims could be presented in a single petition, rather than piecemeal, and (2) whether the habeas corpus claim at issue, by it's nature, is best considered in the light of the appellant record in direct appeal. For instance, the California Supreme Court held in In re Robbins (1998) 18 Cal.4th 770:

> "Good cause for substantial delay may be established if, for example, the petitioner can demonstrate that because he was conducting an ongoing investigation into at least one potentially meritorious claim in order to avoid the piecemeal presentation of claims...." (Robins, supra, at 780, see also In re Clark, supra, at pp. 805-806).

Additionally, many petitions have been found timely even though they were filed "years" after the petitioner's direct appeal was concluded. (See In re Bower (1985) 38 Cal.3d 865, 873, n.3. [within one year]; In re Saunders (1970) 2 Cal.3d 1033, 1039-1040 [32 Months after appeal decided]; In re Spears (1984) 157 Cal.App.3d 1203, 1208 (18 Months].) Alternatively, counting from the time the factual basis is discovered, petitions have been found timely when filed up to 36 months after a petitioner "learns of the facts or the law which form the basis for the petition." (See In re Huddleston (1969) 71 Cal.2d at p. 1034 [petition timely filed 30 months after petitioner learned of legal basis]; In re Mitchell (1968) 68 Cal.2d 258, 263 [same with respect to 24 months delay]; In re Perez (1966) 65 Cal.2d 224, 228 [same with respect to 26 month delay]; People -v- Campbell (1966) 239 Cal.App.2d 252, 256 (same with respect to 26 month delay].)

The federal Court has also correctly addressed the issue of whether

California's timeliness rule is clear, consistently applied, and well-established." In <u>Melendez -v- Pliler</u>, the court correctly stated, although a state procedural rule is sufficient to foreclose habeas review of a federal question, an inquiry into the adequacy of such a rule to foreclose review is itself a federal question (<u>Melendez -v- Pliler</u> (C.A. 9 (Cal.) 2002), 288 F.3d 1120 at 1124, quoting <u>Douglas -v- Alabama</u>, 380 U.S. 415, 422, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

To be adequate, "<u>the state procedural bar must be clear, consistently applied, and well-established at the time of the petitioner's purported default</u>," (Melendez, supra, at 1124, quoting <u>Calderon -v- U.S. Dist. Court</u>, 96 F.3d 1126, 1129 (9th Cir. 1996), cert. denied, 520 U.S. 1204, 117 S.Ct. 1569, 137 L.Ed.2d 714 (1997).

A federal court should not enforce a bar grounded on a rule which is unclear or uncertain (<u>Melendez, supra</u>, at 1124). California's rule that required petitions to be filed without substantial delay" or later if there was "good cause" for the delay is "too vague" to bar federal habeas review (<u>Morales -v- Calderon</u>, 85 F.3d 1387, 1390-1392 (9th Cir. 1996), cert. denied, 519 U.S. 1001, 117 S.Ct. 500, 136 L.Ed.2d 391 (1996); see also, <u>Martinez -v- Klauser</u>, 266 F.3d 1091, 1093-1094 (9th Cir. 2001).)

Recently, in <u>Townsend -v- Knowles</u>, the court affirmed that California's untimeliness rule was too uncertain to constitute an independent and adequate state ground to bar habeas relief under a procedural default rule (See, <u>Townsend -v- Knowles</u> (C.A. 9 (Cal.) 2009), 562 F.3d 1200 at pp. 1200, 1206-1209).

To be adequate, a state procedural rule must be "well-established and consistantly applied," <u>Id.</u> A procedural rule can be neither well-established nor consistantly applied if it is not "clear and certain." <u>Id.</u>

California's timeliness rule differs for capital and non-capital cases, capital cases should only be considered in non-capital cases insofar as they discuss the aspects of the rule that apply to all state habeas petitions (<u>Id.</u> at 1207, refering to <u>Bennett -v- Mueller</u>, 322 F.3d 573, 581-83 (9th Cir. 2003)(Considering capital cases to determine whether the state bar was independent of federal law but noting that reliance on a capital case was misplaced in deciding the

adequacy of the timeliness rule for a non-capital **case.**)

The fact remains, "substantial delay" has not, yet been defined in regards to non-capital cases (<u>Townsend</u>, <u>supra</u>, at 1207-08). Thus, it can not be concluded in the case at bar, that there was a "substantial delay" in the filing of petitioner's writ. Therefore, the federal court should move on to the merits of the constitutional claims in the **proposed amended petition, after amending the claims to the** original claims, because the procedural rule in question (timeliness) is not "clear" and uniform enough to make it's violation "adequate" to constitute a procedural dafault.

Additional factors in support as to why this honorable court should amend his petition and rule on the merits of "all" petitioner's constitutional claims.

Petitioner was conducting an "<u>ongoing investigation</u>" and simply put, there is no "substantial delay" under the circumstances of this case:

Petitioner contends, to begin preparation of filing a post-conviction petition, the first task is to gather, organize and investigate the "many documents" associated with the trial conviction. This process is very similar to the scope of a pre-trial investigation and is essential, because in most cases (as in the instant case), the defendant/petitioner "has not seen" or examined many of the documents associated with his conviction. Without proper documentation or evidence, the habeas corpus petition may be no more than bald assertions.

Here, that investigation understandibly started after petitioner received the file, which consisted of court clerk documents, charging documents, laboratory reports, police reports, police notes, and the detectives investigation reports. The files was sent to petitioner by appellate counsel on or about February 12, 2009 (See exhibit "Y" of the proposed amended petition), which was after the judgment of conviction was affirmed on appeal, but before the California Supreme Court denied review. At that point, petitioner had not filed any petition for writ of habeas corpus's in the California Supreme Court. The petition filed on August 15, 2008, in the Court of appeals by appellate counsel, was consolidated with the direct appeal, thus, treated as the "direct appeal." The "first" petition for writ of habeas corpus

filed in the California Supreme Court was apart of petitioner's on-
going investigation," it was not an attack on the conviction but was
for the purpose of "post-conviction discovery (petition filed on
February 1, 2010, case No. S179973) For it was discovered during pet-
itioner's investigation, that relevant information that could prove
crucial was not apart of the record petitioner received. This was nec-
essary towards petitioner's investigation.  As a part of petitioner's
investigation, petitioner first sought "post-conviction" discovery th-
rough trial counsel, the prosecutor, and the prosecution's office,
which was on or about January 13th, 2009 (See exhibit's V. W, and
x 1-3 of the proposed amended petition.). Several times following
these request, petitioner attempted to contact trial counsel by phone
(calling collect), but was unable to get an answer (See Exh. "Z" of
the proposed amended petition). After being unable to obtain post-con-
viction discovery from trial counsel, the district attorney, and the
district attorney's office, for the purpose of conducting and adequate
investigation in the preporation of filing a petition challenging
the conviction, petitioner filed a motion to the trial court seeking
an order of post-conviction discovery (See Exh. "AA" of proposed  ame-
nded petition). The trial court in denying the motion, took the erro-
neous position that petitioner did not make a request for discovery to
defense counsel or the prosecutor, and that petitioner presented no
authority or reason for it's court to compel discovery (See Exh. "BB"
of the proposed amended petition).

   However, both position's by the trial court were incorrect (See
Exh. V, W, X 1-3 and "AA" of proposed amended petition). After being
unable to obtain post-conviction discovery through trial counsel,
the prosecution, and the trial court, petitioner filed a writ to the
California Supreme Court attempting to obtain post-conviction disco-
very. The petition was filed February 1, 2010 (Supreme Court case
No. S179973). Additionally, a letter brief was filed to add additio-
nal points and authority in support of the petition (See Exhibit "CC"
of proposed amended petition). The said petition was denied September
15, 2010 (See Exh. "DD" of proposed amended petition). As was already
stated, the discovery sought is/was necessary to carry out an adequate
investigation into a potentially meritorious "Brady violation" claim,
in which is why this matter is apart of petitioner's investigation,

because in the case of United States -v- Arnold, 117 F.3d 1108 (C.A. Il(Fla.) 1997, the court reversed a conviction on the grounds that the prosecution withheld "audio tapes" that contradicted witness trial testimony. (Id. at pp. 1308, 1315).

Also, the discovery in which petitioner sought and seeks, may lead to exculpatory information, may lead petitioner to investigate other matters, and may allow petitioner to present a meritorious Brady claim", (Brady -v- Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963))

Here, petitioner has not received "audio tapes" and other information relevant to petitioner's case. As was discovered by petitioner, additionally, while conducting an ongoing investigation into the many documents associated with the case, petitioner discovered that throughout the course of the detectives/officers' investigation, "the suspect's van windows were continuously described as being tinted dark" (see police report, pp. 8,9,29, 31, 39 of the proposed amended petition). This factor is crucial because the prosecution's case consisted soley on eyewitness testimony, therefore, their ability to see is central to this case. For example, Albert Segundo (prosecution witness) claimed he had his "clearest observation" of the driver of the suspects van as he and A. Sandoval sat parked "behind" it, after having followed the van and it's occupants (3 RT. 1564, 1565, 1571, 1572,1577, 1578; see also police report p. 165 as Exhibit "M" of the proposed amended petition). A. Segundo was at a far distance "behind" the suspect's van, a distance of approximately "120 feet or more", (3 RT. 1572; 4 RT. 1859).

Segundo allegedly seen "half" of the drivers' face at that point (right half) (3 RT. 1572), but yet claimed to have seen an eyebrow piercing (that is less than an inch in size) on the "left side" of the alleged driver's face (3 RT. 1563-1565, 1576-1578)Thus, the fact that it was after "9:00 at night," with an observation distance of approximately "120-feet" away, having to look through the rear window of the van, discovering the suspects van windows were "tinted dark" is significant and/or crucial towards undermining and attacking Segundo's ability to see. It is highly impossible for Segundo to have been able

t₀ See an eyebrow piercing on the "left side" of the alleged driver's face while only being able to see the right half of his face, especially by being at a distance of over "120-feet" away, at "night", looking through "dark-tinted" windows." Nor would he have been able to see the driver under those circumstances. These factors in which petitioner investigated led to many of the points and arguments raised in the amended petition, such as, "trial counsel deprived petitioner of a crucial or potentially meritorious defense by failing to put on demonstrative evidence and/or failing to motion the court to have the jury taken to the scene and placed under the same identifying circumstances as the witnesses (See pp. 180-183 of the proposed amended petition). See also, pp. 132-135 and 141-145 of the proposed amended petition.

Furthermore, while conducting an on-going investigation, petitioner was able to obtain a copy of the Blockbuster surveillence security tape in evidence, on February 20, 2009. This was because the Superior court granted appellant counsel's motion seeking the tape (that should have been disclosed without request) (See Exhibit "J-1" of proposed amended petition).

Since it was unknown at trial as to what time petitioner arrived at the video store he had gone to, petitioner had the security tape sent to an expert Imaging Forensic. George Reis (Imaging Forensic) demultiplexed the VHS tapes and placed them onto DVD's that will allow the security footage to be viewed in live time, which would allow viewers to see what time petitioner arrived at the store and with whom, which was discovered to have been at "9:25 p.m., 16-minutes" before the time it was concluded at trial that petitioner was at the store (See Exhibit "K-1 of proposed amended petition). The VHS tapes and DVD's were then sent to appellant counsel, who then sent them to petitioner through confidential legal mail on or about "May 4, 2009" (See Exhibit "Y" 2 (two pages) of the proposed amended petition).

In an ongoing investigation petitioner personally viewed the DVD's for the purpose of writing a declaration in support of the writ, the declaration explained who was with petitioner when he arrived at the video store and the time it was when they arrived (Petitioner vie-

wed the DVD's on July 17, 2009), (See Exh. "L" of proposed amended petition.).

Additionally, the Blockbuster security tapes and DVD's that appellate counsel sent to petitioner through confidential legal mail, were with-held from petitioner for approximately two (2) months, which prompted petitioner to file an inmate appeal (602) (See Exhibit A 1-17 attached hereto). The Department of Corrections and Rehibilitation failed to follow it's own procedures for incoming legal mail (CCR Title 15, § 3143, 3144, and 3145).

Furthermore, not only did CDCR withhold petitioner's legal mail for approximately two months, but also opened petitioner's legal mail out of his presence. The legal mail consisted of legal letter's from appellate counsel, VHS tapes, and the DVD's. However, CDCR appears to be above the law for not only violating their own policies but also violated 2601 of the California Penal Code. After petitioner received his legal mail that was withheld by CDCR (California Department of Corrections and Rehibilitation), and after petitioner was allowed to view the DVD's that were demultiplexed by an imaging Forensic, petitioner was then able to put together a Declaration in support of his petition. Thus, petitioner viewing the DVD's "two (2) months" after May 7, 2009, on "July 17, 2009," for the purpose of putting together a declaration in support of the writ, was external to petitioner.

As petitioner pointed out, he received the record of the case shortly after February 12, 2009 (see Exh. "Y" of proposed amended petition). Thus, understandibly petitioner's investigation had begun when facts within the record were discovered. Petitioner even contacted an eyewitness identification expert as a part of his investigation for the purpose of determining (from the expert himself), whether the elements to which he testifies to about the fallibility of eyewitnesses fit the instant case.

On or about August 26, 2010 petitioner received a letter from Martin Blinder, M.D. (eyewitness identification expert), who informed petitioner, "many" of the elements to which he testifies fits this specific case. (See Exhibit B 1-4 attached hereto). Martin Blinder is the same expert who wrote the article petitioner references to in the

proposed amended petition (See Exh. S, Crime Justice & America, of proposed amended petition.

As petitioner previously stated, to begin preparation of filing a post-conviction petition, the first task is to gather, organize, and investigate the many documents associated with the trial conviction, which is essential because in most cases, the petitioner has not seen or examined many of the documents associated with his conviction (until the direct appeal is concluded), afterwhich, the proper evidence must be gathered, or the habeas corpus petition may be no more than bald assertions.

Furthermore, after investigating the facts in the instant case, petitioner had to then investigate and research the laws applicable to his discovered facts. In which case, petitions have been found timely when filed up to "36-months after" a petitioner learns of the facts or the laws which form the basis for the petition (See In re Huddleston (1969) 71 Cal.2d at p. 1034 [petition timely filed 30 months after petitioner learned of legal basis]; In re Mitchell (1968) 68 Cal.2d 258, 263 [same with respect to 24 month delay].)

However, when it comes to investigating and researching the laws applicable to discovered facts for the purpose of constructing a petition to be filed to the court, such investigation and research requires time. Legal research often requires browsing through various materials in search of inspiration; tentative theories may have to be abandoned in the course of research in the face of unfamiliar adverse precedent (Toussaint -v- McCarthy (C.A. 9 (Cal.) 1986) 801 F.2d 1080 at 1110). New theories may occur as a result of a chance discovery of an obscure or forgotten case. Certainly a prisoner, unversed in the law and the methods of legal research, will need more time or more assistance than the trained lawyer exploring his case (Id. at 1110)."It is unrealistic to expect a prisoner to know in advance exactly what materials he need to consult (Id. 1110). Thus, under the circumstances of petitioner's case, it can not be said that there was a substatial delay."

Respondent also suggest's that the California Supreme Court citation to In re Clark "May" indicate that petitioner's state habeas petition was successive. Petitioner contends, the Supreme Court has

made it clear that not every numerically second petition is "second
or successive" for purpose of AEDPA (In re Bowen (C.A. 6 (Mich.) 2006)
436 F.3d 699, at 704, quoting Slack -v- McDaniel, 529 U.S. 473, 487,
120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).)

    Courts in defining "second or successive" generally apply "abuse
of the writ decisions, including those decisions that predated AEDPA
(Id. at 704; quoting Stewart -v- Martinez-Villareal, 523 U.S. 637 at
643-45, 118 S.Ct. 1618, 140 L.Ed. 2d 849). In Sanders -v- United States,
373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), the Supreme Court
explained abuse of the writ: If a prisoner "deliberately" withholds
one of two grounds for federal collateral relief at the time of filing
his first application, in the hope of being granted two hearings rat-
her than one or for some other such reason, he may be deemed to have
waived his right to a hearing on a second application presenting the
with-held ground..."nothing in the traditions of habeas corpus requ-
ires the federal courts to tolerate needless, piecemeal litigation,
or to entertain collateral proceedings whose only purpose is to vex,
harass, or delay. (Id. at 18, 83 S.Ct. 1068).

    Here, there was no "deliberate" with-holding of grounds for the
purpose of being granted two hearings rather than one. Petitioner has
not even had his first full and fair hearing in regards to his claims.

    Additionally, as petitioner previously pointed out, the record
of the case was sent to petitioner on or about February 12, 2009 (after
the direct appeal was concluded). Thus, petitioner's investigation
reasonably started upon identifying facts within the record. After
which, petitioner had to then investigate and research the laws appli-
cable to his discovered facts. Additionally, avoiding having to go tho-
ugh a second habeas round in the federal court, petitioner obtained a
stay that would allow petitioner to later amend. Thus, petitioner does
not present a claim that was deliberately abandoned in an attempt to
preserve an issue with which he could return to federal court for a
second time.

    Therefore, given that petitioner was not motivated to with-hold
unexhausted claims from his first habeas petition out of a desire to
vex, harass or delay, but was rather barred as a matter of law (pres-
enting a mixed petition), it is not appropriate to subject petitioner's

proposed amended petition to the restrictions attendant to a second or successive petition (In re Bowen, supra, at 705; see also Slack -v- McDaniel, 529 U.S. 473, 487 [a petition filed after a mixed petition has been dismissed before the district court has adjudicated any claim is not a second or successive petition].)

The federal court has uniformly rejected a literal reading of the phrase "second or successive"(Thai -v- U.S. (C.A.2 (N.Y.) 2004) 391 F.3d. 491 at 494). For a petition to be second or successive, it "must" at a minimum be filed subsequent to the conclusion of a proceeding that counts as the first (Id. at 494). An initial petition will "count" where it has been adjudicated on the merits or dismissed with prejudice (Id. 494). In the case at bar, petitioner's petition was not adjudicated on the merits or dismissed with prejudiced in the federal court for it to count as a first or second petition, nor were the claims in the proposed amended petition that petitioner seeks to amend, that was filed in the California Supreme Court, filed subsequent to the conclusion of a proceeding that counts as the first (Id. at 494).

The California Supreme Court declined review of petitioner's case, and when the petitioner filed a petition for writ of habeas corpus challenging the conviction, the California Supreme Court issued a "post-card" denial. Therefore, it can not be said petitioner's petition was filed subsequent to the conclusion of a proceeding that counts as the first (Id. at 494-95). To hold otherwise would risk depriving habeas petitioner's, often on the basis of a technicality, the one full opportunity for meaniningfull collateral review that congress guaranteed to petitioner's in AEDPA (Id. at 495). There was no evidentiary hearing held in the State Court, and the California Supreme Court failed to provide petitioner with a "full and fair hearing".

The constitutionality of petitioner's conviction should have been addressed, for the writ of habeas corpus plays a vital role in protecting constitutional rights. Petitioner contends, congress expressed no intention to allow trial court procedural error to bar vindication of substantial constitutional rights on appeal (Slack -v- McDaniel (U.S. Nev. 2000), 529 U.S. 473, 120 S.Ct. 1595 at 1603). Additi-

13

onally, petitioner contends that principles of fundamental fairness
under lie the writ of habeas corpus (See Engle -v- Isaac, 456 U.S.
107, 126, 102 S.Ct. 1558, 1571, 71 L.Ed.2d 783 (1982); Sanders -v-
United States, 373 U.S. 1, 17-18, 83 S.Ct. 1068, 1078, 10 L.Ed.2d
148 (1963).) Principles of finality and comity "must yield to the
imperative of correcting a fundamentally unjust incarceration "(Engle,
supra, at 135, 102 S.Ct. at 1576).

Here, petitioner is being held in violation of the Constitution,
and the claims petitioner seeks to amend aids in demonstrating such.
Our Constitution protects against constitutional errors, therefore,
only by returning to the federal courts central and traditional fun-
ction on habeas review, evaluating claims of constitutional error, can
the court ensure that the ends of justice are served and that funda-
mental miscarriages of justice do not go unremedied. The Court would
do well to heed Justice Black's admonition: "It is never too late for
courts in habeas corpus proceedings to look straight through proced-
ural Screens in order to prevent forfeiture of life or liberty in fla-
grant defiance of the constitution. (Brown -v- Allen, 344 U.S. 443, 554,
73 S.Ct. 397, 434, 97 L.Ed. 469 (1953) (dissenting opinion).

Here, petitioner has not abused the writ in a since that prevents
this honorable court from addressing the constitutional claims alleged
in the proposed amended petition. Additionally, there was only one (1)
petition for writ of habeas corpus filed to the California Supreme
Court, that was an attack on the conviction (Supreme Court case num-
ber: S181403). The other petition was in pursuant of post-conviction
discovery(See Supreme Court Case number: S179973). The claims raised
on direct appeal by appellate counsel, who requested the California
Supreme Court to "review" petitioner's case, however, the court "decl-
ined" to review the Claims raised on direct appeal by appellate coun-
sel. Thus, those claims cannot fairly constitute a proceeding that co-
unts as a first for the petitioner. (See, Thai -v- U.S. 391 F.3d at
pp. 494-95).

Respondent claims that the California Supreme citation to In re
Clark, "May" indicate the petition is being denied because it is succ-
essive/second. However, respondent's assumption does not show and

14

demonstrate that the denial was "actually based" on second/success-ive procedural grounds (Luna -v- Cambra, supra, at pp. 960-61).

In the present case, the California Supreme Court failed to explain it's denial of petitioner's claims, the court cited case law but offered no rationale. However, such terse deinals constitute adjudication on the merits (Id. 306 F.3d 954, at 960, quoating Hunter -v- Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1992).)

Furthermore, the claims petitioner seeks to amend were not raised and rejected on appeal.

> RESPONDENT CLAIMS THAT ADDING THE ADDITIONAL CLAIMS TO THE PETITION WOULD BE "FUTILE" OR OTHERWISE (USELESS/FRIVOLOUS).

Petitioner contends adding the additional claims will not be futile (useless/frivolous). The additional claims do indeed hold merit.

Additionally, the claims and points raised in the amended petition that petitioner seeks to amend, aids in undermining the only evidence the prosecution holds (eyewitness testimony). Thus, assisting in showing the errors were not harmless and the evidence is not overwhelming (See pp. 4-11 ans 66-221 of the proposed amended petition).

As contended in the proposed amended petition, the prosecution's evidence is questionable. Furthermore, many courts have looked to the "cumulative" effect of errors to determine whether a petitioner has been denied fundamental fairness within the due process clause of the 14th Amendment, or whether a petitioner had been denied the effective assistance of counsel in violation of the 6th Amendment to the U,S. Constitution (Walker -v- Engle (C.A. 6 (Ohio) '1983), 703 F.2d 959, at 968-69 (affirming it is clear that the cumulative effect of errors denies a petitioner of Due Process); Cooper -v- Sowders (C.A. 6 (Ky.) 1988), 837 F.2d 284, at 286 [holding and agreeing with the petitioner that the cumulative effect of errors denies a petitioner of due process of law]; Henry -v- Scully (C.A. 2 (N.Y.) 1996) 78 F.3d 51, at p. 53 [Three instances of inaction by trial counsel constituted ineffective assistance of counsel.]; Mak -v- Blodgett, (C.A. 9 (Wash.) 1992), 970 F.2d 614 at 622 [prejudice standard met **demonstrate ineffective assistance of counsel due to errors considered**

cumulatively.], Id. at 622, quotes United States -v- Tucker, 716 F. 2d 576, 595 (9th Cir. 1983)("a court may find unfairness and thus prejudice from the totality of counsel's errors and omissions"); Silva -v- Woodford (C.A. 9 (Cal.) 2002), 279 F.3d 825 at pp. 834-836 (COA granted for all issues raised in the petition because of the potential for cumulative prejudice, the petitioner alleged a sufficient showing of a denial of a constitutional right as to metit consideration of his claim].)

The court in Silva -v- Woodford explained, individual deficiencies that may not by themselves meet the Strickland prejudice standard may, when considered cumulatively, constitute sufficient prejudice to justify granting the writ (Id. 279 F.3d 825 at 836, quoting Harris -v- Wood, 64 F.3d 1432, 1438 (9th Cir. 1995); Mak -v- Blodgett, supra, at 622).

Thus, under the aforesaid circumstances it can not be concluded petitioner's "many" claims, grounds, and points raised in the proposed amended petition, that petitioner seeks to add would be pointless and/ or useless. The claims in the proposed amended petition that petitioner seeks to add clearly serves a crucial purpose under a cumulative look.

Additionally, since the constitutional claims petitioner seeks to amend does indeed hold merits, amending them would not be futile, frivolous, pointless/useless, or otherwise invalid.

> THE MOTION TO AMEND THE PETITION FOR WRIT OF HABEAS
> CORPUS NOW PENDING IN THE DISTRICT COURT FOR THE
> CENTRAL DISTRICT OF CALIFORNIA SHOULD BE GRANTED BE-
> CAUSE THE ADDITIONAL CLAIMS ARE TIMELY AND DOES REL-
> ATE BACK TO THE CLAIMS IN THE ORIGINAL PETITION AND
> STATUTORY TOLLING IS CLEARLY AVAILABLE IN  THIS CASE.

Petitioner contends that following the California Supreme Court's denial of his petition for writ of habeas corpus, case number S181403, alleging additional issues arising out of his wrongful conviction in an effort to exhaust state court remedies concerning those issues before filing into the Federal Court after having been granted a stay and Abeyance by the District Court to allow him to exhaust Remedies on the issues raised in the proposed amended petition.

Petitioner's amended petition, filed after the one-year federal habeas limitations period and targeting numerous constitutional violations of his rights, does relate back to the date of the original

petition, which targeted the admission into evidence the petitioner's
prior arrest and criminal history in which was and is inadmissible;
the petitioner received ineffective assistance of counsel when counsel
failed to move to exclude Lopez's identification evidence; the petit-
ioner received ineffective assistance of counsel when counsel failed
to move to exclude Renteria's false identification, and numerous of
other violations of his constitutional rights.

   Petitioner delayed filing the claims at issue because he was con-
ducting an "ongoing investigation" of other possible claims, so that
all claims could be presented in a single petition, rather than piece
meal. The "original pleading" to which civil procedure rule governing
when an amendment of a pleading relates back to the date of the ori-
ginal pleading refers is the complaint in an ordinary civil case, and
the petition in a habeas proceeding. Under civil procedure rule gover-
ning contents of a pleading which sets forth a claim for relief, appl-
icable to ordinary civil proceedings, a complaint need only provide
fair notice of what the plaintiff's claim is and the grounds upon
which it rests.

   Petitioner's amended petition, filed after the one-year federal
habeas limitations period and targetting his wrongful in-court and out
of court identifications, and his ineffective assistance of counsel,
including his claim of innocence, did arise out of the "conduct, tra-
nsaction, or occurrence" set forth in his original timely filed pet-
ition, and thus did and does relate back to the date of the original
petition, which targeted the wrongful admission into evidence the pet-
itioner's prior arrest and criminal history in his murder trial, inc-
luding false testimonies, and VHS Blockbuster video tapes in which had
not been placed onto DVD's to allow viewers to see exactly what time
petitioner arrived at the video store and who was with him when he
arrived, however, had the VHS video tapes would have been placed onto
DVD's it would have been discovered and seen that petitioner arrived
at 9:25 a.m., meaning that he was at the viedo store 16-minutes before
the time the VHS tapes showed at his murder trial; therefore the amen-
ded petition asserts various new grounds for relief supported by both
facts and exhibits attached thereto, however, and that some issues in
the amended petition perhaps differ in type but not time from those

17

the original pleading set forth.

Under civil procedure rule stating that an amendment of a plead-
ing "relates back" to the date of the original pleading when the claim
or defense asserted in the amended pleading arose out of the "conduct,
transaction, or occurrence" set forth in the original pleading, rela-
tion back depends on the existence of a common core of operative facts
uniting the original and newly asserted claims.

Petitioner was convicted of murder in California state court and
sentenced to 25-years to life imprisonment. His current timely applic-
ation for federal habeas relief centers on six (6) claims arising from
his conviction for first degree murder in Los Angeles County Superior
Court case number YA059765: (1) false evidence was introduced at trial
during an eyewitness's testimony; (2) Petitioner received ineffective
assistance of counsel when counsel failed to adequately investigate
the eyewitness's testimony; (3) the jury received prejudicial informa-
tion during deliberations about Petitioner's prior criminal history
that had not been presented at trial; (4) the prosecutor committed mis-
conduct by placing inadmissible evidence about Petitioner's criminal
history before the jury; (5) the jury's inadvertent receipt of inform-
ation regarding petitioner's criminal history constitutes jury miscon-
duct; and (6) Petitioner received ineffective assistance of counsel
when counsel failed to object to the introduction of Petitioner's cri-
minal history. He alleged that those claims holds merits, and were
clearly in violation of his Fifth, Sixth, Eighth, and Fourteenth Amen-
dments' rights. He also alleged that his trial counsel's failure/refu-
sal to have the VHS video tapes placed onto DVD'S where it would have
shown that petitioner was innocent because it could have been seen that
he was at the viedo store 16-minutes before the time the VHS tapes
showed at his murder trial. He also alleges that DVD's would also show
who was with him at the video store.

Petitioner's conviction was affirmed on appeal and became final
ninety days later, on June 30, 2009. Under the one-year limitation
period imposed by the Antiterrorism and Effective Death Penalty Act
of 1996 (AEDPA), 28 U.S.C. §2244(d)(1), Petitioner had until June 30,
2010, to file a habeas petition in federal court. On March 31, 2010,

18

in a timely filed habeas petition, petitioner asserted six claims arising from his conviction for first degree murder in Los Angeles County Superior Court case number YAO59765. See page 18 alleging issues raised in the petition. Petitioner filed a motion to stay the instant proceeding so that he could exhaust in the state courts and that motion alleged nine additional claims of ineffective assistance of counsel. The reasons for not alleging all issues concerning ineffective assistance of counsel, as well as other issues, was to avoid making the motion appear to be a writ of habeas corpus instead of a motion.

Respondent filed an Opposition to Petitioner's Request for Stay and Abeyance ("Opposition") on May 4, 2010. On May 7, 2010, this Court conditionally granted Petitioner's motion to stay.

On October 12, 2010, Petitioner filed a motion to amend the Petition. On November 17, 2010, Petitioner's Proposed Amended Petition for Writ of Habeas Corpus ("Amended Petition") was lodged in this Court. The Amended Petition contained claims that mirrored Petitioner's claims in the Original Petition. Although petitioner's amended petition was filed after the one-year federal habeas limitations period and targeting numerious violations of his constitutional rights prior to, during, and after his state court trial, the relevant factors in assessing whether there has been a "substantial delay" include not only when the Factual basis for the claim was discovered, but also (1) whether the petitioner delayed filing the claim at issue because he was conducting an "ongoing investigation" of other possible claims, so that all claims could be presented in a single petition, rather than piecemeal, and (2) whether the habeas corpus claim at issue, by it's nature, is best considered in the light of the appellate record in direct appeal.

Good cause for substantial delay may be established if, for example, the petitioner can demonstrate that because he was conducting an ongoing investigation into at leas one potentially meritorious claim in order to avoid the piecemeal presentation of claims (In re Robbins (1998) 18 Cal.4th 770, at p. 780.

Petitioner contends that while he was conducting an ongoing investigation, petitioner was able to obtain a copy of the Blockbuster surveillence security tape in evidence, on February 20, 2009. This was

because the Superior court granted appellate counsel's motion seeking the tape (that should have been disclosed without request) (See Exh. "J-1" of proposed amended petition). However, since it was unknown at trial exactly what time petitioner arrived at the video store he had gone to, petitioner had the security tape sent to an expert Imaging Forensic (George Reis (Imaging Forensic) demultiplexed the VHS tapes and placed them onto DVD's that will allow the security footage to be viewed in live time, which would allow viewers to see what time petitioner arrived at the store and also who was with him at that time.However it was discovered that petitioner was at the video store at 9:25 p.m., in which was 16-minutes before the time it was shown and concluded by the VHS tapes at petitioner's murder trial, therefore, petitioner was framed for the murder OF Jose ("CHINO") Robles. (See Exhibit "K-1 of proposed amended petition). However, the VHS tapes and DVD's were then sent to petitioner's appellate counsel, who then sent them to petitioner through **confidential legal mail on or about May 4, 2009 (See Exhibit "Y" 2 (two pages) of the** proposed amended petition.)

In an ongoing investigation petitioner personally viewed the DVD's for the purpose of writing a declaration in support of the writ, the declaration explained who was with petitioner when he arrived at the video store and the time it was when they arrived (Petitioner view the DVD's on July 17, 2009), (See Exh. "L" of proposed amended petition.)

Additionally, the Blockbuster security tapes and DVD's that appellate counsel sent to petitioner through confidential legal mail, were with-held from petitioner for approximately two (2) months, which prompted petitioner to file an inmate appeal (602) (See Exhibit A 1-17 attached hereto). The Department of Corrections and Rehibilitation failed to follow it's own procedures for incoming legal mail (CCR Title 15, §3143, 3144, and 3145)

Furthermore, not only did CDCR with-hold petitioner's legal mail for approximately two months, but also opened the said mail out of his presence. The legal mail consisted of legal letter's from appellate

20

counsel, VHS tapes, and the DVD's). However, CDCR appears to be above
the law because not only did CDCR violate their own policies but also
violated 2601 of the California Penal Code. After petitioner received
his legal mail that was with-held by CDCR (California Department of
Corrections and Rehibilitation), and after petitioner was allowed to
view the DVD's that were demultiplexed by an imaging Forensic, petiti-
oner was then able to put together a Declaration in support of his pet-
ition. Thus, petitioner viewed the DVD's "two (2) months" after may 7,
2009 (July 17, 2009) for the purpose of putting together a Declaration
in support of the writ, was external to petitioner.

As petitioner pointed out, he received the record of the case sho-
rtly after February 12, 2099) (See Exh. "Y" of the proposed amended pet-
ition). Thus, petitioner's investigation had begun when facts within
the record were discovered.

Petitioner even contacted an eyewitness identification expert as a
part of his investigation for the purpose of determining (from the exp-
ert himself) whether the elements to which he testifies to about the
fallibility of eyewitnesses fit the instant case.

On or about August 26, 2010, petitioner received a letter from Mar-
tin Blinder, M.D. (eyewitness identification expert), who informed pet-
itioner, "many" of the elements to which he testifies fits this specific
case (See Exh. S, crime Justice & America, of proposed amended petition
See also, Exh. B 1-4, attached.)

In his timely filed habeas petition, petitioner asserted his cons-
titutional rights were violated because of the six reasons alleged on
page 18-hereof), but did not then challenge the numerous issues proving
his innocence "which are raised in the proposed amended petition.

In response to Respondent's argument that the claims are time bar-
red, petitioner contends that the rule that pleading amendment relate
back to the filing date of the original pleading when the original amen-
dment arise out of the same "conduct, transaction, or occurrence set
forth in the original pleading (Fed. Rule Civ. Proc. 15(c)(2).

Petitioner was convicted of murder in Los Angeles County Superior
Court and sentenced to 25-years to life in state prison. His current
application for federal habeas relief centers on numerous alleged trial

court errors, such as: (1) false evidence was introduced at trial dur-
ing an eyewitness's testimony; (2) Petitioner received ineffective
assistance of counsel when counsel failed to adequately investigate
the eyewitness's testimony; (3) the jury received prejudicial inform-
ation during deliberations about Petitioner's prior criminal history
that had not been presented at trial; (4) the prosecutor committed
misconduct by placing inadmissible evidence about Petitioner's crimi-
nal history before the jury; (5) the jury's inadvertent receipt of
information regarding Petitioner's criminal history constitutes jury
misconduct; and (6) Petitioner received ineffective assistance of
counsel when counsel failed to object to the introduction of Peti-
oner's criminal history. Petitioner alleged that those incourt ident-
ifications on the part of the prosecution witnesses' were false, and
the court's admission of such testimonies violated his Sixth and fou-
rteenth Amendment rights to a fair trial. He also alleges that the
admission of VHS security tapes at his murder trial, which did not
show what time he was at the video store instead of having the VHS
tapes placed on DVD's to show exactly what time he was at the viedo
store, he's at the store at 9:25 p.m., in which was 16-minutes before
the time it was shown and concluded by the VHS tapes at his trial, vio-
lated his right to due process of law. He also alleges that the pros-
ecution failed to connect him to a white van, while at the same token,
admitted false testimony concerning a white van to be given at his
trial, in violation of his Fourteenth Amendment right to a fair trial
and due process of law.

The District Court should not dismiss any of his claims as time
barred, and should not reject any of the issues on the merits. Each
of the issues raised in the proposed amended petition has merits be-
cause they prove petitioner's innocence. Petitioner alleges that Rule
15(a) of the Federal Rules of Civil Procedure allows a party to amend
his petition by leave of court at any time, and such leave shall be
freely given when justice so requires. Therefore, petitioner's motion
to amend his timely filed petition should be granted.

22

THE AMENDED PETITION IS NOT UNTIMELY, AND STAT-
UTORY TOLLING IS CLEARLY AVAILABLE TO PETITIO-
NER. PETITIONER IS ENTITLED TO "STATUTORY TOLL-
ING" FOR THE TIME HIS CALIFORNIA STATE SUPREME
COURT PETITIONS WERE PENDING.

Petitioner contends that the Central District Court has also corr-
ectly addressed the matter of statutory tolling (2010 WL 1848210, Rat-
liff -v- Hedgepeth (C.D. Cal. 2010), at **6)

The Court explained, although a citation to Clark may mean the
petition is untimely, that is not the only proposition for which Clark
stands. Rather, Clark also stands for the proposition that "absent a
change in the applicable law or the facts, the court will not consider
repeated applications for habeas corpus presenting claims previously
rejected...[as well as] newly presented grounds for relief which were
known to the petitioner at the time of a prior collateral attack on the
judgment." (Id. at 767-68, 21 Cal.Rptr.2d at 520, 855 P.2d 729. More-
over, Clark also stands for "the general rule that issues resolved on
appeal will not be reconsidered on habeas corpus[,]" (Id. at 765, 21
Cal.Rptr.2d at 518, 855 P.2d 729 (citing In re Waltreus, 62 Cal.2d
218, 225, 42 Cal.Rptr. 9, 397 P.2d 1001 (1965), cert. denied, 382 U.S.
853, 86 S.Ct. 103, 15 L.Ed.2d 92 (1965)), and its companion rule that
"in the absence of special circumstances constituting an excuse for
failure to employ that remedy, the writ will not lie where the claimed
errors could have been, but were not, raised upon a timely appeal from
a judgment of conviction." Clark, 5 Cal.4th at 765, 21 Cal.Rptr.2d at
518, 855 P.2d 729 (citing In re Dixon, 41 Cal.2d 756, 759, 264 P.2d
513 (1953); internal quotation marks omitted)).

Under AEDPA, respondent "bears the burden of proving that the
AEDPA limitations period has expired." Fleming -v- Evans, 481 F.3d
1249, 1257 (10th Cir. 2007); see also Gildon -v- Bowen, 384 F.3d 883,
886 (7th Cir. 2004) ("Since the period of limitations is an affirmative
defense, the state has the burden of showing that the petition is un-
timely."), cert. denied, 543 U.S. 1168, 125 S.Ct. 1348, 161 L.Ed.2d
144 (2005); Griffin -v- Rogers, 308 F.3d 647, 653 (6th Cir. 2002)
("[T]he party asserting statute of limitations as an affirmative defe-
nse has the burden of demonstrating that the statute has run."). Given

the variety of procedural rules set forth in <u>Clark,</u> and since the California Supreme Court's citation to <u>Clark</u> was without reference to any specific page within the Clark opinion, respondent has not met his burden of demonstrating the California Supreme Court denied petitioner's habeas corpus petition on the ground it was untimely. See <u>Gipson -v- Schwartz,</u> 2007 WL 1411607, *2 (N.D.Cal.) ("The problem with respondent's argument is that the citation to <u>Clark </u>is ambiguous because the California Supreme Court did not cite to any particular page in the <u>Clark</u> opinion when it denied [petitioner's] habeas petition [and] Clark discusses more than just the untimeliness procedural bar..."). Thus, petitioner is entitled to statutory tolling for the time his habeas petition was pending before the California Supreme Court, and affording petitioner such statutory tolling, petitioner's current federal habeas corpus petition is timely.

Additionally, the California Supreme Court's denial citing <u>In re Clark</u>, but "offering no rational" constitutes an adjudication on the merits (See <u>Luna -v- Cambra (</u>C.A. 9 (Cal.) 2002), 306 F.3d 954 at 960, citing <u>Hunter -v- Aispuro</u>, 982 F.2d 344, 347-48 (9th Cir. 1992)), thus, allowing Federal review. However, as stated in the case of <u>Town send -v- Knowles,</u> state procedural rules allowing the exercise of judicial discretion are not necessarily uncertain, but the exercise of any such discretion must be according to standards that are not "Vague" or "ambiguous", (<u>Townsend, supra</u>, 562 F.3d 1200, at 1207). The rule's ambiguity is not clarified by the California Supreme Court's application of the timeliness bar, <u>in part because the court usually rejects cases without explanation, only citing Clark and/or Robbins, as the court did here,</u>"(<u>Townsend, supra,</u> at 1208).

Thus, petitioner is entitled to statutory tolling, therefore, the proposed amended claims are timely (2010 WL-1848210, <u>Ratliff -v- Hedgepeth (</u>C.D. Cal.2010), No. ED CV-07-627-RSWL(RC)., <u>at **6</u>).


DATED: Jan. 19    (2011()                    Respectfully Submitted,

                                             /S/ Johana Coleman
                                             Johana Coleman,

                                             Petitioner.

# "VERIFICATION"

State of California
County of Kings

    I Jofama Coleman, declare:

    I am the petitioner in propria persona.
I've been representing myself in case
number CV 10-2343-AHM (RNB), with some
although very little assistance from my
cell/room mate. My Knowledge of the law
is very limited and i am trying my
best to learn as i go along in the
proceedings.
    This reply motion is based on a review
of the reporter's and clerk's transcripts
from the trial court proceeding (case No. YA059765)
which are contained in the record of appeal
(case No. B202957), portions of appellant's
trial file, the exhibits admitted at trial, a
review of portions of the reporter's trans-
cripts and exhibits from Abel Soto's trial
(case No. YA064697), and the declarations and
documents in the attached exhibits. I
have read the foregoing motion and know
the contents thereof. The same is true
of my own knowledge.

Court Paper
Printed on

