1   KAMALA D. HARRIS
    Attorney General of California
2   DANE R. GILLETTE
    Chief Assistant  Attorney General
3   LANCE E. WINTERS
    Senior Assistant  Attorney General
4   STEPHANIE A. MIYOSHI
    Deputy Attorney General
5   DAVID E. MADEO
    Deputy Attorney General
6   State Bar No. 180106
     300 South Spring Street, Suite 1702
7    Los Angeles, CA  90013
     Telephone:  (213) 897-4925
8    Fax:  (213) 897-6496
     E-mail:  DocketingLAAWT@doj.ca.gov
9   *Attorneys for Respondent*

10

                    IN THE UNITED STATES DISTRICT COURT
11
              FOR THE CENTRAL DISTRICT OF CALIFORNIA
12

13
    | | |
    |---|---|
    | **JOFAMA COLEMAN,** | CV 10-2343-AHM (RNB) |
14  | | |
    |                            Petitioner, | **ANSWER TO AMENDED** |
15  | | **PETITION FOR WRIT OF** |
    | | **HABEAS CORPUS;** |
16  |        **v.** | **MEMORANDUM OF POINTS** |
    | | **AND AUTHORITIES** |
17  | **KATHLEEN ALLISON, Acting** | |
    | **Warden,** | |
18  | | |
    |                            Respondent. | |
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Memorandum of Points and Authorities.................................................................1

Procedural History ...............................................................................................1

     A.    State Proceedings.....................................................................1

     B.    Federal Proceedings ...............................................................2

Statement of Facts.................................................................................................5

     A.    Prosecution Evidence .............................................................5

          1.    The shooting ...............................................................5

          2.    Previous encounters ...................................................7

     B.    Defense Evidence ..................................................................9

     C.    Prosecution Rebuttal Evidence..............................................9

Petitioner's Contentions .....................................................................................10

Standard of Review.............................................................................................10

Argument.............................................................................................................13

    I.    Petitioner's false evidence claim raises no federal question; in any event, the California Court of Appeal and the California Supreme Court did not contravene or unreasonably apply Supreme Court precedent when they rejected petitioner's related claims ...............................................................................13

          A.    The relevant state court proceedings .....................14

          B.    Petitioner's false evidence claim in Ground One is not cognizable ......................................................15

          C.    The California Court of Appeal reasonably rejected petitioner's federal false evidence claim in Ground Two ........16

          D.    The state court reasonably rejected petitioner's ineffective assistance of counsel claim in Ground Three ..........................19

    II.    Petitioner's admission of evidence claim raises no federal question; in any event, the California Court of Appeal did not contravene or unreasonably apply Supreme Court precedent when it rejected petitioner's related claims; moreover, petitioner's related ineffective assistance of counsel claim is unexhausted and meritless..............................................22

          A.    The relevant state court proceedings .....................23

          B.    Petitioner's evidentiary claim in Ground Four is not cognizable ......................................................28

          C.    The California Court of Appeal reasonably rejected petitioner's jury misconduct claims in Grounds Five, Six, and Nine ......................................................28

          D.    The California Court of Appeal reasonably rejected petitioner's prosecutorial misconduct claim in Ground Seven ......................................................30

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3       E.    Petitioner's ineffective assistance of counsel claim in
Ground Eight is unexhausted and lacks merit..........................31

4  Conclusion....................................................................................33

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

CASES

*Acosta-Huerta v. Estelle*
954 F.2d 581 (9th Cir. 1992), *amended* 7 F.3d 139 (1993)...............................32

*Allen v. Woodford*
395 F.3d 979 (9th Cir. 2005)...........................................................................17

*Berghuis v. Thompkins*
130 S. Ct. 2250, 176 L. Ed. 2d 1098 (2010)...............................................12, 13

*Bobby v. Van Hook*
130 S. Ct. 13, 175 L. Ed. 2d 255 (2009)..........................................................20

*Boyde v. Brown*
404 F.3d 1159 (9th Cir. 2005)........................................................................16

*Bracy v. Gramley*
520 U.S. 899, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997) ................................28

*Brecht v. Abrahamson*
507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) ..................18, 29, 31

*Bueno v. Hallahan*
988 F.2d 86 (9th Cir. 1993)...........................................................................16

*Carey v. Musladin*
549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006) ..................................11

*Clark v. Brown*
450 F.3d 898 (9th Cir. 2006)....................................................................18, 29

*Cone v. Bell*
129 S. Ct. 1769, 173 L. Ed. 2d 701 (2009)......................................................13

*Darden v. Wainwright*
477 U.S. 168, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) ...........................30, 31

*Delgado v. Lewis*
223 F.3d 976 (9th Cir. 2000).........................................................................20

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

4

*Donnelly v. DeChristoforo*
   416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974) ...................................30

5

6

*Duckett v. Godinez*
   67 F.3d 734 (9th Cir. 1995)....................................................................30

7

8

*Dugger v. Adams*
   489 U.S. 401, 109 S. Ct. 1211, 103 L. Ed. 2d 435 (1989) ..........................16, 30

9

*Duncan v. Henry*
   513 U.S. 364, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) ................................32

10

11

*Early v. Packer*
   537 U.S. 3, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ....................................11

12

13

*Edwards v. Lamarque*
   475 F.3d 1121 (9th Cir. 2007)..........................................................33

14

15

*Estelle v. McGuire*
   502 U.S. 62, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) .............................15, 28

16

17

*Flores v. Johnson*
   957 F. Supp. 893 (D.W.Tex. 1997) ....................................................32

18

19

*Fry v. Pliler*
   127 S. Ct. 2321, 168 L. Ed. 2d 16 (2007)....................................................18, 29

20

21

*Guizar v. Estelle*
   843 F.2d 371 (9th Cir. 1988)............................................................32

22

*Harrington v. Richter*
   131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).....................................................*passim*

23

24

25

*Henry v. Estelle*
   33 F.3d 1037 (9th Cir. 1993), *rev'd sub nom on other grounds in Duncan*
   *v. Henry*, 513 U.S. 364, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995).............18, 29

26

27

*Holland v. Illinois*
   493 U.S. 474, 110 S. Ct. 803, 107 L. Ed. 2d 905 (1990) ................................29

28

iv

# TABLE OF AUTHORITIES
## (continued)

Page

*Hoxsie v. Kerby*
   108 F.3d 1239 (10th Cir. 1997)...................................................................32

*In re Clark*
   5 Cal. 4th 750, 21 Cal. Rptr. 2d 509 (1993) ...................................................1

*Jackson v. Virginia*
   443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) ....................................12

*Jammal v. Van de Kamp*
   926 F.2d 918 (9th Cir. 1991)..............................................................15, 16

*Jeffries v. Blodgett*
   5 F.3d 1180 (9th Cir. 1993).................................................................16

*Jeffries v. Wood*
   114 F.3d 1484 (9th Cir. 1997)..............................................................29

*Johnson v. Zenon*
   88 F.3d 828 (9th Cir. 1996).................................................................32

*Knowles v. Mirzayance*
   129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009)..............................................11, 20

*Larson v. Palmateer*
   515 F.3d 1057 (9th Cir. 2008)...........................................................18, 29

*Le v. Mullin*
   311 F.3d 1002 (10th Cir. 2002)............................................................30

*Lee v. Lampert*
   653 F.3d 929 (9th Cir. 2011).................................................................4

*Lockyer v. Andrade*
   538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003) ..............................12, 13

*Milton v. Wainwright*
   407 U.S. 371, 92 S. Ct. 2174, 33 L. Ed. 2d 1 (1972) .......................................15

*Morales v. Woodford*
   336 F.3d 1136 (9th Cir. 2003)..............................................................17

# TABLE OF AUTHORITIES
### (continued)

Page

*Murtishaw v. Woodford*
  255 F.3d 926 (9th Cir. 2001)....................................................................17, 33

*Napue v. Illinois*
  360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) ......................................16

*Ortiz v. Stewart*
  149 F.3d 923 (9th Cir. 1998)..........................................................................30

*Park v. California*
  202 F.3d 1146 (9th Cir. 2000)........................................................................15

*Picard v. Connor*
  404 U.S. 270, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) ....................................32

*Pirtle v. Morgan*
  313 F.3d 1160 (9th Cir. 2002)........................................................................13

*Pulley v. Harris*
  465 U.S. 37, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984) .................................15, 28

*Renico v. Lett*
  130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)......................................................11

*Sandoval v. Calderon*
  241 F.3d 765 (9th Cir. 2000)..........................................................................31

*Sassounian v. Roe*
  230 F.3d 1097 (9th Cir. 2000)........................................................................29

*Sechrest v. Ignacio*
  549 F.3d 789 (9th Cir. 2008)..........................................................................30

*Strickland v. Washington*
  466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) ...............19, 20, 21, 32

*Tan v. Runnels*
  413 F.3d 1101 (9th Cir. 2005)........................................................................30

*Tayborn v. Scott*
  251 F.3d 1125 (7th Cir. 2001)........................................................................17

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3
*Teague v. Lane*

4
        489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989) ..................................1

5
*Thompson v. Borg*
        74 F.3d 1571 (9th Cir. 1996)................................................................30

6

7
*Tinsley v. Borg*
        895 F.2d 520 (9th. Cir. 1990).................................................16, 28

8

9
*United States v. Sherlock*
        962 F.2d 1349 (9th Cir. 1992)..........................................................17

10

11
*United States v. Shryock*
        342 F.3d 948 (9th Cir. 2003).............................................................29

12

13
*Walters v. Maass*
        45 F.3d 1355 (9th Cir. 1995)..........................................................16, 28

14

15
*Werts v. Vaughn*
        228 F.3d 178 (3d Cir. 2000)................................................................32

16

17
*Williams v. Taylor*
        529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) ..............................11

18

19
*Withrow v. Larkin*
        421 U.S. 35, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975) ....................................28

20
*Woodford v. Visciotti*
        537 U.S. 19, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) ...................................20

21

22
*Wright v. Van Patten*
        552 U.S. 120, 128 S. Ct. 743, 169 L. Ed. 2d 583 (2008) ...............................11

23
*Yarborough v. Alvarado*

24
        541 U.S. 652, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004) ..............................20

25
*Yarborough v. Gentry*

26
        540 U.S. 1, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003).............................................20

27

28

# TABLE OF AUTHORITIES
## (continued)

Page

**STATUTES**

28 U.S.C. § 2254 .............................................................................................18

28 U.S.C. § 2254(a) ................................................................................1, 15, 28

28 U.S.C. § 2254(b) ................................................................................2, 22, 32

28 U.S.C. § 2254(b)(2) .....................................................................................32

28 U.S.C. § 2254(d) .....................................................................................*passim*

28 U.S.C. § 2254(d)(1) ...............................................................................12, 13

28 U.S.C. § 2254(e) .............................................................................................2

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") ............*passim*

Cal. Penal Code § 187(a) ...................................................................................1

Cal. Penal Code § 1473(b)(1) ..........................................................................16

**CONSTITUTIONAL PROVISIONS**

U.S. Const., Amendment VI ..............................................................................29

**COURT RULES**

Fed. R. Civ. P. 25(d) ...........................................................................................1

Respondent, Kathleen Allison,[1] Acting Warden of the California Substance Abuse Treatment Facility and State Prison at Corcoran, California, hereby submits this Answer to the Amended Petition for Writ of Habeas Corpus ("Amended Petition"), and admits, denies and alleges as follows:

1. Petitioner is in Respondent's custody, pursuant to a valid judgment of conviction in Los Angeles County Superior Court Case No. YA059765.

2. The Amended Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

3. Grounds One through Nine in the Amended Petition appear to be timely.

4. Grounds One through Nine in the Amended Petition do not appear to be procedurally barred.

5. Grounds One through Nine in the Amended Petition do not appear to be barred by the non-retroactivity doctrine set forth in *Teague v. Lane*, 489 U.S. 288, 310, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).

6. Grounds One and Four in the Amended Petition should be denied and dismissed with prejudice as failing to present federal constitutional questions. *See* 28 U.S.C. § 2254(a).

7. Grounds One, Two, Four through Seven, and Nine in the Amended Petition should be denied and dismissed with prejudice because the California Court of Appeal's denial of relief on these claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, nor was the denial of such relief based upon an unreasonable determination of the facts presented in the state court proceedings. *See* 28 U.S.C. § 2254(d).

8. Ground Three in the Amended Petition should be denied and dismissed with prejudice because the California Supreme Court's denial of relief on this claim

---

[1] Respondent notes that Kathleen Allison is the Warden of the California Substance Abuse Treatment Facility and State Prison at Corcoran , California, where Petitioner is in custody.  Substitution of the proper custodian's name is authorized under Federal Rule of Civil Procedure 25(d).

1

was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, nor was the denial of such relief based upon an unreasonable determination of the facts presented in the state court proceedings. *See* 28 U.S.C. § 2254(d).

9. Ground Eight of the Amended Petition should be denied and dismissed with prejudice as an unexhausted claim with no merit. *See* 28 U.S.C. § 2254(b).

10. No evidentiary hearing is necessary to resolve Grounds One through Nine in the Amended Petition, nor has Petitioner demonstrated that one is warranted under 28 U.S.C. § 2254(e).

11. This Answer is based on the records and files in this case; the Memorandum of Points and Authorities filed herewith; the documents lodged separately with this pleading (LD W) ; the documents lodged with Respondent's opposition to Petitioner's motion to stay proceedings (LD A through S), filed May 3, 2010; the documents lodged with Respondent's opposition to Petitioner's motion to amend the Petition (LD T and U), filed December 21, 2010; and the documents lodged with Respondent's supplemental opposition memorandum (LD V), filed April 12, 2011; including the Clerk's Transcript ("CT"; LD S), Reporter's Transcript ("RT"; LD V), and Augmented Reporter's Transcript ("ART"; LD W) prepared in connection with Petitioner's state appeal.

12. Except as herein expressly admitted, Respondent denies each and every allegation of the Amended Petition and specifically denies that Petitioner's confinement is improper, denies that any judgment and commitment underlying Petitioner's confinement is improper, and denies that Petitioner's rights are being violated.

/ / /

/ / /

/ / /

1          WHEREFORE, Respondent respectfully requests that the Amended Petition

2    be denied and dismissed with prejudice.

3

4    Dated:  December 12, 2011             Respectfully submitted,

5                                         KAMALA D. HARRIS
                                          Attorney General of California
                                          DANE R. GILLETTE

6                                         Chief Assistant  Attorney General
                                          LANCE E. WINTERS

7                                         Senior Assistant  Attorney General
                                          STEPHANIE A. MIYOSHI

8                                         Deputy Attorney General

9

10                                        **/s/ DAVID E. MADEO**
                                          DAVID E. MADEO

11                                        Deputy Attorney General
                                          *Attorneys for Respondent*

12

13   LA2010501376
     51047561.doc

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

# PROCEDURAL HISTORY

### A.  State Proceedings

Following a jury trial in Los Angeles County Superior Court case number YA059765, Petitioner was convicted of first degree murder, in violation of California Penal Code[2] section 187(a).  (1CT at 186-87; 5RT at 3603.)  The trial court sentenced Petitioner to twenty-five years to life in state prison.  (2CT at 302, 304; 5RT at 3910.)

Petitioner appealed his conviction.  (LD A.)  On December 30, 2008, the California Court of Appeal affirmed the judgment and sentence.  (LD D, E.)  On August 20, 2008, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal.  (LD F.)  On December 30, 2008, the California Court of Appeal denied the petition in a reasoned decision.  (LD I.)

Petitioner filed a petition for review in the California Supreme Court (case number S170435).  (LD J.)  On April 1, 2009, the California Supreme Court denied the petition.  (LD K.)  On February 11, 2009, Petitioner filed a petition for writ of habeas corpus[3] in the California Supreme Court (case number S170438).  (LD L.). On April 1, 2009, the California Supreme Court denied the petition.  (LD M, N.)

On February 1, 2010, Petitioner filed a second petition for writ of habeas corpus in the California Supreme Court (case number S179973).  (LD O.).  On September 15, 2010, the California Supreme Court denied the petition, with a citation to *In re Clark*, 5 Cal. 4th 750, 21 Cal. Rptr. 2d 509 (1993).  (LD T.)

On March 29, 2010, Petitioner filed a third petition for writ of habeas corpus in the California Supreme Court (case number S181403).  (LD Q.)  On September 15, 2010, the California Supreme Court denied the petition, with a citation to *Clark*,

---

[2] All further statutory references are to the California Penal Code, unless otherwise indicated.

[3] The brief was titled "Petition for Review."  (LD L.)

1

5 Cal. 4th 750.  (LD U.)

**B.    Federal Proceedings**

On March 31, 2010, Petitioner filed a Petition for Writ of Habeas Corpus ("Original Petition"), alleging six claims arising from his conviction for first degree murder in Los Angeles County Superior Court case number YA059765:  (1) false evidence was introduced at trial during an eyewitness's testimony; (2) Petitioner received ineffective assistance of counsel when counsel failed to adequately investigate the eyewitness's testimony; (3) the jury received prejudicial information during deliberations about Petitioner's prior criminal history that had not been presented at trial; (4) the prosecutor committed misconduct by placing inadmissible evidence about Petitioner's criminal history before the jury; (5) the jury's inadvertent receipt of information regarding Petitioner's criminal history constitutes jury misconduct; and (6) Petitioner received ineffective assistance of counsel when counsel failed to object to the introduction of Petitioner's criminal history.  (*See* Pet. at 5-6a, Attach. at 1-55.)

Concurrently with the Petition, Petitioner filed a motion to stay the instant proceeding so that he could exhaust in the state courts nine additional claims of ineffective assistance of counsel.  Respondent filed an Opposition to Petitioner's Request for Stay and Abeyance ("Opposition") on May 4, 2010.  On May 7, 2010, this Court conditionally granted Petitioner's motion to stay.

On October 12, 2010, Petitioner filed a motion to amend the Petition.  On November 17, 2010, Petitioner's Proposed Amended Petition for Writ of Habeas Corpus ("Amended Petition") was lodged in this Court.  The Amended Petition contained nine claims that mirrored Petitioner's claims in the Original Petition: (1) false evidence was introduced during Petitioner's trial (Am. Pet. at 5, Attach. at 27-31); (2) Petitioner's constitutional right to due process and fair trial were violated by introducing false evidence (Am. Pet. at 5, Attach. at 31-32); (3) Petitioner received ineffective assistance of counsel when counsel failed to investigate and

2

object to false evidence (Am. Pet. at 6, Attach. at 32-37); (4) evidence of Petitioner's prior arrest and criminal history was inadmissible (Am. Pet. at 6, Attach. at 37-39); (5) the introduction of information regarding Petitioner's criminal history denied his constitutional rights to an impartial jury and to due process (Am. Pet. at 6, Attach. at 40-48); (6) the introduction of Petitioner's criminal history constituted jury misconduct (Am. Pet. at 6a, Attach. at 46-48); (7) the introduction of Petitioner's criminal history constituted prosecutorial misconduct (Am. Pet. at 6a, Attach. at 48-52); (8) Petitioner received ineffective assistance of counsel when counsel failed to object to prosecutorial misconduct (Am. Pet. at 6a, Attach. at 52-54); and (9) the error resulted in a denial of the constitutional right to impartial jury and due process. (Am. Pet. at 6b, Attach. at 54-65).[4]

The Amended Petition also contained twelve additional claims that had not been alleged in the Original Petition: (10) the trial court failed to bifurcate the proceedings (Am. Pet. at 6b, Attach. at 66-81); (11) the introduction of Petitioner's bad character evidence was evidentiary error (Am. Pet. at 6b, Attach. at 82-85); (12) Petitioner received ineffective assistance of counsel when counsel failed to investigate a potentially meritorious defense (Am. Pet. at 6c, Attach. at 86-105); (13) the prosecutor committed misconduct by making false statements before the jury (Am. Pet. at 6c, Attach. at 106-11); (14) Petitioner received ineffective assistance of counsel when counsel failed to object to prosecutorial misconduct (Am. Pet. at 6c, Attach. at 112-15); (15) Petitioner received ineffective assistance of counsel when counsel failed to file a *Pitchess* motion (Am. Pet. at 6d, Attach. at 116-24); (16) Petitioner received ineffective assistance of counsel when counsel failed to secure the services of a psychologist (Am. Pet. at 6d, Attach. at 124-80); (17) trial counsel deprived Petitioner of a crucial or potentially meritorious defense (Am. Pet. at 6d, Attach. at 180-83); (18) Petitioner received ineffective assistance

---

[4] The substance of these nine claims in the Amended Petition were contained in the six claims in the Original Petition.

of counsel when counsel failed to move to exclude Lopez's identification evidence (Am. Pet. at 6e, Attach. at 184-87); (19) Petitioner received ineffective assistance of counsel when counsel failed to move to exclude Renteria's identification evidence (Am. Pet. at 6e, Attach. at 187-209); (20) the cumulative effect of the errors resulted in a fundamentally unfair trial (Am. Pet. at 6e, Attach. at 209-13); and (21) the trial court erred in denying post-conviction discovery (Am. Pet. at 6f, Attach. at 213-21).

On February 9, 2011, in a Report and Recommendation, this Court granted Petitioner's motion to amend with respect to Grounds 1 through 9, 11, and 19 of the proposed Amended Petition and denied the motion with respect to Grounds 10, 12 through 18, and 20 through 21, finding that two new claims alleged in the Amended Petition (Grounds 11 and 19) related back to the filing of Petitioner's Original Petition. The next day, this Court ordered supplemental briefing regarding the "actual innocence" exception to the AEDPA statute of limitations.

On June 20, 2011, this Court granted Petitioner's motion to amend to the extent that it sought to amend Grounds 1 through 6 of the Original Petition by realleging instead Grounds 1 through 9 of the proposed Amended Petition and deferred ruling as to Grounds 10 through 21. Following Petitioner's objections to the June 20, 2011, Order, the District Judge remanded the matter back to this Court for further proceedings in light of the Ninth Circuit's decision in *Lee v. Lampert*, 653 F.3d 929 (9th Cir. 2011). This Court subsequently ordered an evidentiary hearing on petitioner's actual innocence claim, pertaining to Grounds 10 through 21.

The Court then ordered Respondent to file an Answer addressing the merits of Grounds 1 through 9 of the proposed Amended Petition.

## STATEMENT OF FACTS

### A.   Prosecution Evidence

#### 1.   The Shooting

On May 10, 2003, at about 9:00 p.m., Jose Robles ("Robles"), also known as "Chino," was shot and killed on the sidewalk in front of his house (the "Robles house") on 101st Street in Los Angeles.  Robles and his brother, Jesse Robles ("Jesse"), were members of the No Control ("NC") tagging crew.  (2RT at 948; 3RT at 1630.)  Petitioner was the leader of the rival tagging crew, Notorious Graffiti Artists ("NGA"), and his nickname was "Illusion."  (3RT at 1540-41, 1546, 1556; 4RT at 2140-41.)

Earlier that evening, Robles, Jesse, and several others gathered at the Robles house for a barbeque.  Albert Segundo, Robles's friend and an NC member, walked toward the house of his friend, Andres Sandoval, across from the Robles house, when he saw a white van with wood paneling.  He thought it looked suspicious and told his friend, Mico, to take some young women, who were standing in the street, back into the Robles house.  Segundo saw Petitioner in the driver's seat and Abel Soto, who was an Evil Klan ("EK") member, in the passenger seat of the van.  The van passed, and Segundo went to Sandoval's house.  (3RT at 1536-39.)

Segundo passed Robles on the sidewalk.  Robles said he was going to a liquor store on 99th Street; Segundo replied that the area was "enemy territory."  Robles said he would be all right because he had his knife.  About ten seconds later, Segundo heard two gunshots and turned around.  Soto got out of the van and fired about thirteen shots into Robles, who was lying on the ground.  Soto was about twelve feet from Robles and shot him in the head.  (3RT at 1539, 1542-43, 1549.)  Sandoval, who was outside his house during the shooting, saw Soto shoot Robles and jump back into the van.  He described the shooter as wearing all black.  (4RT at 1841-45.)

Maria Renteria, who lived in a back house on the Robles' lot, had just parked

in front of the Robles house and immediately noticed that the white van was parked on the wrong side of the street. Her vehicle was facing the front of Petitioner's van. The headlights from Renteria's vehicle illuminated the interior of Petitioner's van, and she saw a Black man in the driver's seat. She saw the driver get out and fire multiple shots at something. He then approached a person lying on the sidewalk and fired multiple shots at him. The driver returned to the van and drove off, passing Renteria's vehicle. The driver wore a flannel shirt and a beanie. She did not see anyone other than the driver in the van. (3RT at 1225-32, 1244-47.) Renteria looked at the driver for over ten seconds. (3RT at 1237.) Renteria identified Petitioner at trial as the driver of the van. (3RT at 1227.)

Jesse, Carlos Lopez, and Robles's father were in the backyard when they heard three gunshots. A few seconds later, they heard thirteen more gunshots. Jesse and Lopez ran to the front yard and saw a white van with wood paneling drive off quickly. They each saw Petitioner drive the van as it passed by. Petitioner wore a black beanie and white T-shirt. Jesse had seen Petitioner more than fifty times before and recognized him. (2RT at 937-43; 3RT at 1614-16.) Jesse and Lopez each positively identified Petitioner at trial as the driver of the van. (2RT at 943; 3RT at 1616.) There was a light pole across the street from the house, and the van was lit up by the headlights of Renteria's van. (2RT 952.)

Adrian Robles ("Adrian") and Anthony Robles ("Anthony"), Robles's younger brothers, were in a neighbor's house across the street when they heard the gunshots and looked outside. They saw someone get out of the van and shoot at someone in the street. There were three or four people in the van. After more than ten shots, the shooter got in the van, and it drove off. Adrian was not able to identify anyone in the van. (3RT at 1255-61, 1274-76.) Anthony testified that the shooter wore a white T-shirt and a beanie. (3RT at 1279.) Jesse and his father ran to Robles on the sidewalk right after the shooting. (3RT at 1270.) Robles died from multiple gunshot wounds. (4RT at 2169-71.)

Segundo and Sandoval got into a car and followed Petitioner's van until it stopped at a stop sign. Soto got out of the van and pointed a black semiautomatic gun at them. Segundo again saw Petitioner in the driver's seat of the van. Segundo and Sandoval drove away. (3RT at 1544-46, 1549, 1570-71; 4RT at 1845-48.) Segundo positively identified Petitioner at trial as the driver and said he was absolutely certain of his identification. (3RT at 1536-37, 1550.)

That night, Jesse told some friends that Petitioner was the driver of the van. The next day, he also told Adrian and Anthony that he saw Petitioner in the driver's seat of the van. (2RT at 944; 3RT at 1260, 1278.) On May 12, 2003, Jesse told Sergeant Steven Katz that he recognized Petitioner as the driver of the van. He then identified a photograph of Petitioner. (2RT at 945-46, 967-68; 3RT at 1319-20.) Jesse identified Petitioner as the driver of the van in a six-pack photographic lineup. (2RT at 958-62; 4RT at 2146-47.)

The police found eleven nine-millimeter shell casings, six bullets, and a bullet fragment at the crime scene. The casings all came from the same gun. (3RT at 1291-1314; 4RT at 1818.)

A surveillance videotape from a Blockbuster Video store on Western Avenue, about five to ten minutes from the crime scene, taken at 9:46 p.m. on the day of the shooting, showed Petitioner wearing a black T-shirt over a white T-shirt. (4RT at 1890-91; 5RT at 2439-40.) A cash register receipt showed that he paid for some videos at 9:38 p.m. (5RT at 2470.)

### 2.   Previous Encounters

Sometime before the shooting, Jesse was in an alley with a friend who was tagging a wall with "SAP," which stood for "Stomping All Pussies," and crossing out an NGA tag. Petitioner and his brother drove up and asked them where they were from; Jesse replied that he was from a different tagging crew, NC. Petitioner said he was from NGA and asked why they were crossing out his "hood." Jesse's friend ran, and Petitioner's brother chased him. Petitioner threw Jesse's bicycle

1    over a gate.  (2RT at 947-51.)  Jesse had seen NGA graffiti in his neighborhood,

2    some of which was followed by the name "Illusion."  (2RT at 966-67.)

3         About one month before the shooting, Segundo saw Robles and his friends

4    attack Petitioner between 101st and 102nd Streets.  (3RT at 1643.)

5         On the day of the shooting, sometime between 10:00 a.m. and 3:00 p.m.,

6    Robles had a confrontation with Jeremy Coleman ("Jeremy"), Petitioner's brother,

7    in front of the house of Maria Perez on 102nd Street, which was in an NC

8    neighborhood.  Jeremy asked Robles where he was from.  When Robles did not

9    answer, Jeremy said he was from NGA.  Robles started laughing, and Jeremy said

10   he was going to get his brother.  (3RT at 1629-31; 4RT at 1871-73.)

11        Jeremy walked toward Vermont Avenue, and Robles followed him.  Jeremy

12   ran, and Robles chased him and hit him in the arm with a baseball bat.  Jeremy went

13   to a friend's house.  Later, he told Petitioner and his other brother, Deandre

14   Coleman, what happened.  They drove to 102nd Street and saw a van full of people.

15   Petitioner told Jeremy not to go there anymore because they might get jumped.

16   Petitioner dropped off Jeremy at his house.  Petitioner came home with some videos

17   at about 9:30 p.m.  (4RT at 2110-14, 2120-21.)

18        Before the shooting, Robles told Lopez that he was in a confrontation that

19   afternoon with Jeremy, who had called Robles a "bitch."  (3RT at 1609-10, 1618.)

20   About thirty minutes later, Petitioner drove to Lopez's neighborhood on 102nd

21   Street in a green Toyota Camry with Jeremy and another person.  Petitioner asked

22   Lopez, "which one of you was trying to fight my brother?"  No one responded.

23   Jeremy asked Perez where Robles was, and Perez said he left for his house.  Jeremy

24   said that he was "going to get Chino or anybody from NC."  They drove away.

25   (3RT at 1612-14, 1618, 1632-33.)  On the day of the shooting, at about 7:00 p.m.,

26   Petitioner told his ex-girlfriend, Laura Marquez, that someone had "jumped"

27   Jeremy outside a liquor store earlier that day.  (3RT at 1636-40.)

28        About a week after the murder, Petitioner told Karen Hernandez that, on the

8

1   day of the murder, Jeremy was attacked by NC members with a baseball bat in a

2   liquor store near 103rd Street.  Jeremy called Petitioner from the store, and

3   Petitioner went to help him.  Petitioner said that some NC members attacked him at

4   the store.  He then went back to his house, got his car, and drove to 101st Street.

5   (4RT at 1881-83.)

6        Detective Michael Valento testified about tagging crews and gangs.  He

7   stated that a tagging crew will commit violence against rival tagging crews.

8   Crossing out a rival's graffiti on a wall is a sign of disrespect.  The NGA crew was

9   friendly with the EK gang, and both groups did not like the NC crew.  In his

10  opinion, Robles was a member of the NC tagging crew, and Petitioner was a

11  member of the rival NGA tagging crew.  (4RT at 2137-41.)

12       **B.    Defense Evidence**

13       Petitioner did not testify.  Evelyn Medina, Petitioner's wife, and Lennin

14  Chavarria, a member of Petitioner's NGA tagging crew, testified that they were

15  talking outside Medina's house on 98th Street at about 6:00 p.m. on May 10, 2003.

16  Petitioner and Medina were near his parked green Toyota Camry, and Chavarria

17  was in his car.  After ten or fifteen minutes, Chavarria heard multiple gunshots.

18  Chavarria drove to 103rd Street to see if anything happened there.  When he

19  returned to 98th Street, Petitioner was still there.  (5RT at 2405-11, 2419-22, 2431-

20  32.)

21       Earlier in the day, Jeremy told Medina that someone hit him with a bat.  She

22  called Petitioner and told him what happened to his brother.  Petitioner went to

23  101st Street and asked some people who had hit his brother.  (5RT at 2428-29.)

24       **C.    Prosecution Rebuttal Evidence**

25       Detective Michael Valento interviewed Chavarria on April 8, 2004.

26  Chavarria said that he saw a green SUV drive by, and its occupants flashed gang

27  signs at him.  (5RT at 2449-50.)  On April 9, 2004, a conversation was recorded

28  between Chavarria, Arellano, and Maldonado in a sheriff's department van.

9

Chavarria stated that he knew where he was during the shooting, but he never
mentioned knowing where Petitioner was.  (5RT at 2451.)

## PETITIONER'S CONTENTIONS

1. False evidence was introduced during Petitioner's trial.  (Pet. at 5, Attach. at 27-31.)

2. Petitioner's constitutional right to due process and fair trial were violated by introducing false evidence.  (Pet. at 5, Attach. at 31-32.)

3. Petitioner received ineffective assistance of counsel when counsel failed to object to false evidence.  (Pet. at 6, Attach. at 32-37.)

4. Evidence of Petitioner's prior arrest and criminal history was inadmissible.  (Pet. at 6, Attach. at 37-39.)

5. The introduction of Petitioner's criminal history denied his constitutional rights to an impartial jury and to due process.  (Pet. at 6, Attach. at 40-48.)

6. The introduction of Petitioner's criminal history constituted jury misconduct.  (Pet. at 6a, Attach. at 46-48.)

7. The introduction of Petitioner's criminal history constituted prosecutorial misconduct.  (Pet. at 6a, Attach. at 48-52.)

8. Petitioner received ineffective assistance of counsel when counsel failed to object to prosecutorial misconduct.  (Pet. at 6a, Attach. at 52-54.)

9. The error resulted in a denial of the constitutional right to impartial jury and due process.  (Pet. at 6b, Attach. at 54-65.)

## STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) "bars relitigation of any claim 'adjudicated on the merits' in state court" unless the claim meets one of the statute's two exceptions. *Harrington v. Richter*, 131 S. Ct. 770, 784, 178 L. Ed. 2d 624 (2011) (*Richter*). Under those exceptions, relief may be available if the state court decision was (1) "'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" or (2)

10

1    "'based on an unreasonable determination of the facts in light of the evidence
2    presented at the State Court proceeding.'" *Id.* at 783-84 (quoting 28 U.S.C. §
3    2254(d)).

4        A state court decision is "contrary to" federal law if it either "applies a rule
5    that contradicts the governing law" as set forth in Supreme Court cases, or reaches a
6    different decision from a Supreme Court case when confronted with materially
7    indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495,
8    146 L. Ed. 2d 389 (2000).  A state court makes an "unreasonable application" of
9    federal law if the state court identifies the correct governing legal principle from the
10   Supreme Court's decisions, but unreasonably applies that principle to the facts of
11   the prisoner's case. *Id.* at 413.

12       When there is no "clearly established" Supreme Court law requiring the state
13   court to grant relief on the petitioner's claim, relief is barred by § 2254(d).  *Knowles*
14   *v. Mirzayance*, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009) ("[I]t is not an
15   unreasonable application of clearly established Federal law for a state court to
16   decline to apply a specific legal rule that has not been squarely established by [the
17   Supreme] Court."); *Wright v. Van Patten*, 552 U.S. 120, 126, 128 S. Ct. 743, 169 L.
18   Ed. 2d 583 (2008); *Carey v. Musladin*, 549 U.S. 70, 74, 127 S. Ct. 649, 166 L. Ed.
19   2d 482 (2006).  Also, a state court's failure to cite any federal law in its opinion
20   does not run afoul of the AEDPA.  In fact, a state court need not even be aware of
21   applicable Supreme Court precedents "so long as neither the reasoning nor the
22   result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8,
23   123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

24       Section 2254(d) imposes a "highly deferential standard for evaluating state-
25   court rulings . . . ." *Renico v. Lett*, 130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)
26   (internal quotation marks omitted).  The federal court cannot grant a writ of habeas
27   corpus unless "there is no possibility fairminded jurists could disagree that the state
28   court's decision conflicts with [Supreme Court] precedents." *Richter*, 131 S. Ct. at

11

786.  This is "'the only question that matters under § 2254(d)(1).'"  *Id.* (quoting

*Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003)).

"Section 2254(d) reflects the view that habeas corpus is a 'guard against

extreme malfunctions in the state criminal justice systems,' not a substitute for

ordinary error correction through appeal."  *Richter*, 131 S. Ct. at 786 (quoting

*Jackson v. Virginia*, 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560

(1979)).  "If this standard is difficult to meet, that is because it was meant to be."

*Id.*

Here, the last reasoned decision for the claims in Grounds One and Two in

the Amended Petition is the order denying Petitioner's state habeas petition in the

California Court of Appeal, which rejected the claims on the merits.  (LD I at 13-

26.)  Accordingly, as to those claims, the California Court of Appeal's denial order

is the relevant state court decision for purposes of the AEDPA.  *See Berghuis v.*

*Thompkins*, 130 S. Ct. 2250, 2259, 176 L. Ed. 2d 1098 (2010).

Petitioner's claim in Ground Three in the Amended Petition was summarily

denied by the California Court of Appeal and the California Supreme Court on

habeas corpus.  (LD I, N; *see* LD F at 28-30.)  A state court's summary denial of a

claim constitutes a denial on the merits for purposes of § 2254(d).  *See Richter*, 131

S. Ct. at 784 ("Where a state court's decision is unaccompanied by an explanation,

the habeas petitioner's burden still must be met by showing there was no reasonable

basis for the state court to deny relief").  As the Supreme Court recently explained,

when a state court has summarily denied a claim, "a habeas court must determine

what arguments or theories supported or . . . could have supported, the state court's

decision; and then it must ask whether it is possible fairminded jurists could

disagree that those arguments or theories are inconsistent with the holding in a prior

decision of [the Supreme] Court."  *Id.* at 786.  Once again, only when there is "*no*

*possibility* fairminded jurists could disagree" about the correctness of the state

court's decision is habeas relief available to the petitioner.  *Id.*, emphasis added.

12

This is "'the only question that matters under § 2254(d)(1).'"  *Id.* (quoting *Andrade*, 538 U.S. at 71).  Accordingly, as to this claim, the California Supreme Court's summary denial is the relevant state court decision for purposes of the AEDPA. *See Richter*, 131 S. Ct. at 784.

The last reasoned decision for the claims in Grounds Four through Seven and Nine in the Amended Petition is the opinion of the California Court of Appeal on direct appeal, which rejected the claims on the merits.  (LD D at 8-13.) Accordingly, as to those claims, the California Court of Appeal's opinion is the relevant state court decision for purposes of the AEDPA.  *See Berghuis v. Thompkins*, 130 S. Ct. at 2259.

Thus, the deferential standard of review under the AEDPA applies to the state courts' disposition of Petitioner's claims in Grounds One through Seven and Nine in the Amended Petition.  As set forth below, the AEDPA precludes relief on these claims.

Petitioner's claim in Ground Eight was brought before the California Court of Appeal on direct appeal, but that court did not address the issue.  Accordingly, that claim is subject to de novo review.  *Cone v. Bell*, 129 S. Ct. 1769, 1784, 173 L. Ed. 2d 701 (2009); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).  As set forth below, Petitioner's claim in Ground Eight fails on de novo review.

## ARGUMENT

**I.    PETITIONER'S FALSE EVIDENCE CLAIM RAISES NO FEDERAL QUESTION; IN ANY EVENT, THE CALIFORNIA COURT OF APPEAL AND THE CALIFORNIA SUPREME COURT DID NOT CONTRAVENE OR UNREASONABLY APPLY SUPREME COURT PRECEDENT WHEN THEY REJECTED PETITIONER'S RELATED CLAIMS**

In Grounds One through Three, Petitioner alleges claims relating to allegedly false evidence admitted at trial.  In Ground One, he contends that false evidence was introduced during trial.  (Pet. at 5, Attach. at 27-31.)  This claim is not cognizable because it does not present a federal question.  In Ground Two,

1   Petitioner claims that his constitutional right to due process and fair trial were

2   violated by introducing false evidence. (Pet. at 5, Attach. at 31-32.) The California

3   Court of Appeal denied Petitioner's claims on the merits (LD I at 13-26), and that

4   determination is not contrary to, or an unreasonable application of, clearly

5   established federal law as determined by the Supreme Court.

6        In Ground Three, Petitioner contends he received ineffective assistance of

7   counsel when counsel failed to object to false evidence. (Pet. at 6, Attach. at 32-

8   37.) The California Supreme Court denied Petitioner's claim on the merits in a

9   summary denial of his habeas petition (LD I, N; *see* LD F at 28-30), and that

10  determination is not contrary to, or an unreasonable application of, clearly

11  established federal law as determined by the Supreme Court.

12       **A.   The Relevant State Court Proceedings**

13       At Petitioner's trial, Renteria testified that, as she parked in front of the

14  Robles house, she saw a white van parked on the wrong side of the street, facing

15  her van. The headlights from Renteria's vehicle illuminated the interior of

16  Petitioner's van, and she saw a Black man in the driver's seat. She saw the driver

17  get out and fire multiple shots at something. He then walked over to a person lying

18  on the sidewalk and fired multiple shots at him. The driver returned to the van and

19  drove off, passing Renteria's vehicle. She did not see anyone other than the driver

20  in the van. (3RT at 1225-32, 1244-47.) Renteria looked at the driver for over ten

21  seconds. (3RT at 1237.) At trial, she testified that Petitioner "looked like" the

22  driver of the van. (3RT at 1227.)

23       In his state habeas petition before the California Court of Appeal, Petitioner

24  alleged that Renteria's testimony was false based on evidence produced at the trial

25  of his confederate, Abel Soto. Petitioner claimed that, during Soto's trial,

26  Renteria's testimony was impeached by evidence showing that her view of the

27  perpetrators had been obstructed by a large truck and that she was farther away

28  from the murder site than she claimed at Petitioner's trial. (LD F at 21-27.)

14

The California Court of Appeal rejected Petitioner's claims in its denial of his state habeas petition:

> Having reviewed Renteria's testimony in each trial, we do not
> agree the impeachment evidence conclusively establishes Renteria lied
> at [Petitioner's] trial.  Even if her view was impeded and at an unlikely
> distance, we cannot conclude it was physically impossible for her to
> have seen [Petitioner] in the illuminated front seat of the van.

(LD I at 2.)  The appellate court also found that "Renteria's identification of [Petitioner] added little to the already overwhelming evidence against [Petitioner], which consisted of three other eyewitness identifications by individuals who had known [Petitioner] over an extended period of time."  (LD I at 2.)

In the same denial order, the California Court of Appeal summarily rejected Petitioner's ineffective assistance of counsel claim.  (LD I at 2; *see* LD F at 28-30.) On April 1, 2009, the California Supreme Court also rejected Petitioner's ineffective assistance of counsel claim in its summary denial of his habeas petition. (LD N at 1; *see* LD L at 18-20.)

## B.    Petitioner's False Evidence Claim in Ground One Is Not Cognizable

Petitioner's false evidence claim in Ground One is not cognizable because it does not present a federal question.  Federal habeas corpus is available only on behalf of a person in custody in violation of the Constitution or laws of the United States.  28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).  Federal habeas is unavailable to retry state issues. *Milton v. Wainwright*, 407 U.S. 371, 377, 92 S. Ct. 2174, 33 L. Ed. 2d 1 (1972).  A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law.  *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984).  A violation of state law standing alone is not cognizable in federal court on habeas.  *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000); *Jammal v. Van de*

15

1   *Kamp*, 926 F.2d 918, 919 (9th Cir. 1991); *see also Dugger v. Adams*, 489 U.S. 401,

2   409, 109 S. Ct. 1211, 103 L. Ed. 2d 435 (1989).

3        Federal courts will not interfere with a state court's evidentiary rulings unless

4   the rulings were arbitrary or so prejudicial that they resulted in a trial which was

5   fundamentally unfair in violation of due process. *Walters v. Maass*, 45 F.3d 1355,

6   1357 (9th Cir. 1995); *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (9th Cir. 1993); *Bueno*

7   *v. Hallahan*, 988 F.2d 86, 87 (9th Cir. 1993); *Jammal*, 926 F.2d at 919. Only in

8   unusual cases will it be found that a state court ruling on state evidentiary law

9   invokes a federal issue. *Tinsley v. Borg*, 895 F.2d 520, 530 (9th. Cir. 1990).

10       Petitioner relies on a California statute, section 1473(b)(1), which allows

11  relief on habeas corpus where the petitioner shows that "substantially material or

12  probative" false evidence was introduced against him. (Pet., Attach. at 27.) But the

13  California Court of Appeal's determination of the challenged evidence pursuant to

14  this statute was solely a matter of state law. Petitioner has cited no federal

15  constitutional right that would have demanded that the court take different actions.

16  Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

17  **C.   The California Court of Appeal Reasonably Rejected**

18  **Petitioner's Federal False Evidence Claim in Ground Two**

19       Petitioner's claim in Ground Two that his federal constitutional rights were

20  violated by the admission of false evidence was properly rejected on the merits by

21  the California Court of Appeal. To be entitled to habeas corpus relief based on an

22  error under state evidentiary law, Petitioner must show that the exclusion of the

23  evidence rendered the trial so fundamentally unfair as to violate due process.

24  *Tinsley*, 895 at 530. Petitioner has a heavy burden to show a due process violation

25  based upon an evidentiary decision. *Boyde v. Brown*, 404 F.3d 1159, 1172-73 (9th

26  Cir. 2005).

27       The knowing use of false or perjured testimony against a defendant to obtain

28  a conviction is unconstitutional. *Napue v. Illinois*, 360 U.S. 264, 270-71, 79 S.Ct.

16

1    1173, 3 L.Ed.2d 1217 (1959).  An allegation only that false or perjured testimony

2    was introduced, however, is not a violation absent knowing use by the prosecution.

3    *Morales v. Woodford*, 336 F.3d 1136, 1152 (9th Cir. 2003); *Murtishaw v.*

4    *Woodford*, 255 F.3d 926, 959 (9th Cir. 2001).  Petitioner must show that some

5    statement was false.  *Id.*  Mere inconsistencies in testimony do not establish

6    knowing use of perjured testimony.  *Allen v. Woodford*, 395 F.3d 979, 995 (9th Cir.

7    2005) (minor inconsistencies do not show falsehood); *Tayborn v. Scott*, 251 F.3d

8    1125, 1130-31 (7th Cir. 2001); *United States v. Sherlock*, 962 F.2d 1349, 1364 (9th

9    Cir. 1992).

10           Petitioner fails to demonstrate that Renteria's testimony at trial was false.

11    Petitioner claims that it was impossible for Renteria to see what she said she saw at

12    his trial.  (Pet., Attach. at 31.)  But, while there was some testimony that there were

13    other vehicles between Renteria and Robles, and that she might have been further

14    away than she originally estimated, Renteria's credibility was ultimately a matter

15    for the jury to determine.  Renteria in fact testified that there were "not a lot of

16    cars" and "not . . . big cars, vehicles" in front of her, so she "could see."  (3RT at

17    1250.)  There is no evidence indicating that any vehicles were necessarily blocking

18    Renteria's view of the murder.

19           While there might have been some inconsistencies in Renteria's testimony,

20    both in her instant trial testimony and in her testimony at Soto's trial, this would not

21    be unexpected, given that Renteria testified at Petitioner's trial on April 13, 2006,

22    nearly three years after the shooting.  (3RT at 1224; 1CT at 88.)  Regardless, any

23    inconsistency does not in itself establish knowing use of perjured testimony.  *Allen*,

24    395 F.3d at 995.  As the California Court of Appeal found (LD I at 2), the

25    impeachment evidence does not conclusively establish that Renteria lied at

26    Petitioner's trial.  Accordingly, Petitioner's false evidence claim was reasonably

27    rejected.

28           Moreover, Petitioner has failed to show that any alleged error in the use of

17

1    Renteria's testimony had a substantial and injurious effect or influence in

2    determining the jury's verdict.  *See Fry v. Pliler*, 127 S. Ct. 2321, 2328, 168 L. Ed.

3    2d 16 (2007) (even if state court does not have occasion to apply the test for

4    assessing prejudice applicable under federal law, the *Brecht* standard applies

5    uniformly in all federal habeas corpus cases under § 2254); *Brecht v. Abrahamson*,

6    507 U.S. 619, 623, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993); ); *see also Larson v.*

7    *Palmateer*, 515 F.3d 1057, 1064 (9th Cir. 2008) (review for harmless error under

8    *Brecht* is "more forgiving" to state court errors than the harmless error standard the

9    Supreme Court applies on its direct review of state court convictions); *Clark v.*

10   *Brown*, 450 F.3d 898, 916 (9th Cir. 2006) (reviewing under *Brecht* whether there

11   was "a reasonable probability" that the jury would have reached a different result

12   but for the alleged error); *Henry v. Estelle*, 33 F.3d 1037, 1041 (9th Cir. 1993)

13   (*Brecht* harmless error standard applies to constitutional magnitude, trial type

14   errors, and is the equivalent of harmless error standard under California law), *rev'd*

15   *sub nom on other grounds in Duncan v. Henry*, 513 U.S. 364, 366, 115 S. Ct. 887,

16   130 L. Ed. 2d 865 (1995).

17        As the California Court of Appeal found (LD I at 2), Renteria's identification

18   of Petitioner was minimally significant in light of the eyewitness identifications by

19   individuals who had known Petitioner for an extended time.  Aside from Renteria,

20   three other witnesses identified Petitioner as the driver of the van involved in the

21   shooting.  Specifically, Jesse Robles ("Jesse") and Carlos Lopez saw Petitioner

22   drive the van immediately after Robles was shot.  The next day, Jesse told the

23   police that Petitioner was the driver, and he identified him as the driver in a six-

24   pack photographic lineup.  Jesse and Lopez each identified Petitioner at trial as the

25   driver.  (2RT at 938-43, 958-62; 3RT at 1614-16; 4RT at 2146-47.)  Albert

26   Segundo saw Petitioner in the driver's seat of the van as it drove up the street, just

27   before the shooting.  (3RT at 1536-39.)  After the shooting, when Segundo and

28   Andres Sandoval chased the van, Segundo again saw Petitioner driving the van, as

1   a passenger exited and pointed a gun at them.  (3RT at 1544-46, 1549, 1570-71.)

2   Segundo positively identified Petitioner at trial as the driver and said he was

3   absolutely certain of his identification.  (3RT at 1536-37, 1550.)  Renteria's

4   identification of Petitioner as the driver was clearly the weakest of the four

5   eyewitnesses.  She could not identify the shooter in a six-pack photographic lineup,

6   and she only stated at trial that Petitioner "looks like" the driver.  (3RT at 1227,

7   1502-03.)

8        In addition, numerous witnesses testified as to Petitioner's motive to retaliate

9   for an earlier attack on his brother and because of the rivalry between his and the

10  victim's tagging crews.  (3RT at 1609-14, 1618, 1629-40; 4RT at 1871-73, 1881-

11  83, 2108-14, 2140-41.)  The evidence showing that Petitioner committed the instant

12  crime was overwhelming.  Thus, any error was harmless, and Petitioner's false

13  evidence claim fails.

14  **D.    The State Court Reasonably Rejected Petitioner's Ineffective Assistance of Counsel Claim in Ground Three**

15

16       In order to prevail on a claim of ineffective assistance of counsel, a defendant

17  must show both that counsel's conduct fell below an objective standard of

18  reasonableness, and that the defendant was prejudiced by counsel's acts or

19  omissions.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed.

20  2d 674 (1984); *accord Richter*, 131 S. Ct. at 787-88.

21       The first prong of the *Strickland* test – deficient performance – requires a

22  showing that counsel's performance was "outside the wide range of professionally

23  competent assistance."  *Strickland*, 466 U.S. at 690.  "A court considering a claim

24  of ineffective assistance must apply a 'strong presumption' that counsel's

25  representation was within the 'wide range' of reasonable professional assistance."

26  *Richter*, 131 S. Ct. at 787 (citing *Strickland*, 466 U.S. at 689).

27       The second prong of the *Strickland* test – prejudice – requires a showing of a

28  "reasonable probability that, but for counsel's unprofessional errors, the result of

19

the [trial] would have been different." *Strickland*, 466 U.S. at 694.  A reasonable

probability is a probability "sufficient to undermine confidence in the outcome."

*Id.*; *see also Woodford v. Visciotti*, 537 U.S. 19, 22, 123 S. Ct. 357, 154 L. Ed. 2d

279 (2002).  "The likelihood of a different outcome must be substantial, not just

conceivable." *Richter*, 131 S. Ct. at 792 (citing *Strickland*, 466 U.S. at 693).

    Because the *Strickland* standard is a general one, state courts have great

leeway in applying it. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420, 173 L. Ed.

2d 251 (2009); *see Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140,

158 L. Ed. 2d 938 (2004) ("The more general the rule, the more leeway [state]

courts have in reaching outcomes in case by case determinations."); *see also Bobby

v. Van Hook*, 130 S. Ct. 13, 16, 175 L. Ed. 2d 255 (2009) (per curiam) (*Strickland*

necessarily established a general standard because "[n]o particular set of detailed

rules for counsel's conduct can satisfactorily take account of the variety of

circumstances faced by defense counsel or the range of legitimate decisions

regarding how best to represent a criminal defendant") (internal quotation marks

omitted).  On federal habeas review, "[a] state court must be granted a deference

and latitude that are not in operation when the case involves review under the

*Strickland* standard itself." *Richter*, 131 S. Ct. at 785.

    As the Supreme Court recently cautioned:  "Federal habeas courts must

guard against the danger of equating unreasonableness under *Strickland* with

unreasonableness under § 2254(d).  When § 2254(d) applies, the question is *not*

whether counsel's actions were reasonable.  The question is whether there is any

reasonable argument that counsel satisfied *Strickland*'s deferential standard."

*Richter*, 131 S. Ct. at 788 (emphasis added).

    As the Supreme Court has explained, habeas review of a *Strickland* claim is

"highly deferential," and "doubly deferential when it is conducted through the lens

of federal habeas." *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1, 157 L. Ed.

2d 1 (2003) (per curiam); *see also Delgado v. Lewis*, 223 F.3d 976, 981 (9th Cir.

20

2000) (*Strickland* standard is "very forgiving"). "'Surmounting *Strickland*'s high bar is never an easy task[,]'" and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788 (quoting *Padilla v. Kentucky*, 559 U.S. __, __, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010)).

Petitioner claims that trial counsel was ineffective by failing to adequately question Renteria about her ability to see the driver of the van and for failing to investigate and produce evidence that it would have been physically impossible for her to see the driver under the circumstances she described. (Pet., Attach. at 32-37.)

Petitioner fails to demonstrate that any examination of Renteria would have produced evidence that her identification was physically impossible. As stated previously, there was no evidence that there were any vehicles that blocked her view of the shooting. Petitioner also fails to demonstrate that defense counsel failed to prepare or investigate his case or that any decision not to call particular witnesses at trial was unreasonable. In any event, counsel could have reasonably decided that any such witnesses were not credible, given the evidence of Petitioner's involvement. Thus, Petitioner cannot show that counsel erred or was ineffective in examining Renteria or in failing to investigate further.

Even assuming that counsel provided ineffective assistance, Petitioner cannot show that he suffered any prejudice. As discussed previously, Renteria's identification of Petitioner was comparatively insignificant since three other eyewitnesses, who had known Petitioner for an extended time, also identified Petitioner as the driver. The evidence of Petitioner's guilt was overwhelming. Accordingly, the California Supreme Court reasonably rejected Petitioner's ineffective assistance of counsel claim. This determination is entitled to deference under the AEDPA, and Petitioner's claim in Ground Three fails.

1
2
3
4
5

## II.    PETITIONER'S ADMISSION OF EVIDENCE CLAIM RAISES NO FEDERAL QUESTION; IN ANY EVENT, THE CALIFORNIA COURT OF APPEAL DID NOT CONTRAVENE OR UNREASONABLY APPLY SUPREME COURT PRECEDENT WHEN IT REJECTED PETITIONER'S RELATED CLAIMS; MOREOVER, PETITIONER'S RELATED INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM IS UNEXHAUSTED AND MERITLESS

6
7
8
9
10

In Grounds Four through Nine, Petitioner alleges claims relating to the introduction of his criminal history at trial.  In Ground Four, he contends that evidence of his prior arrest and criminal history was inadmissible.  (Pet. at 6, Attach. at 37-39.)  This claim is not cognizable because it does not present a federal question.

11
12
13
14
15
16
17
18
19
20
21
22

In Ground Five, Petitioner claims that the introduction of his criminal history denied his constitutional rights to an impartial jury and to due process.  (Pet. at 6, Attach. at 40-48.)  In Ground Six, he claims that the introduction of his criminal history constituted jury misconduct.  (Pet. at 6a, Attach. at 46-48.)  In Ground Seven, he contends that the introduction of his criminal history constituted prosecutorial misconduct.  (Pet. at 6a, Attach. at 48-52.)  In Ground Nine, Petitioner claims that the jury misconduct resulting from the erroneous admission resulted in a denial of the constitutional right to impartial jury and due process.  (Pet. at 6b, Attach. at 54-65.)  The California Court of Appeal denied Petitioner's claims in Grounds Four through Seven and Nine on the merits (LD D at 8-13), and that determination is not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

23
24
25
26

Finally, in Ground Eight, Petitioner alleges that he received ineffective assistance of counsel when counsel failed to object to prosecutorial misconduct. (Pet. at 6a, Attach. at 52-54.)  Because this claim is unexhausted and lacks merit, it must be denied pursuant to 28 U.S.C. § 2254(b).

27
28

22

### A.    The Relevant State Court Proceedings

On April 6, 2003, about one month before the instant shooting, the police came in contact with Petitioner as he drove his green Toyota.  He was arrested, booked, and charged with possession of a firearm.  (3RT at 1528-30; Ex. No. 3.)[5] The parties agreed that no evidence would be presented to the jury about this arrest or charges.  (3RT at 1531-32.)

On May 12, 2003, the police showed Petitioner's booking photo from that arrest to Jesse Robles to confirm his identification of Petitioner as the van driver. At trial, Jesse testified that he recognized Petitioner when the police showed him the photo in Exhibit No. 3.  (2RT at 945-46, 968; 2CT at 267.)  Exhibit No. 3 is an eight-by-eleven-inch sheet of paper that contains Petitioner's booking photo on the right side.  The left side contains police information about Petitioner's arrest.  It states that Petitioner was charged with: (1) receiving known stolen property valued over $400; (2) two counts of carrying a loaded firearm; and (3) carrying a concealed weapon in a vehicle with a prior felony conviction.  The text also states Petitioner's arrest date, birth date, sex, race, height, and weight.  The page was folded in half with the booking photo on the front and the arrest information on the back.  (Ex. No. 3; 4ART at L23.)  The booking photo was admitted into evidence, and defense counsel did not object.  (2RT at 968.)  The jury received the entire folded page with the booking photo on the front and the arrest information on the back.  (5RT at 3902; 3ART at H1.)

On July 20, 2006, Juror No. 5 wrote a letter to court, expressing her concern over the receipt of information contained on Exhibit No. 3.  The letter states:

> There was one concern about the deliberation process that still
> resonates in my mind and I would like to know whether it was a
> normal procedure in order to put my consci[ence] at rest -- at ease,

---

[5] A copy of Exhibit No. 3 is attached to Petitioner's Opening Brief in California Court of Appeal case number B202597.  (LD A, Attach.)

1        rather.  During the hearing, a picture of [Petitioner] was presented as

2        evidence.  Later when this picture was presented in the jury room it

3        entailed information about the defendant detailing a prior arrest which

4        occurred a month before the incident in question.  I know for a fact

5        that the details of this prior arrest influenced the jury's decision in

6        determining the final verdict.  Since [Petitioner's] past was not brought

7        up during the hearing, I have been wondering whether the information

8        about his previous arrest should have been presented to the jury during

9        the deliberation process.  I have pondered this question for awhile and

10       I would like to have an answer for my peace of mind.

11 (2CT at 229; 3ART at H4-H5.)

12        Following the receipt of this letter and a hearing on the matter, the trial court

13 sent letters to each of the jurors to determine if the arrest information contained on

14 Exhibit No. 3 had entered into the deliberations.  The trial court acknowledged, and

15 the parties agreed, that the court would not inquire as to whether the arrest

16 information influenced the deliberations and the verdict.  (3ART at K1-K2; 4ART

17 at L4-L5, L22-L23, M3.)

18        On November 14, 2006, Juror No. 5 testified about the discussions

19 concerning Exhibit No. 3.  The juror stated that, during trial, the jury was only

20 shown the front of the exhibit, which contained Petitioner's booking photo.  The

21 jurors received the folded exhibit in the jury room, and they could read the arrest

22 information on the back side.  Several jurors, including Juror No. 5, read the

23 charges on the back of the exhibit.  One juror said that they should not look at that

24 information since it was not part of the evidence.  (4ART at L10.)  At some point, a

25 juror commented, "Well, he was arrested for carrying a loaded weapon before."

26 Another juror responded, "We are not suppose[d] to consider that."  Juror No. 5

27 believed that the jurors understood that they should not consider this information.

28 The jurors did not discuss the details of the arrest information.  (4ART at L12, L17-

L18.)

Ten of the remaining jurors each testified as to the discussions about Exhibit No. 3.[6] Juror No. 10 recalled seeing the information on the back of the exhibit, but she indicated that neither she nor any other jurors discussed it.  (4ART at M6-M7.)

Juror No. 7 stated she never saw the arrest information on the exhibit, and she did not recall any discussions about it by other jurors.  (4ART at M11.)

Juror No. 2 recalled seeing the information on the back of the exhibit and understood it to mean that Petitioner had been arrested at one time with a firearm. One juror noted the information, and other jurors looked at it, as part of "the whole package" of evidence.  She stated there were general discussions about the "tragedy of people getting in bad situations and neighborhoods."  It was said during deliberations, but not during discussions of this exhibit, that "neither of these felons were choir boys, the victim nor the accused."  She did not recall any specific discussion of the exhibit, and it "was just a very small item that was part of the whole thing that we had."  (4ART at M14, M17-M20.)

Juror No. 1 did not recall seeing the reverse side of Exhibit No. 3 and did not recall any discussions about it.  (4ART at M22-M23.)

Juror No. 4 remembered seeing the exhibit as well as a notation on it that Petitioner might have been involved in a previous incident, and she did not know if it resulted in a conviction.  The only discussion she recalled was one juror expressing surprise that the exhibit was admitted as evidence with that information on it.  (4ART at N2-N4.)

Juror No. 8 recalled seeing the backside of the exhibit, including information about "some kind of criminal record."  She stated that there was no discussion by the jurors about this information.  (4ART at N6-N8.)

Juror No. 11 recalled seeing the information on the exhibit and was aware

---

[6] Juror No. 3 chose not to testify and told the clerk, "I feel the right decision was made and I choose not to come."  (4ART at N13.)

that Petitioner might have had a past history with the law.  She said it did not "play much of a role" and that the jurors were "just using the facts that were given to us at trial."  A juror noted the information, but the foreperson said that that they were not supposed to use that information, and rather, just use the information given at trial. (4ART at N11-N12.)

Juror No. 6 did not remember seeing the exhibit.[7]   She remembered seeing a picture of Petitioner but not the information on the back.  She recalled that one issue arose and a juror said they could not consider it.  But Juror No. 6 could not recall what issue this pertained to.  (4ART at O2-O6.)  She later remembered seeing a photograph of Petitioner in black and white.  (4ART at P2.)

Juror No. 9 testified that he did not recall seeing the back side of the exhibit and did not remember any discussion about the information on it.  He did not recall any discussion about prior arrests or police contacts involving the possession of a gun.  (4ART at O8-O10.)

Juror No. 12 did not recall seeing Exhibit No. 3.  He remembered that there was "one thing that we cannot say allowed on the evidence room," but he did not know what that was.  (4ART at P4.)

Petitioner moved for a new trial on multiple grounds, including juror misconduct.  (2CT at 210-26.)  The prosecutor argued that there could be no juror misconduct because defense counsel failed to object to the contents of Exhibit No. 3.  While it was arguably error for the exhibit to go to the jury in that form, there could be no juror misconduct since it was in fact given to the jury.  The prosecutor noted that the jurors did not discuss the arrest information as part of their deliberations.  (5RT at 3903-07.)

After considering the motions, argument, and juror testimony, the trial court denied the motion for new trial:  "[T]he court finds no juror misconduct or

---

[7] The transcript identifies this juror as "Juror No. 3."  But it appears that she was actually Juror No. 6.  (*See* 4ART at O2-O6, P1.)

1  indication of actual bias or prejudice due to the forwarding of that particular exhibit

2  with criminal history in its unedited form."  The court also found that there was

3  overwhelming evidence presented at trial to support the jury verdict and special

4  finding.  (5RT at 3908-09.)

5      The California Court of Appeal denied Petitioner's claims relating to the

6  criminal history exhibit on the merits on direct appeal.  The appellate court initially

7  found that the inadvertent disclosure of Petitioner's criminal history to the jurors

8  constituted juror misconduct.  The court then found that the booking information

9  was not inherently prejudicial to the jurors' deliberation because the

10  "overwhelming evidence against [Petitioner] more than rebuts the presumption he

11  was unduly prejudiced by the disclosure of the information."  (LD D at 8-11.)  The

12  appellate court continued:

13      [T]his is not a close case.  [Petitioner] was identified as the driver of

14      the van by three witnesses who knew him well.  These same witnesses

15      knew Robles had recently antagonized [Petitioner] by picking on his

16      younger brother and had heard [Petitioner] threaten revenge.  The trial

17      court obviously viewed the case the same way and concluded the

18      evidence against [Petitioner] was overwhelming.

19  (LD D at 11.)  The appellate court noted that the jurors' statements showed that

20  their focus properly remained on the evidence before them and not on the

21  information that Petitioner had been previously arrested on a weapons charge.

22  Also, the impact of the information itself appeared minimal, as nearly half of the

23  jurors did not even recall knowing about the prior arrest.  (LD D at 11-12.)

24      The California Court of Appeal then held that there was no prosecutorial

25  misconduct warranting a new trial.  There was no evidence the failure to redact the

26  booking information was intentional, and either party could have reviewed the

27  exhibits before their submission to the jury to ensure the information was properly

28  excluded.  Further, in light of the strength of the evidence against Petitioner, the

1  prosecutor's references to his prior booking, during examination of a witness, did

2  not substantially prejudice Petitioner.  (LD D at 12-13.)

3   **B.    Petitioner's Evidentiary Claim in Ground Four Is Not
          Cognizable**

4

5       Petitioner's evidentiary claim in Ground Four, that the evidence of his prior

6  arrest and criminal history was inadmissible, is not cognizable because it does not

7  present a federal question.  As stated previously, federal habeas corpus is available

8  only on behalf of a person in custody in violation of the Constitution or laws of the

9  United States.  28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67; *Pulley*, 465 U.S. at 41.

10  Federal courts will not interfere with a state court's evidentiary rulings unless the

11  rulings were arbitrary or so prejudicial that they resulted in a trial which was

12  fundamentally unfair in violation of due process.  *Walters*, 45 F.3d at 1357.  Only

13  in unusual cases will it be found that a state court ruling on state evidentiary law

14  invokes a federal issue.  *Tinsley*, 895 F.2d at 530.

15       Petitioner cites no federal constitutional authority in support of his claim that

16  the evidence was improperly submitted to the jurors.  (Pet., Attach at 37-39.)  The

17  California Court of Appeal's determination of the challenged evidence was solely a

18  matter of state law.  Petitioner has cited no federal constitutional right that would

19  have demanded that the court take different actions.  Accordingly, Petitioner is not

20  entitled to federal habeas relief on this claim.

21   **C.    The California Court of Appeal Reasonably Rejected
          Petitioner's Jury Misconduct Claims in Grounds Five, Six, and
          Nine**

22

23       Petitioner's claims in Grounds Five, Six, and Nine that the introduction of his

24  criminal history constituted jury misconduct that denied his constitutional rights to

25  an impartial jury and to due process were properly rejected on the merits by the

26  California Court of Appeal.  The Due Process Clause requires a "fair trial in a fair

27  tribunal."  *Bracy v. Gramley*, 520 U.S. 899, 904-05, 117 S. Ct. 1793, 138 L. Ed. 2d

28  97 (1997); *Withrow v. Larkin*, 421 U.S. 35, 46, 95 S. Ct. 1456, 1464, 43 L. Ed. 2d

28

1   712 (1975).  The Sixth Amendment guarantees a criminal defendant the right to be

2   tried by a fair and impartial jury of his peers.  *Holland v. Illinois*, 493 U.S. 474,

3   480-83, 110 S. Ct. 803, 107 L. Ed. 2d 905 (1990).  The Ninth Circuit evaluates

4   juror misconduct by whether the misconduct had a substantial and injurious effect

5   or influence on the verdict.  *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997)

6   (en banc); *see also Sassounian v. Roe*, 230 F.3d 1097, 1109 (9th Cir. 2000).  A trial

7   court's decision to conduct a hearing into alleged jury misconduct and to determine

8   its extent and nature is discretionary.  *United States v. Shryock*, 342 F.3d 948, 973

9   (9th Cir. 2003) (citing *Price v. Kramer*, 20 F.3d 1237, 1254 (9th Cir. 2000)).

10         Even assuming that the inadvertent admission of Petitioner's prior arrest and

11   criminal history into the jury room constituted jury misconduct, Petitioner cannot

12   show that it had a substantial and injurious effect or influence on the verdict.

13   *Jeffries*, 114 F.3d at 1489; *see Fry*, 127 S. Ct. at 2328; *Brecht*, 507 U.S. at 623; *see*

14   *also Larson*, 515 F.3d at 1064; *Clark*, 450 F.3d at 916; *Henry*, 33 F.3d at 1041.  As

15   the California Court of Appeal found (LD D at 11-12), the jurors' statements

16   indicated that their focus remained properly on the evidence before them and not on

17   the booking information.  The jurors testified that they followed the court's

18   admonition not to consider extraneous evidence.  Each juror stated either that he or

19   she did not remember the exhibit or that it was not specifically discussed.  Indeed,

20   more than one juror also stated that they specifically could not consider this

21   information, since it was not presented during trial.  (4ART at L10-L12, L17-L18,

22   M6-M7, M11, M14, M17-M23, N2-N12, O2-O10, P2-P4.)  Thus, the testimony of

23   the jurors confirmed that they did not discuss the arrest information during

24   deliberations.

25         Moreover, again as the California Court of Appeal found (LD D at 11), the

26   evidence of Petitioner's guilt was overwhelming.  Petitioner was identified as the

27   driver by three witnesses who knew him well and by another who saw him at the

28   scene during the crime for ten seconds.  (*See* Argument I.C., *supra*.)  Thus, any

29

error was harmless, and Petitioner's jury misconduct claim fails.

### D.   The California Court of Appeal Reasonably Rejected Petitioner's Prosecutorial Misconduct Claim in Ground Seven

Petitioner's claim in Ground Seven that the introduction of his criminal history constituted prosecutorial misconduct was properly rejected on the merits by the California Court of Appeal.  To warrant habeas relief, prosecutorial misconduct must have been so egregious as to have infected the entire trial, rendering it fundamentally unfair and denying the petitioner due process.  *Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995).  The standard of review is the narrow one of due process, and not the broad exercise of supervisory power.  *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986); *see also Thompson v. Borg*, 74 F.3d 1571, 1577 (9th Cir. 1996).  Thus, relief may not be granted merely because the federal court might disapprove of the prosecutor's behavior.  *See Sechrest v. Ignacio*, 549 F.3d 789, 807 (9th Cir. 2008).

A determination that the prosecutor's questioning was improper is insufficient in and of itself to warrant reversal. As the Supreme Court explained, "The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (internal quotations omitted); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974); *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998).

The failure of counsel to object to misconduct demonstrates counsel did not discern any prejudice.  *Adams*, 965 F.2d at 1318.  The failure to object, while not dispositive, is relevant on the issue of fundamental fairness.  *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002); *see Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005).

Here, Petitioner argues that the prosecutor improperly placed the arrest information before the jury during her examination of Deputy Marella.  (Pet.,

30

1    Attach. at 49-52.)  While asking about the officer's contact with Petitioner on April
2    6, 2003, the prosecutor made references to Petitioner's "booking photograph" and
3    "booking."  The prosecutor acknowledged her mistake during these questions, and
4    defense counsel chose not to call attention to Petitioner's arrest by requesting an
5    admonition from the court.  (3RT at 1531-32.)  Later, Exhibit No. 3 was sent to the
6    jury room, containing not only Petitioner's booking photograph, which was
7    properly admitted, but also the arrest information.

8           The prosecutor did not commit misconduct for failing to redact the booking
9    photograph because there was nothing to show that the error was intentional.
10   Moreover, as the California Court of Appeal found (LD D at 13), defense counsel's
11   decision to decline a curative instruction underscored the passing nature of the
12   prosecutor's comments.  Petitioner has not shown that the prosecutor's error "so
13   infected the trial with unfairness as to make the resultant conviction a denial of due
14   process."  *Darden*, 477 U.S. at 181.  Accordingly, the California Court of Appeal
15   reasonably found that the prosecutor did not commit prejudicial misconduct.

16          Finally, a constitutional violation arising from prosecutorial misconduct does
17   not warrant habeas relief if the error is harmless.  *See Sandoval v. Calderon*, 241
18   F.3d 765, 778 (9th Cir. 2000); *see also Brecht*, 507 U.S. at 623.  Any error by the
19   prosecutor here would have no greater consequence than the jury improperly
20   viewing Petitioner's arrest information on the exhibit.  As stated previously, based
21   on the juror statements and the overwhelming evidence of Petitioner's guilt, any
22   such error must be harmless.  Consequently, Petitioner's prosecutorial misconduct
23   claim in Ground Seven fails.

24   **E.    Petitioner's Ineffective Assistance of Counsel Claim in Ground**
             **Eight Is Unexhausted and Lacks Merit**
25

26          Petitioner's ineffective assistance of counsel claim in Ground Eight is
27   unexhausted and lacks merit.  He claims that he received ineffective assistance of
28   counsel when counsel failed to object to prosecutorial misconduct.  Petitioner raised

1    this claim on direct appeal in the California Court of Appeal, and that court did not

2    address it, finding that there was no prosecutorial misconduct and acknowledging

3    that defense counsel did in fact discuss the issue with the trial court.  (LD D at 13.)

4    Petitioner did not present this claim to the California Supreme Court, either in a

5    petition for review or a petition for writ of habeas corpus.  (*See* LD J, L, O, Q.)

6    Thus, Petitioner has not exhausted his available state remedies for this claim.

7    However, applying de novo review, this Court should determine that this claim has

8    no merit.

9        Initially, Petitioner's claim in Ground Eight is unexhausted.  Exhaustion of

10   state remedies is a prerequisite to a federal court's consideration of claims sought to

11   be presented in federal habeas corpus.  28 U.S.C. § 2254(b); *Picard v. Connor*, 404

12   U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971); *Johnson v. Zenon*, 88 F.3d

13   828, 829 (9th Cir. 1996).  To satisfy the state exhaustion requirement, the petitioner

14   must fairly present his federal claims to the state's highest court.  *Duncan v. Henry*,

15   513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995); *Guizar v. Estelle*, 843

16   F.2d 371, 372 (9th Cir. 1988).  The petitioner has the burden of demonstrating he

17   has exhausted available state remedies.  *Werts v. Vaughn*, 228 F.3d 178, 192 (3d

18   Cir. 2000).

19       Section 2254(b)(2) allows this Court to deny, but not grant, an unexhausted

20   claim on the merits where useless litigation in the state court would otherwise be

21   required.  *Hoxsie v. Kerby*, 108 F.3d 1239, 1242-43 (10th Cir. 1997); *Acosta-*

22   *Huerta v. Estelle*, 954 F.2d 581, 584 (9th Cir. 1992), *amended* 7 F.3d 139, 142

23   (1993); *Flores v. Johnson*, 957 F. Supp. 893 (D.W.Tex. 1997).

24       Petitioner's ineffective assistance claim fails on the merits.  Petitioner has

25   failed to show either that counsel's conduct fell below an objective standard of

26   reasonableness, or that the defendant was prejudiced by counsel's acts or omissions.

27   *Strickland*, 466 U.S. at 687-94; *accord Richter*, 131 S. Ct. at 787-88; *see* Argument

28   I.D., *supra*.  As explained previously, counsel objected to the prosecutor's

32

1     comments regarding Petitioner's booking after the examination of the officer

2     concluded, so as not to draw more attention to that fact.  Counsel's tactical decision

3     during trial cannot constitute ineffective assistance.  *Murtishaw v. Woodford*, 255

4     F.3d 926, 939 (9th Cir. 2001); *see also Edwards v. Lamarque*, 475 F.3d 1121, 1126

5     (9th Cir. 2007).  Further, counsel was not ineffective in failing to object to Exhibit

6     No. 3 because its admission in the jury room was harmless.  *See* Argument II,

7     *supra*.

8         Even assuming that counsel provided ineffective assistance, Petitioner cannot

9     show that he suffered any prejudice.  As discussed previously, the fact that the

10    jurors were made aware of Petitioner's previous booking could not have had a

11    substantial and injurious effect or influence on the verdict.  The evidence of

12    Petitioner's guilt was overwhelming, and the record shows that the jurors were

13    properly focused on the evidence.  Accordingly, Petitioner's claim in Ground Eight

14    fails.

15                               **CONCLUSION**

16         For the foregoing reasons, Respondent respectfully requests the Amended

17    Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

18

19    Dated:  December 12, 2011               Respectfully submitted,

20                                KAMALA D. HARRIS
                               Attorney General of California

21                                DANE R. GILLETTE
                               Chief Assistant  Attorney General

22                                LANCE E. WINTERS
                               Senior Assistant  Attorney General

23                                STEPHANIE A. MIYOSHI
                               Deputy Attorney General

24

25                                **/s/ DAVID E. MADEO**

26                                DAVID E. MADEO
                               Deputy Attorney General

27                                *Attorneys for Respondent*

28    LA2010501376
    51047561.doc

# CERTIFICATE OF SERVICE

Case Name:  **Jofama Coleman v. K. Clark,**          No.   **CV 10-2343-AHM (RNB)**
            **Warden**

I hereby certify that on <u>December 12, 2011</u>, I electronically filed the following documents with
the Clerk of the Court by using the CM/ECF system:

**ANSWER TO AMENDED PETITION FOR WRIT OF HABEAS CORPUS;
MEMORANDUM OF POINTS AND AUTHORITIES**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the
California State Bar at which member's direction this service is made.  I am 18 years of age or
older and not a party to this matter.  I am familiar with the business practice at the Office of the
Attorney General for collection and processing of correspondence for mailing with the United
States Postal Service.  In accordance with that practice, correspondence placed in the internal
mail collection system at the Office of the Attorney General is deposited with the United States
Postal Service with postage thereon fully prepaid that same day in the ordinary course of
business.

I further certify that some of the participants in the case are not registered CM/ECF users.  On
<u>December 12, 2011</u>, I have caused to be mailed in the Office of the Attorney General's internal
mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched
it to a third party commercial carrier for delivery within three (3) calendar days to the following
non-CM/ECF participants:

**Jofama Reo Coleman
CDC # V-27659
California Substance Abuse Treatment
Facility & State Prison, Corcoran
P.O. Box 5242
Corcoran, CA  93212**

I declare under penalty of perjury under the laws of the State of California the foregoing is true
and correct and that this declaration was executed on <u>December 12, 2011</u>, at Los Angeles,
California.

Bernard M. Santos
Declarant                                                        Signature

51049396.doc