1  KAMALA D. HARRIS
   Attorney General of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  LANCE E. WINTERS
   Senior Assistant Attorney General
4  JAMES WILLIAM BILDERBACK II
   Supervising Deputy Attorney General
5  DAVID E. MADEO
   Deputy Attorney General
6  State Bar No. 180106
    300 South Spring Street, Suite 1702
7  Los Angeles, CA  90013
   Telephone:  (213) 897-4925
8  Fax:  (213) 897-6496
   E-mail:  DocketingLAAWT@doj.ca.gov
9  *Attorneys for Respondent*

10            IN THE UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13

14

15  **JOFAMA COLEMAN,**                    CV 10-2343-AHM (RNB)

16                         Petitioner,     **NOTICE OF MOTION AND
                                           MOTION FOR
17       **v.**                            RECONSIDERATION OF
                                           COURT'S DECISION OF
18  **KATHLEEN ALLISON, Acting**           EVIDENTIARY HEARING;
    **Warden,**                            MEMORANDUM OF POINTS AND
19                                         AUTHORITIES**
                         Respondent.
20                                         Hon. Robert N. Block
                                           U.S. Magistrate Judge
21
                                           Date:  February 14, 2012
22                                         Time:  9:30 a.m.

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

PROCEDURAL HISTORY ................................................................... 1

ARGUMENT ................................................................................. 4

    I.     THIS COURT SHOULD RECONSIDER ITS DECISION THAT AN
            EVIDENTIARY HEARING IS NECESSARY TO RESOLVE
            PETITIONER'S ACTUAL INNOCENCE CLAIM ........................................... 4

    II.    PETITIONER HAS FAILED TO MAKE A CREDIBLE CLAIM OF
            ACTUAL INNOCENCE; ACCORDINGLY, AN EVIDENTIARY HEARING
            IS NOT WARRANTED ................................................................... 8

        A.    Petitioner has Failed to Make a Credible Claim of Actual
              Innocence ................................................................... 8

        B.    Petitioner is Not Entitled to An Evidentiary Hearing ............... 16

    III.   RESPONDENT REQUESTS THAT THE STATUS CONFERENCE BE
            CONTINUED TO THE DATE OF THE HEARING ON THE INSTANT
            MOTION ................................................................................. 18

CONCLUSION ............................................................................... 19

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Arthur v. Allen*
   452 F.3d 1234 (11th Cir. 2006) ................................................................ 17

*Bousley v. United States*
   523 U.S. 614, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) .................................. 8

*Calderon v. Thompson*
   523 U.S. 538, 118 S. Ct. 1489, 140 L. Ed. 2d 728 (1998) .................................. 9

*Carriger v. Stewart*
   132 F.3d 463 (9th Cir. 1997) .................................................................. 17

*Gandarela v. Johnson*
   286 F.3d 1080 (9th Cir. 2002) ................................................................ 17

*Hayes v. Battaglia*
   403 F.3d 935 (7th Cir. 2005) .................................................................. 17

*House v. Bell*
   547 U.S. 518, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) ........................... 9, 10, 17

*Lee v. Lampert*
   653 F.3d 929 (9th Cir. 2011) ............................................................ 4, 5, 8, 9

*Majoy v. Roe*
   296 F3d 770 (9th Cir. 2002) ............................................................ 5, 10, 16

*McCleskey v. Zant*
   499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991) .................................. 8

*Pitchess v. Superior Court*
   11 Cal. 3d 531, 113 Cal. Rptr. 897 (1974) ................................................... 2

*Schlup v. Delo*
   513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) ........................... *passim*

*Shumway v. Payne*
   223 F.3d 982 (9th Cir. 2000) ................................................................... 9

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Souter v. Jones*
    395 F.3d 577 (6th Cir. 2005) .............................................................. 17

*Stidham v. Cate*
    2010 WL 5463795 (C.D. Cal. 2010) ............................................ 16, 17

**COURT RULES**

Fed. Rule of Civ. Proc., rule 25 ................................................................ 1

Fed. Rules of Evid., rule 201 ............................................................. 12, 13

Local Rules of the U. S. D. C. rule 7-18 ........................................ 1,5, 7

**OTHER AUTHORITIES**

http://maps.google.com/maps?f=d .................................................. 12, 13

TO PETITIONER AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on February 14, at 9:30 a.m., or as soon thereafter as the matter may be heard, before Honorable Robert N. Block in Courtroom number 6D of the Ronald Reagan Federal Building and United States Courthouse in Santa Ana, California, Respondent, Ralph M. Diaz,[1] will move this Court for reconsideration of this Court's decision that an evidentiary hearing is necessary to resolve Petitioner's actual innocence claim.  This Motion is made pursuant to Rule 7-18 of the Local Rules of the United States District Court for the Central District of California, on the ground that the Court's decision is clearly erroneous and contrary to United States Supreme Court authority.  Respondent brings this motion to remedy what he believes to be a clear and significant error of law and to preserve his appellate rights against any possible claim of waiver.  See Simpson v. Lear Astronics Corp., 77 F.3d 1170 (9th Cir. 1996); United States Parole Commn. v. Geraghty, 445 U.S. 388, 397, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980).

This Motion is based on the records and files in the above-captioned case, the Memorandum of Points and Authorities, and on such documentary or other evidence and argument that may be presented at the hearing on this Motion.

---

[1] Respondent notes that Ralph M. Diaz is the Acting Warden of the California Substance Abuse Treatment Facility and State Prison at Corcoran, California, where Petitioner is in custody.  Substitution of the proper custodian's name is authorized under Federal Rule of Civil Procedure 25(d).

1        WHEREFORE, Respondent prays that this Court vacate its October 19, 2011,

2    order requiring the evidentiary hearing.

3    Dated:  January 13, 2012                    Respectfully submitted,

4                                                KAMALA D. HARRIS
                                                 Attorney General of California
5                                                DANE R. GILLETTE
                                                 Chief Assistant Attorney General
6                                                LANCE E. WINTERS
                                                 Senior Assistant Attorney General
7                                                JAMES WILLIAM BILDERBACK II
                                                 Supervising Deputy Attorney General
8

9

10                                               /s/ David E. Madeo
                                                 DAVID E. MADEO
11                                               Deputy Attorney General
                                                 Attorneys for Respondent
12   DEM:ez
     LA2010501376
13   51077955.doc

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## PROCEDURAL HISTORY

On March 31, 2010, Petitioner filed a Petition for Writ of Habeas Corpus ("Original Petition"), alleging six claims arising from his conviction for first degree murder in Los Angeles County Superior Court case number YA059765:  (1) false evidence was introduced at trial during an eyewitness's testimony; (2) Petitioner received ineffective assistance of counsel when counsel failed to adequately investigate the eyewitness's testimony; (3) the jury received prejudicial information during deliberations about Petitioner's prior criminal history that had not been presented at trial; (4) the prosecutor committed misconduct by placing inadmissible evidence about Petitioner's criminal history before the jury; (5) the jury's inadvertent receipt of information regarding Petitioner's criminal history constitutes jury misconduct; and (6) Petitioner received ineffective assistance of counsel when counsel failed to object to the introduction of Petitioner's criminal history.  (*See* Pet. at 5-6a, Attach. at 1-55.)

Concurrently with the Petition, Petitioner filed a motion to stay the instant proceeding so that he could exhaust in the state courts nine additional claims of ineffective assistance of counsel.  Respondent filed an Opposition to Petitioner's Request for Stay and Abeyance ("Opposition") on May 4, 2010.  On May 7, 2010, this Court conditionally granted Petitioner's motion to stay.

On October 12, 2010, Petitioner filed a motion to amend the Petition ("Motion to Amend").  On November 17, 2010, Petitioner's Proposed Amended Petition for Writ of Habeas Corpus ("Amended Petition") was lodged in this Court.  The Amended Petition contained claims that mirrored Petitioner's claims in the Original Petition: (1) false evidence was introduced during Petitioner's trial (Am. Pet. at 5, Attach. at 27-31); (2) Petitioner's constitutional right to due process and fair trial were violated by introducing false evidence (Am. Pet. at 5, Attach. at 31-32); (3) Petitioner received ineffective assistance of counsel when counsel failed to

investigate and object to false evidence (Am. Pet. at 6, Attach. at 32-37); (4) evidence of Petitioner's prior arrest and criminal history was inadmissible (Am. Pet. at 6, Attach. at 37-39); (5) the introduction of information regarding Petitioner's criminal history denied his constitutional rights to an impartial jury and to due process (Am. Pet. at 6, Attach. at 40-48); (6) the introduction of Petitioner's criminal history constituted jury misconduct (Am. Pet. at 6a, Attach. at 46-48); (7) the introduction of Petitioner's criminal history constituted prosecutorial misconduct (Am. Pet. at 6a, Attach. at 48-52); (8) Petitioner received ineffective assistance of counsel when counsel failed to object to prosecutorial misconduct (Am. Pet. at 6a, Attach. at 52-54); and (9) the error resulted in a denial of the constitutional right to impartial jury and due process.  (Am. Pet. at 6b, Attach. at 54-65).[2]

The Amended Petition also contained twelve additional claims that had not been alleged in the Original Petition: (10) the trial court failed to bifurcate the proceedings (Am. Pet. at 6b, Attach. at 66-81); (11) the introduction of Petitioner's bad character evidence was evidentiary error (Am. Pet. at 6b, Attach. at 82-85); (12) Petitioner received ineffective assistance of counsel when counsel failed to investigate a potentially meritorious defense (Am. Pet. at 6c, Attach. at 86-105); (13) the prosecutor committed misconduct by making false statements before the jury (Am. Pet. at 6c, Attach. at 106-11); (14) Petitioner received ineffective assistance of counsel when counsel failed to object to prosecutorial misconduct (Am. Pet. at 6c, Attach. at 112-15); (15) Petitioner received ineffective assistance of counsel when counsel failed to file a *Pitchess*[3] motion (Am. Pet. at 6d, Attach. at 116-24); (16) Petitioner received ineffective assistance of counsel when counsel failed to secure the services of a psychologist (Am. Pet. at 6d, Attach. at 124-80);

---

[2] The substance of these nine claims in the Amended Petition were contained in the six claims in the Original Petition.
    [3] *Pitchess v. Superior Court*, 11 Cal. 3d 531, 113 Cal. Rptr. 897 (1974).

(17) trial counsel deprived Petitioner of a crucial or potentially meritorious defense (Am. Pet. at 6d, Attach. at 180-83); (18) Petitioner received ineffective assistance of counsel when counsel failed to move to exclude Lopez's identification evidence (Am. Pet. at 6e, Attach. at 184-87); (19) Petitioner received ineffective assistance of counsel when counsel failed to move to exclude Renteria's identification evidence (Am. Pet. at 6e, Attach. at 187-209); (20) the cumulative effect of the errors resulted in a fundamentally unfair trial (Am. Pet. at 6e, Attach. at 209-13); (21) the trial court erred in denying post-conviction discovery (Am. Pet. at 6f, Attach. at 213-21).

On December 21, 2010, Respondent filed an Opposition to Petitioner's Motion to Amend.  On January 20, 2011, Petitioner filed a Reply to Respondent's Opposition ("Reply").

On February 9, 2011, in a Report and Recommendation, this Court granted Petitioner's Motion to Amend with respect to Grounds 1 through 9, 11, and 19 of the proposed Amended Petition and denied the motion with respect to Grounds 10, 12 through 18, and 20 through 21, finding that two new claims alleged in the Amended Petition (Grounds 11 and 19) related back to the filing of Petitioner's Original Petition.  The next day, this Court ordered supplemental briefing regarding the "actual innocence" exception to the AEDPA statute of limitations.

On April 4, 2011, Respondent filed a Supplemental Opposition Memorandum ("Supplemental Opposition"), responding to Petitioner's claim of actual innocence contained in his Reply.  On June 7, 2011, Petitioner filed a Supplemental Reply Memorandum ("Supplemental Reply"), containing a greatly expanded claim of actual innocence.

On June 20, 2011, this Court granted Petitioner's Motion to Amend to the extent that it sought to amend Grounds 1 through 6 of the Original Petition by realleging instead Grounds 1 through 9 of the proposed Amended Petition.  This Court also deferred ruling as to Grounds 10 through 21 until the Ninth Circuit

1   issued its *en banc* decision in *Lee v. Lampert*, 653 F.3d 929 (9th Cir. 2011).

2   Further, this Court concluded that, should the Ninth Circuit decide that an actual

3   innocence exception to the AEDPA statute of limitations existed, such a claim

4   could not be determined without the Court conducting an evidentiary hearing.

5          On July 5, 2011, Petitioner filed Objections to this Court's decision to

6   bifurcate the proceeding and adjudicate only Ground 1 through 9.

7          On August 2, 2011, the Ninth Circuit filed its *en banc* decision in *Lee v.*

8   *Lampert*, holding that a credible claim of actual innocence constitutes an equitable

9   exception to the AEDPA's statute of limitations.

10         On October 13, 2011, the District Judge remanded the matter back to this

11  Court for further proceedings in light of the Ninth Circuit's decision in *Lee*.

12         On October 19, 2011, this Court reiterated its conclusion in the June 20, 2011,

13  Order that Petitioner's actual innocence claim could not be determined without the

14  Court conducting an evidentiary hearing.

15         A status conference in this matter is currently set for February 10, 2012.

16                                    **ARGUMENT**

17  **I.   THIS COURT SHOULD RECONSIDER ITS DECISION THAT AN**
         **EVIDENTIARY HEARING IS NECESSARY TO RESOLVE PETITIONER'S**
18       **ACTUAL INNOCENCE CLAIM**

19         On June 20, 2011, this Court concluded that, to the extent such a claim

20  existed, Petitioner's actual innocence claim could not be determined without the

21  Court conducting an evidentiary hearing.  This determination was made following

22  this Court's review of the trial record as well Respondent's Supplemental

23  Opposition Memorandum and Petitioner's Supplemental Reply Memorandum.

24  However, Respondent did not have the opportunity to respond to Petitioner's

25  Supplemental Reply, which contained a greatly expanded claim of actual

26  innocence.  Accordingly, Respondent now requests that this Court reconsider its

27  decision that an evidentiary hearing is required to resolve Petitioner's actual

28  innocence claim.

1   Pursuant to Rule 7-18 of the Local Rules of the United States District Court

2   for the Central District of California:

3       A motion for reconsideration of the decision on any motion may be

4       made only on the grounds of (a) a material difference in fact or law from

5       that presented to the Court before such decision that in the exercise of

6       reasonable diligence could not have been known to the party moving for

7       reconsideration at the time of such decision, or (b) the emergence of new

8       material facts or a change of law occurring after the time of such

9       decision, or (c) a manifest showing of a failure to consider material facts

10      presented to the Court before such decision.

11  Respondent hereby makes the instant motion on the grounds that the law and

12  the facts of the instant matter are materially different from that presented to the

13  Court in Petitioner's Supplemental Reply.

14  In the February 9, 2011, Report and Recommendation, this Court rejected

15  Petitioner's actual innocence claim, relying on Ninth Circuit precedent that

16  foreclosed Petitioner's reliance on such an exception to the AEDPA's statute of

17  limitations.  *See* February 19, 2011, Order.  The next day, in the light of the Ninth

18  Circuit's decision to rehear en banc *Lee v. Lampert*, the Court ordered the parties to

19  brief whether, assuming that the AEDPA statute of limitations is subject to a

20  "fundamental miscarriage of justice" exception, any of the evidence referenced in

21  the Reply that was not presented at trial – specifically the forensic analysis of the

22  Blockbuster surveillance security tape – is sufficient to either (a) satisfy Petitioner's

23  burden of showing the requisite "actual innocence," or (b) entitle Petitioner to an

24  evidentiary hearing on his actual innocence claim under *Majoy v. Roe*, 296 F3d

25  770, 775-76 (9th Cir. 2002).

26  Petitioner's Reply included his claim that new forensic analysis of the

27  Blockbuster Video surveillance tape demonstrated his actual innocence.  (Reply at

28  9, 17-20.)  After trial, Petitioner sent the security videotape to George Reis at

1   Imaging Forensic, who "demultiplexed" the VHS tape onto a DVD format, which

2   enabled "the security footage to be viewed in live time." (Reply at 9.) Petitioner

3   claimed that it was discovered that the security video showed that Petitioner arrived

4   at the store at 9:25 p.m., which was "'16-minutes' before the time it was concluded

5   at trial that [he] was at the store." (Reply at 9, 17, 20.)

6       Accordingly, in the Supplemental Opposition, Respondent replied to

7   Petitioner's actual innocence claim, detailed in Petitioner's Reply. Respondent

8   noted that the evidence at trial showed that the victim, Jose Robles, was shot and

9   killed at approximately 9:00 p.m. on 101st Street, about five to seven minutes away

10  from the Blockbuster Video store. (Supp. Opp. at 10; *see* 2RT at 937; 3RT at 1630;

11  4RT at 1890.) Thus, even assuming that the security video showed Petitioner at the

12  Blockbuster store at 9:25 p.m., this in no way proves his innocence of the shooting

13  that occurred at about 9:00 p.m., a mere five to seven minutes away. Accordingly,

14  Respondent argued that Petitioner's "new" evidence of the security video could not

15  be the basis of an actual innocence claim. (Supp. Opp. at 10.)

16      Thereafter, Petitioner filed a Supplemental Reply, a forty-four page brief that

17  greatly expanded on his claim of actual innocence. While acknowledging that the

18  shooting occurred around 9:00 p.m., Petitioner argued that two witnesses followed

19  the "suspects" in a white van after the shooting to another location "sometime after

20  9:00 p.m." Petitioner then detailed the route that the witnesses took while

21  following the "suspects," as stated at trial. (Supp. Reply at 10-11.) Petitioner then

22  noted that, although Detective Steven Katz testified at trial that a person could drive

23  from the crime scene to the video store in five to seven minutes (*see* 4RT 1890), no

24  evidence at trial supported the fact that the "suspects" drove directly from the

25  shooting scene to the video store. He alleged that, after the shooting, the "suspects"

26  drove in a direction opposite the video store until being confronted by the

27  witnesses. Thus, he argued that the distance between this area where the shooters

28

1  were spotted after the shooting and the video store could be more than five to seven

2  minutes.  (Supp. Reply at 12-13.)

3      Petitioner then stated an "overall example" of a hypothetical timeline of the

4  crime: (1) the shooting occurred around 9:00 p.m.; (2) the witnesses followed

5  "suspects" in a white van in the opposite direction until "approximately 9:10 p.m.";

6  (3) it would take "approximately fifteen to twenty minutes" to get from where the

7  "suspects" where seen to the video store; and (4) the prosecution would have to

8  prove that, within that time period, Petitioner dropped off the shooter, ditched the

9  white van, picked up his green sedan, picked up his girlfriend and her brother,

10  changed clothes, and then drove to the video to be seen by the surveillance camera

11  at 9:25 p.m.  (Supp. Reply at 15-16.)

12      Further, Petitioner alleged in his Supplemental Reply that identifications of the

13  four eyewitnesses were not reliable.  (Supp. Reply at 19-43.)

14      Petitioner's additional timeline allegations and expanded witness reliability

15  claims in the Supplemental Reply were not alleged in his Reply.  (*See* Reply at 1-

16  24.)  Accordingly, Respondent was not able to respond in the Supplemental

17  Opposition to these allegations, which contain unreliable claims of evidence and

18  speculative conclusions.

19      The facts of the instant matter are materially different from that presented to

20  the Court in Petitioner's Supplemental Reply.  L. Rule 7-18.  Accordingly,

21  Respondent should be afforded the opportunity to respond to Petitioner's expanded

22  claim of actual innocence before this Court determines that an evidentiary hearing

23  is necessary.

24

25

26

27

28

7

**II.  PETITIONER HAS FAILED TO MAKE A CREDIBLE CLAIM OF ACTUAL INNOCENCE; ACCORDINGLY, AN EVIDENTIARY HEARING IS NOT WARRANTED**

Petitioner has failed to make a credible claim of actual innocence.  Even assuming that Petitioner's new videotape evidence accurately places him at the video store at 9:25 p.m., this in no way proves, or even supports, that Petitioner is actually innocent.  Since the shooting occurred at 9:00 p.m., there was ample time for Petitioner to arrive at the video store by 9:25 p.m. after committing the shooting.  Accordingly, he is not entitled to an evidentiary hearing on his actual innocence claim.

**A.  Petitioner Has Failed to Make a Credible Claim of Actual Innocence**

A credible claim of actual innocence constitutes an equitable exception to the AEDPA's one-year statute of limitations.  *Lee*, 653 F.3d at 932-36.  An actual innocence claim "does not by itself provide a basis for relief," but is "instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  *Schlup v. Delo*, 513 U.S. 298, 315, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).  To prevail on a claim of actual innocence, a petitioner must show that he "'is actually innocent.'"  *Id.* at 327.  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998).  A petitioner must produce sufficient proof of his actual innocence to bring him "within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'"  *Lee*, 653 F.3d at 937 (quoting *Schlup*, 513 U.S. at 314-15); *see also McCleskey v. Zant*, 499 U.S. 467, 494, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

In the procedural default context, the Supreme Court has held that prisoners asserting actual innocence as a gateway to defaulted claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would

have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327; *Lee*, 653 F.3d at 938.

> The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, *a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.*

*Schlup*, 513 U.S. at 329 (emphasis added). This standard mandates "a stronger showing than that needed to establish prejudice" from ineffective assistance of counsel. *Id.* at 327 & n.45.

Under *Schlup*, a credible claim of actual innocence requires the "petitioner to support his allegations with *new reliable* evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324 (emphasis added); *see also House v. Bell*, 547 U.S. 518, 537, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006); *Lee*, 653 F.3d at 938. Given the narrow scope of this stringent standard and the extreme rarity of such evidence, "'in virtually every case, the allegation of actual innocence has been summarily rejected.'" *Calderon v. Thompson*, 523 U.S. 538, 559, 118 S. Ct. 1489, 140 L. Ed. 2d 728 (1998) (quoting *Schlup*, 513 U.S. at 324); *Shumway v. Payne*, 223 F.3d 982, 990 (9th Cir. 2000). In *Schlup*, the Supreme Court remanded the case so that the district court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Schlup*, 513 U.S. at 332. "In short, the new evidence is not simply

1    taken at face value; its reliability has to be tested." *House*, 547 U.S. at 557

2    (Roberts, C.J., concurring & dissenting); *see Majoy*, 296 F.3d at 977 78 (remanding

3    for actual innocence determination under *Schlup*).

4          Here, Petitioner fails to meet the *Schlup* standard for demonstrating actual

5    innocence.  Petitioner claims that the new evidence of the videotape analysis

6    demonstrates that he is actually innocent of the shooting.  But even if Petitioner's

7    allegations regarding the new evidence are assumed to be true, with the surveillance

8    video showing his presence at the video store at 9:25 p.m., this does not constitute a

9    credible claim of actual innocence.  Rather than proving Petitioner's innocence, the

10   evidence simply supports a shortened window within which Petitioner was more

11   than capable of committing the crimes.  In fact, the new video evidence serves to

12   bolster the prosecution's case, placing Petitioner at the video store at exactly the

13   time that it would reasonably be expected that he would arrive after committing the

14   shooting twenty-five minutes earlier.   In no way does Petitioner's new evidence

15   demonstrate that he is actually innocent.

16         The evidence at trial showed that the victim, Jose Robles, was shot and killed

17   at approximately 9:00 p.m. on the corner of 101st Street and Budlong Avenue.

18   (2RT at 937; 3RT at 1535.)  Petitioner alleges that a post-trial forensic investigation

19   revealed that a Blockbuster Video surveillance tape, admitted at trial, was actually

20   time-stamped earlier than stated at trial.  (Supp. Reply at 10-16; Reply at 9, 17-20.)

21   At trial, a surveillance videotape recorded on the night of the shooting from a

22   Blockbuster Video store on Western Avenue, about a five- to seven-minute drive

23   from the crime scene, was admitted into evidence.  Petitioner appeared wearing a

24   black T-shirt over a white T-shirt on the videotape at the time-stamp of 9:40 p.m.

25   The video time-stamp was six minutes slow, indicating that Petitioner had actually

26   appeared on it at 9:46 p.m., on the night of the shooting.  (4RT at 1890-91; 5RT at

27   2439-41, 2468.)  A cash register receipt showed that he paid for some videos at that

28   store at 9:38 p.m.  (5RT at 2439, 2470.)

1   After trial, Petitioner sent the security videotape to George Reis at Imaging
2   Forensic, who "demultiplexed" the VHS tape onto a DVD format, which enabled
3   "the security footage to be viewed in live time." (Reply at 9; Supp. Reply at 11-
4   13.) Petitioner claims that it was discovered that the security video showed that
5   Petitioner arrived at the store at 9:25 p.m., which was "'16-minutes' before the time
6   it was concluded at trial that [he] was at the store." (Reply at 9, 17, 20.) However,
7   the cash receipt showing that Petitioner paid for the videos at 9:38 p.m. was before
8   the jury at trial; thus, this new time establishing Petitioner's presence in the video
9   store was only thirteen minutes earlier than had been established at trial. Petitioner
10  also states that the videotape shows that he entered the video store with his
11  girlfriend, Evelyn Medina, and her brother, Jesse Medina. (Supp. Reply at 13.)

12  Petitioner also alleges that two eyewitnesses, Albert Segundo and Andres
13  Sandoval, followed the shooters in a white van immediately after the shooting to
14  the intersection of Hoover Street and 102nd Street "sometime after 9:00 p.m." As
15  Petitioner recounts (Supp. Reply at 10-11), Segundo testified at trial that they
16  followed the shooters as follows: driving east on 101st Street, turning right on
17  Vermont Avenue, turning left on 104th Street, turning left on the first street, then
18  turning right on 102nd Street, until stopping at the corner of Hoover Street. (3RT at
19  1570-71.)

20  Petitioner alleges that, because the corner of Hoover Street and 102nd Street,
21  where the shooters confronted the eyewitnesses, is in the "opposite direction" of the
22  Blockbuster Video store from the shooting site, "common sense tells us that if it
23  takes 5 to 10 minutes to get from the crime scene to the video store, then it would
24  take approximately fifteen (15) to twenty (20) minutes to get from where the
25  suspects [were] last seen to the video store." (Supp. Reply at 14.)

26  Petitioner then provides a hypothetical "overall example of breaking down the
27  25 minute window" between the time of the shooting and his presence at the video
28  store: (1) the shooting occurred around 9:00 p.m.; (2) the witnesses followed

1   "suspects" in a white van in the opposite direction until "approximately 9:10 p.m.";

2   (3) it would take "approximately fifteen to twenty minutes" to get from where the

3   "suspects" where seen to the video store; and (4) the prosecution would have to

4   prove that, within that time period, Petitioner dropped off the shooter, ditched the

5   white van, picked up his green sedan, picked up his girlfriend and her brother,

6   changed clothes, and then drove to the video to be seen by the surveillance camera

7   at 9:25 p.m.  (Supp. Reply at 15-16.)

8        Petitioner's new evidence utterly fails to demonstrate his actual innocence.

9   Even assuming that the forensic evidence is reliable and accurate, thereby placing

10  Petitioner at the video store at 9:25 p.m., Petitioner cannot show that he is innocent

11  of the charged offense based on the video.  Petitioner does not deny that the

12  shooting occurred at approximately 9:00 p.m.  (Supp. Reply at 10, 15.)

13  Immediately after the shooting, Petitioner then drove to the corner of Hoover Street

14  and 102nd Street, while being followed by the eyewitnesses, Segundo and

15  Sandoval.  This location was eight short blocks from the shooting site at the corner

16  of 101st Street and Budlong Avenue, as measured by the route taken according to

17  the undisputed testimony of Segundo.[4]  (3RT at 1570-71.)  Thus, Petitioner could

18  _____

19      [4] According to Google Maps, this distance is .8 miles, for a driving time of approximately three minutes.

20  (http://maps.google.com/maps?f=d&source=s_d&saddr=Budlong+Ave+%26+W+1 01st+St.&daddr=33.945,-

21  118.29189+to:S+Vermont+Ave+%26+W+104th+St,+Los+Angeles,+CA+to:33.942 33,-118.28936+to:33.94376,-

22  118.28935+to:S+Hoover+Street+%26+W+102nd+St,+Los+Angeles,+CA&hl=en& geocode=FaH1BQIdg_Hy-Cn36Aes48nCgDHj3EiZ7PAnrQ%3BFaj1BQIdTgLz-

23  ClToz1548nCgDGVj7TzYT0M2g%3BFSrrBQIdkgPz-CnxpOU7-8nCgDF0R1tyqWKDOA%3BFTrrBQIdMAzz-Cn5f47f-

24  snCgDE4ZbTc2fkw3A%3BFdDwBQIdOgzz-Ck99aLJ-snCgDFCMI5pBXAxWQ%3BFdvwBQIdpRXz-

25  Cnbo6Aa8MnCgDGByrCXj6R3nQ&aq=&sll=33.943556,-118.289087&sspn=0.007761,0.013711&vpsrc=6&mra=dpe&mrsp=4&sz=16&via=

26  1,3,4&ie=UTF8&ll=33.943538,-118.292456&spn=0.007761,0.013711&t=m&z=16&layer=c&ei=jJYQT82JHYSsi QLJrIigBQ&pw=2.)

27      Respondent requests that the Court take judicial notice of this distance pursuant to Rule 201(b) of the Federal Rules of Evidence.

28

1   have easily arrived at that location within three to four minutes, or by 9:03 p.m. or

2   9:04 p.m.

3       Petitioner then drove to the Blockbuster Video, which is located at 8811 South

4   Western Avenue, about five to seven minutes from the shooting scene.  (4RT

5   1890.)  Even assuming, somewhat unreasonably, that Petitioner backtracked to the

6   shooting scene on his way to the video store, the driving time from Hoover Street

7   and 102nd Street to the video store would be no more than eleven minutes, or four

8   minutes to get back to the shooting site and then seven minutes from there to the

9   video store.[5]  More logically, Petitioner drove directly to the video store from

10  Hoover Street, which would take less time.  Thus, Petitioner could have easily

11  arrived at the video store by 9:15 p.m. (9:04 p.m. plus eleven minutes).

12  Accordingly, even this example, which assumes a reasonably slow pace, leaves an

13  extra ten minutes for Petitioner to complete other actions before arriving at the

14  video store at 9:25 p.m.

15      Petitioner claims that this ten minutes was not enough time to drop off the

16  shooter, get rid of the white van, pick up his green Toyota Camry, pick up Evelyn

17  and Jesse Medina, change clothes, and arrive at the video store by 9:25 p.m.  (Supp.

18  Reply at 16.)  On the contrary, this ten-minute window bolsters the prosecution's

19  case against Petitioner, placing Petitioner at the video store at exactly the time that

20  it would reasonably be expected that he would arrive after committing the shooting

21

22  _____

        [5] According to Google Maps, the distance from Hoover Street and 102nd

23  Street to 8811 South Western Avenue is 2.2 miles, for a driving time of
    approximately seven minutes.

24  (http://maps.google.com/maps?f=d&source=s_d&saddr=S+Hoover+Street+%26+
    W+102nd+St,+Los+Angeles,+CA&daddr=8811+South+Western+Avenue,+Los+A

25  ngeles,+CA&hl=en&geocode=FdvwBQIdpRXz-
    Cnbo6Aa8MnCgDGByrCXj6R3nQ%3BFR4nBgIdtLzy-Clf8gU-

26  JbbCgDH7VE9OCpC2FA&aq=0&oq=8811+S+Western+Ave.&sll=33.943538,-
    118.292456&sspn=0.007761,0.013711&vpsrc=0&mra=ls&ie=UTF8&t=m&z=15&

27  layer=c&ei=RZgQT7ykBIquiQLKtMWtCw&pw=2.)
        Respondent requests that the Court take judicial notice of this distance

28  pursuant to Rule 201(b) of the Federal Rules of Evidence.

twenty-five minutes earlier and doing the actions that Petitioner claims he must have done along the way.

Petitioner could have dropped off his accomplice and the white van and picked up his girlfriend and her brother in one stop. Evelyn Medina lived on 98th Street between Budlong Avenue and Vermont Avenue, which is directly on the way from Hoover Street to the video store. (5RT 2406.)

The surveillance videotape showed Petitioner wearing a black T-shirt over a white T-shirt. (4RT at 1890-91; 5RT at 2439-40.) Jesse Robles and Carlos Lopez each identified Petitioner as the driver during the shooting and testified that he wore a white T-shirt. (2RT at 942-43; 3RT at 1614-16.) Thus, it was very possible that Petitioner put on a black T-shirt over his white T-shirt after the shooting but before arriving at the video store. Finally, there was no evidence that Petitioner drove a green sedan, as opposed to the white van, to the video store. Lennin Chavarria, a member of Petitioner's tagging crew, testified that he saw Petitioner in his green sedan on the day of the shooting at around 6:00 p.m. (5RT 2405-06.) There was no testimony that Petitioner was driving a green sedan around the time of the shooting at 9:00 p.m.

Simply put, even assuming that Petitioner was at the video store at 9:25 p.m., there was still plenty of time for him to get there after committing the shooting with his accomplice at 9:00 p.m., confronting the eyewitnesses a few minutes later, and stopping to pick up his girlfriend on the way. Accordingly, Petitioner's "new" evidence of the security video cannot be the basis of an actual innocence claim.

Moreover, Petitioner's new evidence is plainly not reliable in light of the evidence of his guilt produced at trial. *Schlup*, 513 U.S. at 324. The trial evidence established that four witnesses positively identified Petitioner as the driver of the van involved in the shooting. Specifically, Jesse Robles ("Jesse") and Carlos Lopez saw Petitioner drive the van immediately after Jose Robles ("Jose") was shot. On May 12, 2003, less than forty-eight hours after the shooting, Jesse told the police

14

that Petitioner was the driver, and he later identified him as the driver in a six-pack photographic lineup.  Jesse and Lopez each identified Petitioner at trial as the driver.  Jesse had seen Petitioner more than fifty times before the shooting.  (2RT at 942-46, 958-62; 3RT at 1615-16; 4RT at 2146-47.)  Albert Segundo saw Petitioner in the driver's seat of the van as it drove up the street, just before the shooting.  (3RT at 1536-39.)  After the shooting, when Segundo and Andres Sandoval chased the van, Segundo again saw Petitioner driving the van, as a passenger exited and pointed a gun at them.  (3RT at 1544-46, 1549, 1570-71.)  Segundo positively identified Petitioner at trial as the driver and said he was absolutely certain of his identification.  He knew Petitioner as "Illusion" and had seen him "hundreds of times" before the shooting.  (3RT at 1536-37, 1550.)  Finally, Maria Renteria had just parked her vehicle on the street, facing Petitioner's van, when her headlights illuminated the interior of the van.  She immediately noticed the white van because it was parked on the wrong side of the street.  She saw the driver for about ten seconds and identified Petitioner at trial as the driver.  (3RT at 1227-32, 1237.)

Petitioner attempts to discredit the eyewitness testimony by alleging that the windows of the white van were tinted dark.  (Supp. Reply at 20-23.)  Although this evidence was not introduced at trial, the police reports indicate that witnesses stated that the white van had tinted windows.  However, the reports do not state how dark the windows were tinted, nor do they state whether the front windows were tinted.  (*See* Am. Pet., Ex. M at 8, 9, 29, 31, 39.)  Thus, even assuming that the van had tinted windows, there is no indication that they interfered at all with the eyewitnesses' identification of Petitioner in the driver's seat of the van.  Moreover, the shooter exited the van to shoot the victim.  He also opened the door to step outside and point his gun as Segundo and Sandoval after the shooting.  (3RT at 1544-45.)  Segundo specifically testified that he saw the driver when the dome light came on, as the shooter stepped out of the van.  (3RT at 1571.)  Thus, even if the

1   front windows had been darkly tinted, the eyewitnesses positively identified

2   Petitioner as the driver through the open van door.

3        Petitioner further attacks the eyewitness identifications but produces no new

4   evidence.  Rather, he argues that they were unreliable because they were

5   inconsistent or simply wrong.  (Supp. Reply at 24-37.)  Such argument cannot

6   support any claim of actual innocence because none of this evidence is new.

7        In sum, even assuming an actual innocence exception to the statute of

8   limitations exists, Petitioner has failed to produce any new reliable evidence

9   showing it is more likely than not that no reasonable juror would have found him

10  guilty beyond a reasonable doubt.  *Schlup*, 513 U.S. at 327, 329.

11       **B.   Petitioner Is Not Entitled to an Evidentiary Hearing**

12       Petitioner is not entitled to an evidentiary hearing on his actual innocence

13  claim.  In *Majoy*, 296 F.3d at 776, the Ninth Circuit found that a habeas petitioner's

14  otherwise barred claims may be considered on the merits if his claim of actual

15  innocence is sufficient to bring him "within the narrow class of cases implicating a

16  fundamental miscarriage of justice."  The court remanded the matter to the district

17  court for further proceedings to determine whether the petitioner had demonstrated

18  actual innocence as defined by *Schlup*, and, if so, what consequence such a finding

19  would have with respect to the one-year statute of limitations.  *Id.* at 777-78.

20       However, *Majoy* should not be construed as either (a) mandating that the

21  district court hold an evidentiary hearing whenever a habeas petitioner just proffers

22  "new evidence," which, if found credible, would make it more likely than not that

23  no reasonable juror would have convicted him, or (b) precluding the district court

24  from reaching the conclusion, without conducting an evidentiary hearing, that the

25  "new evidence" being proffered by the petitioner does not qualify as new reliable

26  evidence for purposes of meeting the *Schlup* standard.  *See*, *e.g.*, *Stidham v. Cate*,

27  2010 WL 5463795, *4 (C.D. Cal. 2010).  Such a construction of *Majoy* would

28  essentially apply the same standard as a court applies in deciding a summary

1  judgment motion. *Id.* But the Supreme Court expressly held in *Schlup* that the

2  summary judgment standard is not the standard to be applied in determining

3  whether to conduct an evidentiary hearing on a habeas petitioner's claim of actual

4  innocence. *Id.* The Supreme Court clearly has contemplated that, in some

5  instances, the determination of reliability can be made without the district court

6  having to conduct an evidentiary hearing. *Id.* "'Instead, the court may consider

7  how the timing of the submission and the likely credibility of the affiants bear on

8  the probable reliability of that evidence.'" *Id.* (quoting *Schlup*, 513 U.S. at 331-32).

9  Thus, the Supreme Court clearly has contemplated that, in some instances, the

10  determination of reliability can be made without the district court having to conduct

11  an evidentiary hearing. *Id.*

12      Courts have held that a "stringent showing" is required to permit a petitioner's

13  procedurally-defaulted claims to proceed through the *Schlup* gateway. *House*, 547

14  U.S. at 521 (new DNA evidence contradicted evidence at trial that blood could have

15  come from petitioner); *see also Souter v. Jones*, 395 F.3d 577, 581-84, 591-92 (6th

16  Cir. 2005) (new evidence cast doubt on evidence at trial that bottle was murder

17  weapon); *Carriger v. Stewart*, 132 F.3d 463, 471, 478 (9th Cir. 1997) (chief

18  prosecution witness later confessed to crimes, stating details that only a participant

19  would have known).

20      Moreover, a petitioner's actual innocence claim can often be rejected without

21  conducting an evidentiary hearing because the evidence fails to raise a "colorable

22  claim of actual innocence." *Gandarela v. Johnson*, 286 F.3d 1080, 1086-87 (9th

23  Cir. 2002) (affidavits consisting of speculative and collateral impeachment

24  evidence did not suffice to permit evidentiary hearing on actual innocence claim);

25  *Hayes v. Battaglia*, 403 F.3d 935, 939 (7th Cir. 2005) (new evidence of alibi

26  testimony of six family members was insufficient to establish actual innocence or

27  require an evidentiary hearing); *Arthur v. Allen*, 452 F.3d 1234, 1246 (11th Cir.

28

2006) (new evidence of two affidavits that contradicted trial testimony was insufficient to require evidentiary hearing on actual innocence) .

Here, as discussed previously, Petitioner's proffered evidence of actual innocence utterly fails to demonstrate that, more likely than not, no reasonable juror would have found him guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 327, 329. Petitioner's "new evidence" does not bring any facts into dispute. Even assuming that the security video showed Petitioner at the Blockbuster store at 9:25 p.m., this in no way proves his innocence of the shooting that occurred at about 9:00 p.m., even considering that Petitioner was at the corner of Hoover Street and 102nd Street a few minutes after the shooting. That location is a mere seven to eleven minutes away from the video store, and Petitioner easily could have arrived there by 9:25 p.m. Thus, Petitioner's "new evidence" falls far short of meeting the *Schlup* standard, and Petitioner is not entitled to an evidentiary hearing in order for the Court to make that determination.

### III. RESPONDENT REQUESTS THAT THE STATUS CONFERENCE BE CONTINUED TO THE DATE OF THE HEARING ON THE INSTANT MOTION

A status conference is currently set in this case on February 10, 2012. In the interest of judicial economy, Respondent requests that this status conference be continued to February 14, 2012, the day of the hearing on the motion, or to a date selected by the Court.

Respondent is mindful of the fact that the Court's October 19, 2011, Order mandated that the status conference be held within thirty days of Petitioner's counsel's consultation with Petitioner. Respondent is also mindful of the fact that the Federal Public Defender has been appointed to represent Petitioner for the purpose of the evidentiary hearing and that an opposition brief may be beyond the scope of that appointment at this time.

1    On January 10, 2012, Petitioner's counsel, Jesse Gessin, indicated that he did

2  not oppose continuing the status conference to February 14, 2012, or a later date

3  selected by the Court.

4                                   **CONCLUSION**

5    For the foregoing reasons, Respondent respectfully requests that this Court

6  reconsider its decision that an evidentiary hearing is necessary to resolve

7  Petitioner's actual innocence claim.

8  Dated:  January 13, 2012                    Respectfully submitted,

9                                               KAMALA D. HARRIS
                                                 Attorney General of California
10                                               DANE R. GILLETTE
                                                 Chief Assistant Attorney General
11                                               LANCE E. WINTERS
                                                 Senior Assistant Attorney General
12                                               JAMES WILLIAM BILDERBACK II
                                                 Supervising Deputy Attorney General
13

14

15                                               */s/ David E. Madeo*
                                                 DAVID E. MADEO
16                                               Deputy Attorney General
                                                 *Attorneys for Respondent*
17  DEM:ez
    LA2010501376
18  51077955.doc

19

20

21

22

23

24

25

26

27

28