Jofama Coleman
Correctional No. V27659
CSATF/SP D3-245U
900 Quebec Avenue
Post Office Box 5242
Corcoran, California,
    93212-5242

Petitioner In Pro Se



UNITED STATES DISTRICT COURT

IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Jofama Coleman,<br><br>         Petitioner,<br><br>  vs.<br><br>Kathleen Allison, Acting Warden,<br><br>       Respondent. | Case Number<br>CV-10-2343 AHM (RNB)<br><br>TRAVERSE IN RESPONSE TO<br>RESPONDENT'S ANSWER TO AMENDED<br>PETITION FOR WRIT OF HABEAS<br>CORPUS; MEMORANDUM OF POINTS<br>AND AUTHORITIES IN SUPPORT<br>THEREOF. |

TO: THE HONORABLE ROBERT N. BLOCK, UNITED STATES MAGISTRATE JUDGE:

I.

This honorable Court directed the Petitioner [Jofama Coleman] to

1.

file his "Reply" following Respondent's "Answer." Petitioner respectfully,
in compliance with the Order dated October 19, 2011, files his "Reply"
in response to Respondent's Answer to the Amended Petition for Writ of
Habeas Corpus.

As will be set forth, the relief sought should be granted, for the
petitioner is being held in violation of the Constitution, Laws, and/or
treaties of the United States. "NO FORM OF CONVICTION IS VALID WHEN A
PETITIONER IS BEING HELD IN VIOLATION OF THE CONSTITUTION."

Petitioner respectfully submits that, if this honorable court decides
not to hold an Evidentiary Hearing in regards to Claims 1 through 9, it
is necessary to expand the record pursuant to Habeas Corpus Rule 7(a),
Rules Governing § 2254 Cases.

## II.

### STATEMENT OF THE CASE AND PROCEDURAL HISTORY

#### A. State Court Proceedings:

Following a jury trial in Los Angeles Superior Court Case Number
YA059765, Petitioner was convicted of first degree murder, in violation
of California Penal Code § 187(a)[1 CT at pp. 186-87; 5 RT 3603]. The
trial court sentenced petitioner to twent-five years to life in state
prison [2 CT at 302, 304; 5 RT 3901].

Petitioner appealed his conviction.(LD A). On December 30, 2008,
the California Court of Appeal affirmed the judgment and sentence.(LD
D, E.) On August 20, 2008, Petitioner filed a Petition for Writ of Habeas
Corpus in the California Court of Appeal. (LD F.) On December 30, 2008,
the California Court of Appeal denied the petition.(LD I.)

Petitioner filed a Petition for Review in the California Supreme Court (Case No. S170435),(LD J.). On April 1, 2009, the California Supreme Court denied the petition.(LD K.) On February 11, 2009, Petitioner filed a petition for Writ of Habeas Corpus[3] in the California Supreme Court (Case No. S170438).(LD L.). On April 1, 2009, the California Supreme Court denied the petition.(LD M, N.).

On February 1, 2010, Petitioner filed a second petition for writ of habeas corpus in the California Supreme Court (Case No. S179973).(LD O.). On September 15, 2010, the California Supreme Court denied the petition, with a citation to In re Clark, 5 Cal. 4th 750.(LD U.).

B.  FEDERAL PROCEEDINGS...

On March 31, 2010, Petitioner filed a Petition for Writ of Habeas Corpus ("Original Petition"), alleging six claims arising from his conviction for first degree murder in Los Angeles County Superior Court case No. YA059765: (1) False Evidence was introduced at trial during an eyewitness's testimony ;(2) Petitioner received ineffective assistance of counsel when counsel failed to adequately investigate the eyewitness's testimony;(3) the jury received prejudicial information during deliberation about Petitioner's prior criminal history that had not been presented at trial; (4) the prosecutor committed misconduct by placing inadmissible evidence about Petitioner's criminal history before the jury; (5) the Jury's inadvertent receipt of information regarding petitioner's criminal history constitutes jury misconduct; and (6) petitioner received ineffective assistance of counsel when counsel failed to object to the

introduction of Petitioner's criminal history. (See Pet. at 5-6a at 1-55).

Concurrently with the Petition, Petitioner filed a motion to stay the instant proceeding so that he could exhaust in the state courts nine additional claims of ineffective assistance of counsel. Which was ultimately granted by this honorable court.

On October 12, 2010, Petitioner filed a motion to amend the Petition. On November 17, 2010, petitioner's proposed Amended Petition for Writ of Habeas Corpus ("Amended Petition") was lodged in this court. The Amended Petition contained nine claims that mirrored Petitioner's claims in the Original Petition: (1) False Evidence was introduced during Petitioner's trial (Amend. Pet. at 27-31); (2) Petitioner's Constitutional right to due process and a fair trial were violated by the introduction of false evidence, (Amend. Pet. at 31-32); (3) Petitioner received ineffective assistance of counsel when counsel failed to investigate and object to false evidence, (Amend. Pet. at 32-37); (4) Evidence of Petitioner's prior arrest and criminal history was inadmissible, (Amend. Pet. at 37-39); (5) The introduction of information regarding Petitioner's criminal history denied his constitutional right to an impartial jury and due process, (Amend. Pet. at 40-48); (6) The introduction of Petitioner's criminal history constituted jury misconduct, (Amend. Pet. at 46-48); (7) The introduction of Petitioner's criminal history constituted prosecutorial misconduct, (Amend. Pet. at 48-52); (8) Petitioner received ineffective assistance of counsel when counsel failed to object to prosecutorial misconduct, (Amend. Pet. at 52-54); and (9) The errors resulted in the

denial of petitioner's constitutional right to an impartial jury and due process of the law. (Amend. Pet. at 54-65).

The Amended Petition also contained twelve additional claims that had not been alleged in the Original Petition: (10) the trial court failed to bifurcate the proceedings, (Amend. Pet. at 66-81); (11) the introduction of Petitioner's bad character evidence was evidentiary error, (Amend. Pet. at 82-85); (12) Petitioner received ineffective assistance of counsel when counsel failed to investigate a potentially meritorious defense, (Amend. Pet. at 86-105); (13) the prosecutor committed misconduct by making false statements before the jury, (Amend. Pet. at 106-111); (14) Petitioner received ineffective assistance of counsel when counsel failed to object to prosecutorial misconduct, (Amend. Pet. at 112-115); (15) Petitioner received ineffective assistance of counsel when counsel failed to file a Pitchess Motion, (Amend. Pet. at 116-124); (16) Petitioner received ineffective assistance of counsel when counsel failed to secure the services of a Psychologist, (Amend. Pet. at 124-180); (17) trial counsel deprived petitioner of a crucial or potentially meritorious defense, (Amend. Pet. at 180-183); (18) Petitioner received ineffective assistance of counsel when counsel failed to move to exclude Lopez's identification evidence, (Amend. Pet. at 184-187); (19) petitioner received ineffective assistance of counsel when counsel failed to move to exclude Renteria's identification evidence, (Amend. Pet. at 187-209); (20) the cumulative effect of the errors complained of resulted in a fundamentally unfair trial, (Amend. Pet. at 209-213); and (21) the trial court errored in denying post-conviction discovery, (Amend. Pet. at 213-214).

On February 9, 2011, in a Report and Recommendation, this honorable Court granted petitioner's motion to amend with respect to Ground 1 through 9, 11, and 19 of the proposed amended petition and denied the motion with respect to Ground 10, 12, through 18, and 20 through 21, finding that two new claims alleged in the Amended Petition (Grounds 11 and 19) Related Back to the filing of Petitioner's Original Petition. The next day, this honorable court ordered supplemental briefing regarding the "actual innocence" exception to the AEDPA statute of limitation.

On June 20, 2011, this Court granted Petitioner's Motion to Amend to the extent that it sought to amend grounds 1 through 6 of the original petition by realleging instead Grounds 1 through 9 of the Proposed Amended Petition and deferred ruling as to Ground 10 through 21. Following petitioner's objections to the June 20, 2011, Order, the District Court Judge remanded the matter back to this honorable Court for further proceedings in light of the Ninth Circuit's ruling in Lee v. Lampert, 653 F.3d 929 (9th Cir. 2011). This honorable Court subsequently ordered an evidentiary hearing on petitioner's actual innocence claim, pertaining to grounds 10 through 21.

The Court then ordered Respondent to file an Answer addressing the merits of grounds 1 through 9 of the Proposed Amended Petition. Petitoner was ordered to file his Reply thereafter.

So as to place this honorable court on notice, Petitioner notes, Respondent in the instant matter, Respondent in the state court proceedings relating to this same case, and the state court, **has made several misstatements of the material facts.** The record does not appear to reveal

that this honorable court has before it, the Petition for Rehearing that was filed in the state court, attached hereto as **"Appendix A"**. It is submitted and contended that, the Petition for Rehearing is relevant and should be considered by this honorable court in it's determination as to whether the state Court's decision **resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented in the state court proceedings,** or whether the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law. (See Appendix A.). It is submitted and contended that, the state court's denial was in part based on misstatements of "material facts", and therefore, the judgement of conviction is unconstitutional. The due process clause of the 14th Amendment demands correction/reversal of the conviction. Appendix A shows many of the misstatements.

III.

PETITIONER'S TRAVERSE

Comes Now, Petitioner [Jofama Coleman], hereinafter "Petitioner" proceeding in the instant action on Habeas Corpus pursuant to 28 U.S.C § 2254 in Propria Persona , here and now affirmatively responds to Respondent's Answer to Amended Petition for Writ of Habeas Corpus dated December 12, 2011, and thereby filed in this Honorable Court on December 12, 2011 which appears upon the docket as Document 39 respectively.

Petitioner hereby admits, denies, and alleges as follows:

1. At page 1, Line 5-6, Petitioner hereby <u>**admits**</u> that he is in the custody of Resspondent as a result of a conviction actuated in the Los Angeles Superior Court, Case No. YA059765. Petitioner hereby <u>**denies**</u> that the conviction is valid as evidence by and through the verified information

contained in the Amended Petition for Writ of Habeas Corpus at issue in the instant cause of action.

2. At page 1, Line 7-9, Petitioner admits that the Amended Petition is goverened by the Antiterroorism and Effective Death Penalty Act of 1996 ("AEDPA").

3. At page 1, Line 9, Petitioner hereby admits that Grounds One through Nine in the Amended Petition is timely filed as is required by the AEDPA.

4. At page 1, Line 10-11, Petitioner hereby admits that Ground One through Nine in the Amended Petition is not time barred.

5. At page 1, Line 12-14, Petitioner hereby admits that Ground One through Nine in the Amended Petition is not time barred by the none-retroactive doctrine set forth in Teague v. Lane, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1984).

6. At page 1, Line 15-17, Petitioner hereby denies that Ground One through Nine in the Amended Petition should be denied and dismissed with prejudice as failing to present federal constitutional questions pursuant to 28 U.S.C. § 2254(a).

7. At page 1, Line 18-23, Petitioner hereby denies that Ground One, Two, Four through Seven, and Nine in the Amended Petition should be denied and dismissed with prejudice because the California Court of Appeal's denial of relief on these claims was niether contrary to, nor an unreasonable application of clearly established Supreme Court precedent, nor was the denial of souch relief based upon an unreasonable determination of the facts presented in the state court proceedings pursuant to 28 U.S.C.

§ 2254(d).

8. At page 1, Line 24, 25 and page 2, Line 1-4 respectfully, Petitioner **denies** that Ground Three in the Amended Petition should be denied and dismissed with prejudice because the California Supreme Court's denial of relief on this claim was neither contrary to, nor an unreasonable application of clearly established Supreme Court precedent, nor was the denial of such relief based upon an unreasonable determination of the facts presented in the state court proceedings pursuant to 28 U.S.C § 2254(d).

9. At page 2, Line 5-6, Petitioner **denies** that Ground Eight of the Amended Petition should be denied and dismissed with prejudice as an unexhausted claim with no merit pursuant to 28 U.S.C. § 2254(b).

10. At page 2, Line 7-9, Petitioner **denies** that no evidentiary hearing is necessary to resolve Ground One through Nine in the Amended Petition, nor has Petitioner demonstrated that one is warranted under 28 U.S.C. § 2254(e).

11. The instant Traverse is based on the record and matters filed in this Honorable Court; Memorandum of points and Authorities which accompanies this legal instrument documents lodged by leave of this honorable court, and such other documents, exhibits, and motions that are yet to be filed in support of the Amended petition for writ of habeas corpus at issue.

12. Petitioner contends that except as herein expressly admitted, Petitioner denies each and every allegation of Respondent's Answer to the Amended Petition for Writ of Habeas Corpus; and wholly **denies** that Petitioner's conviction was Just and proper **as a matter of federal law**

and/or comports with the will of the United States Constitution or the
precedents established by the United States Court.

IV.

### THE FACTS AND CIRCUMSTANCES OF GROUND ONE SETS FORTH SUFFICIENT GROUNDS FOR WHICH RELIEF CAN BE GRANTED PURSUANT TO 28 U.S.C. § 2254 AND ESTABLISHED U.S. SUPREME COURT PRECEDENT(S).

At trial "false evidence" was presented during Maria Renteria's
(Hereinafter "Renteria"), testimony. Sergeant Steven Katz,(Hereinafter,
"Detective or Sergeant "Katz"), was the lead investigating officer on
this case, and he attended Petitioner's trial in that capacity. (2 RT.
945). Sergeant Katz testified as a witness at Petitioner's trial, (3 RT.
1288), **and also at Soto's trial,** (See Exh. "E" p. 1828 of Amend. Pet.)**(6/.)**
•

While on the stand, Renteria under oath testified that she arrived
home and parked her Toyota Astro Van in front of the Robles property,
(3 RT. 1232-1233, 1241). Renteria testified that she had never seen
petitioner before that night, (3 RT. 1226). Renteria testified that she
left her headlights on after she had parked in front of the Robles' house
by the curb. (3 RT. 1230). Renteria testified she saw **(1)** Chino cross
the street (3 RT. 1249), **(2)** a white van stopped on the wrong side of

--------------------------------------------------------------------------------

[6] Sergeant Katz had the opportunity to listen to the conflicting testimony,
and did nothing to correct or notify the court of the matter.

the road with the headlights on (3 RT. 1249-1250, 1244), **(3)** the driver
of the van (3 RT. 1226), **(4)** a person who was in the front passenger seat
get out of the van and fire his gun (3 RT. 1229, 1235, 1241-1242), and
**(5)** the shooter cross in front of the van to get back into the van. (3
RT. 1243). Renteria further testified that she had more than ten seconds
to look at the driver **and got a good look at his face,** (3 RT. 1230-1231,
1237). She could not describe anything about the driver except that he
was a "Black male" and probably had a "little bit of hair on his head",
(3 RT. 1228, 1239-1240). Renteria admitted, however, that she had no
particular reason to pay much attention to him and focused her attention
on the shooter when she heard the gunshots, (3 RT. 1230, 1236-1238).
Renteria testified that the van was facing east, but was on the
wrong/westbound side of the street, she further testified that she was
parked by the curb facing west, (3 RT. 1226, 1233-1234). Renteria testified
that Petitioner looked like the driver of the van, (3 RT. 1227). At trial,
unlike Renteria's "Black Male" description of the driver, she described
the shooter in detail--that he was five feet eight inches, around 18 years
old, heavy-built, wore a beanie on his head and a plaid flannel shirt,
had curly hair short, but ending a "little bit above the shoulder". (3
RT. 1228-1229, 1239). Renteria further described the shooter holding the
gun in his right hand, using both hands to fire it, and then holding it
in his left hand as he walked backwards to the van, (3 RT. 1241). Renteria
testified she **saw Chino fall to the ground because there were not a lot
of cars in front of her; No big vehicles,** (3 RT. 1250). Renteria testified
that when the white van drove in her direction, "she turned her head"

so the van occupants could not see her, (3 RT. 1230). Renteria further testified that after the shooting, the police showed her a six-pack photo lineup with petitioner's photo but that she was unable to recognize petitioner. (3 RT. 1502-1503).

Renteria's testimony at Soto's trial differed from her testimony at petitioner's trial in several respects. Her testimony, when considering the totality of the circumstances, took from the jury the ability to make a reliable evaluation of Renteria's observations, this is especially so when trial counsel failed to address crucial matters surrounding the layout of the crime scene, and the witnesses ability to see what they claimed to have saw under these circumstances could have been undermined causing reasonable doubt in the minds of the jury. Here, all witnesses, including Renteria, was sworn in to tell the truth, the hole truth, and nothing but the truth, however, it was latter discovered Renteria and other witnesses violated this sworn oath, thus American Justice requires correction. Two different testimonial accounts were given by Renteria, and it is submitted and contended that, the two **conflicting testimonies cannot at the same time be true.**

1a. At Soto's trial Renteria said she   looked at the white van because it was driving on the wrong side of the street coming towards her **"with the headlights off"**, (Exh. E pp.   1804-1805   of   Amend. Pet.).

1b. At Petitioner's trial, the van was on the wrong side of the road and it had **"the headlight's on"**. The driver turned the lights off **"afterwards"**. (3 RT. 1249-1250).

2a. **At Soto's trial,** Renteria testified she saw the driver of the the van when the van drove towards her vehicle **after** the shooting, (Exh. E pp. 1810-1811 of Amend. Pet.).

2b. **At Petitioner's trial,** Renteria testified she looked at petitioner's face for about two minutes (she later changed that to more than ten seconds) **before** she heard the gunshots and got "a good look at the driver's face, (3 RT. 1230-1231, 1237). After the shooting, Renteria turned her head away as the vehicle drove in her direction because she did not want them to see her, (3 RT. 1230).

3a. **At Soto's trial,** Renteria testified the distance between her car and the shooting was **35 feet;** a little over two car lengths, (Exh. E pp. 1806, 1825 of Amend. Pet.). However, a SUV was parked two car lengths away, (Exh. A 2 of Amend. Pet.). Renteria admitted she was not good at estimating distances when the prosecutor told her it was **about 160 feet from the shooting site to the Robles' residence.** (Exh. E 1826 of Amend. Pet.).

3b. **At Petitioner's trial,** she was not asked to approximate the distance but testified she was able to get a good look at the driver, (3 RT. 1231, 1245). She was certain that she was parked in front of the Robles house. (3 RT. 1233).

4a. **At Soto's trial,** Renteria identified her van in Exhibit No. 28 as the vehicle parked behind a large work dump truck, (Exh. E 1822). There was a driveway an SUV and two cars in front of the work dump truck. (Exh. A 1; E 1847 of the Amend. Pet.).

4b. **At Petitioner's trial,** Renteria testified "there were no big

vehicles, so you could see", there was not a lot of cars. (3 RT.

1250).

5. At Petitioner's trial, Renteria testified that she saw Chino

fall to the ground, she also saw the shooter walking towards him

to shoot him several more times. (3 RT. 1249-1250.). Renteria did

not say that at Soto's trial. At Soto's trial, on this point, the

record is completely silent though a seemingly critical fact that

was known to the prosecution prior to Soto's trial.

### B. SUPREME COURT PRECEDENT AUTHORIZES RELIEF FROM INCOMPATIBLE LEGAL THEORIES PRESENTED, AND/OR A PETITION CONSTRUCTED BY A PRO SE LITIGANT SHALL BE GIVEN A LIBERAL CONSTRUCTION...

Petitioner hereby submits and contends that Federal Rules of Civil

Procedure ["FRCP"], Rule 8(f) provides that **"all pleadings shall be so

construed as to do substantial justice"**.

Petitioner hereby further submits and contends that the Supreme

Court in **Haines v. Kerner, (1972) 404 U.S. 519,** the court held that "We

frequently have stated that pro se pleadings are to be given liberal

construction".

Petitioner hereby further submits and contends that the Supreme

Court stated, "Nor do I underestimate the argument the writ often is

petitioned for by prisoners without counsel and that they should not be

held to the artificial aspects in pleadings that we expect in lawyers".

(**Brown v. Allen, 344 U.S. 443, 546 (1953).** If these pronouncements have

any meaning, they must protect the pro se litigant who simply does not

properly dominate her motion or pleading in the term used in the Federal

Rules. If Respondent was not pleading for relief in the district court,

one wonders what the majority thinks she was doing there. (**Baldwin County Welcome Center v. Brown**, 466 U.S. 147, 165 (1984).). Thus, Petitioner's pro se pleadings must be construed liberally, for a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers, (**Erickson v. Pardus**, (U.S. 2007) 127 S.Ct. 2197, 2200-2201.).

It is submitted and contended that, the duty rest upon the Federal Court to decide "for itself" facts or constructions upon which federal constitutional issues, such as that presented here, (**Kern-Limerick v. Scurlock**, (U.S. Ark. 1954) 74 S.Ct. 403, 410, 347 U.S. 110). Thus, this honorable court should construe liberally, petitioner's pleadings.

Although Respondent alleges petitioner relies on California Statute, section 1473(b)(1), which allows relief on habeas corpus where the petitioner shows that, "substantial material or **probative**" false evidence was introduced against him, and that petitioner cited no federal constitutional right that would have demanded that the court take different actions. (See Resp. Answer at p.16). Petitioner contends and submits that, when, as the petitioner here, has cited to state precedent that employs pertinent constitutional analysis, he has adequately put the state courts on notice of the **constitutional thrust of his claim. (See Daye v. Attorney General of State of N.Y.**, 696 F.2d 186, 194.(2d Cir. 1982)). In sum, the way in which a state defendant may fairly present to the state courts the "constitutional nature of his claim, even without citing chapter and verse of the constitution, include, **(a)** reliance on state cases employing constitutional analysis in like fact situation, **(b)** assertion of the claim in term so particular as to call to mind a specific right protected by

the constitution, **and (c)** allegation of a pattern of facts that is well within the mainstream of constitutional litigation, (Id. 194). In all such circumstances federal courts should assume that the state courts, which are obliged, equally with the courts of the Union,...to guard, enforce and protect every right granted or secured by the Constitution of the United States, **(See Irvin v. Dowd, 359 U.S. 394, 404, 79 S.Ct. at 831 (1959) (quoting Robb v. Connolly, Ill. U.S. 624, 637, 4 S.Ct. 544, 551, 28 L.Ed. 542 (1884).).** Additionally, and as stated in **Napue v. Illinois,** the duty of the Federal Court to make it's own independent examination of the record when federal constitutional deprivations are alleged is clear, resting as it does, on our solemn responsibility for maintaining the "Constitution inviolate". **(Napue v. People of the State of Illinois, 79 S.Ct. 1173, 1178, 360 U.S. 264, 272.).**

Here, Petitioner's false evidence claim is clearly within the mainstream of constitutional litigation, is the assertion of a claim in term so particular as to call to mind a specific right protected by the constitution, and the two cases cited within Ground One of petitioner's Amended Petition employ constitutional analysis in like fact situations. Petitioner cited to two state cases, In re Malon, 50 Cal. Rptr. 2d 281, 12 Cal. 4th 935, (1996); and In re Imbler, 35 Cal. Rptr. 293 (1963), both in which employed constitutional analysis. (See **Malone, supra, at 301; In re Imbler, supra, at 556)** Additionally, if state law, whether statutory or decisional, creates a liberty interest, the Due Process Clause requires fair procedures for it's vindication, and federal courts will review the application of those constitutionally required procedure. **(Swarthout v. Cook, (2011) _____U.S.____ [131 S.Ct. 859, 178 L.Ed. 2d 732].** In addition, if the error in interpretation or application of state law

is so egregious as to offend federal due process standards, federal habeas corpus may be available. (Hicks v. Oklahoma, (1980) 447 U.S. 343 [100 S.Ct. 2227, 65 L.Ed. 2d 175]. Many state law errors have federal constitutional dimensions, thus, based on all of the aforesaid, it is submitted and contended that, petitioner's False Evidence Claim in Ground One is cognizable.

After a conviction the prosecutor also is bound by the ethic of his office to inform the appropriate authority of after acquired information that casts "doubt" upon the correctness of the conviction. (Imble v. Pachtman, (U.S. Cal. 1976) 424 U.S. 409, 427, fn. 25; People v. Garcia, (1993) 17 Cal. App. 4th 1169, 1179 [22 Cal. Rptr. 2d 554, 550] ABA Model Code Prof. Responsibility, DR 7-103(b), EC 7-13; ABA Model Rule Prof. Conduct, Rule 3.8(d)).

The merits of the factual dispute here, was not resolved in the state court, for there was no evidentiary hearing regarding petitioner's false evidence claims. It is respectfully submitted and contended that, under the totality of the circumstances surrounding the lay-out of the crime scene, the prosecution's statements before the jury, and testimonial statements made by Renteria and Jesse Robles regarding their ability to see, petitioner was deprive of his clear right to a fair trial under due process of the law. Substantial material "or probative" false evidence was introduced against the petitioner in this case, and it cannot or should not be ignored that under the totality of the circumstances surrounding petitioner's False Evidence Claim, the jury was mislead and did not have before it, all relevant and accurate information to allow the jury to "properly" and "reliably evaluate the evidence."

Liberally construing petitioner's application for writ of habeas corpus and all other pleadings pro se, demanded the state court take different actions. The totality of the circumstances surrounding Renteria's testimonial evidence was crucial and had a damaging impact on petitioner's trial, therefore, the errors alleged were not harmless. Renteria testified that she got a "good look" at the driver's face, (3 RT 1230-1231, 1237). However, Renteria was under mistaken belief that she was only two car lengths away from the white van [about 35 feet][Exh. E 1806 of Amend. Pet.). She was impeached with evidence that she was actually mush farther away (Exh. E 1826, 1847 of Amend Pet.) Based on the evidence presented at Soto's trial and the assessor's map, she was at least 128 feet away (Exh. F; A 1-6, D; E 1816, 1821-1824 of Amend. Pet.) There is a material difference between 35 feet and "128 feet." While it may be possible for Renteria to see the driver's face in a car 35 feet away in daylight, it would have been physically impossible for her to get a "good look" at the driver's face from "128 feet away at night." (Exh. D and G of Amend. Pet.). Furthermore, it would have been physically impossible for her headlights to illuminate the interior of the white van at that distance.

At petitioner's trial, Renteria testified, "there was not a lot of cars in front. You could see there was not like big cars, vehicles. So you could see", (3 RT 1250). However, the evidence at Soto's trial shows there were two sedans, a large SUV, and a large dump work truck with wooden siding around the truck bed, parked in front of Renteria's vehicle, (Exh. A 1-6 of Amend. Pet.) without that contradictory evidence, the jury could not make a "reliable" determination about Renteria's ability to see. The additional significance here, is that the lay-out

of the crime scene, and the testimonial statements given by Renteria and Jesse Robles misled the jury and were ultimately false, and directly impacts their "ability to see." Petitioner contends and submits that, in a case solely based on eyewitness testimony, information that was not "presented" to the jury that undermines a witness(es) ability to see is crucial. Here, the false facts presented to the jury in petitioner's trial does not only impact Renteria's testimony, but also Jesse Roble's. Robles testified that, **"the headlights of Renteria's van illuminated the inside if the suspects van allowing him to see"."** (2 RT 952-953).

The prosecutor also highlighted and stated before the jury that, "the headlights" of Renteria's van **illuminated the inside of the suspect's van allowing them to see, and both Renteria and Jesse Robles confirms that that happened.** (5 RT 2733-2734). As stated before, Renteria testified she had a "good view of the driver" because the headlights of her vehicle hit/illuminated the interior of the suspects' van, (3 RT 1233, 1236, 1244, 1245). It is submitted and contended that, based on the totality of the circumstances, the lay-out of the crime scene, the vehicles parked on the road of 101st Street, the prosecution's statements before the jury, and the witness testimony, the evidence presented at Soto's trial in which impeached Renteria is significant. The suspects' van could not have possibly been illuminated by Renteria's vehicle because she was "parked behind" **a large dump truck with wood siding, an SUV, and two cars.** (See Exh. A 1; E 1847 of Amend. Pet.). Common-sense tells us that Renteria's headlights hit the tail end of the dump truck that was parked in front of her, and could not have illuminated the inside of the suspects' van.

Thus, under the totality of the circumstances surrounding the introduction of Renteria's false statements under oath, in conjunction with Jesse Robles and the prosecutor capitalizing on false facts, it can be said that the introduction of false testimony at petitioner's trial was not harmless. The photo's taken on the night of the murder---that were admitted at Soto's trial show Renteria's testimonial statements were false, and Jesse Robles' position that he was able to see the suspects van was illuminated by the headlights of Renteria's vehicle was also false. Here, we must look at the totality of the circumstances, and under the totality of the circumstances, respondent has not met it's burden to prove the constitutional error did not have substantial and injurious effect on the verdict. (**Payton v. Woodford, 346 F.3d 1204, 1216 (9th Cir. 2003)).** A new trial is required "if there is any reasonable likelihood that false evidence could have affected the judgment of the jury." (**Brown v. Borg, 951 F.2d 1011, 1015, quoting United States v. Polizzi, 801 F.2d 1543, 1550 fn. 2 (9th Cir. 1986)).** Additionally, and adding to the prejudicial impact of the introduction of the false evidence, Renteria was the only witness [out of the four witnesses who identified petitioner as the driver] who did not know petitioner, was not an NC gang member, and who appeared to be unbiased. Renteria's testimony, thus, bolstered the credibility of the three NC witness testimonies. The prosecutor strongly relied on that fact. During opening statements she told the jury, "[Y]ou will hear a witness by the name of Maria Renteria--who had nothing to do with either of the tagging crews in this case, she was just living at that location....like I said, she had nothing to do with any of the tagging crews in this case." (2 RT 908-909). During closing argument, she told the jury, "[O]ne thing

that's really noteworthy about Miss Renteria, she doesn't have anything
to do with NC. She doesn't have anything to do with NGA. She doesn't
have anything to do with anybody, so she's kind of an important witness
because she confirms, first of all that the driver of the van was a male
black...She was unable to identify the driver out of the photographic
six packs (line up), then low and behold, she comes to court and she
identifies the defendant. She, like Jesse Robles, saw directly into the
van with her headlights. So she "confirms" that that happened and also
saw the driver of the van as it drove by.--It was clearly a product of
what she remembered. When she saw the defendant in person, she recognized
him." (5 RT 2728-2729).

The prosecution also repeatedly emphasized to the jury that four
witnesses identified petitioner as the driver. She said, "[T]he defense
will try to make you believe that you didn't see four witnesses identify
the defendant as the driver." (5 RT 2742). "[F]our witnesses in this
case, four witnesses identified that man there as the driver. If it were
just Albert Segundo, maybe you'de be right not to convict. If it was
Jesse Robles, maybe you'de be right not to convict. But you are seriously
going to say that you don't believe four witnesses who identified him
as the driver of the van?" (5 RT 2760-2761). "[H]ow do you overcome four
people saying that he is the one who did it?" (5 RT 2762).

Further, respondent in the present matter seeks to capitalize on
false facts to support it's position as to the evidence being overwhelming
and the error harmless, (Resp. Answer, at pp. 6, 29; [see also LD I at
2, [where respondent in state court proceedings also relied on the false
facts].) It is submitted and contended that, the suspect's van could
not have possible been illuminated by the headlights of Renteria's vehicle

under the totality of the circumstances surrounding the lay-out of the
crime scene, the vehicles parked in front of Renteria's vehicle, and
the location of the suspect's van, Renteria's vehicle, and the vehicles
in front of Renteria. Thus, the headlights of Renteria's van could not
have illuminated the inside of the suspect's van "[a]llowing Renteria
and Jesse Robles to see." The totality of the circumstances surrounding
this matter deprived petitioner of his constitutional right to a
fundamentally fair proceeding, and/or resulted in a proceeding that was
unreliable given the totality of the circumstances (**Tejeda v. Dubois,
142 F.3d 18, 23 (1st Cir. 1998).** The ultimate mission of the system upon
which we rely to protect the liberty of the accused as well as the welfare
of society is to ascertain the "Factual Truth," and to do so in a manner
that comports with due process of law as defined by our Constitution.
(**Commonwealth of Northern Mariana Island v. Bowie, 243 F.3d 1109, at
1114 (9th Cir. 2001).** This important mission is utterly derailed by the
"unchecked lying witnesses, and by any law enforcement officer or
prosecutor who finds it tactically advantageous to turn a blind eye to
the manifest potential for malevolent disinformation," (id. at 1114).
Here, the prosecutor at trial entertained that tactical advantage of
turning the blind eye, the prosecutor capitalized on the false information
to support the witnesses ability to see, (5 RT 2733-2734). On direct
appeal respondent for the people made that same argument (Respondent's
Brief, at pp. 16-19). Additionally, during federal proceedings in this
same matter, respondent made and continues to make the very same argument,
(see Supp. Opposition Mem. to Petitioner's Motion to Amend. at p. 9;
Resp. Answer at pp. 6 and 29). All three representatives have deprived
petitioner of liberty through a deliberate deception of the courts and

jury by the presentation of testimony known to be perjured, **(Commonwealth of North Mariana Island, supra, at 1115).**

A lie is a lie, no matter what it's subject, and, "if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he/she knows to be false and elicit the truth, (id. 1115, quoting **Napue v. Illinois, (1959) 360 U.S. 264 [79 S.Ct. 1173, 3 L.Ed. 2d 1217, at 1177]).**

Here, the respondent, like the prosecutor at trial rather capitalize on the false evidence and facts, thereby, completely ignoring it's responsibility to correct it when it appears. As stated in **Napue,** "[t]he same result obtains when the state, although not soliciting false evidence, allows it to go un-corrected when it appears." **(Napue, supra, 360 U.S. at p. 269).** The duty, therefore, is and was on the prosecutor to correct the false testimony and facts, not only did the government fail to correct the false testimony and facts, but it capitalized on it in closing arguments, Jesse Robles also capitalized on the false facts when he testified Renteria's van "illuminated" the inside of the suspect's van allowing him to see, and respondent here also capitalizes on the false facts to support its position as to the evidence being overwhelming and therefore the error harmless, thus, the combined prejudice warrants reversal, **(U.S. v. Bigeleisen, 625 F.2d 203 at 207 (8th Cir. 1980)).** Here, the prosecution at petitioner's trial had to have known that Renteria was parked too far from the white van to have been able to get a good look at the driver. At ~~Soto's~~ ~~trial,~~ it knew that and was able to discredit Renteria's testimony by proving that she was parked much father away from the crime scene than she had remembered and that she was parked behind a large truck and several other vehicles. Given those

cicumstances, it would have been impossible for her to see what she testified she saw at petitioner's trial. thus, under the totality of the circumstances surrounding Renteria's testimony, the lay-out of the crime scene, the evidence presented at Soto's trial, and the prosecutor's capitalizing on the fals facts, it is submitted and contended that, the Court of Appeals denial resulted in a decision that was contrary to federal law and/or was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding, (28 U.S.C. Section 2254(d)).

## V.

### A. THE FACTS AND CIRCUMSTANCES OF GROUND TWO SET FORTH SUFFICIENT GROUNDS FOR WHICH RELIEF CAN BE GRANTED PURSUANT TO 28 U.S.C sec. 2254 AND ESTABLISHED FEDERAL LAW....

Petitioner's claim in Ground Two that his federal constitutional right were violated by admission of false evidence was unreasonably rejected on the merits by the California court of Appeal.

The "totality of the circumstances" surrounding Renteria's false testimony, deprived petitioner of his due process right as guaranteed by the 14th Amendment to the U.S. Constitution. A conviction obtained through use of false evidence denies a defendant the constitutional rights to due process and a fair trial. (Napue v. Peopel of the State of Ill. (1959), 360 U.S. 264, 269 [79 S.Ct. 1173, 3 L.Ed.2d 1217];

**Jackson v. Brown (9th Cir. 2008)**, 513 F.3d 1057, 1071–1072; 5th and 14th Amends.). Here, Renteria testified, **"there was not a lot of cars in front. You could see, there were not like big cars so you could see"**. (3 RT. 1250). However, the evidence at Soto's trial show's there were two sedans, a large SUV, and a large dump work truck with wooden siding around the truck bed, parked in front of Renteria's vehicle. (Exh. A 1-6 of Amend. Pet.). Jesse Robles testified that the headlights of Renteria's vehicle "illuminated" the inside of the suspect's van "allowing him to see". (2 RT. 952-953). The prosecutor also highlighted and relied on this false facts to support Renteria's and Jesse Robles's ability to see. The prosecutor stated, the "headlights" of Renteria's vehicle illuminated the inside of the suspects van allowing them to see, and both Renteria and Robles "confirms" that that happened, (5 RT. 2733-2734). The State Court of Appeal, and Respondent in the present matter also relies on the false facts to support the witnesses ability to see. It is submitted and contended that, the headlights of Renteria's vehicle could not have possibly illuminated the inside of the suspect's van allowing the witnesses to see. A factor in which can be demonstrated at an evidentiary hearing. The headlights of Renteria's vehicle hit the tail-end of the dump truck parked in front of her, and could not have illuminated the inside of the suspect's van "that was off-set from Renteria's vehicle". Under the "totality" of the circumstances surrounding the layout of the crime scene, the vehicles parked on the road of 101st street, the witnesses identifying positions and testimony surrounding this matter, and the states continued reliance on false facts to support it's position, it is submitted and contended that,