(see Traverse at pp. 45-46). In the Traverse it was further submitted that,the duty rest upon the federal court to decide for itself facts or constructions upon which federal constitutional issues rest. (Traverse, at 46;quoting Kern-Limerick v. Scurlock, (U.S.Ark.1954), 74 S.Ct. 403, 410, 347 U.S. 110). The State Courts, which are obliged, equally with the courts the Union,...to guard, enforce, and protect every right granted or secured by the Constitution of the United States. (see Traverse at 46, quoting Irvine v. Dowd, 359 U.S. 394, 404, 79 S.Ct. at 831 (1959); Robb v. Connolly, Ill. U.S. 624, 637, 4 S.Ct. 544, 551, 28 L.Ed. 542 (19884). Additionally, and as stated in petitioner's Traverse, the claime regarding the introduction of inadmissible information concerning petitioner's criminal history during it's deliberation, is clearly in the mainstream of constitutional litigation, is the assertion of a claim in term so particular as to call to mind a specific right protected by the constitu- tion, and the cases cited within what the Magistrate labels as Ground Four of the Amended Petition employ constitutional analysis in like fact situations. (Traverse at 46). Furthermore, the arguments surrounding the introduction to the jury of petitioner's criminal history are all tied together and interwoven, thus, under Mayle v. Felix, (U.S.2005), 125 S.Ct. 2562, at 2570, 2572, 2574-75, 545 U.S. 644, 664, the Magistrate erred in failing to entertaine the claim.

Petitioner did not take the stand on his on behalf, and all parties agree that the information received by the jury

was not intended to be included on the exhibit that was
admitted into evidence. (3 RT. 1531). We should not overlook
the fact that the jury went through "the entire deliberation
process" contaminated by knowledge of what has been
judicially determined to be inadmissible and prejudicial
information in the case at bar. (see People v. Holloway
(1990), 50 Cal. 3d. 1098 [disapproved on grounds in People
v. stanbury (1995), 9 Cal.4th 824, 830, fn.1], **the court
explained, it could not "overlook the fact one(1) juror
went through the entire guilt phase contaminated by knowledge
of what had been judicially determined to be inadmissible
and prejudicial information.** His silence exacerbated matters
because it prevented the court and counsel from taking any
action to remedy the situation". (Id. at p.1111). The Court
held that because it could not know, "and may not discover
under **Evidence Code Scetion 1150**" if the improper information
had influence on that juror, or what influence he had on the
other jurors, the presumption of prejudice had not been
rebuted. (Id. at pp. 1111-1112). In the case at bar, there
were at least four(4) jurors [Jurors No's 2, 5, 8, and 10]
who cannot be said to have not been contaminated by knowledge
of what has been judicially determined to be inadmissible and
prejudicial information. Notwithstanding, Juror number five(5)
confirmed that there was at most "a general discussion", and
that although she didn't think there was a whole lot of
discussion around the received information, **"IT WAS KIND OF**

82.

LIKE A WHITE ELEPHANT IN THE ROMM THAT YOU DON'T TALK ABOUT",
(4AugRT L12) [A factor in which stood out and could not be
forgotten or removed "from her minde"]. This commit is clearly
close to an admission to it being a factor in determining
petitioner's guilt. Even if there was not a long drown out
discussion surrounding the matter, the fact remains, the jurors
who seen the information went through the entire deliberation
process "mentally contaminated". Although one or two jurors
claimed it was stated that the said information was not supposed
to be considered, after this commit was made jurors continued
to look at the information concerning petitioner's criminal
history. (4AugRTL18). If the jurors really sought to entertain
the commit about not considering the information concerning
petitioner's criminal history, then the said information would
not have continued to be passed around and viewed by other
jurors, mentally contaminating themselves. The jury having
failed to report the matter to the court prevented the court
and counsel from taking any action to remedy the situation. (
People v. Holloway, supra, 1111). Juror No. Five understood
the information that petitioner had been charged with having
stolen property; having "a loaded firearm" that was probably
prohibited; and carrying a "loaded firearm. (4AugRTL 16). This
was a murder case that envolved the use of "a firearm", and
the information exposed to the jury put a loaded firearm in
petitioner's position shortly before the crime in question.
Although California Evidence Code tied the hands of Juror

83.

number 5, we should not ignore that this wasn't a case in
which juror number five was seeking to simply impeach the
verdict, but a case where she simply exposed what occurred
during deliberation, and expressed it's impact by stating,
<u>"I KNOW FOR A FACT THAT THE DETAILS OF HIS PRIOR ARREST INF-</u>
<u>LUENCED THE JURY'S DECISION IN DETERMINING THE FINAL</u>
<u>VERDICT"</u> (3AugRT H4-5; 2CT 229), juror number 5's hands
were not tied when she wrote this letter to the court, and
she was not the cause of the information having been sent
to the jury.

When the trial court held individual hearings regarding
this matter, the following was discovered:
One Juror had "pointed out" the arrest information to other
jurors. (4AugRT L12, M18-19). One Juror heard another juror
comment that it should not be considered (4AugRT L12, N12),
however, after this commit was made jurors in disregard for
the commit continued to read and pass along the information
throughout the entire deliberation process. (4AugRTL-18).
Several jurors saw the arrest record and understood it ment
that <u>"petitioner had a prior criminal history"</u>. (AugRT L12,
16, 18, N3, 6-9, 11-12). Juror No. 2 remembered that somebody
had noticed the arrest record among the vast array of exhibits
**"and pointed it out to the other jurors by saying,** <u>"LOOK AT</u>
<u>THIS"</u>. (4AugRTM18-19), she was one of the jurors who looked
looked at the information about petitioner's criminal history.
(4AugRTM19-20). She understood it to mean that petitioner

had been arrested with a firearm. **(4AugRTM14)**. She further recalled that **"a couple times people said, WELL, NEITHER FELONS WERE CHOIR BOYS, the victim nor the accused**. **(4AugRT M17, emphasis added.).** Juror No. 4 saw the backside of the Exhibit and remembered it was about **a conviction** or a previous incidecnt that petitioner may have been involved in. **(4AugRT N3)**. One Juror had **"expressed surprise"** that it had been **"admitted as evidence".** (4AugRTN4). Juror No. 8 saw the backside of the exhibit and remembered it was some kind **of criminal record**. **(4AugRT N6-7)**. Exhibit No. 3 had given her the impression that petitioner **had a previous "criminal record".** **(4AugRT N8-9)**. Juror No. 11 saw the backside of Exhibit No. 3 and was aware that petitioner might have had **a"past criminal history".** She said it did not really play "much of a role". (4AugRT N11-12) Someone had pointed the information out but **"the foreperson"** said they should not be using that information, just the information that was presented at trial. (4AugRT N12). However, in contradiction of this position taken by juror No. 11, Juror No. 9 **("the jury foreperson" (see 1 CT 187))** did not remember any discussion about evidence that had not been properly submitted to the jury and would have remembered if he had been told about it.(4AugRT O9), he further did not look at the backside of Exhibit No.3 **(4Aug RT 08).**

The record shows six jurors--half of the jury--remember seeing the booking information; Jurors No's 2, 4, 5, 8, 10,

and 11 saw the booking report and knew what it was. (see AugRT L12, M6, M14, 17, N3, 6-9, 11-12).

The police report indicated that petitioner was charged with "CCW IN VEH W/PR FEL CONV". (Attachment 1 of Amend. Pet.; Trial Exh. No 3). In this age of text messaging and vehicle plates using abbreviations for common words, while the meaning of "CCW" [the acronym for "carrying concealed weapon"] may not be obvious, "IN VEH W/PR FEL CONV" can easily be understood to mean "in vehicle with a prior felony conviction". This charge apprised the jury that petitioner "was a felon with a prior criminal record. (Cf.Peoplele v. Stinson (1963) 214 Cal. App.2d 476, 480 [reference to defendant's parole status].). Significantly, the statement, "Well, neither of these felons were choir boys, the victim nor the accused" (AugRT M-17, ----emphasis added), shows that Juror No. 2 (who reported ----hearing that statement) and the juror who made that ----statement were influenced by the arrest information. There was no other evidence presented at trial that petitioner was a felon.

As stated earlier, and in petitioner's Traverse "in relation to Ground Four", the forwarding of petitioner's criminal history to the jury deprived petitioner of the right to confrontation under "the 5th and 14th Amend. to the U.S. Const. (anti 80-81). The Magistrate erred in it's position Ground Six of Amended petition was that of state law only, and said claim is not cognizable on federal habeas review. The cases cited within what is labeled as Ground 6 is clearly the

mainstream of constitutional litigation, is the assertion
of a claim in term so particular as to call to mind a specific
right protected by the constitution, and the cases cited
within Ground 6 employ constitutional analysis in like
fact situation. It is submitted and contended that, the duty
rest upon the federal court to decide for itself facts or
constructions upon which federal constitutional issues
rest. (Kern-Limerick v. Scurlock, supra, at 410). The state
copurts, which are obliged, equally with the courts of the
Union,---to guard, evforce, and protect every right granted
or secured by the Constitution of the United States. (**Irvine
v. Dowd, supra, at 404, quoting Robb v. Connolly, Ill. supra,
637**). Additionally, all the claims surrounding the introduction
to the jury of petitioner's arrest and criminal history are
tied to a common core of operative facts, are tied together
and/or interwoven, thus, under **Mayle v. Felix, supra, at 2570,
2572, 2574-75,** the federal court is authorized to entertain
what is labeled as Ground 6. The court erred in failing to
do so . Notably, A careful review of how petitioner's amended
petition is formatted shows that that in which is labeled
as Ground are actually sections pertaing to main grounds.
Thus, the court erred in failing to entertain the claim.

The State Trial Court violated the mandates of **Evidence
Code § 1150 (Evidence to test a verdict)** under these circumst-
ances, once a state court has in effect a law and/or set of
laws that give an individual a **"liberty interest"** and in
turn applies those law(s) in an arbitrary manner, this creates

87.

a **Due Process** violation within the purview of **Hicks v. Oklahoma, 447 U.S. 343, 346 (1980).** At the outset, under both the California and Federal Constitution it is well settled that the accused has an inalienable right to have a fair impartial jury of twelve(12) persons:

> "[U]nderlying our review is the obvious principle that a litigant in a jury trial has a constitutional right to a fair trial by 12 impartial jurors. The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to a trial guaranteed by the constitution".
> **(Tapia v. Barker (1984) 160 Cal.App.3d 761, 765, 206 Cal.Rptr. 803).**

This idea was made clear by the United States Supreme Court in **Irvin v. Dowd, 366 U.S. 717,** cited with approval in **Turner v. Louisiana, 379 U.S. 466 (1965):**

> "[I]n essesnce, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process".
> **(Turner, supra, 379 U.S. at 471-472).**

Given the admission by juror number 5's letter that she knew for a fact that the information concerning petitioner's prior arrest and criminal history influenced the jury's decision in determining the final verdict, which was provided at a point where her hands were not tied based upon Evidence Code Section 1150, it is clear this error was not harmless. Petitioner effectively was deprived of his constitutional right to confrontation and cross-examination. (Hughes v. Borg

88.

898 F2d 695, 700 (9th Cir.1990); Sassounian v. Roe, 230 F3d. 1097, 1108, (9th Cir.2000)).

Additionally, regarding the claims the Magistrate failed to entertain, the Magistrate ignores the fact that, State errore taken together denies a petitioner a fair trial, such as the compounded state errors in the case at bar. (Estelle v. McGuire, 502 U.S. 62 (1991). In accordance with Remmer, outside influences upon a jury raises a presumption of prejudice that imposes a "heavy burden" on the State to overcome by showing that the influences were harmless. (see Remmer v. U.S., 347 U.S. 227, 229, 74 S.Ct. 450, (1954) [The burden rests "heavily" upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.].).

Based on petitioner's Amended Petition, the Traverse, and this Objection, it is submitted that, reasonable jurist could debate whether (or, for that matter agree that) the petition regarding what the Magistrate labels as ground Four and Six should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. (Slack v. McDaniel, supra, 120 S.Ct. 1595).

Additionally, the Magistrate ignores, if state law, whether statutory or decisional, creates a "liberty interest", the Due Process Clause requires fair procedures for it's vidication, and federal courts will review the application of those constitutionally required procedures. (Swarthout v.

89.

Cook, (2011) ____U.S. ___[131 S.Ct. 859, 178 L.Ed.2d 732].).

**RELIEF IS WARRENTED WITH RESPECT'S TO GROUND
5 AND 9 OF THE AMENDED PETITION, THE MAGISTRATE
ERRED IN CONCLUDING OTHERWISE...**

In Ground 5, Petitioner claims he was denied his federal
constitutional rights to an impartial jury and due process
by the jury's receipt during deliberations of prejudicial
information about his criminal history that had not been
presented at trial. Additionally,, in Ground 9, petitioner
claims that the error in the introduction of the information
about his criminal history, whether by the trial court, the
jury, the prosecutor, or trial counsel, violated petitioner's
federal constitutional right to an impartial jury and due
process of law.

Pursuant to the Sixth Amendment, a criminal defendant
has the right to confront and cross examine those who teetimony
is used against aginst him. (see Pennsylvania v. Ritchie,
480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987).
Acordingly, a verdict in a criminal case must be based
solely on evidence presented at trial. (Turner v. Louisiana,
379 U.S. 466, 472-73 (1965) ["in the constitutional sense,
**trial by jury in a criminal case necessarily implies at the
very least that the evidence developed against a defendant
shall come from the witness stand in a public courtroom
where there is full judicial protection of the defendant's
right of confrontation, cross-examination, and counsel".]**
(internal quotation marks ommitted). Exposure to information

90.

not in evidence may deprive a defendant of his "rights to confrontation, cross examination, and the assistance of counsel embodied in the Sixth Amendment". (lawson v. Borg, 60 F.3d 608, 612 (9th Cir. 1995); see also Bayramoglu v. Estelle, 806 F.2d 880, 887 (9th Cir. 1986); Estrada v. Scribner, 512 F.3d 1227, 1238 (9th Cir.) ("A juror's communication of extrinsic facts implicates the Confrontation Clause".), cert. denied, 554 U.S. 925 (2008); Jeffries v. Wood, 114 F.3d 1484, 1490 (9th Cir.) ("When a juror's communicatyion objective extrinsic facts regarding the defendan or alleged crimes to other juror, the juror becomes an unsworn witness within the meaning of the Confrontation Clause".), cert. denied, 522 U.S. 1008 (1997).

While the Magistrate cites to Blair v. Chrones, 452 Fed.Appx. 752, 753, 2011 WL 4621002, at *1 (9th Cir. Oct. 6, 2011), where the court denied relief regarding jury misconduct, however, in doing so the cort acknowledged that the trial court properly instructed and admonished the offending juror, thus, although the trial court was unaware of the misconduct at the time, it effectively gave a curative instruction when it directed the jury to the appropriate jury instruction explaining the term reasonable and heat of passion. (Id. at 754, *4). Furthermore, the court concluded that the evidence "was overwhelming", and therefore, the introduction of dictionary definitions did not substantially and injuriously affect or influence the jury's verdict. (Id. at 754). Blair was not contending she didn't shoot the victim, and the record showed uncontested that Blair

shot  a refle at the victim "six times". the record further showed the victim was running away from Blair at the time the shots were fired. (Id. 754). **Blair's guilt was clear**, here only defense and/or position was that the killing was in self defense, however, Blair's shooting of the rifle (aimed or unaimed) six times at the victim while he was running away constitutes substantial evidence for the jury to find that Blair's actions demonstrate a conscious disregard for life.(Ibid.). In the case at bar, contrary to the Blair case, the jury was not admonished and the evidence is not overwhelming, petitioner did not admit to this crime because he is innocent. **see anti at pp. 15-52, 77-79.**

Factors in determining whether the extrinsic information prejudicially affected the deliberations include:

> "(1) whether the extrinsic evidence was actually received, and if so, how; (2) the length of time it was available to the jury; (3) the extent to which the jury discussed and considered it; (4) whether the materal was introduced defore a verdict was reached, and if so, at what point in deliberations it was introduced; and (5) any other matters which may bear on the issue of whether the introduction of extrinsic material substantially and injuriously affected the verdict.

> **(Lawson v. Borg, 60 F3d 608, (9th Cir. 1995)**

Adressing each of these points in relation to the facts of petitioner's case, petitioner has and will demonstrate the information received by the jury concerning petitioner's prior arrest and criminal history violated his constitutional rights, and was prejudicial.

92.

(1), it is undisputed that the information regarding petitioner's prior arrest and criminal history was "actually received" by the jury, In inquire regarding the matter several jurors recalled seeing the extrinsic evidence. see anti 82-86. (2) The length of time in which the information was available to the jury was **"the entire deliberation process"**, even after someone made the commit we should not be looking at the information. (see 4AugRT L10, L17-18). (3) The extent to which the jury discussed and considered it, the jury made several comments and according to juror No. 5 there was a "general discussion" surrounding the information, additionally, although juror No 5 stated there was not a hole lot of discussion around it, IT WAS KIND OF LIKE A WHITE ELEPHANT IN THE ROOM THAT YOU DON'T TALK ABOUT. (see 4 AugRT L12). Juror No. 2 remembered that somebody had noticed the arrest record among the vast array of exhibit and "pointed it out to the other jurors" saying LOOK AT THIS". (4AugRT M18-19) - A "couple of times" people said, 'Well, neither of these **felons** were choir boys, the victim nor the accused. (4AugRT M17). Which shows that Juror No. 2 (who reported hearing that statement) and the person who made that statement were influenced by the arrest information. There was no other evidence presented at trial that Petitioner was a felon. As stated before, in to-days age of text messaging and vehicle plates using abbreviations for common words, in reference to trial Exhibit No. 3, the police report in which indicate petitioner was charged with **"CCW IN VEH W/PR FEL CONV" ca** easily be understood to mean **"in vehicle with a prior felon conviction"**. The charge apprised the jury that petitioner wa

a felon with a prior criminal record. **(Cf. People v. Stinson (1963), 214 Cal.App.2d 476, 480). It is also evident that,** the juror who **pointed out** the arrest information by say ing "outloud", **"Well, he was arrested for carrying a loaded weapon before",** (4AugRT L–12), thought the arrest information was significant. Although there may not have been a long drown out discussion amongst the jurors regarding there exposure to petitioner's arrest and criminal history, it is unfair to ignore the fact that, all the juror who seen the information went through the "entire" deliberation **mentally contaminated.** Although it was claimed a juror stated we shouldn't consider the information, in complete disregard for the commit other jurors continued to look at the information concerning petitioner's criminal history. **(4AugRTL18). Clearly the jury considered and discussed the information. see anti pp. 82-86.** Point **(4),** whether the material was introduced before a verdict was reached, and if so, at what point in the deliberations it was introduced. It is undisputed and clear that the material regarding the introduction to the jury of petitioner's arrest and criminal history was available during the entire deliberation process, thus, on the first day of deliberation and throughout it. **(4AugRT.L18).** As to the final point, **point (5) any other** matters which may bear on the issue of whether the introduction of extrinsic material substantially and injuriously affected the verdict.

94.

Here, it was substantially likely that the extraneous material surrounding the introduction of petitioner's prior arrest and criminal history influenced the jury. Evidence of a defendant's prior arrest and criminal history, in this case was inherently prejudicial. **(United States v. Phillips, (7th Cir.1968), 401 F.2d 301, 305; People v. Thompson, (1980) 27 Cal.3d 303, 314; Dickson v. Sullivan, 849 F.2d 403, 406 (9th Cir.1988); United States v. Lewis, 787 F.2d 1318, 1323 (9th Cir.1986), [observing that it is extremely difficult for jurors to ignore prior convictions when determing guilt], modified, 798 F.2d 1250).** The arrest evidence that was introduced to the jury during deliberation was particularly prejudicial here because it was the only evidence that associated petitioner and his activities with a gun, it put a loaded gun in petitioner's hands just one month before the murder, and further was the only evidence that revealed petitioner was a **"convicted felon"**. As stated before, the charge **CCW IN VEH W/PR FEL CONV** can easily be understood to mean in vehicle with prior felony conviction. Juror No. 2 testified, a "couple of times" people said, 'Well, neither of these **felons** were choir boys, the victim nor the accused. **(4AugRTM17)**. The material exposed to the jury was the only evidence that revealed petitioner was a convicted felon. Juror No. 2 who reported hearing this statement and the juror who made the statement were influenced by the information of petitioner's prior arrest and criminal

95.

history. As Juror No. 5 so aptly stated, **it was like a white elephant in the room,** (4AugRTL12) [something that stood out and could not be ignored or forgotten in her mind]. It is clear that, to tell a jury to ignore a defendant's prior conviction in determining guilt is to ask human beings to act with a measure of dispassion and exactitude well beyond mortal capacities. **(Dickson, supra, at 408). This is especially so, where as in the case at bar, Petitioner was deprived of his right to confront, cross-examine, and rebut the evidence. (Id. 408; Turner v. Louisiana, supra, 379 U.S. 39, at 51).** Additionally, a factor in which should not be ignored, Juror No. five's letter   clearly stated, "I know for a fact that the details of his prior arrest influenced the jury's decision in determining the final verdict", she made the statement at a point where her hands were not tied by the court. (3AugRT H4-5; 2 CT 229).

THE JURY INSTRUCTION...

Here, the jury was not instructed with **CALJIC No. 2.50;** see People v. Price (1991) 1 Cal.4th 324, 431, which would have told it, **"Other crimes"** evidence if believed may not be considered by you to prove that the defendant is a person of **"bad character or that he has a disposition to commit crimes".** Additionally, any presumption that the jury heeded the admonition to only consider the evidence presented at trial was rebutted by the very fact of Juror No. 5's letter indicating she **did not know** if the jury should have considered the arrest evidence--which implies that she did. (2 CT. 229 [Since Mr. Coleman's past was not brought up

96.

during the hearing, I have been wondering whether the information about his previous arrest should have been presented to the jury during the deliberation process.]). While Juror No. 11 stated that the arrest information did not play much of a role (**4AugRT N11**), and Juror No. 2 said, it was just a very small item that was part of the whole thing we had (**4AugRT 17**), their statements imply that, as to those two jurors, it was a factor, albeit a minor one [although it should not have been a factor at all], in determining petitioner's guilt. The admonition to only consider the evidence presented at trial did not cure or neutralize the harm regarding the introduction to the jury of petitioner's arrest and criminal history, the said admonition failed to mention the specific issue regarding the jury's exposure to petitioner's prior arrest and criminal history/bad acts, additionally, no curative instructions were given "**immediately after the damage was done**". (**see U.S. v. Sanchez, (C.A.9 (Cal.)2011), 659 F.3d 1252, at 1258; United States v. Kerr, 981 F.2d 1050, 1054 (9th Cir. 1992).**). Limiting instruction, such as were given here, did not eliminate the risk of prejudice. In any event, "**the naive assumption that prejudicial effects can be overcome by instructions to the jury, (citation) all practicing lawyers know to be unmitigated fiction**". (**Krulewitch v. United States (1949), 336 U.S. 440, 453, 69 S.Ct. 716, 93 L.Ed. 790).** (fn4) As the Supreme Court of Washington pointed out: "it seems too plain for argument that to place before a jury the charge in an indictment, and offer evidence on trial as a part of the

97.

State's case that the defendant has previously been convicted
of one or more offenses is to run a great risk of creating a
prejudice "in the minds" of the jury that no instruction of
[119 Cal.App.3d 651] the court can wholly erase, and, while
appellate courts will presume that the jury has followed the
instructions of the court, **we cannot blind our eyes to the
active danger ever lurking in such action. (State v.
Kirkpatrick, (1935), 181 Wash. 313, 43 P.2d 44, at 45).**
Furthermore, empirical data supports the conclusion that a
jury is likely to be influenced by a defendant's **"past
reocrd"**, such as in the case at bar. **(see Kalven & Zeisel,
The American Jury (1966), pp. 127-130, 177-180).** The
Magistrate suggest that, the record concerning petitioner's
prior bad acts only reflect that petitioner was arrested,
not that he was convicted on any counts. (R&R, at 47).
However, the charges revealed that petitioner was a
**"convicted felon in possession of a firearm". (see anti
85-86, 93, 95-96).** Additionally, it has long been held that
evidence of an accused "prior arrest" is inadmissible.
**(People v. Hamblin, (1985) 68 Cal. 101, 103, 8 P. 687 [a
person is protected by the legal presumption of innocence];
People v. Arlington (1899), 123 Cal. 356, 357; People v.
Guiterrez (1957), 152 Cal.App.2d 115, 120; People v. Medina,
(1995) 11 Cal.4th 694, 769).** The record shows that the
parties agreed that the prosecutor would not bring in
evidence of petitioner's prior arrest. (3 **RT.** 1531). Nor
should we ignore that petitioner did not take the stand. As

similar to the case at bar, in People v. Anderson, the
admission of **"the prior arrest"** must be deemed prejudicial
error, given the fact that the record revealed a battle over
credibility. (**People v. Anderson, (1978), 143 Cal.Rptr. 883,
at 884-85, 20 Cal.3d 647, 650-61 ; U.S V. Sanchez, supra, 1260**).
THE TIMING OF THE ERROR:

Because the sole issue in Petitioner's case centered on
witness credibility, the introduction to the jury of
petitioner's prior arrest and criminal history "during
deliberation", at a time where it was one of the last highly
prejudicial pieces of information/evidence the jury received,
**"the timing of the error increased the risk that the
inflammatory and prejudicial information impacted the jury".
(see U.S. v. Sanchez, supra, 659 U.S. 1252, 1259-1261).**

As stated before, the evidence against petitioner is not
so overwhelming so as to rebut the prejudice arising from the
error complained of. **see anti 15-52, 77-79.** Thus, due to the
time in which the jury was exposed to petitioner's prior
arrest and criminal history, and the length of time it was
available to the jury **[the entire deliberation process]**, the
prejudicial impact was likely significant. The issue here, is
that it occurred during deliberation and throughout,
therefore was one of the last highly prejudicial pieces of
information/evidence the jury had before it. **(U.S. v.
Sanchez, supra, 1259, quoting United States v. Carter, 236
F.3d 777, 788 (6th Cir. 2001).**

As stated in Lawson, Jury exposure to facts not in evidence "deprives" a defendant of the right to confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment. (Lawson v. Borg, supra, at 612, quoting Dickson v. Sullivan, supra, at 406; Jeffries v. Blodgett, (9th Cir.1993) 5 F.3d 1180, 1191 [introduction of "prior bad acts" evidence during deliberation constitutes error of constitutional proportion, cert. denied, 510 U.S. 1191, 114 S.Ct. 1294, 127 L.Ed.2d 647 (1994).]).

As stated before, the **"timing of the error"**, and because the court did not find out about the error in this case until "after" the verdict, therefore, the jury was never told by the judge not to consider the extraneous evidence, reversal is warrented. (U.S. v. Sanchez, supra, 1259-61; see also Sassounian v. Roe, (C.A.9(Cal.)2000), 230 F.3d 1097, at 1110-1112).

Based upon the Amended Petition, petitioner's Traverse, and this Objection and request for C.O.A, reasonable jurist could debate whether (or, for that matter agree that) the petition regarding that in which is labled as Ground 4,5, and 9 should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further". (Slack v. McDanieal, supra, 120 S.Ct. 1595).

## OBJECTIONS
### VIII.

**THE MAGISTRATE ERRED IN FAILING TO RECOMMEND RELIEF RELATING TO GROUND 7, WHERE THERE WAS PROSECUTORIAL MISCONDUCT DUE TO THE PROSECUTOR'S PLACEMENT BEFORE THE JURY OF THE UNREDACTED EXHIBIT CONTAINING PETITIONER'S ARREST AND CRIMINAL HISTORY, COUPLED WITH THE PROSECUTOR'S REPEATED REFERENCE TO PETITIONER HAVING BEEN BOOKED DURING THE EXAMINATION OD DEPUTY MARELLA, IN VIOLATION OF PETITIONER'S DUE PROCESS RIGHT**

The Magistrate concluded the evidence aginst petitioner was of such strength that, petitioner was not prejudice by the prosecutor's use of the terms "booking and booked", and further concluded the prosecutor's comments did not result in "additional prejudice" in light of the jury's receipt of petitioner's booking/criminal history during deliberations. (see R&R p. 50, lines 17-22). Petitioner objects, as stated before, the evidence against petitioner is not of such significance to rebut the prejudice arrising from the errors complained of. see anti pp. 15-52, 77-79. The Magistrate stated, deputy Marella did not directly testify that petitioner had been arrested or booked; he only used the term "booking cell" once while testifying about the procedure followed before petitioner was photographed. (R&R p.50 lines 24-26). However, the Court correctly stated at a point when the prosecutor attempted to downplay the issue by stating she didn't think the jurors knew what a booking photo necessarily was, **"I THINK EVERYBODY DOES"**. (3 RT. 1531).

The record shows the prosecutor's improper placement of the arrest information before the jury was not an isolated act. During the prosecutor's examination of Deputy Steven Marella, the prosecutor asked him if, on April 5, 2003, when he had contact with petitioner, he had petitioner take a **"booking photograph"?** Merella answered "yes". The prosecutor followed that with several questions using the word **"booked"** or **"booking"** seven times. (3 RT. 1529-1530). A reasonable

101.

juror would have inferred from the "booking" references that petitioner had been **"arrested at that time".** (3 RT. 1531). As stated, evidence of "prior arrest" is inadmissible and prejudicial. **(People v. Hamblin, supra, 68 Cal. 101, 103; People v. Arlington, supra, 123 Cal. 356, 357; People v. Guiterrez, supra, 152 Cal.App.2d 115, at 120; People v. Medina, supra, 11 Cal.4th 694, 769; People v. Anderson, supra, 143 Cal.Rptr. 883, 884-85).** The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. **(Darden v. Wainwright, (1986), 477 U.S. 168, 181 [106 S.Ct. 2464, 91 L.Ed.2d 144]; U.S. Const. 14th Amend.).**

The Magistrate, in support of it's denial for relief not only references to the evidence as being overwhelming, but also incorrectly states that, Petitioner was driving around the neighborhood the day of the murder asking about the whereabouts of the victim because petitioner's brother had been attacked by the victim with a bat on the same day (R&R p.51 Lines, 13-16), petitioner objects, the record does not support that "Petitioner" was going around "looking for" the victim. The record shows that Lopez testified Jose Robles (victim) was still there amongst the group of people when petitioner asked which one of you was trying to fight my brother. (3 RT. 1605, 1604-1605). When

102.

no one responded to the one question petitioner asked "the victim" and his friends, which one of you was **trying** to fight by brother, petitioner simply left and told his brother not to go back to that area. (3 RT. 1613-14; 4 RT. 2112). Thus, petitioner was not "looking for" Jose Robles (victim), he was there amongst the group of people petitioner confronted, nothing happened, petitioner simply left and went along with his normal day. (4 RT. 1881-1884; 3 RT. 1636-1642; 5 RT. 2407-2411, 2425-26; 2467; 4 RT. 1892-93).

The Magistrate points to the jury having been instructed that statements made by the attorney's are not evidence. (R&R p.51 Lines 16-18). However, prejudicial comments came from both the prosecutor and the testifying witness Deputy Marella, effectively becoming a part of the evidence presented "during trial". The jury was exposed to the fact that petitioner had been booked [that esialy being understood as being arrested] during the testimony of deputy Marella. (3 RT. 1529-1530). This, "in combination" with the jury receiving the prejudicial information concerning petitioner's prior arrest and criminal history "during deliberation", violated petitioner's constitutional right to due process. **(14th Amend. U.S. Const.).** Since the present case boiled down to a battle over credibility, the prosecutor's comment's during the examination of deputy Marella "coupled with" the

103.

prsecutor sending the unredacted exhibit containing petitioner's prior arrest and criminal history to the jury "during deliberation", posed a real danger to petitioner's right to a fair trial. (**U.S. v. Sanchez, supra, 659 F.3d 1252, 1257-1260**). It is not necessary for the prosecutor to act in bad faith. Even unintentional acts may constitute misconduct. (**People v. Hill, (1998), 17 Cal.4th 800, 822-823**). The focus of inquiry is on the potential injury to the petitioner, not the motive of the prosecution. (**People v. Sanders, (1995) 11 Ca.4th 475, 526**).

Subsequently to the prosecutor's improper questioning of Deputy Marella, the prosecutor placed the police information about petitioner's April 6, 2003 arrest among the exhibits that were given to the jury. This second act of misconduct--sending back the unsanitized arrest/booking report--accomplished the very danger defense counsel had sought to avoid during Deputy Marella's testimony.

Furthermore, in opposition to petitioner's new trial motion, the prosecutor exploited the erroneously admitted evidence relating to Deouty Marella's testimony by arguing that because the jury had already been told that petitioner had been booked, any prejudicial effect of the arrest information was "lessened". (see 2CT. 256, 261; **People v. Wagner (1975) 13 Cal.3d 612, 620-621** [prosecutor's misconduct in implicating defendant in "prior criminal acts"].).

Trial counsel did not specifically object on the ground of prosecutorial misconduct to any of these instances of misconduct. Notwithstanding, he pointed out the nature of the first error because he wanted to make sure it did not happen again. When the second error occurred, he had no opportunity to object because he did not know that trial Exhibit No. 3 had not been redacted. Therefore, no objection could be made under these circumstances. **(People v. Hill, supra, 17 Cal.4th at pp. 820-821)**. Moreover, by raising the issue in his new trial motion, defense counsel gave the court ample opportunity to address the error. **(People v. Bonin, (1988), 46 Cal.3d 659, 689, overruled on other grounds in People v. Hill, supra, 17 Cal.4th at p.823, fn.1).**

During the juror hearings, the prosecutor stated, "[I]n a perfect world I would not have sent that exhibit back because normally I wouldn't have wanted to send that exhibit back". **(4AugRT L22).** But she claimed that the defense had waived the issue for failing to object and argued that it was proper for the jury to consider the evidence of petitioner's prior arrest because of the defense failure to object. **(4AugRT L22, 25).** defense counsel argued that he and the prosecutor had discussed the exhibit and that it was supposed to be cut or blacked out. **(4AugRT L23).**

Common sense dictates it was the prosecutor's responsibility to redact the inadmissible information

about petitioner's prior arrest because she proffered that
exhibit. The prosecutor had ample notice that when an
exhibit combines admissible and inadmissible evidence, the
inadmissible part should be removed. Earlier in the trial,
the defense objected to the prosecutor's exhibit that
combined a receipt from Jack in the Box into a single
exhibit--both were copied onto the same sheet of paper.
Because no evidence had been presented relating to the Jack
in the Box receipt the trial court sustained the defense
objection to it. When the prosecutor explained it was on the
same page as the Blockbuster receipt, the trial court told
her, "Cut it off". **(5 RT. 2446-2447).** It would have been a
simple matter to use the same pair of scissors to cut off
the inadmissible booking information that exposed
petitioner's arrest and criminal history.

Here, all three instances of prosecutorial misconduct
must be considered together: Marella's testimony set the
stage for the arrest report that was received by the jury,
which in turn was used by the prosecutor to persuade the
trial court that the arrest report was harmless error. In
combination they "infected the trial with such unfairness as
to make the resulting conviction a denial of petitioner's
due process right". **(Darden v. Wainwright, supra, 477 U.S.
at 181; U.S. Const., 5th & 14th Amends; Martin v. Parker, 11
F.3d 613, 617 (6th Cir. 1993); Alcala v. Woodford, 334 F.3d
862, 882-83 (9th Cir. 2003).).** Furthermore, as will be
discussed further below, had the prosecutor refrained from
the misconduct, "it is reasonable that a result more

more favorable would have occurred". **(People v. Sassounian, (1986), 182 Cal.App.3d 361, 391)**. The evidence in this case was not so overwhelming so as to rebut the prejudice arising from the errors complained of, this is especially so given that the present case boiled down to a battle over credibility. <u>see anti pp. 15-52, 77-79; U.S. v. Sanchez, supra, 659 F.3d 1252, 1260)</u>.

Based upon the Amended Petition, petitioner's Traverse, and this Objection and request for Certificate of Appealability, reasonable jurist could debate whether (or, for that matter agree that) the petition regarding that in which is labled as Ground Eight(8) should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further". **(Slack v. Mcdaniel, supra, 120 S.Ct. 1595)**.

Petitioner Notes, in relation to the Jury Misconduct Claim, it is a mixed question of law and fact, reviewed de novo. <u>**(Sassounian v. Roe, (C.A.9 (Cal.)2000), 230 F.3d 1097, at 1108, quoting Rodriguez v. Marshall, 125 F.3d 739, 744 (9th Cir.1997).), and it is respectfully pleaded that the said and related claims be reviewed anew.**</u>

OBJECTIONS

IX.

THE PROSECUTOR CLAIMED THERE WAS NO ERROR
OR PREJUDICE IF DEFENSE COUNSEL WAS
INEFFECTIVE FOR FAILING TO OBJECT IN
REGARDS TO THE JURY'S EXPOSURE TO
INADMISSIBLE AND PREJUDICIAL INFORMATION,
THE MAGISTRATE ERRED IN FAILING TO
CONSIDER THE CUMULATIVE IMPACT OF TRIAL
COUNSEL'S FAILURES

A defendant's right to assistance of counsel guaranteed by both the Sixth Amendment to the United States Constitution, and article I, section 15 of the California Constitution, "entitles the defendant not to some bare assistance but to effective assistance". [citation]. Specifically, it entitles him to the "reasonably competent assistance of an attorney acting as his diligent conscientious advocate" to protect the defendant's right to a trial **that is both fair in the proceeding and reliable in the result. (United States v. DeCoster, supra 487 F.2d 1197, at 1202; Strickland v. Washington, supra, 688; People v. Ledesma, supra, 43 Cal.3d 171, 215).** A petitioner may demonstrate that the **"cumulative"** effect of counsel's individual acts and/or ommissions was substantial enough to meet **Strickland's** test. **(see Williams v. Washington, 59 F.3d 673, at 682, (C.A.7 (Ill.) 1995).).** As in the case at bar, trial Counsel's individual acts and/or ommissions **when looked at cumulatively** was prejudicial. **(Ibid.)** Trial Counsel was ineffective due to his many failures, **see anti pp. 75-80,** that including him having failed to object to prosecution misconduct, failing to check the exhibit before

it was given to the jury, and/or failing to properly raise and preserve the issues relating to the jury's exposure of inadmissible and prejudicial information concerning petitioner's prior bad acts and having been booked/arrested. (E.g., In re Jones (1996) 13 Cal.4th 552, 571-73 [ineffective assistance for failing to present strongest ground for exclusion of evidence and for eliciting highly damaging evidence]; People v. Stratton, (1988) 205 Cal.App.3d 88, 94 [failing to object to inadmissible evidence]; Graveley v. Mills, (6th Cir.1996), 87 F.3d 779, 785-786 [ineffective assistance for failing to object to prosecutorial misconduct].). The Magistrate failed/erred when it ruled on what is labled as Ground 8, denying relief, because the Magistrate failed to look at the "cumulative" effect of trial counsel's individual acts and/or ommissions. (see Williams v. Washington, supra, 59 F.3d 673, 682).

In regards to all of petitioner's claims of ineffective assistance of counsel, it is a mixed question of law and fact, therefore, **"reviewable de novo"**. Whether counsel's representation was constitutionally ineffective, including both whether counsel's performance was "unreasonable" and if so, whether counsel's failings was **"prejudicial"** to petitioner, is a mixed question of law and fact, "reviewable de novo". (Thompson v. Keohane (1995), 516 U.S. 99, 109-113; Kimmelman v. Morrison (1986), 474 U.S. 365, 378-380; Strickland, supra, at 698).

B. PETITIONER SUBMITS AND CONTENDS THAT, IT SHOULD
NOT BE IGNORED THAT THE JURY RECEIVED THE
PREJUDICIAL INFORMATION CONCERNING HIS PRIOR
ARREST AND CRIMINAL HISTORY DURING "DELIBERATION",
EFFECTIVELY DEPRIVING PETITIONER OF HIS RIGHT TO
COUNSEL.....

Here, when the jury received prejudicial information about
petitioner's criminal history during deliberation, it denied petitioner
the constitutional right to counsel so as to "rebut" the information.
Which in tern, denied petitioner his right to counsel, requiring
"automatic reversal" of the conviction. It is submitted and contended
that, when the jury received the said prejudicial information, United
States v. Cronic's presumption of prejudice was activated/triggered.
(Roe v. Flores-Ortega, (2000) 528 U.S. 470, 483 [In some cases,...the
defendant alleges not that counsel made specific errors in the course
of representation, but rather that during the "judicial proceeding" he
was--either actually or constructively---denied the assistance of
counsel altogether...Under such circumstances, 'no specific showing of
prejudice is required,' because the adversary process itself [is]
presumptively unreliable."], quoting United States v. Cronic (1984),
466 U.S. 648, 659; See also Neder v. United States, (1999) 527 U.S. 1,
8 [complete denial of counsel is "structural error", and thus is
subject to automatic reversal].).

As stated in Lawson v. Borg, Jury exposure to facts not in
evidence deprives a defendant of the rights to confrontation,
cross-examination "and assistance of counsel embodied in the Sixth
Amendment". (See Lawson v. Borg, (C.A.9 (Cal.)1995), 60 F.3d 608, at
612, quoting Dickson v. Sullivan, (9th Cir. (1988)), 849 F.2d 403, 406;

110.

See also Jeffries v. Blodgett, (9th Cir. 1993), 5 F.3d 1180, 1191
[introduction of extraneous prior bad acts evidence during
deliberations constitutes error of constitutional proportions, cert.
denied, 510 U.S. 1191, 114 S.Ct. 1294, 127 L.Ed.2d 647 (1994).]).
Thus, it is submitted and contended that, the structural error
regarding the introduction of petitioner's criminal history to the jury
"during deliberation", completely denied the petitioner his
constitutional right to counsel, therefore, automatic reversal of the
judgement of conviction is warrented. (Neder v. United States, supra,
527 U.S. 1, at 8; Roe v. Flores-Ortega, supra, 528 U.S. 470, at 483;
See also Lawson v. Borg, supra, 60 F.3d 608, at 612; Dickson v.
Sullivan, supra, 849 F.2d 403, at 406).

Structural errors are per se prejudicial, and therefore, not
subjected to harmless error analysis. "Structural defects" in the
constitution of the trial mechanism are per se prejudicial; "trial
errors occurring during the presentation of the case to the jury", are
subject to harmless error analysis. (Arizona v. Fulminante, (1991) 499
U.S. 279, 307-310...Accord O.Neal v. McAninch, (1995) 513 U.S. 432,
434).

In the case at bar, the introduction to the jury of prejudicial
information envoloving petitioner's criminal history "occurred during
deliberation", not during the presentation of the case to the jury,
therefore, falling in the catagory of a "structural defect" in the
constitution of the "trial mechanism" which is per se prejudicial,
warrenting automatic reversal of the judgement of conviction "absent
harmless error analysis". (Arizona v. Fulminante, supra, 499 U.S. 279,
at 307).

111.

## C. IN THE ALTERNATIVE THAT THE COURT APPLY HARMLESS ERROR ANALYSIS...

In the alternative that the court decides to subject the error to harmless error analysis, petitioner contends, although the state court and Respondent in the present case concluded and/or claimed that, the legal violation regarding the introduction to the jury "during it's deliberation" of prejudicial information about petitioner's criminal history was harmless error. The State Court's finding that the evidence was overwhelming and the prejudicial error harmless, **is a mixed question of law and fact that, "is not" entitled** to a presumption of correctness under § 2254(e)(1). <u>(see Deputy v. Taylor, (3d. Cir. (1994), 19 F.3d 1485, 1496, cert. denied, ["A State Court's conclusion that constitutional error was harmless does not constitute a factual finding entitled to the presumption of correctness. rather, it is a mixed question of fact and law".]; Keating v. Hood,(9th Cir.1999), 191 F.3d 1053, 1064 n.14, cert. denied, 531 U.S. 824 (2000); Dickson v. Sullivan, supra, at 406; Orndorff v. Lockhart, (8th Cir.1993), 998 F.2d 1426, at 1432 [harmless error under Bretch v. Abrahamson standard is a mixed question subject "to de novo review".]; see Bretch v. Abrahamson, supra, at 1724, 507 U.S. 619, at 642).

It is submitted and contended that, the Court **should consider all the ways the error complained of here can infect the course of trial.** (Bretch, supra, 113 S.Ct. at 1724). The Habeas Court cannot ask only whether it thinks petitioner would have been convicted even if the constitutional error had not taken place. (Id. 1724) As stated in **Bretch,** In a passage that should be kept in mind by all that review trial transcripts, Justice Rutledge wrote, the question is

112.

not---
>"were they [the jury] right in their judgment,
>regardless of the error or its effect upon the
>verdict. It is rather what effect the error
>had or reasonably may be taken to have had upon
>the jury's decision. The crucial thing is the
>impact of  the thing done wrong **on the minds** of
>other men, not on one's own, in the total
>setting"...
>**(Brecht v. Abrahamson, supra, 1723).**

It is submitted and contended that, the requirement that a jury's verdict "must be based upon the evidence developed at trial" goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury. **(Gamache v. California, (U.S. Cal. 2010), 131 S.Ct. 591, at 592).** In the constitutional sense, trial by jury in a crimijnal case implies at the very least that evidence developed against a defendant **"shall"** come from the witness stand in a public courtroom where there is full judicial protection of the defendant's  right of confrontation, cross-examination, **and** counsel. **(Id. at 592, quoting Turner v. Louisiana, (1965), 379 U.S. 466, 472-473, 85 S.Ct. 546).**

In relation to the question of prejudice caused by the admission to the jury of petitioner's prior arrest and criminal history during it's deliberations, while the **Lawson Court** does not specifically cite **Brecht v. Abrahamson, 507 U.S. 619, (1993)**, the language used by the Lawson Court shows that they contemplated the use of the **Brecht standard** to decide the question of harm/ prejudice caused. In this regard, while the United States Supreme Court has announced that the **Brecht standard** is one way to examine

the prejudice question, the High Court has also found that in some cases the question of prejudice may have to be decided on the **"grave doubt"** standard announced by the High Court in **O'Neal v. McAninch**, 513 U.S. 432, (1995). Using this standard of review, if the reviewing Court finds the error to be evenly balanced, the Petitioner must prevail due to the said Court having "Grave Doubt" as to the harm caused regarding the introduction to the jury of the prejudicial information concerning petitioner's prior arrest and criminal history "during deliberation and throughout".

Based upon the Amended Petition, petitioner's Traverse, and this Objection and Request for Certificate of Appealability, reasonable jurist could debate whether (or, for that matter agree that) the petition regarding that in which is labled as Ground 8 should have been resolved in a defferent manner or that the issues presented were **"adequate to deserve encourage-ment to proceed further". (Slack v. McDaniel, supra, 120 S.Ct. 1595).** Additionally, with petitioner acting as his own advocate in this matter, under liberal construction review reasonable jurist could debate whether (or, for that matter agree that) the petition regarding the introduction to the jury of the prejudicial information concerning petitioner's prior arrest and criminal history **"during deliberation and throughout"** should be subjected to harmless error analysis, because the error did in fact occur "during deliberation", not the present-ation of the case to the jury. **(Slack v. McDaniel, supra. 120 S.Ct. 1595).**

OBJECTIONS

X.

**PETITIONER OBJECTS TO THE MAGISTRATE'S
DECISION NOT TO GRANT AN EVIDENTIARY
HEARING REGARDING ONE OR MORE OF
PETITIONER'S CLAIMS**

Based on the reasons stated within this Objection and Request for Certificate of Appealibility, petitioner's Amended Petition, and the Traverse, an evidentiary hearing is necessary. The Magistrate erred if failing to grant requested hearing.

Additionally, regarding the prosecution's presentation of false evidence claims, an evidentiary hearing was requested in the state court. No evidentiary hearing was granted for reasons unknown to petitioner. The court of Appeal issued it's ruling denying petitioner's state petition for writ of habeas corpus without granting a hearing, and the Magistrate here, also has not recommended and/or granted petitioner said hearing in regards to the prosecution's presentation of false and misleading evidence at petitioner's trial. Based on the "totality" of the circumstances surrounding petitioner's arguments regarding the matter, petitioner believes an evidentiary hearing is necessary. Petitioner submits and contends that, a petitioner on federal heabeas corpus is entitled to an evidentiary hearing where the petitioner establishes a "colorable" claim for relief, and where the petitioner has never been accorded a state or federal hearing on his claims, as in the case at bar. (Earp v. Oronski, (9th Cir.2005), 431 F.3d 1158, at 1167, citing Townsend v. Sain, (1963) 372 U.S. 293, and Keeny v. Tamayo-Reyes, (1992), 504 U.S. 1, at 5). In stating a colorable claim, a petitioner "is merely"

115.

required to allege specific facts which, if true, would entitle him to relief. **Ibid.** Granted, under the **AEDPA**, a federal court is not required to order a hearing where the petitioner failed to develop the facts in state court. In such cases, the federal court accords a presumption of correctness to the facts found by the state court, and need not hold any evidentiary hearing **"unless those facts are rebutted by clear and convincing evidence.** On the other hand, no **AEDPA** deference is due where the state has made an "unreasonable" determination of the facts; and: "Where a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an 'unreasonable determination' of the facts." <u>**(Taylor v. Maddox, 366 F.3d 992, 1001 (9th Cir. 2004).).**</u>

In sum, an evidentiary hearing is required under the AEDPA-- and an appellate court will remand for a hearing if the district court rules without granting one-- "where the petitioner establishes a colorable claim for relief and never been accorded a state or federal hearing on his claim", such as in the case at bar. <u>**(Earp, supra, at 1167).**</u>

As stated before, petitioner requested an evidentiary hearing at the state level regarding the Prosecution's introduction of false evidence claim, that including at the federal level, but no hearing has been accorded. As a result, under the "totality of the circumstances" of this case, Petitioner is entitled to an evidentiary hearing in this court

before the court can make any credibility determinations on the facts alleged in the Petition and supporting exhibits; and any controverted "facts" found by the state court while denying a request for evidentiary hearing necessarily result from an "unreasonable determination" of the facts, and hence are not entitled to any presumption of correctness. **(Earp, supra, at 1167; Taylor, supra, at 1101 ["Where the state court's legal error infects the fact-finding process, the resulting factual determination will be unreasonable and no presumption of correctness can attach to it."].).**

Throughout the aforementioned factual and legal arguments, Petitioner has submitted to this Honorable Court several instances of the need to conduct an evidentiary hearing, one of which is to **"decide issues of credibility"**. It is well recognized that live testimony is the bedrock of the search for the truth in the judicial system, and the United States Supreme Court has found **that credibility determinations can not be resolved on the basis of affidavits. (Earp v. Ornoski, 431 F.3d 1158, 1169 (9th Cir.2005), citing Blackledge v. Allison, 431 U.S. 63, at 82 n.25).** In **Townsend v. Sain, 372 U.S. 293, (1963),** the high Court made it clear that where an unresolved factual dispute exits demeanor evidence is a significant factor in deciding the issue of credibility. **(Id. 372 U.S. at 322).** With this being the case, the Magistrate, prior to reaching the merits of the legal claims raised herein by petitioner, should

117.

have conducted an evidentiary hearing within the purview of **Habeas Corpus Rule 8.**

As held in **Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998):** "In habeas corpus proceedings, an evidentiary hearing is required when the petitioner's allegations, if proven, would establish the right to relief". **Id. at 1176.** That is the case here, regarding all of petitioner's claims, after a close review of this case, petitioner's arguments within the Amended Petition, Traverse, and this Objection and Request for Certificate of Appealability, this honorable court should conclude the same. Here, based on the "totality of the circumstances and arguments presented", an evidentiary hearing would have the **'potential to advance petitioner's claims'.** (**Zimmerman v. Davis, 683 F.Supp.2d 523, 532-33, (2010), quoting Campbell v. Vaughn, 209 F.3d 280, 287 (3d Cir. 2000).).** Thus, an evidentiary hearing is necessary.

Based upon the Amended Petition, Petitioner's Traverse, and this Objection and Request for Certificate of Appealability [arguments presented within all of the aforesaid], reasonable jurist could debate whether (or, for that matter agree that) the Magistrate's decision not to grant an evidentiary hearing should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further". (**Slack v. McDaniel, supra, 120 S.Ct. 1595).**

Petitioner wishes to stress that, the federal court is required by federal law to accept as true any factual allegations that are made and supported in federal court, when the state court has made findings against the petitioner on those facts without first ordering a hearing--i.e., precisely what happened here -- the state's fact-finding procedure is deemed "unreasonable", which means that the state's factual findings are not binding on federal habeas corpus. (Taylor v. Maddox, supra, 366 F.3d 992, at 1001).

While the Magistrate continueously claims the evidence of petitioner guilt is overwhelming, this conclusion is based on the Magistrate adopting the mistated, incorrect facts, and facts not supported by the record from the State Court, and also because the Magistrate is failing to properly evaluate the evidence, and further ignores information/evidence [such as referenced to exhibits] that support  alleged facts.
In Sassounian, the Circuite Court reversed and remanded because of the jury's consideration of extraneous evidence. (Sassounian v. Roe, supra, 230 F.3d 1097). In Sassounian, there was "four(4) eyewitnesses", the identified vehicle was in the suspect's name, the "murder weapon" was recovered, and one witness even identified a "blue vest" which was recovered from Sassounian's brother, gunshot residue ------ was found on Sassounian's left hand after test's were conducted, and fingerprints were found of both Sassounian and the second suspect [Saliba] on the Chevrolet vehicle involved in the crime. (Sassounian, supra.

119.

**230 F.3d 1097, at pp. 1101-1103).** The strength of the evidence of guilt in Sassounian's case did not prevent the Court from "reversing" the case. In the case at bar, the evidence of guilt is not nearly as overwhelming as the evidence of guilt in Sassounian. Here, there is no physical evidence linking petitioner to the crime, the prosecution's case was solely based on eyewitness testimony that is questionable, suspect, and/or unreliable. **see anti pp. 15-52, 77-79.** Thus, reasonable jurist could find  the decision in not granting relief debatable or wrong, or that the issues presented are adequate to deserve encouragement to proceed further. **(Slack, supra. 120 S.Ct. 1595).**

**B. THE MAGISTRATE ERRED IN FAILING TO EXPAND AND/OR RECOMMEND THAT THE RECORD BE EXPANDED IN REGARDS TO ALL THE EXHIBITS REFERENCED TO IN THE AMENDED PETITION, PETITIONER'S TRAVERSE, THAT INCLUDING THE EXHIBIT'S REFERENCED TO IN THIS OBJECTION AND REQUEST FOR CERTIFICATE OF APPEALABILITY**

Based upon the arguements presented in Petitioner's Notice of Motion and Motion to Expand the Record that was presented to the Magistrate Court, petitioner believes it was error in failing to expand the record. Additionally, based upon the arguements presented in the footnotes of pages 27-29, 32-33, 40, 46, 51, and 58 of this Objection and Request for Certificate of Appealability, petitioner believes it was error not to expand the record.

Furthermore, the **Due Process Clause** protects individuals from two types of government actions. So-called **Substantive Dur Process** prevents the government from engaging in conduct

120.