Jofama Coleman
CDCR# V-27659
CSATF/State Prison
P.O. Box 5242
Corcoran, CA. 93212
[In Propria Person]...



FILED
CLERK, U.S. DISTRICT COURT

MAR 18 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES COURT OF APPEAL
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| Jofama Coleman, (Petitioner), )<br>)<br>-VS-  )<br>)<br>Kathleen Allison ,(Acting )<br>Warden), )<br>(Respondent). ) | Related Case No. <u>CV-10-2343 AHM (RNB)</u><br><br>**PETITIONER'S APPLICATION FOR CERTIFICATE OF APPEALABILITY FROM THE DISTRICT COURT; AND POINTS AND AUTHORITY IN SUPPORT THEREOF...** |

### I.

Petitioner proceeds from the district court without counsel regarding Grounds One(1) through Nine(9) of his Amended Petition, and therefor respectfully request that the court liberally contrue this application. **(Erickson v. Pardus, (U.S. 2007), 127 S.Ct. 2197, 2000-2201; Rule 8(f) of Federal Rules of Civil Procedure).**

Additionally, Petitioner is unaware as to the process by which the Circuit Court obtains and review the record from the District Court, and petitioner therefor request that the Ninth Circuit Court of Appeals request the U.S. District Court Clerk tranmitte the record to the Ninth Circuit. Additionally, and in the interest of Justice petitioner request that counsel be appointed for Briefing

this case, and representing petitioner's interest.

## II.
## ARGUMENT

A. LEGAL STANDARD FOR CERTIFICATE OF APPEALABILITY

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides that, in order to take an appeal from a final order denying habeas corpus, a Cerificate of Appealability must be obtained from a Circuit Justice or from the district court Judge. (28 U.S.C. § 2253, subd. (c)(1).)

In order to obtain a COA, the petitioner need only demonstrate a substantial showing of the denial of a constitutional right. (28 U.S.C. § 2253(c)(2)). However, the petitioner **"need not"** show that he would prevail on the merits. (Lambright v. Stewart, 220 F.3d 1022, 1025 (9th Cir. 2000) (en banc) [**"...[O]bviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor"**]. Rather, the petitioner is merely required to make a **"modest showing"** (Lambright, supra, at 1025) that **resonable jurist** would find the district court's assessment of the constitutional claims debatable or wrong. (**Slack v. McDaniel, 529 U.S. 473, 484 (2000).**). As explained by the Ninth Circuit in **Jennings v. Woodford, 290 F.3d 1006, (9th Cir. 2002)**, the substantial showing standard required for COA "is relatively low". (**Id. at 1011, citing Slack v. McDaniel**). Hence, a COA must issue if any of the following apply: (1) the issues are debatable among "reasonable jurist"; (2) another court could resolve the issues differently; or (3) the issues raised are adequate enough to encourage the petitioner to proceed further. (**Barefoot v. Estelle, 463 U.S. 880, 893 n.4 and 849, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)**;). Finally,

the Court must resolve doubt about the propriety of a COA in the petitioner's favor. (Jennings, supra, citing Lambright, supra, at 1025). Petitioner's claims meets all the aforsaid standards regarding the issuance of a COA.

Petitioner at the mercy of this honorable Court contends that, based on this Certificate of Appealability, the Amended Petition, and "petitioner's Objection and Request for COA (**Document 82, Filed 09/12/12)**", he should be granted a COA, and counsel should be appointed in this very important matter of Justice. Thus, Petitioner respectfully request that counsel be appointed and the Certificate of Appealability be granted as to all petitioner's claims.

### III.

### ISSUES ON WHICH CERTIFICATE
### OF APPEALABILITY IS SOUGHT
#### ISSUE ONE(1)

Whether the District Court erred in adopting the misstated, incorrect facts, facts not supported by the record, from the State Caourt, and whether it was error for the Magistrate/District Court to ignore many "Material" facts supporting petitioner's Claims. (see Document 82, pp. 5-10 [Objection's by petitioner]).

#### ISSUE TWO(2)

Whether the district Court erred in failing to grant relief regarding petitioner's claims of the introduction of false and misleading testimony by the prosecution, and whether it was error in failing to grant relief "based on the totality of the circumstances" surrounding the introduction of false and misleading testimony, taking into consideration how the cumulative circumstances impacts the

credibility of other witnesses. (see Document 82, pp. 14-52).

### ISSUE THREE(3)

Whether the District Court erred in concluding petitioner's factual and legal claim of the presentation of false evidence within the purview of Penal Code § 1473 was beyond the scope of AEDPA. (see Document 82, pp. 12-15).

### ISSUE FOUR(4)

Whether petitioner's Right to a fair trial was denied by the prosecution's use of false and misleading evidence that was material to the issue of guilt, under the totality of the circumstances of petitioner's case, and whether the District Court erred in failing to grant relief. (See Document 82, pp. 52-67).

### Issue Five(5)

Whether Trial Counsel was ineffective for failing to conduct a pretrial investigation into Renteria's ability to see the driver of the suspect's van- and failing to investigate and produce evidence that Renteria could not have seen what she claimed to have saw under the circumstances described [which impacts the testimony of Jesse Robles who claimed he could see "with the aid of Renteria's vehicle headlights"], and whether it was error in the District Court failing to consider trial counsel's failures "cumulatively", and whether the District Court Court erred in failing to grant relief based on the totality of the circumstances of this case. (see Document 82, pp. 67-80).

4.

### ISSUE SIX(6)

Whether the District Court erred in concluding no prejudice occurred and relief is not warrented with respect's to petitioner's claims arising from the Jury's exposure to information regarding petitioner's prior arrest and criminal history, taking into consideration the evidence is not so overwhelming so as to rebut the presumption of prejudice arising from said error and other claims raised by petitioner. (see Document 82, pp. 90-100,112-114).

### ISSUE SEVEN(7)

Whether the District Court erred in concluding petitioner's Claim in Ground Four(4) of the Amended Petition was not cognizable on federal habeas corpus. (see Document 82, pp. 80-90 ).

### ISSUE EIGHT(8)

Whether the District Court erred in failing to grant relief regarding ground Seven(7), where there was Prosecutorial Misconduct due to the prosecutor's placement before the jury of the unredacted information regarding petitioner's arrest and criminal history, "coupled with" the prosecutor's repeated reference to petitioner having been "booked" during the examination of Deputy Meralla, in violation of petitioner's Due Process Right. (see Document 82, pp. 100-107).

### ISSUE NINE(9)

Whether the District Court erred in failing to consider the cumulative impact of trial counsel's failures, and whether counsel was ineffective regarding the Jury's exposure to inadmissible and prejudicial information concerning petitioner's prior arrest and criminal history, and the other instances where the jury was exposed

to petitioner having been booked/arrest. (see Document 82, pp.
108-109, 112-114).

### ISSUE TEN(10)

Whether the District Court erred in subjecting petitioner's
claim regarding the Jury's exposure to his criminal history
**"during deliberation"** to harmless error analysis, in light of
the fact that the error occurred during deliberation, and the
Jury was in possession of the prejudicial information throughout
the entire deliberation process. (see Document 82, pp. **110-111**).

### ISSUE ELEVEN (11)

Whether the Magistrate/District Court erred in failing to
grant an Evidentiary Hearing regarding one or more of petitioner's
claims under the circumstances of this case, (see Document 82).

### ISSUE TWELVE (12)

Whether the Magistrate/District Court erred in failing to
expand the record to include the exhibits referenced to by petitioner
in the Amended Petition, Petitioner's Traverse, and petitioner's
Objection and Request for Certificate of Appealability (that being
Document 82). (see Document 82 pp. 120-122).

### ISSUE THIRTEEN (13)

Whether it was error for the Magistrate/District Court not to
consider that in which is labeled as Ground 19, after it had
previously ruled the said ground "Related Back" to the original
filing. (see Document 82, pp. 122).

## ISSUE FOURTEEN (14)

Whether it was error for the Magistrate/District Court to never have given petitioner the opportunity to be provided Post-Conviction Discovery after his Request, the Court denied the Request as "Premature", so it is necessary to determine as to when such a request would become "Mature" for the granting. (see Document 82 p. 122).

**B.      Petitioner Respectfully States, He Should Be Granted A
          Certificate Of Appealability On Each Of His Claims...**

Petitioner incorporates by reference the arguments in his Amended Petition, Traverse, and  Objection's to Partial Report and Recommendation. He will not repeat all his arguments here, but simply note key points to the best of his ability.

## ISSUE ONE (1)

The California Court of Appeal's opinion and Order denying Habeas Corpus Relief [Related case No. B202597 and B210118] relied on incorrect facts and facts not supported by the record to find petitioner was not prejudice by Juror Misconduct. (see Traverse (Trav.) at pp. 6-7, Exh. "A", Lodged Doc. "J" at 1).

Consequently, the Magistrate/District Court erred in relying on the same misstated facts and facts not supported by the record. From this, no presumption of correctness can attach within the purview of **Taylor v. Maddox, 366 F.3d 992, 1000, 1001 (9th Cir. (Cal. 2004).)** Discussing **Miller-El v. Cockrell, 537 U.S 322 (2003)** in **Taylor supra,** it was recognized that the state court fact-finding process is undermined where the state court has before it, yet ignores evidence that support Petitioner's Claim(s). **(Taylor, supra, 366 F.3d**

at 1001; **Miller-El, supra,** 537 U.S. at 346). As in the present case,
where the fundamental liberties of a person are claimed to have been
infringed upon, we carefully scrutinize the state court record. (see
**Blackburn v. Alabama,** 361 U.S. 199, 208-209 (1960). The duty of the
Federal District Court is no less exacting. (**Ibid.**) Furthermore, the
burden of proving that a State Court(s) Findings are not fairly
supported by the record is different from "and lower" than the burden
of proving constitutional insufficiency of the evidence under Jackson
v. Virginia, 433 U.S. 307 (1979), which requires proof that no
rational factfinder could find defendant guilty. (**Parke v. Raley,** 506
U.S. 20, 36 (1992).)

The legal rights---depend more often on how the factfinder
appraises the facts then on a disputed construction of a statue or
interpetation of a line of precedent. Thus, the procedures by which
the facts of the case are determined assum an importance fully as
great as the validity of the substantive rule of law to be applied.
(see **Speiser v. Randall,** 357 U.S. 513, 520, 78 S.Ct. 1332, 1339, 2
L.Ed. 2d 1460 (1958).). At the mercy of this honorable Court petitioner
respectfully contends that, a Just and Fair ruling cannot be had if
we do not at first acknowledge and obtain the "accurate true facts".
(see **Document 82, pp. 6-10,** [addressing several incorrect facts,
misstated facts, and facts not supported by the record].). Due to
the Magistrate/District Court relying on the incorrect facts and facts
not supported by the record, it is "prejudicial" to petitioner because
it is aiding in the Court's conclusion that the evidence is overwhelming,
and the errors complained of were harmless. Thus, it is crucial that
material facts are not ignored, and the accurate facts are presented.

8.

Petitioner respectfully submits that, in regards to Issue One, reasonable jurist could find the decision to adopt the misstated facts, incorrect facts, and facts not supported by the record from the State Court debatable or wrong. Also, another court could resolve the issue differently, and/or the issue rasied is at least adequate enough to encourage the petitioner to proceed further. (Barefoot v. Estelle, supra, 893 n.4 and 849; Slack v. McDaniel, supra, 484; Jennings v. Woodford, supra, 1011).

ISSUE THREE(3) and ISSUE TWO(2)...

Petitioner respectfully submits that, in regards to Issue Three(3), reasonable jurist could find the decision that, petitioner's factual and legal claim of the presentation of false evidence within the purview of Penal Code § 1473 was beyond the scope of AEDPA is debatable or wrong, or another Court could resolve the issue differently, and/or the issue raised is at least adequate enough to encourage the petitioner to proceed further under the circumstances of this case. (Barefoot, supra, 893 n.4 and 849; Slack, supra, 484; Jennings, supra, 1011).

   A.   THE MAGISTRATE/DISTRICT COURT ERRED IN CONCLUDING
        PETITIONER'S FACTUAL AND LEGAL CLAIM OF PRESENTATION
        OF FALSE EVIDENCE WITHIN THE PURVIEW OF PENAL CODE
        § 1473 WAS BEYOND THE SCOPE OF THE AEDPA....

When the State has in place law(s) that either effect the substantial right(s) of any citizen and/or create a "liberty interest" for said citizen(s), and said law(s) are applied in a fashion that could be construed either as an arbitrary and/or capricious application of said law(s), the United States Supreme Court has found a "Due Process Violation of the Fourteenth Amendment" viable in Federal Habeas Corpus proceedings. (Hicks v. Oklahoma, (1980), 447

U.S. 343, 346[2]). In the instant case, at the State Court level, petitioner argued invoking the mandates of Penal Code § 1473 that, habeas relief was/is available to a petitioner within the purview of Subd.(b)(1) of Section 1473 due to false identification testimony being provided by Ms. Maria Renteria that was probative on the issue of Petitioner's guilt. Discussing for the State Court, petitioner factually and legally alleged **"a reasonable probability of a different result"** if Renteria had not provided false and misleading identification testimony against petitioner claiming she had a good view of the driver who was driving the white van envolved in the murder, and there were not many vehicles or large vehicles in front of her so she could see, this is especially so given that her testimony impacted the testimony of Jesse Robles and Albert Segundo. The Prosecutor greatly relied on Renteria's testimony to bolster the credibility of the other three witnesses, **(see 2 RT. 908-909; 5 RT. 2728-2729; 2742, 2760-2762).** Additionally, the Jury was deprived of crucial facts that would have enabled them to test the credibility of the witnesses. This is so because one way to test credibility is to see how the testimony "fits" with known facts. (see Brown v. Borg, (CA.9(Cal.)1991), 951 F.2d 1011, at 1016; see facts at pp. 18-48 of Document 82, Objection to Partial Report and Recommendation.).

---

[2] While the **Hicks** analysis is relevant, it is limited to the fact Penal Code Sec. 1473 is a State Statute, **but the application of this Statute as it is currently used by the State is guided by United States Supreme Court Precedent.**

At page 25 of the Magistrate's Partial Report and Recommendation (Document "63"), the Magistrate found, citing **Estell v. McGuire, 502 U.S. 62 (1991)**that petitioner's Claims involved state law claims and could not be litigated in the Habeas Corpus proceedings before the court. **(see Document 63, p.25, lines 11-14)**. As petitioner will show, while the Magistrate is --correct that Penal Code § 1473 is a state statute, **the interpretation of this statue since at least 1995 has involved the specific use of United States Supreme Court Precedent.** As such, the claim is one brought specifically under federal Law as is interpreted by the United States Supreme Court relevant for Habeas Corpus proceedings in the federal forum within the purview of the AEDPA.

In **In re Malone, supra,** the California Supreme Court made clear that there analysis of false evidence claims would be done using "a reasonable probability of a different result standard". **(In re Malone, supra, 12 Cal.4th at 965)**. This specific standard has never been founded on state law. Tp the contrary, the reasonable probability of a different result standard derives from United States Supreme Court Precedent. Several California Cases starting in 1995, discussing the reasonable probability of a different result standard do so citing nothing but United States Supreme Court precedent to justify their conclusions.

In **In re Sassounian (1995) 9 Cal.4th 535** discussing the False Evidence provision of **Penal Code § 1473** made it clear that their decision was being based on United States Supreme Court precedent:

11.

"[F]alse evidence is substantially material or probative: if it is of such significance that it **"may have"** affected the outcome, in the sense that with reasonable probability it **could have** affected the outcome...(citations). in other words, false evidence passes the indicated threshold if there is a reasonable probability that, had it not been introduced, the result would have been different. The requisite reasonable probability we believe, is such as undermines the reviewing court's confidence in the outcome.

(see <u>Sassounian, supra, 9 Cal.4th at p. 546, citing United States</u> <u>v. Bagley, 473 U.S. 667, at 678</u>).

In **In re Malone, supra,** the California Supreme Court relied on **In re Sassounian, supra,** to come to their conclusion. (In re Malone, supra, 12 Cal.4th at 965 citing Bagley, supra, as well as In re Sassounian, supra,). With this legal backdrop, it is clear that the Magistrate/District Court erred in concluding petitioner's False Evidence Claim was one of state law only. This error, as will be shown upon review of the record, was indeed prejudicial- due to the Magistrate/District Court failing to conduct an examination of Petitioner's claims under the reasonable probability of a different result standard as is dictated by current United States Supreme Court precedent. In order to sustain said burden under decisions such as **Bagley** and **Kyles v. Whitley,** **514 U.S. 419 (1995),** it is necessary for petitioner to present to this reviewing court the information/facts contradicting the Magistrate/District Court's conclusion that the evidence of guilt is allegedly overwhelming. Notably, it is the prosecution that is benefiting from the errors complained of, therefore, the "burden" is on the prosecution to prove that there was no injury to petitioner, or suffer a reversal of the judgement. (**Gamache v.** **California, (U.S.Cal.2010), 131 S.Ct. 591, at 592, 178 L.Ed 514;**

Brecht v. Abrahamson, (U.S. Wis.1993), 113 S.Ct. 1710, 1723, 507 U.S. 619, 640-41).

At the Mercy of this honorable Court, petitioner submits that, this was a close case and therefor the errors complained of were not harmless as the District Court concluded. Petitioner believes the Distrcit Court failed to properly consider the totality of the factors demonstrating this was a close case. (see Document "82", pp. 15-52 of Petitioner's Objection to Partial report and Recommendation ["Factors demonstrating this was a close case, and therefor the errors complained of not harmless"].).

Based on the "totality of the circumstances" surrounding Renteria's false and mislaeding testimony, and how the presentation of accurate and true facts would have undermined the testimony of the other three witnesses, the Magistrate/District Court erred in failing to grant relief regarding Issue's Two(2) and Three(3).

Renteria testified petitioner was the driver of the suspect's van, (3 RT. 1229, 1237, 1244-1245). She testified "for the prosecution" claiming she had a "GOOD VIEW" of the suspects and that THERE WERE NO BIG VEHICLES OR MANY VEHICLES IN FRONT OF HER SO SHE COULD SEE. (3 RT. 1233, 1245). A key sealing point of Renteria's testimony hinged on her headlights allegedly shinning into the suspect's white van allowing her and Jesse Robles to see. (3 RT. 1230; 2 RT. 952-953; 5 RT. 2733-2734; see Doc. 82, pp. 18-19). However, after petitioner's conviction, through Appellate Counsel Patricia Ihara, it was discovered Renteria was parked behind a large dump working truck, an SUV, and two other vehicles. (Doc. 82 pp.20, referencing to Exhibit "A" of Document 82). It was further discovered Renteria

13.

was at an observation distance of at least **128 feet.** (see Doc. "82"
p.21-22, referencing to Exhibit "A","D", and "E" of Document "82").
Appellate Counsel Patricia Ihara submitted a **"Sworn Declaration"**
establishing the impossibilities and improbabilities of Renteria's
testimony. **(see Exhibit "D" of Document 82).** The said Declaration
also impeaches Jesse Robles's testimony that he was able to see
inside the suspect's van do to the headlights of Renteria's vehicle
illuminating the interior of the suspect's van. **(Exh. "D" p.2 of
Document 82).** The said Declaration further impeaches Albert
Segundo's testimony regarding his ability to see the driver of
the suspect's van from about five(5) to six(6) car lengths "behind"
the suspect's- at night. **(Exh. "D" pp. 1-3 of Document 82).** At the
mercy of this honorable court, petitioner contends that, this
criticle issue regarding credibility is significant because the
prosecution's case was solely based on witness testimony that boiled
down to a battle over credibility. The "Sworn Declaration" makes
specific attacks and legitimate attacks on the prosecution
witnesses credibility and ability to see what they claimed to
have saw. With this being the case, for the Magistrate/District
Court to simply dismiss petitioner's credible evidence out of
hand without holding an evidentiary hearing to make a credibility
determination, clearly denies petitioner of his "Due Process"
rights in this matter. (see Earp v. Ornoski, 431 F.3d 1158, at
1169 (9th Cir.2005), **["**Holding when the issue is one of
credibility, resolution on basis of affidavits can rarely be
conclusive**"].).** It is well recognized that live testimony is the
bedrock of the search for the truth in the judicial system, (Ibid,

citing **Blackledge v. Allison**, 431 U.S. 63, at 82 n.25). In **Townsend v. Sain**, 372 U.S. 293, (1963), our high Court made it clear that where an unresolved factual dispute exits, demeanor evidence is a significant factor in deciding the issue of credibility. **(Id. 372 U.S. at 322)**. With this being the case, prior to the Magistrate/District Court reaching the merits of the legal claims raised by petitioner, should have conducted an evidentiary hearing within the purview of **Habeas Corpus Rule 8**. In the Partial Report and Recommendation (Document "63"), the Magistrate/District Court concluded the record did not reflect at what time the photographs susequently introduced at Soto's trial in which Renteria identified her parked vehicle were taken, nor does the record reflect any evidence at all of the vehicles depicted in those photographs were present and parked in the same locations as shown in the photographs at the time of the murder. (Document 63, p.27) lines 20-25). This conclusion is based on the Magistrate/District Court ignoring the material facts. The record reflects **"the photographs were taken <u>right after the murder</u>"**, after the crime scene was <u>taped off by police officers.</u> (see Exhibit "E" p.1816, lines 25-28, and p. 1817 of Document 82). Petitioner presented several facts that conclude the vehicles depicted in the crime scene photos were indeed parked and present in the same locationa as shown in the photos. (see **Document 82**, **pp.53-55**). In any event, the Magistrate/District Court's position demonstrate the need to appoint counsel and grant an evidentiary hearing. This is so because as dictated by **Totten, supra,**;

15.

Zimmerman, supra,; and Campbell, supra, In habeas coprus proceedings, an evidentiary hearing is required when the petitioner's allegations, if proven, would establish the right to relief. (see Totten -v- Merkle, 137 F.3d 1172, 1172, 1176 (9th Cir.1998); Zimmerman -v- Davis, 683 F.Supp.2d 523, 532-533, (2010), quoting Campbell -v- Vaughn, 209 F.3d 280, 287 (3d.Cir.2000).). Petitioner's incarceration should not deprive him of due process regarding this nonfrivolous claim. An investigation into this matter to further show that, ------- the vehicles depicted in the crime scene photos were present and parked in the same locations as shown in the photographs at the time of the murder is crucial and clearly has the potential to advance petitioner's claims. An investigation into who owned the vehicles, and questioning the vehicles owner as to whether his/her vehicle was parked in the same location as depicted in the crime scene photos would prove and advance petitioner's claim. (Abdullah -v- Norris, 18 F.3d 571, 573 (8th.Cir.), cert. denied, 513 U.S. 857 (1994), ["Factors to consider in determining whether to appoint counsel include petitioner's ability to investigate and present his claim"]; Albemarle Paper Co. -v- Moody, 422 U.S. 405, 416 (1975); Battle -v- Armontrout, (CA.8(Mo.)1990), 902 F.2d 701; Shields -v- Jackson, (8th Cir.1978), 570 F.2d 284, 286, [indigent incarcerated litigant not in position to investigate "adequately".]. In the interest of "Due Process" petitioner should be permitted a meaningful opportunity to present the facts, and futher litigate his case with the effective tools necessary to prove his claim. (Eskridge -v- Rhay, (9th Cir.1965), 345 F.2d 778; Dillon -v-

United States, (9th Cir.1962), 307 F.2d 445; Maclin -v- Freake, (7th Cir.1981), 650 F.2d 885, 887). Thus, based on all of the aforesaid, and petitioner's Objection to Partial Report and Recommendation (Document "82"), pp. 11-52, petitioner at the mercy of this honorable court pleads and submits that, reasonable jurist would find the Magistrate/District Court's assessment of claims Two(2) and three(3) debatable or wrong, another court could --- resolve the issues differently; or the issues raised in regards to Claims Two and Three are adequate enough to encourage the petitioner to proceed further. (Barefoot, supra, 893 n.4, 849; Jennings, supra,1016).

ISSUE FOUR(4)...

Petitioner at the mercy of this honorable court, submits that, his constitutional right to Due Process and- a fair trial was violated by the use of false and misleading evidence that was material to the issue of guilt- under the "totality" of the circumstances, and the District Court erred in failing to grant relief.

Within the 14th Amendment to the U.S. Constitution petitioner was deprived of his right to a fair trial under the totality of the circumstances surrounding Renteria's false and misleading testimony. It is established that, a conviction obtained through use of false evidence, known to be such by the state, must fall under the 14th Amend. (citation) The same result obtains when the state although not soliciting false evidence, allows it to go uncorrected when it appears. (Napue v. Illinois, 360 U.S. 264, 269 (1959). Discussing this well known and settled principle of law the U.S. District Court, Central District in Imbler -v- Craver, 298 F.Supp. 795, (C.D. Cal.1969), after examining a plethora of decisional law on the

subject, determined that the knowing use of **"highly suspicious"** testimony is the same as the knowing use of false testimony:

> "[T]he reckless use of highly suspicious false testimony is no less damaging or culpable than the knowing use of false testimony, and a conviction based upon such evidence must suffer the same consequence".
> (see Imbler, supra, 298 F.Supp. at pp. 807-808)...

In the case at bar, Sergeant Steven Katz, the investigating officer for the prosecution was allowed to sit in at both petitioner's and Abel Soto's trial, knew or should have known that Renteria's in-trial identification of petitioner as the driver could not have been based on what she saw from **over 120 feet away at night.** Sergeant Katz having a duty to report this matter failed to inform defense counsel. It could be reasonably inferred that he told the Prosecutor about the distance regarding her identifying circumstances. **(see Exh. "E" 1826 [distance 160 feet], of Document 82).**

Here, Renteria's ability to observe as an eyewitness was used to convict petitioner as the driver of the suspect's van, and the prosecution called Renteria for said purpose. However, incon- sistantly, at Soto's trial, the Prosecution argued her ability to observe as an eyewitness is unreliable. The Prosecution with information/evidence not provided to defense counsel in petitioner's case, impeached Renteria. In sum, at petitioner's trial the Prosecution claimed Renteria could see and identify petitioner as the driver. (5 RT. 2728-2729). At Soto's trial, the Prosecution claimed Renteria could not see what she said she saw. Her view of the perpetrators was--- obstructed by a large dump truck, an SUV,

and two other cars between Renteria's vehicle and the shooting, and she was much farther away then she thought she was. (see Exhibit "E" 1847 of Document 82). The inconsistant positions in the two seperate criminal proceedings raises serious questions. (see U.S. v. Aguilar, (C.D.(Cal.)2011), 2011 WL 6097144, *17; Bradshaw v. Stumpf, 545 U.S. 175, 125 S.Ct. 2398, 162 L.Ed.2d 113, (2005); Jacobs v. Scott, (U.S.1995), 115 S.Ct. 711, 712, 513 U.S. 1067, ["Serious questions are raised when the sovereign itself takes inconsistent positions in two seperate criminal proceedings against two of it's citizens".]). As argued in petitioner's Objection to the Partial Report and Recommendation, he was under the totality of the circumstances deprived of his constitutional right to a fair trial. (see Document 82, pp.52-67).

Petitioner had a fundamental right to present the facts to the jury, however, due to the prosecution failing to provide the defense with crucial evidence [the crime scene photo's], he was deprived of the opportunity to present the facts for the jury's evaluation of the evidence. As stated before, the circumstances surrounding Renteria's testimony had an impact on the other witnesses. Jesse Robles testified he was able to see with the "aid of Renteria's headlights shinning inside the suspect's van". We now know this was not possible. (see Document 82, pp. 19, 22-23, 36-40). Additionally, Albert Segundo's testimony claiming to have been able to see petitioner and identify an "eyebrow piercing" on the "left side" of the driver's face "at night" from over "100 feet" away looking through the rear windows "behind the suspect's

van", which was at a point were Segundo testified he had "his
clearest view" of the driver, could have also been discredited.
(Document 82 pp. 26-29). The only other witness, Carlos Lopez,
after a close reading of the testimony and statements made to
officers actually placed him in the front yard of the Robles
home at a time when the van would have already "sped by", thereby
depriving him of the opportunity to actually see the driver of
the suspect's van. (Document 82, pp. 43-49). These many factors
surrounding the witnesses ability to see in combination most
certainly show that if petitioner had been able to privy to the
fact Renteria was at an observation distance of over 120 feet,
there was a large dump working truck, an SUV, and two other
cars in front of her, it would have changed the course of petitioner's
cross-examination of not only Renteria, but also Jesse Robles
and Albert Segundo. Through this ability to more effectively
cross-examine the witnesses against him there is no telling what
information petitioner would have unvailed for the jury's
determination. In a case solely founded on the testimony of these
said witnesses, the fact that there identifying circumstances
can be impeached is significant. The effective impeachment of
only one witness can call for a new trial even if the attack did
not extend directly to the other witnesses. (Spicer v. Warden of
Roxbury Correctional Institution, (D.Md.1998), 31 F.Supp.2d 509,
at 520, quoting Brown -v- french, 147 F.3d 307, 312 (4th Cir.1998).)
Additionally, the jury reasonably could have been troubled by the
adjustments to Segundo's "original" story that the suspect's were
"male hispanics", and the later changing one of the suspect's to

being a "male black". (Spicer, supra, at 518-520).

While the Magistrate/District Court concluded the error regarding Renteria's testimony was harmless due to it's characterization of the evidence against petitioner being overwhelming, this characterization is due to the said court failing to consider "all" of the factors demonstrating this was indeed a "close case". (see Document 82, pp. 15-52 ['Factors demonstrating the evidence is not so overwhelming to make the errors harmless, the case was indeed "close".]). Additionally, the assesment of the evidence by the District Court is prejudicial do to it adopting the misstated facts, and facts not supported by the record from the state court, and further ignoring material facts supporting petitioner's claims.

Petitioner's rights to due process and a fair trial was clearly violated under the totality of the circumstances in this particular case. (Napue, supra, 360 U.S. 264, 269; Jackson v. Brown (9th Cir.2008) 513 F.3d 1057, 1071-1072; U.S. Const. 5th & 14th Amends.).

Petitioner at the mercy of this honorable court contends that, based on this Certificate of Appealability, the Amended Petition, and Petitioner's Objection to the Partial Report and Recommendation (Document 82), reasonable jurist would find the District Court's assessment or conclusion regarding Issue Four(4) debatable or wrong, or another court could resolve the issue differently; or the issues raised are at least adequate enough to encourage the petitioner to proceed further. (Barefoot, supra, 893 n.4, 849).

ISSUE FIVE(5)

Trial Counsel provided Ineffective Assistance for failing to conduct a pretrial investigation into Renteria's ability to the driver of the suspect's van, failing to investigate and produce evidence that Renteria could not have seen what she claimed under the circumstances described [considering the fact that the totality of the circumstances would have undermined the identifications of the other three witnesses], and failing to produce evidence regarding the distance between Renteria and the shooting site. Additionally, the District Court erred in failing to consider trial counsel's failures "cumulatively", it was therefor error for the court to grant relief based on the totality of the circumstances of this case.

In the case at bar, the prosecution's case rested solely on eyewitness testimony, therefore, there could be no reasonable or tactical explanation for counsel to fail to investigate or develop evidence and facts undermining the witnesses ability to see what they claimed to have saw. (see Williams -v- Washington, (C.A.7(Ill.) 1995), 59 F.3d 673, at 681-682; House v. Balkcom, (C.A.11(Ga.)1984), 725 F.2d 608, 618). Petitioner submits that, after examining the governments case, a significant factor that weigh in favor of finding "prejudice" is the absence of any corroborating evidence other than the testimony of the other three witnesses. (Gonzalez-Soberal v. U.S. (C.A.1(Puerto Rico)2001), 244 F.3d 273, 278; U.S. v. Gray, (C.A.3(Pa.)1989), 878 F.2d 702, 711; also see Document 82, pp. 15-52).

A defendant's right to assistance of counsel is guaranteed by

both the Sixth Amendment to the United Staes Constitution, and Article I, § 15 of the California Constitution, and it further entitles a defandant not to some bare assistance but to "effective assistance".[citations]. Spicifically, it entitles him to reasonably competent assistance of an attorney acting as his diligent conscientious advocate to protect the defendant's right to a trial that is both **fair** in the proceedings and reliable in the result. (**United States v. DeCoster** (D.C. Cir.1973), 487 F.2d 1197, aty1202; **Strickland v. Washington**, 466 U.S. 668, (1984); **People v. Ledesma** (1987) 43 Cal.3d 171, 215).

Although a court will presume that counsel's conduct falls within the wide rage of reasonable professional assistance, **see Bell v. Cone**, 533 U.S. 685, 702 (2002), <u>counsel's alleged tacticle decision must be subjected to "meaningful scrutiny"</u>, so that before counsel acts, he will make a rational and informed decision on strategy ant tactics founded on adequate investigation and preparation. (In re Marquez, 1 Cal.4th 584, 602 (1992); In re Jones, 13 cal.4th 552, 565 (1996).).

Here, trial counsel was ineffective for, (1) failing to present physical evidence of the distance between the Robles property and the crime scene, which was the distance of two property lots. (see **Exh. A2; exh. E 1847 of Amended Petition; see also 1 CT 51**). Each property lot is 64 feet wide.[3] Based on Renteria's testimony that she was parked in front of the Robles house and the crime scene

---

[3] See exhibit "F" of Amended Petition; http://maps.assessor.lacounty.gov/mapping/viewAssessorMapPDF.asp?val=6060-027

23.

photos, Renteria was "at least" **128 feet away** from where the white van had stopped. **(Exh. "F" of Amend. Pet.; 3 RT. 1233).** It was impossible to recognize a stranger sitting inside a vehicle "at night" from that distance. **(Exh. "G" and "D" of Amend. Pet.).** Trial counsel was also ineffective for **(2)** failing to have Renteria point out where her vehicle was parked in relationship to the van and the shooting. Because she was a defense witness at Soto's trial, the prosecution had Renteria point out her car using the crime scene photos. **(see Exhibit "E" 1816, 1821-1823 of Amended Petition).** It would have established that Renteria was much farther away from the crime scene than she had initially stated, and that she was behind a large work truck, an SUV, and two other cars which would have obstructed her view and blocked any illumination from her headlights. **(Exh. "E" 1823-1824 of Amend. Pet.).** Which clearly would have descredited Jesse Robles's testimony that he was able to see with the aid of Renteria's headlights illuminating the inside of the suspect's van. **(see Document 82, pp. 19, 22-23, 36-40; Exhibit "D" p.2 of Doc. 82).**

Furthermore, trial counsel was ineffective for **(3)** failing to produce evidence that it would have been impossible to see details of a person's face from "over 100" feet away "at night" under any light conditions without binoculars. **(Exh. "D" of Doc. 82).** Which was also relevant to descredit Albert Segundo's testimony, because at a point when he claimed/testified to having his "clearest view" of the driver he was able to see "an **eyebrow piercing on the left side** of the driver's face, which was impossible given that it was "night time(dark)", he was at a distance of at least **"120 feet"**

behind the suspect's van thereby having to be able to see through the "rear windows" and the head-rests with no view of the driver's face [let-alone the "left side" of the driver's face]. **(see 3 RT. 1546, 1564-65, 1571-72, 1577-78; 4 RT. 1859; 3 RT. 1855-56, 1860-61; see also Exhibit "M" pp. 8,9,29,31,39, and 165** [windows of suspect's van was continuously described as being "tinted dark" and it was "after" Segundo had followed the suspect's to this other location that he claimed to have saw the eyebrow piercing.] **of Document 82).** The circumstances surrounding observation ability was additionally relevant to discredit Renteria's testimony that she "had a good view" of the driver who she had never seen before, but could recognize him three(3) years later at trial as petitioner was the only person sitting next to counsel. Clearly based on the **totality of the circumstances** in the present case, which rested solely on eyewitness testimony, petitioner was deprived of effective assistance in his counsel failure to conduct a reasonable pre-trial investigation. **(see Wiggins v. Smith, 123 S.Ct. 2527, 539 U.S. 510 (2003).).** There could be no tactical reason for counsel to fail to conduct a pre-trial investigation into the witnesses ability to see. And the explanation that Renteria's testimony was unexpected is not satisfactory. **(Exh. "C" of Amend. Petition).** Before an attorney undertakes to act, or not act, counsel must make a rational and informed decision on strategy and tactics founded upon adequate investigation and preparation. **(In re Marquez, supra, at 602).** Counsel's alleged tacticle decision must be subjected to "meaninngful scrutiny" in the case at bar. **(Bell v. Cone, 533 U.S. 685, at 702).**

The Magistrate/District Court's denial of Issue Five(5), that
being Ground Three(3) of Amended Petition, failed to take into
account the fact that petitioner's Appellate Counsel Patricia
Ihara has submitted a **"Sworn Declaration" making it clear that,
after review of the evidence and facts, after a proper investigation
into the witnesses ability to see what they claimed, it would
have significantly undermined the credibility of the witnesses.
(See Exhibit "D" pp. 1-3 of Doc. 82).** This "Sworn Declaration"
makes specific attacks and legitimate attacks on Renteria's
credibility and ability to see. **(Ibid.)** The Delaration also
attacks and impeaches Jesse Robles's testimony claiming the
headlights "illuminated" the inside of the suspect's van allowing
him to see. **(Id. supra, at p.2)** the Declaration further impeaches
and impacts the credibility or ability for Albert Segundo to have
seen the driver of the suspect's van from Five(5) to Six(6) car
lengths "behind" the suspect's van "at night". **(Id. supra, at p.1-3).**
For the Magistrate/District Court to simply dismiss petitioner's
credible evidence presented in this case, out of hand without first
holding an evidentiary hearing to make a credibility determination,
clearly denies petitioner's "Due Process" right in this matter.
**(Earp v. Ornoski, 431 F.3d 1158, supra, at 1169,** [Holding when the
issue is one of credibility, resolution on basis of affidavits can
rarely be conclusive.]). Live testimony is the bedrock of the search
for the truth in the judicial system, **(Ibid, citing Blackledge v.
Allison, supra, 431 U.S. at 82 n.25).** Additionally, where an unresolved
factual dispute exits, demeanor evidence is a significant factor in

deciding the issue of credibility. (**Townsend v. Sain, 372 U.S. 293, at 322, (1963).**). Thus, an evidentiary hearing should have been had within the purview of **Habeas Corpus Rule 8.** As correctly stated before, the jury was clearly deprived of information/facts that would have allowed them to test the witnesses credibility. (**Brown v. Borg, supra, 951 F.2d at 1016**). The totality of factors surrounding the witnesses ability to see in combination most certainly show that, if petitioner were able to privy to the fact that, Renteria was at an observation distance of "over 120 feet", there was a "large dump work truck, an SUV, and two other cars in front of her", it would have changed the course of petitioner's cross-examination of not only Renteria, but also Jesse Robles and Albert Segundo. Through this ability to more effectively cross-examine the witnesses against him there is not telling what information petitioner would have unvailed for the jury's determination.

Thus, based on all of the aforesaid, Document 82 pp. 67-80, and the Amended Petition, petitioner at the mercy of this honorable court pleads and submits that, reasonable jurist would find the District Court's assessment of Claim Five- debatable or wrong; also, another court could resolve the issues differently; or the issues raised in regards to Claim Five(5) are at least adequate enough to encourage the petition to proceed further. (**Barefoot, supra, 893 n.4, 849; Jennings v. woodford, (9th Cir.2002), supra, 290 F.3d at 1011**).

## ISSUE SIX(6)

Petitioner at the mercy of this honorable court, pleads and submits that, the Magistrate/District Court erred in concluding no prejudice occurred and relief is not warrented with respect's to petitioner's claims arising from the jury's exposure to information regarding petitioner's prior arrest and criminal history that wasn't apart of the evidence at trial, taking into consideration the evidence of guilt is not overwhelming so as to rebut the presumption of prejudice arising from said error--and other claims raised by petitioner.

First, petitioner submits and contends that, the District Court's conclusion that the error regarding the jury's exposure to the said extraneous information concerning petitioner's prior arrest and criminal history -was harmless, is not entitled to a presumption of correctness, the district Court's prejudice determination is reviewed de novo. (Dickson v. Sullivan,(C.A.9(Or.) 1988), 849 F.2d 403, at 405; Lawson v. Borg,(C.A.9(Cal.)1995), 60 F.3d 608, at 612).

In the case at bar, there were at least four(4) jurors [Juror's No's 2,5,8, and 10] who cannot be said to have not been contaminated by knowledge of what has been judicially determined to be inadmissible and "prejudicial information". Notwithstanding, juror number five(5) confirmed that there was at most "a general discussion", and that although she didn't think there was a whole lot of discussion around the received information, "IT WAS KIND OF LIKE A WHITE ELEPHANT IN THE ROOM THAT YOU DON'T TALK ABOUT", (See 4AugRT L12) [A factor in which signified the exposure to petitioner's prior arrest and criminal history "stood out" and could not be

forgotten or removed **"from her mind"**.]. The commit made by Juror Number Five(5) is clearly close to an admission to it being a factor in determining petitioner's guilt. Even if there wasn't a long drawn out discussion between the jurors about the extrensic information concerning petitioner's prior arrest and criminal history, the fact remains the jurors who seen the information went through the entire deliberation process **"mentally contaminated"**. (see **People v. Holloway (1990), 50 Cal.3d 1098 [disapproved on other grounds in People v. Stanbury (1995), 9 Cal.4th 824, 830, fn.1]**, the Court explained, it could not overlook the fact one(1) Juror went through the entire guilt phase contaminated by knowledge of what had been judoicially determined to be inadmissible and prejudicial information.). His silence exacerbated matters because it prevented the court and counsel from taking any action to remedy the situation. **(Id. at p.1111).** The Court held that because it could not know, "and may not discover under **Evidence code § 1150** if the improper information had influence on that juror, or what influence he had on the other jurors, the presumption of prejudice had not been rebuted. **(Id. at 1111-1112).** Here, all the jurors were silent regarding the matter, it was only "after" a verdict was rendered that juror number five(5) exposed what occurred during deliberation. Although one or two jurors claimed it was stated that the said information was not supposed to be considered, "after this commit was made" jurors contined to look at the information concerning petitioner's criminal history. (4AugRTL18). Thus, if the jurors really sought to entertain the commit about not considering the

concerning petitioner's criminal history, the extrensic information

would not have "continued to be passed around and viewed by other

jurors" mentally contaminating themselves. The jury having failed

to report the matter to the court prevented the court from taking

any action to remedy the situation. **(People v. Holloway, supra,**

**1111).** Juror Number Five(5) understood the information that

petitioner had been charged with having stolen property; having

**"a loaded firearm"** that was probably prohibited; and **carrying a**

**"loaded firearm".** (4AugRTL 16). This was a murder case that envloved

the use of a firearm, and the information exposed to the jury put a

loaded firearm in petitioner's position shortly before the crime

in question. Although California Evidence Code § 1150 tied the

hands of Juror No. 5, we should not ignore that this was not a

case were a juror was simply attempting to impeach the verdict,

this was a case were a juror simply exposed what occurred during

deliberation and expressed the impact of the information they

were exposed to by stateing, "I KNOW FOR A FACT THAT THE DETAILS OF

HIS PRIOR ARREST INFLUENCED THE JURY'S DECISION IN DETERMINING THE

FINAL VERDICT. (3AugRT H4-5; 2 CT. 229), juror No 5's hand was not

tied when she wrot this letter to the court, and she was not the

cause of the extrensic information having been sent to the jury.

When the trial Court held individual hearing regarding the

matter, the following was discovered:

One Juror had "pointed out" the arrest information to other jurors.

(4AugRT L12, M18-19). One Juror heard another juror comment that it

should not be considered, (4AugRT L12, N12). However, this commit

was completely ignored and disregarded becuase "after" the commit
was made the jury continued to pass around and read the information
concerning petitioner prior arrest and criminal history "throughout
the entire deliberation process". **(see 4AugRTL-18).** Several jurors
saw the extrensic informationand understood it ment that **"petitioner
had a prior criminal history".** (AugRT L12,16,18, N3, 6-9, 11-12).
juror No. 2 remembered that somebody had noticed the arrest record
among the vast array of exhibits **"and pointed it out to the other
jurors by saying, LOOK AT THIS".** (4 AugRT M18-19), she was one of
the jurors who looked at the information about petitioner's criminal
history. (4AugRT M19-20). She understood it to mean that petitioner
had been arrrested with a firearm. (4AugRTM14). She further recalled
that **"a couple times people said, WELL, NEITHER FELONS WERE CHOIR
BOYS,** the victim nor the accussed. (4AugRT M17, emphasis added.).
Juror No.4 saw the backside of the Exhibit and remembered it was
about **"a conviction"** or a previous incident that petitioner may
have been involved in. (4AugRT n3). One Juror had **"expressed
surprise"** that it had been **"admitted as evidence".** (4AugRTN4).
Juror No. 8 saw the backside of the exhibit and remembered it was
some knid of **"criminal record".** (4AugRT N6-7). Exhibit no. 3 had
given her the impression that petitioner **"had a previous criminal
record".** (4AugRT N8-9). Juror No.11 saw the backside of Exhibit
No.3 and was aware that petitioner might have had **"a past criminal
history".** She said it did not really play much of a role. (4 AugRT
N11-12), someone had pointed the information out but the foreperson
said they should not be using that information, just the information
presented at trial. (4AugRT N12). However, in contradiction of this

statement made by Juror No. 11, Juror No.9 ["**the jury foreperson**" (see **1 CT. 187**)] did not remember any discussion about evidence that hadf not been properly submitted to the jury and he would have remembered if he had been told about it. (4AugRT 08).

The record shows Six(6)--half of the jury remembered seeing the extrensic information; Jurors No's 2,4,5,8,10, and 11 saw the extrensic information and knew exactly what it was. (see AugRT L12, M6, M14, 17, N3, 6-9, 11-12).

The police report the Jury recieved "during it's deliberation" that wasn't apart of the evidence at trial, indicated that, petit- ioner was charged --- with **"CCW IN VEH W/PR FEL CONV"**. (See Attachment "1" of Amended Petition; Trial Exhibit No.3). In this age of text messaging and vehicle plates using abbreviations for common words, while the meaning of "CCW" [the acronym for "carrying concealed weapon"] may not be obvious, **"IN VEH W/PR FEL CONV" can easily be understood to mean "IN VEHICLE WITH PRIOR FELONY CONVICTION"**. This charged apprised the jury that petitioner **"was a felon with a prior criminal record**. (see Cf. People v. Stinson, 1963) 214 Cal.App.2d 472, at 480 [reference to defendant's parole status.];United States v. Lewis, 787 F.2d 1318, at 1323 (9th Cir. 1986), [observing that it is "extremely" difficult for jurors to ignore prior convictions when determining guilt], modified, 798 F.2d 1250). Significantly, the statement, "well, neither of these **FELONS** were choir boys, the victim nor the accused" (AugRT M-17, emphasis added), shows that Juror No.2 (who reported hearing that statement) and the juror who made that statement were influenced by the extrensic information. There was no other evidence presented

32.

at trial that told the jury petitioner was a **"felon"**.

In Ground Five(5) of the Amended Petition, petitioner claims he was denied his Federal Constitutional Rights to an impartial jury and Due Process of law by the jury's reciept "during deliberation" of extrensic prejudicial information about his criminal history that had not been presented at trial. Additionally, in Ground Nine(9), petitioner claimed/Claims that the error in the introduction of the information regarding petitioner's criminal history, whether by the trial court, the jury, the prosecutor, or trial counsel, violated petitioner's Federal Constitutional Right to an impartial jury and Due Process of law.

Pursuant to the Sixth Amendment, a criminal defendant has a right to confront and cross-examine those who testify against him. (**Pennsylvania v. Ritchie**, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.ed.2d 40 (1987).). Accordingly, a verdict in a criminal case "must" be based "solely" on evidence presented at trial. (**Turner v. Louisiana**, 379 U.S. 466, 472-73 (1965).). Exposure to information not in evidence may deprive a defendant of his rights to confrontation, cross-examination, and the assistance of counsel embodied in the Sixth Amendment. (**Lawson v. Borg**, 60 F.3d 608, at 612 (9th Cir.1995); **Bayramoglu v. Estelle**, 806 F.2d 880, at 887 (9th. Cir.1986); **Estrada v. Scribner**, 512 F.3d 1227, 1238 (9th Cir.) (**"When a juror's communication objective extrensic facts regarding the defendant or alleged crimes to other jurors, the juror becomes an unsworn witness within the meaning of the confrontation Clause"**), cert. denied, 522 U.S. 1008 (1997).)

While the Magistrate/District Court cited to **Blair v. Chrones,** 452 Fed.Appx. 752, 753, 2011 WL 4621002, at *1 (9th Cir.Oct. 6, 2011), where the court denied relief to the petitioner regarding a claim of jury misconduct, the circumstances of that case and that of petitioner's case in the present matter are different. In the **Blair Court,** the court acknowledged and stated the trial court properly **instructed and admonished** the offending juror, although the trial court was unaware of the misconduct at the time, it effectively gave a curative instruction when it directed the jury to the appropriate jury explaining the term reasonable and heat of passion. **(Id. at 754, *4).** In the case at bar, there was no direct instruction or admonishion regarding the jury's exposure of extrensic information concerning petitioner's prior arrest and criminal history. Furthermore, **in the Blair Court,** it was <u>properly</u> concluded the evidence of guilt "was overwhelming", and therefore the introduction of the dictionary definitions did not substantially and injuriously affect or influence the jury's verdict. **(Id. at 754).** Blair was not contending she did not shoot the victim, and the record showed "uncontested" that Blair shot a rifle at the victim "six times". The record further showed the victim was running away from Blair at the time Blair shot and fired at the victim. **(Id. at 754).** Blair's guilt was clear, her only position was that she acted in self defense, however, Blair's shooting of the rifle (aimed or unaimed) "six times" at the victim "while he was running away" constituted substantial evidence for the jury to find blair's actions demonstrate a conscious disregard for life. **(Ibid.).** In the case at bar, contrary to the Blair Court, the jury was not

instructed and admonished regarding the specific issue, and the evidence
----- is not so overwhelming so as to rebut the presumption of
prejudice arising from the jury's exposure to extrensic information
concerning petitioner's prior arrest and criminal history,
furthermore, petitioner is actually innocent for the crime in which
he---- was wrongfully convicted. (See Document 82 [petitioner's
Objection's] pp. 15-52, 77-79).

Addressing the specific/points determining whether the extrensic
information prejudicially affected the deliberations:

> (1) Whether the extrensic evidence was actually received, and
> if so, how; (2) the length of time it was available to the
> jury; (3) the extent to which the jury discussed and considered
> it; (4) whether the material was introduced before a verdict
> was reached, and if so, at whatpoint in the deliberations it
> was introduced; and (5) any other matters which may bear on
> the issue of whether the introduction of extrensic material
> substantially and injuriously affected the verdict.

(See **Lawson v. Borg**, 60 F.3d 608, (9th Cir.1995).)
Petitioner will and has demonstrated the information received by
the jury concerning petitioner's arrest and criminal history
violated his constitutional rights, and was prejudicial.
(1) It is/was undisputed that the information regarding petitioner's
prior arrest and criminal history was "actually received" by the
Jury. In an inquiry regarding the matter several jurors recalled
seeing the extrensic evidence. **See anti 28-32.** (2) the length of
time in which the information was available to the jury was **"the
entire deliberation process"**, even after someone made the commit we
should not be looking at the information, the jury continued to
pass around and read the extrensic information disregarding the
commit not to look at it. (See 4AugRT L10, L17-18). (3) The extent

to which the jury discussed and considered it. Here, the Jury made
several comments regarding the matter and according to juror No. 5
there was a general discussion surrounding the information. Addition-
ally, although Juror No. 5 stated there was not a hole lot of
discussion around it, **"IT WAS KIND OF LIKE A WHITE ELEPHANT IN THE
ROOM THAT YOU DON'T TALK ABOUT"**, [demonstrating it stood out and
could not be ignored or forgotted from her mind.] (See 4 AugRT L12).
Juror No. 2 remembered that somebody had noticed the arrest record
among the vast array of exhibit and Pointed it out to the other
jurors saying **"LOOK AT THIS"**. (See 4AugRT M18-19). A **"couple of
times"** people said, **"Well, neither of these FELONS were choir boys,
the victim nor the accused.** (4AugRT M17). Which shows that Juror
No. 2 (who reported hearing that statement) and the person who
made that statement were influenced by the information concerning
petitioner's prior arrest and criminal history. There was no other
evidence presented at trial that petitioner was **"a felon"**. As
stated before, in todays age of text messaging and vehicle plates
using abbreviations for common words, in reference **to the** Exhibit
containing petitioner's prior arrest and criminal history which
indicated petitioner was charged with **"CCW IN VEH W/PR FEL CONV"**
can easily be understood to mean **"IN VEHICLE WITH PRIOR FELONY
CONVICTION"**. The charge apprised the jury that petitioner was a
felon with a prior criminal record. (Cf. **People v. Stinson, supra,**
214 Cal.App.2d at 480). It is also evident that, the juror who
"pointed out" the extrensic information by saying outloud, **"WELL,
HE WAS ARRESTED FOR CARRYING A LOADED WEAPON BEFORE"**, (4AugRT L-12),

thought the arrest information was significant. Here, half of the jury went through the entire deliberation process mentally contaminated by extrensic information concerning petitioner's prior arrest and criminal history. (4) Whether the material was introduced before a verdict was reached, and if so, at what point in the deliberations it was introduced. In the case at bar, it was/is undisputed and clear that the material was available to the jury "during the entire deliberation process" beginning from the first day and throughout. (See 4AugRT.L18). As to the final point, (5) Any other matters which may bear on the issue of whether the introduction of extrensic material substantially or injuriously affected the verdict. In the case at bar, it was substantially likely that the extraneous material surrounding the introduction of petitioner's prior arrest and crimanl history influenced the Jury. Evidence of a defendant's prior arrest and criminal history, in this case was inherently prejudicial. (United States v. Phillips, (7th Cir.1968), 401 F.2d 301, 305; Dickson v. Sullivan, 849 F.2d 403, 406 (9th Cir.1988); United States v. Lewis, 787 F.2d 1318, 1323 (9th Cir.1986); People v. Thompson, (1980), 27 Cal.3d 303, 314, ["Observing that it is extremely difficult for Jurors to ignore prior convictions when determining guilt.],). Here, the extrensic information given to the jury "during it's deliberation" was particularly prejudicial because it was the only evidence that associated petitioner and his activities with a gun, it put a loaded gun in petitioner's hands just "one month" before the murder, and further was the only evidence that revealed petitioner was a "convicted felon". As Stated before, the charge CCW IN VEH W/PR FEL CONV can, in todays age of text messaging and vehicle plates

using abbreviations for common words, easily be understood to mean **"IN VEHICLE WITH PRIOR FELONY CONVICTION"**. It even was stated that, "a couple of times" people said, Well, neither of these **"FELONS"** were choir boys, the victim nor the accused. (4AugRTM17). The juror [Juror No. 2] who reported hearing this statement and the juror who made the statement were influenced by the extrinsic information regarding petitioner's prior arrest and criminal history. As Juror Number Five(5) so aptly stated, **'IT WAS LIKE A WHITE ELEPHANT IN THE ROOM**, (4AugRTL12) [-something that "stood out and could not be ignored, forgotten, or removed from her mind".]. Petitioner submits that, to tell a jury to ignore a defendant's prior conviction in determining guilt **is to ask human beings to act with a measure of dispassion and exactitude well beyond mortal capacities.** (Dickson, supra, at 408). This is especially so, where as in the case at bar, petitioner was deprived of his right to confront, cross-examine, and rebut the evidence. (see Id. at 408; Turner v. Louisiana, supra, 379 U.S. 39, at 51). Here, Juror No. 5's statements surrounding the matter demonstrates ignoring the extrinsic information was well beyond mortal capacity. (4AugRTL12) [It was like a white elephant in the room]; 3AugRT H4-5; 2 CT. 229 [I know "for a fact" that the details of his prior arrest influenced the jury's decision in determining the final verdict].). Additional factors in which the Court failed to properly evaluate and consider are as follows:

### THE JURY INSTRUCTION...

Here, the jury was not instructed with CALJIC No. 2.50; see **People v. Price** (1991), 1 Cal.4th 324, 431, which would have told the jury, "Other Crims" evidence if believed may not be considered

by you to prove the defendant is a person of **"bad character" or that he has a disposition to commit crimes.** Additionally, any presumption that the jury heeded the admonition to only consider the evidence presented at trial was rebutted by the very fact of Juror No. 5's letter indicating **"she did not know"** if the jury should have considered the arrest evidence---which implies that she did. **(2 CT 229)** [Since Mr. Colman's past was not brought up during the hearing, I have been wondering whether the information about his previous arrest should have been presented to the jury during the deliberation process.]). While Juror No. 11 stated the arrest info. did not play much of a role (4AugRT N11), and Juror No. 2 said, it was just a very small item that was part of the hole thing we had (4AugRT 17), their statements imply that, as to those two jurors, it was a factor, albeit a minor one [when it should not have been a factor at all], in determining petitioner's guilt. The admonition to only consider the evidence presented at trial "did not" cure or neutralize the harm regarding the introduction of petitioner's prior arrest and criminal history "during jury deliberation", this is so because the admonition **"failed to mention the specific issue regarding the jury's exposure of the extrensic information concerning the petitioner's prior arrest and criminal history/bad acts"**, additionally no curative instructions were given immediately after the damage was done. (see **U.S. v. Sanchez, (C.A.9 (Cal.2011), 659 F.3d 1252, at 1258; United States v. Kerr, 981 F.2d 1050, 1054 (9th Cir.1992).).** Limiting instruction, such as were given here, did not eliminate the risk of prejudice. What we also must acknowledge is, "the naive

assumption that prejudice effects can be overcome by instructions to the jury, (citation) all practicing lawyers know to be unmitigated fiction". (Krulewitch v. United States (1949), 336 U.S. 440, 453, 69 S.Ct. 716, 93 L.Ed. 790 fn4), As the Supreme Court of Washington pointed out: "it seems too plain for argument that to place before a jury the charge in an indictment, and offer evidence on trial as a part of the State's case that the defendant has previously been convicted of one or more offenses is to run a great risk of creating a prejudice "in the minds of the jury that no instruction of the court can wholly erase", and while appellate courts will presume that the jury has followed instructions of the court, we can not blind our eyes to the active danger ever lurking in such action. (State v. Kirkpatrick, (1935), 181 Wash. 313, 43 p.2d 44, at 45). Empirtial data on the subject matter has demonstrated and supports the conclusion that, a jury "is likely" to be influenced by a defendant's past record. (See Kalven & Zeisel, The American Jury (1966), pp. 127-130, 177-180). The Magistrate/District Court stated, the record concerning petitioner's prior bad acts only reflects that he was arrested, not that he was convicted on any counts. (Doc. 63, at 47). This position fails to take into account the following:

The charge revealed petitioner was a "convicted felon in possession of a firearm". (see anti 31-33, 36-38). Additionally, even evidence of a defendant's "prior arrest" is inadmissible. (People v. Hamblin, (1985), 68 Cal.101, 103, 8 P. 687 [a person is protected by a legal presumption of innocence]; People v. Arlington (1899), 123 Cal. 356, 357; People v. Guiterrez (1957), 152 Cal.App.2d 115, 120; People v.

Medina, (1995) 11 Cal.4th 694, 769; Dickson v. Sullivan, supra, 849
F.2d 403, at 408 [where the extrajudicial issue concerns a defendant's
prior criminal acts, the efficacy of such instructions "is subjected
to serious doubt", as we stated in United States v. Lewis]).
Here, the record even shows that the parties agreed the prosecutor
would not bring in evidence of petitioner's prior arrest/criminal
record. (3 RT. 1531). Additionally, petitioner did not take the stand
on his own behalf, which magnifies why petitioner's character and
presumption of innocence should not have been undermined in such a
way. The "totality of factors" surrounding this matter tipped the
scales in the prosecution's favor. As in the case at bar, in People
v. Anderson and U.S. v. Sanchez, <u>the admission of the prior arrest</u>
<u>and criminal record must be deemed prejudicial error, "given the</u>
<u>fact that the record revealed a battle over credibility"</u>. (U.S. v.
Sanchez, supra, at 1260; People v. Anderson, 143 Ca.Rptr. 883, at
884-885, 20 Cal.3d 647, 650-61).

### THE TIMING OF THE ERROR
### WEIGH IN FAVOR OF REVERSAL

Because the sole issue in petitioner's case centered on witness
credibility, the introduction to the jury of petitioner's prior arrest
and criminal history "during deliberation", at a time where it was
one of the last highlt prejudicial pices of information/evidence the
jury received, <u>**"the timing of the error increased the risk that the**</u>
<u>**inflammatory and prejudicial information impacted the jury"**</u>. (See
U.S. v. Sanchez, supra, 659 U.S. 1252, at 1259-1261, quoting
United States v. Carter, 236 F.3d 777, 788 (6th Cir.2001); Sassounian
v. Roe, (C.A.9(Cal.)2000), 230 F.3d 1097, at 1110-1112). As stated

41.

before, the evidence of guilt is not so overwhelming so as to rebut the presumption of prejudice in this case. (see **Document 82, pp. 15-52, 77-79**). Thus, based on all of the aforesaid and Document 82, pp. 90-100, 112-114, petitioner at mercy of this honorable court pleads and submits that, reasonable jurist would find the District Court's assessment of Claim/Issue Six(6)-- debatable or wrong; also, another court could resolve the issues differently under the totality of the circumstances; or the issues raised regarding issue six(6) is at least adequate enough to encourage the petition to proceed further. (Barefoot, supra, 893 n.4, 849; Jennings v. Woodford, supra, 290 F.3d at 1011).

ISSUE SEVEN(7)

The Magistrate/District Court concluded that Grounds Four(4) and Six(6) of the Amended Petition was not cognizable on federal habeas review. (Document "63", pp. 43-44).

Petitioner submits that this was clearly an error. Ground Four(4) and Six(6) is clearly the mainstream of constitutional litigation. In relation to what is labeled as Ground Four(4), petitioner clearly stated, the forwarding of his criminal history to the jury **deprived petitioner of the right to confrontation under the 5th and 14th Amendment to the U.S. Constitution**. (see Amended **Petition at p.38**). In petitioner's Traverse, it was claimed, petitioner was being held in violation of the "Constitution", Laws, and/or Treaties of the "United States". (**Traverse at PP.45-46**). Liberally construing these applications, it is clear the District Court's conclusion was incorrect. Additionally, the District Court failed to take into account that both, Grounds Four(4) and Six(6) **"relate**

42.

back" to all the other Grounds regarding the Jury's exposure to extrensic information concerning petitioner's prior arrest and criminal history. (Mayle v. Felix, (U.S.2005), 125 S.Ct. 2562, at 2570, 2572, 2574-75, 545 U.S. 644, 664). Based on, the District Court erred in failing to entertain Grounds Four and Five. Furthermore, the cases cited in regards to Groud 6 is the mainstream of constitutional litigation, is the assertion of a claim in terms so particular as to call to mind a specific right protected by the constitution; and the cases cited within Ground Six(6) employ constitutional anaylisis in like fact situation.

Based upon all of the aforesaid and Document 82, pp. 80-90, petitioner at the mercy of this honorable court pleads and submits that, reasonable jurist would find the District Court's conclusion in regards to Ground's Four(4) and Six(6)-- debatable or wrong; also, another court could resolve the issues differently under the totality of the circumstances of this case; or the issues raised regarding this issue is at least adequate enough to encourage the petition to proceed further. (Barfoot, supra, 893 n.4, 849; Jennings v. Woodford, supra, 290 F.3d at 1011).

## ISSUE EIGHT(8)

Whether it was error in the District Court failing to grant relief regarding Ground Seven(7), where there was Prosecutorial Misconduct dut to the prosecutor's placement before the jury of the unredacted information regarding petitioner's arrest and criminal history, "coupled with" the prosecutor's repeated reference to petitioner having been booked during the examination of Deputy Meralla, in violation of petitioner's Due Process Right.

In relation to Issue Eight(8), the Magistrate/District Court concluded the evidence against petitioner was of such strength that, petitioner was not prejudiced by the prosecutor's use of the terms "booking and booked", and further concluded the prosecutor's comments did not result in "additional prejudice" in light of the jury's receipt of petitioner's booking/criminal record during deliberations. (Doc. "63", p. 50, lines 17-22). Petitioner respectfully submits that this was error. As stated before, after "a proper evaluation of the evidence" it can be said the evidence of guilt is not of such significance that petitioner was not prejudiced by the errors. (see Document 82, pp. 15-52, 77-79). Thus, the "totality of the circumstances", that being the prosecutor's repeated references to petitioner having been "booked" and the Jury's receipt of the extensic information concerning petitioner's prior arrest and criminal history, was prejudicial and warrents relief. The District Court claimed deputy Marella did not directly testify that petitioner had been arrested or booked; he only used the terms "booking cell" once while testifying about the procedure followed before petitioner was photographed. (Doc. "63", p.50, lines 24-26). However, as the State Court correctly concluded, "I THINK EVERBODY KNOWS WHAT A BOOKING PHOTO IS". (3 RT. 1531). The prosecutor asked Deputy Steven Marella, when he had contact with petitioner, did he have petitioner take a **"booking photograph"**? Marella answered "YES". the prosecutor followed that "with several" questions using the words **"BOOKED"** or **"BOOKING seven(7) times"**. (3 RT. 1529-1530). A "reasonable juror" would have inferred from the "booking" references that petitioner had been arrested at that time. (3 RT. 1531). (People v. Hamblin,

44.

1936 of 63 Page

supra, 68 Cal. 101, 103; People v. Arlington, supra, 123 Cal. 356,
357; People v. Guiterrez, supra, 152 Cal.App.2d at 120; People v.
Medina, supra, 11 Cal.4th at 769; People Anderson, supra, 143 Cal.
Rptr. at 884-85 [evidence of "prior arrest" is inadmissible and
prejudicial"].). The totality of the factors" tipped the scales
against petitioner and denied him Due Process. (Darden v. Wainwright,
(1986), 477 U.S. 168, 181 [106 S.Ct. 2464, 91 L.Ed.2d 144]; U.S. Const.
14th Amend.).

The District Court in support of denying relief also missrepresented
another fact, the Court concluded that, petitioner was driving around
the neighborhood the day of the murder "asking the whereabouts of the
victim" because petitioner's younger brother had been attacked by
the victim. (Document "63", p.51, lines 13-16). However, the record
does not support that, petitioner was going around the neighborhood
"looking for the victim". The record shows that Lopez testified Jose
Robles ("the victim") was still there amongst the group of people
petitioner asked, which one of you was trying to fight my brother.
(see 3 RT. 1605, 1604-1605). When no one responded to this one
question asked of "the group" which included the victim, "petitioner
simply left and told his brother not to be going around that area".
(3 RT. 1613-1614; 4 RT. 2112). The victim was there when petitioner asked
him & the others- which one of you was trying to fight my brother. Thus,
petitioner was not "looking for the victim", he was there amongst the
group of people questioned, "nothing happened", petitioner simply
left and told his brother not to go around that area anymore, afterwhich,
petitioner went about his "normal day". (4 RT. 1881-84; 3 RT. 1636-42;

5 RT. 2407-2411, 2425-27; 4 RT. 1892-93). Petitioner was amongst several friends originally intending on going to the Movie Theaters, but ultimately rented videos's from a Blockbuster Video Store, and was not plotting and executing some elaborate murder.

The Magistrate/District Court pointed to the jury having been instructed that statements made by the attorney's are not evidence. (Doc. "63", p.51, lines 16-18). However, this arguement is unvailing. The 9th Circuit has held that, curative instructions fail to "neutralize the harm" of improper statements by a prosecutor when "they do not mention the specific statements of the prosecutor and are not given <u>immediately after</u> the damage is done. (U.S. v. **Sanchez, supra, 659 F.3d at 1258; Weatherspoon, supra, 410 F.3d at 1151 (9th Cir.) quoting United States v. Kerr, 981 F.2d 1050, 1054 (9th Cir.1992)).** Additionally, in order to consider the prosecutor's statements fairly as a hole, we must take Judicial Notice of the prosecutor's other missleading harmful comments. (see Amended Petition, pp. 106-109). furthermore, the District Court's conclusion doesn't consider that, the comments came from both the prosecutor "and the testifying witness Deputy Steven Marella", effectively becoming a part of the evidence presented at trial. (3 RT. 1529-30). This, "in combination" with the jury receiving extrensic information about petitioner's prior arrest and criminal history, the officer's testimony, and the prosecutor's comment's, deprived petitioner of his right to a fair trial and Due Process. (14th Amend. U.S. Const.). In a case boiling down to a battle over credibility, the errors were not harmless. (U.S. v. **Sanchez, supra, 1260;** Doc. "82", pp. 15-52, 77-79). Here,

all instances of prosecutorial misconduct must be considered
together: Marella's testimony set the stage for the arrest report
that was received by the jury, which in tern was used by the
prosecutor to persuade the trial court that the arrest report
exposing petitioner's criminal history was harmless error. (2CT.
256, 261; People v. Wagner, supra, 13 Cal.3d 612, 620-21 [prosecutor's
misconduct in implicating defendant in prior criminal acts].). In
combining the prosecutor's misconduct, it infected the trial with
such unfairness as to make the resulting conviction a denial of
petitioner's due process right. (Darden v. Wainwright, supra, 477
U.S. at 181; U.S. Const. 5th, and 14th Amends.; Alcala v. Woodford,
334 F.3d 862, 882-83 (9th Cir). The factors surrounding petitioner's
Jury Misconduct claim and Prosecutorial misconduct claim, is a
mixed question of law and fact, in which the 9th Circuit reviews
"de novo". (Sassounian v. Roe, (C.A.9(Cal.)2000), supra, at 1108,
quoting Rodriguez v. marshall, 125 F.3d 739, 744 (9th Cir.1997)).
Had it not been for the totality of factors surrounding the
prosecutor's misconduct and the introduction of the extrensic
information concerning petitioner's prior arrest and criminal
history to the jury "during it's deliberation", a result more
favorable would have occurred. The totality of these factors "tipped
the scales" in the prosecutor's favor, and the prosecution has not
under the circumstances of this case met it's "heavy burden" of
demonstrating the constitutional errors were harmless beyound a
reasonable doubt.

Based upon all of the aforesaid and Document "82", pp. 100-107,
petitioner at the mercy of this honorable court pleads and submits

that, reasonable jurist would find the District Court's assessment and/or conclusion in regards to Issue Eight(8)--- debatable or wrong; also, another court could resolve the issues differntly under the totality of the circumstances; or the issues raised regarding issue eight(8) is at a minimum adequate enough to encourage the petition to proceed further. (Barefoot, supra, 893 n.4, 849; Jennings v. Woodford, supra, 290 F.3d at 1011).

ISSUE NINE(9)

Whether the District Court erred in failing to consider the "cumulative impact" of trial counsel's failures, and whether counsel was ineffective regarding the jury's exposure to inadmissible and prejudicial information concerning petitioner's criminal history, and when the jury was exposed to the fact that petitioner was previousl booked/arrested.

As the 9th Circuit agrees, the "prejudicial effect" of an attorney's errors "must be considered cumulatively rather than individually". (Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 1515, 146 L.Ed.2d 389 (2000); Harris v. Wood, 64 F.3d 1432, 1438-39 (9th Cir. 1995) (basing this conclusion on Strickland; Mak v. Bldgett, 970 F.2d 614, 624-25 (9th Cir. 1991), cert. denied, 507 U.S. 951 (1993).).

Here, the prosecutor claimed there was no error or prejudice if defense counsel was ineffective for failing to object in regards to the jury's exposure to inadmissible and prejudicial information. The merits of this claim is discussed in petitioner's Amended Petition at pp. 52-54; and Document "82", pp. 108-109, 112-113. In addition, petitioner respectfully pleads that this honorable court consider

trial counsel's other errors/failures in determining whether a fair

trial was afforded to petitioner, and whether "judged cumulatively"

counsel's errors/failures was prejudicial. (see Document "82", pp.

67-80 ["addressing trial consel's other instances of ineffectiveness.]).

Thus, trial counsel was ineffective for failing to object to

prosecution misconduct, failing to check the exhibit before it was

given to the jury, failing to properly raise and preserve the issue

relating to the jury's receipt of extrensic evidence regarding

petitioner's prior arrest and criminal history---and exposure to

the fact that petitioner was previously booked/arrested. (Gravely

v. Mills, (6th Cir.1996) 87 F.3d 779, 785-86 [ineffective assistance

for failing to object to prosecutorial misconduct.]; In re Jones

(1996) 13 Cal.4th 552, 571-73 [ineffective assistance for failing

to present strongest ground for exclusion of evidence and for

eliciting highly damaging evidence.]; People v. Stratton (1988)

205 Cal.App.3d 88, 94 [failing to object to inadmissible evidence.])

Petitioner at the mercy of this court contends that, the

subject matter is a mixed question of law and fact in which should

be reviewed "de novo". (Thompson v. Keohane (1995) 516 U.S. 99,

109-113; Kimmelman v. Morrison (1986) 474 U.S. 365, 378-380;

Strickland, supra, at 698).

The right to a fair trial may not be abrogated even if the

evidence of guilt was overwhelming [although the evidence of guilt

is not overwhelming in this case]. (Jackson v. California, 336

F.2d 521, 523 (9th Cir. 1964).

Based on all of the aforesaid, the Amended Petition at pp. 52-54,

and Document "82", pp. 108-109, 112-113, reasonable jurist would

find the District Court's assessment and/or conclusion in regards
to Issue Nine(9)--- debatable or wrong; also, another court could
resolve the issues differntly under the totality of the circumstances;
or at the very least the issues raised regarding Issue Nine(9)
is adequate enough to encourage the petition to proceed further.
(Barefoot, supra, 893 n.4, 849; Jennings, supra, 290 F.3d at 1011).

## ISSUE TEN(10)

Whether the Magistrate/District Court erred in subjecting
the claim regarding the jury's exposure to extrensic information
concerning petitioner's prior arrest and criminal history to
harmless error analysis, given that the error occurred "during
deliberation" and the jury was in possession of the extrensic
information the "entire deliberation process" [actually and/or
constructively---denying the assistance of counsel altogether].

It is submitted that, when the jury received the said prejudicial
information, United States v. Cronic's presumption of prejudice was
activated/triggered. (Roe v. Flores-Ortega, (2000) 528 U.S. 470,
483 [In some cases the defendant alleges not that counsel made specific
errors in the course of representation, but rather that during
"the judicial proceeding" he was either actually or constructively
denied the assistance of counsel altogether...Under such circumstances,
no specific showing of prejudice is required, because the adversary
process itself is presumptively unreliable.], quoting United states
v. Cronic (1984), 466 U.S. 648, 659; see also Neder v. United States,
(1999), 527 U.S. 1, at 8 [complete denial of counsel is "structural
error", and thus subject to automatic reversal.]).

Trial errors "occurring during the presentation of the case to
the jury" are subjected to harmless error analysis. (Arizon v.

Fulminante, (1991) 499 U.S. 279, 307-310...Accord O.Neal v. McAninch, (1995) 513 U.S. 432, 434). In the case at bar, the introduction to the jury of extrensic information concerning petitioner's prior arrest and criminal history **"occurred during deliberation"**, not during the presentation of the case to the jury, thus, falling in the catagory of a **structual defect** in the constitution of the trial mechanism, which is per se prejudicial warrenting automatic reversal of the judgement of conviction "absent harmless error analysis". (Arizona v. Fulminante, supra, at 307). Petitioner was actually and/or constructively denied the assistance of counsel altogether during the said judicial proceeding. (Roe v. Flores-Ortega, supra, at 483; Lawson v. Borg, (C.A.9 (Cal.1995), 60 F.3d 608, at 612 [Explaining that, a defendant rights "to confrontation, cross-examination, and the assistance of counsel embodied in the Sixth Amendment, is violated when the jury receives extrensic facts not in evidence.]).

At the mercy of this honorable court, petitioner submits that, based on all of the aforesaide and Document "82", pp. 110-111, reasonable jurist could find the District Court's decision to subject the said claime to harmless error analysis---debatable or wrong; also, another court could resolve the issue differently under the circumstances of this case; or the issue raised is at a minimum adequate enough to encourage the petition to proceed further. (Barefoot, supra, 893 n.4, 849; Jennings, supra, 290 F.3d at 1011).

## ISSUE ELEVEN(11)

Whether the Magistrate/District Court erred in failing to grant an Evidentiary Hearing regarding one or more of petitioner's claims under the circumstances of this case.

Throughout the arguements in petitioner's Objection's, he presented several instances of the need to conduct an evidentiary hearing. (see Document "82"). Noteing a few instances, there is an issue regarding credibility of witnesses, obtaining facts to support allegations, and a need to possibly present demonstrative evidence showing the witnesses ability to see is unreliably or suspect.(see anti 13-17, 24-27; Document "82", pp. 75-80, 115-120). It is well recognized that live testimony is the bedrock of the search for the truth in the judicial system, and the United States Supreme Court has found that credibility determinations can not be resolved on the basis of affidavits. (Earp v. Ornoski, 431 F.3d 1158, 1169 (9th Cir.2005). In Townsend v. Sain, 372 U.S. 293, (1963), the high court made it clear that where an unresolved factual dispute exists, demeanor evidence is a significant factor in deciding the issue of credibility. (Id. 372 U.S. at 322). With this being the case, the District Court, prior to reaching the merits of the legal claims raised by petitioner, should have conducted an evidentiary hearing within the purview of **Habeas Corpus Rule 8.**

Petitioner also submits and contends that, failing to conduct an evidentiary hearing has effectively deprived him of Due Process under the totality of the circumstances of this case. As stated before, the Magistrate/District Court deprived petitioner Due Process by not

granting an evidentiary hearing so that an investigation can be conducted regarding the vehicles depicted in the crime scene photo's, which will very well demonstrate after questioning the vehicles owner, the vehicles depicted in the photos were present and parked in the same location as shown. Failing to permit petitioner of an evidentiary hearing and an investigation into this matter has effectively deprived petitioner of an adequate preparation for the then impending hearing. Based on the beforesaid facts, petitioner was also deprived of a "meaningful opportunity to participate in the litigation". under these circumstances the judgment of the District Court must be **void for violation of the due process clause of the Fifth Amendment**. (Owens-Corning Fiberglas Corp. v. Ctr. Wholesale, Inc., 759 F.2d 1440, 1448 (9th Cir.1985), quoting Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 14, 56 L.Ed. 2d 30, 98 S.Ct. 1554 (1978); e.g., Winhoven v. United States, 201 F.2d 174 (9th Cir.1952).).

Under the totality of the circumstances, with the credibility issues presented by petitioner regarding the witnesses in this case, the "Sworn Declaration" establishing the impossibilities and improbabilities of the prosecution witnesses testimony, and the failure to first allow an investigation regarding the vehicles depicted in the crime scene photos---and further failing to first hold an evidentiary hearing, petitioner was not afforded the full panoply of due process right due to him. (see Walker v. IRS, 2003 U.S. Dist. LEXIS 18762 (D.Ariz.2003; thos. P. gonzalez Corp. v. Consejo Nacional De Production De Costa Rica, 614 F.2d 1247,1256

(9th Cir.1980).). Petitioner believes he is entitled to relief
under **Federal Rule of Civil Procedure** 60(b)(4).
Based upon all of the aforesaid arguements, and Document "82",
pp. 18-80, 115-120, reasonable jurist could find the Magistrate/
District Court's decision in not granting an evidentiary hearing
---debatable or wrong; also, another court could resolve the
issues differently under the circumstances of this case; or the
issues raised are at a minimum adequate enough to encourage the
petition to proceed further. (Barefoot, supra, 893 n.4, 849;
Jennings, supra, 290 F.3d at 1011).

### ISSUE TWELVE(12)

Whether the Magistrate/District Court erred in failing to
expand the record to include relevant exhibits referenced to in
the Amended Petition, Traverse, and Document "82".

Petitioner, at the mercy of this honorable court, submits
and contends that, failing to expand the record in the instant
case impares and undermines a court's "central goal" in ascertaining
the truth. The proposition that the federal court can only base
it's judgement and rule rule solely based upon the evidence
presented to the State Court, conflicts with the judicial system's
purpose and central goal of ascertaining the truth in criminal
proceedings.

The Due Process Caluse protects individuals from two types of
government actions. "**Substantive Due Process**" prevents the
government from engaging in conduct that "shocks the conscience".
(See **Rochin v. California**, 342 U.S. 165, at 172 [72 S.Ct. 205, at

209, 96 L.Ed.183], (1952), or government conduct that interferes with the rights implicit in the concept of ordered liberty. (**Palko v. Connecticut**, 302 U.S. 319, 325-326 [58 S.Ct. 149, 152, 82 L.Ed 288], (1937). When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it still must be implemented in a "fair manner". (**Mathews v. Eldridge**, 424 U.S. 319, at 335 [96 S.Ct. 893, at 903, 47 L.Ed.2d 18], (1976).). This requirement has traditionally been referred to as **Procedural Due Process**. (**United States v. Salerno**, 481 U.S. 739, at 746, 107 S.Ct. 2095, at 2101, 95 L.Ed.2d 697, (1987).).

In the case at bar, petitioner contends that, amongst "reasonable jurist", it would be "shocking to the conscience" for a court to completely disregard and ignore credible evidence/exhibits that aid in ascertaining the truth in a judicial proceeding. This is especially so, given the goal in judicial proceedings is to seek the truth and "accuracy" in cases. Thus, the referenced exhibits/ evidence in petitioner's Amended Petition and Objection's (Document "82") should have been considered. (**Rochin v. California**, supra, at 172). Additionally, "Habeas Corpus Rule 7" has not been supplanted but was instead left intact to function as it always has alongside the revised § 2254, consequatly, petitioner can call upon the court to exercise it's authoirty under Rule 7 to expand the record---of Rules governing 2254 cases. (**McNair v. Haley**, 97 F.Supp.2d 1270, at 1284, 1286 (M.D. (Ala.2000).). In sum, the record should have been expanded to include the exhibits referenced on pages 27-29, 32-33, 40, 46, 51, and 58 of Document "82". Based on all of the aforesaid, the Motion submitted to the Magistrate Court requesting

to expand the record, and Document "82" pp. 27-29, 32-33, 40, 51, 58, and 120-122, reasonable jurist could find the Magistrate/District Court's decision not to expand the record and consider the referenced evidence---debatable or wrong; Aslo, another court could resolve the issues differently under the circumstances of this case; or the issues raised are at a minimum adequate enough to encourage the petition to proceed further. (Barefoot, supra, 893 n.4, 849; Jennings, supra, 290 F.3d at 1011).

ISSUE THIRTEEN(13)

Whether it was error for the Magistrate/District Court not to rule on the merits of that in which has been labeled as Ground 19, given the said court had previously concluded Ground 19 "Related Back" to the original filing pursuant to Mayle v. Felix.

In the case at bar, the Magistrat/District Court had ruled that, Grounds "19" of the Amended Petition "related back" to the original Petition pursuant to Mayle v. Felix, 545 U.S. 644, (2005). (See Document 21, pp. 11-14). Petitioner respectfully submits that, the stated facts has not changed, therefore, it was error for the District Court to fail in ruling on Ground "19" after first granting an evidentiary hearing.

Based on these facts, the aforesaid, reasonable jurist would find the District Court having failed to entertain Ground "19"---the said decision---debatable or wrong; Aslo, another court could resolve the issues differently; or the issue raised is at a minimum adequate enough to encourage the petition to proceed further. (see Barefoot, supra, 893, n.4, 849; Jennings v. Woodford, supra, at 1011).

ISSUE FOURTEEN(14)

Whether it was error for the Magistrate/district Court to never have given petitioner the oportunity to be provided the sought discovery prior to ruling on the merits of Ground's One through Nine.

In a "Motion" seeking post-conviction discovery [dated January 1, 2011] submitted to the Magistrate Court, the said court denied the motion "as premature". However, the court never informed petitioner from the filing of the motion till the denying of the Petition---that the Motion was at some point "mature" for granting. The Motion in sought of post-conviction discovery was/is meritorious, and is crucial in supporting petitioner's allegations. In the sought for the truth, petitioner believes the sought discovery should have been provided to him prior to the ruling on the merits of his Amended Petition. Petitioner's right to Due Process was violated do to the Magistrate/ District Court failing to provide post-conviction discovery prior to ruling on the merits of his claims. Failing to provide the sought discovery deprived petitioner of adequate preparation for the then impending hearing. (Owens-Corning Fiberglas Corp. v. Ctr. Wholesale, Inc., 759 F.2d 1440, 1448 (9th Cir.1985). Here, due to the failure in providing at least an opportunity for discovery "at some point in the proceeding", petitioner was not afforded "the full" panoply of due process right due to him. Accordingly, the court must deem void the judgement against him. (Walker, 2003 U.S. Dist. LEXIS 18762; Thos. P. Gonzalez Corp, supra, 1256).

Based on all of the aforesaid, reasonable jurist would find the

Magistrat/District Court's deprivation of discovery in this case---debatable or wrong; also, another court could resolve the issue differently in this case; or the issue raised is at a minimum adequate enough to encourage the petition to proceed further. (Barefoot, supra, 893 n.4, 849; jennings, supra, at 1011). Petitioner, at the mercy of this honorable court, prays that a COA be issued and counsel be appointed in the interest of Justice.

RESPECTFULLY SUBMITTED

March 12, 2013

/s/ *Jofama Coleman*

JOFAMA COLEMAN,

[In Pro Per.]

58.

**" VERIFICATION "**

I, JOFAMA COLEMAN, state:

I am the petitioner in this action. I have read the foregoing

Notice of Appeal and COA,            and the facts stated therein

are true and correct of my own knowledge.

I declare under the penalty of perjury under the laws of the

state of California that the foregoing/aforesaide is true and

correct and that this declaration was executed on *March 12, 2013,*
                                                    [date]

at CSATF/S.P. ; P.O. Box 5242; Corcoran, CA. 93212   .
        [Prison name and address]


                              /s/  *Jofama Coleman*
                                   JOFAMA COLEMAN,
                                   (In Propria Persona)...

## "PROOF OF SERVICE VIA U.S. MAIL"

Related Case No. CV-10-2343 AHM (RNB)

    I, **JOFAMA COLEMAN**, declare that I am a party to this action, over the age of 18, and a citizen of the United States.

On *March* *13*, *2013*, I served the following:

NOTICE TO APPEAL; AND CERTIFICATE OF APPEALABILITY

_____

_____

on the below enlisted part(ies) by placing a true and correct copy thereof into a prepaid/pre-addressed First Class enevelope, and depositing said contents into the U.S. Mail in the city of _____Corcoran_____, California, addressed to the following:

| | |
|---|---|
| David E. Madeo | *United States Court of Appeals* |
| (Deputy Attorney General) | *for the Ninth Circuit* |
| 300 South Spring Street | *312 North Spring St.* |
| Suite, 1702; Los Angeles, CA. 90013 | *Los Angeles, CA. 90012* |

The envelope is addressed as follows: [current address],

JOFAMA COLEMAN (CDCR# V-27659)
CSATF/state Prison at Corcoran
P.O. Box 5242
Corcoran, CA. 93212

    I declare under the penalty of perjury under the laws of the State of California and the United States, that the foregoing/aforesaid is true and correct.

Executed this _13th_ day of *March*, *2013*

**JOFAMA COLEMAN** [Declarant]...

by: *Jofama Coleman*

# EXHIBIT

"A"





FILED
CLERK, U.S.D.C. SOUTHERN DIVISION

FEB 1 2 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JOFAMA COLEMAN,

               Petitioner,

      vs.

KATHLEEN ALLISON, Acting Warden,

               Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV 10-2343-AHM (RNB)

ORDER ACCEPTING FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE WITH RESPECT TO GROUNDS 1-9 OF AMENDED PETITION, AND DENYING PETITIONER'S REQUEST FOR A CERTIFICATE OF APPEALABILITY WITH RESPECT TO THOSE GROUNDS

     Pursuant to 28 U.S.C. § 636, the Court has reviewed the operative Amended Petition, the records on file herein, and the Partial Report and Recommendation of the United States Magistrate Judge. Objections to the Partial Report and Recommendation have been filed by petitioner, and the Court has made a de novo determination of those portions of the Partial Report and Recommendation to which objections have been made. For the reasons stated in the Partial Report and Recommendation, the Court accepts the findings and recommendations of the Magistrate Judge.

     IT THEREFORE IS ORDERED that (1) insofar as they relate to Grounds 1-9 of the Amended Petition, petitioner's Motion to Expand the Record and his request for an evidentiary hearing are denied; and (2) Grounds 1-9 of the Amended Petition are denied.

In conjunction with his objections to the Partial Report and Recommendation, petitioner has requested that the Court issue a Certificate of Appealability ("COA") with respect to 12 issues relating to the Partial Report and Recommendation. Although the Court's Order accepting the findings and recommendations in the Magistrate Judge's Partial Report and Recommendation is not a final appealable order, the Court has decided to address petitioner's COA request at this time.

Under 28 U.S.C. § 2253(c)(2), a COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." The Supreme Court has held that this standard means a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." See Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (internal quotation marks omitted).

Here, after duly considering petitioner's objections to the Partial Report and Recommendation and his contentions in support of his COA request, the Court finds and concludes that petitioner has not made the requisite showing with respect to any of the issues for which a COA is sought. Accordingly, petitioner's COA request is denied.

DATED: February 7, 2013

A. HOWARD MATZ
UNITED STATES DISTRICT JUDGE