KAMALA D. HARRIS
Attorney General of California
DANE R. GILLETTE
Chief Assistant Attorney General
LANCE E. WINTERS
Senior Assistant Attorney General
JAMES WILLIAM BILDERBACK II
Supervising Deputy Attorney General
DAVID E. MADEO
Deputy Attorney General
State Bar No. 180106
 300 South Spring Street, Suite 1702
 Los Angeles, CA  90013
 Telephone:  (213) 897-4925
 Fax:  (213) 897-6496
 E-mail:  DocketingLAAWT@doj.ca.gov
*Attorneys for Respondent*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOFAMA COLEMAN,**<br><br>Petitioner,<br><br>v.<br><br>**RALPH M. DIAZ, ACTING WARDEN,**<br><br>Respondent. | CV 10-2343-VBF (RNB)<br><br>**OBJECTIONS TO PETITIONER'S PROPOSED WITNESSES**<br><br>Evidentiary Hearing:  Dec. 6, 2013<br>Time: 9:30 a.m.<br>Place: Courtroom 6B<br><br>The Hon. Robert N. Block<br>U.S. Magistrate Judge |

On September 13, 2013, Petitioner filed his proposed witness list, including a brief summary of the testimony that he expects each witness will present at the evidentiary hearing. Petitioner did not file a proposed exhibit list. Pursuant to this Court's May 1, 2013, Order, Respondent hereby objects to Petitioner's proposed witnesses Jesse Robles, Patricia Sermons, Evelyn Medina, Deandre Coleman, and

Jeremy Coleman. As set forth below, none of these witnesses would present testimony relevant to the actual innocence claim before this Court. Moreover, none of these proposed witnesses satisfy the reliability standard demanded by the Supreme Court.

The Court ordered an evidentiary hearing in this case to hear evidence relevant to Petitioner's claim that he is actually innocent of the murder for which was convicted. At the heart of his claim, Petitioner alleged that new videotape evidence showed that he was at the Blockbuster store at 9:25 p.m., "16 minutes" before the time it was concluded at trial that he was at the store. (Reply to Respondent's Opposition, dated January 20, 2011 ("Reply"), at 9, 17, 20.) Petitioner later argued that this fact cast doubt on his conviction because there was not enough time for him to commit the shooting at around 9:00 p.m., stop at his girlfriend's house, and then arrive at the Blockbuster at 9:25 p.m. (Supplemental Reply Memorandum, dated June 7, 2011 ("Suppl. Reply") at 10-16.) Accordingly, assuming for argument's sake that Petitioner's alleged videotape evidence accurately shows him at the Blockbuster at 9:25 p.m., the relevant facts to be deduced at an evidentiary hearing on Petitioner's actual innocence claim consist of facts that prove or disprove the claim that there was not enough time for Petitioner to have participated in the shooting at approximately 9:00 p.m. and then arrive at the Blockbuster, three miles away, at 9:25 p.m.[1]

---

[1] Respondent acknowledges that this Court has stated that it is not convinced that Google calculations of *driving times* between locations is a proper subject of judicial notice. However, Respondent hereby requests again that this Court take judicial notice of the three-mile *distance* between the locations of the shooting (corner of Budlong Avenue and West 101st Street), the location where witnesses saw Petitioner as he drove from the shooting site (corner of South Hoover Street and West 102nd Street), and the location of the Blockbuster store (8811 South Western Avenue). *See United States v. Perea-Rey*, 2012 WL 1948973, *1 n.1 (9th Cir. May 31, 2012) ("We take judicial notice of a Google map and satellite image as a source whose accuracy cannot reasonably be questioned, at least for the purpose of determining the general location of the home.") (internal quotations omitted); *see also Citizens for Peace in Space v. City of Colo. Springs*, 477 F.3d 1212, 1219 n.2 (10th Cir. 2007) (taking judicial notice of online distance
(continued…)

2

To prevail on a claim of actual innocence, a petitioner must show that he "'is actually innocent.'" *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998). A petitioner must produce sufficient proof of his actual innocence to bring him "within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Lee v. Lampert*, 653 F.3d 929, 937 (9th Cir. 2011) (quoting *Schlup*, 513 U.S. at 314-15); *see also McCleskey v. Zant*, 499 U.S. 467, 494, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

A petitioner asserting actual innocence as a gateway to defaulted claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327; *Lee*, 653 F.3d at 938. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324; *see also McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013). In other words, Petitioner cannot meet the threshold requirement unless he persuades the district court that, in light of the new evidence of the videotape analysis, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 329.

**1. Jesse Robles**

---

(…continued)
calculations using Google Maps); *Nascone v. Spudnuts, Inc.*, 735 F.2d 763, 773 (3d Cir. 1984) (taking judicial notice of distance); *Johnson v. Zepp*, 2010 WL 5116697, *3 n.2 (C.D. Cal. Oct. 29, 2010) (using Google Maps to note Wasco State Prison is approximately 170 miles from federal courthouse located at 411 West Fourth Street, Santa Ana, California); *cf. Boyce Motor Lines v. United States*, 342 U.S. 337, 344, 72 S. Ct. 329, 96 L. Ed. 367 (1952) ("We may, of course, take judicial notice of geography.") (Jackson, J., dissenting).

Jesse Robles ("Jesse"), the victim's brother, was one of four eyewitnesses to the crime who testified at Petitioner's trial. Petitioner proffers that Jesse "will testify that he is unsure of his initial identification" of Petitioner. Jesse Robles's proffered testimony is irrelevant to the issue of whether Petitioner could have participated in the shooting and then gone to Blockbuster twenty-five minutes later. Jesse will apparently provide no evidence as to Petitioner's route from the shooting site to Blockbuster or his activities on the way. At most, Jesse would apparently testify that he is no longer certain that his prior multiple identifications of Petitioner at the shooting scene were correct. Such testimony has nothing to do with whether Petitioner was physically and temporally able to drive from the shooting location to Blockbuster within the new timeframe suggested by Petitioner's new videotape evidence. Jesse's testimony should be excluded as irrelevant.

Moreover, Jesse's testimony should be excluded as unreliable. The California Court of Appeal summarized Jesse's trial testimony as follows:

> Jesse Robles was at the barbecue in his family's backyard when he heard two shots and raced toward the street. As he ran, he heard another 13 shots. The shooting had ended by the time he reached the gate of the driveway. He was soon joined by his friend, Carlos Lopez. Jesse, who estimated he had seen [Petitioner] (whom he knew by his moniker "Illusion") more than 50 times in the neighborhood, recognized [Petitioner] both when Drips reentered the passenger side of the van and when the van drove past him. As Jesse and Lopez stood there, they acknowledged to each other [Petitioner] was the driver. Jesse was certain the driver was [Petitioner] even though [Petitioner] usually drove a green Camry and he had never seen [Petitioner] driving a white van.

4

> Although Jesse told Lopez he recognized [Petitioner] the night of the shooting, he did not tell sheriff's deputies he knew the attackers until two days after the shooting. He claimed he wanted to avoid testifying at trial and decided to come forward only when his family asked him to do so.

(Partial Report and Recommendation, dated June 21, 2012, at 13-14; *see* 2RT at 945-46, 958-62, 967-68; 3RT at 1319-20; 4RT at 2146-47.)

On May 12, 2003, Jesse Robles told Sergeant Steven Katz that he recognized Petitioner as the driver of the van during the shooting. (2RT at 945-46, 967-68; 3RT at 1319-20.) Jesse identified Petitioner as the driver of the van in a six-pack photographic lineup. (2RT at 958-962; 4RT at 2146-47.) At Petitioner's trial, Jesse testified that he was certain that Petitioner was the driver. (2RT at 937-43, 962.)

Now, ten years later, Petitioner seeks to present testimony from Jesse that contradicts Jesse's prior statements. Jesse's recantation of his prior identification of Petitioner is highly suspicious and not reliable since neither Petitioner nor Jesse has offered a cogent explanation why it took Jesse ten years to recant. *See Allen v. Woodford*, 395 F.3d 979, 994 (9th Cir. 2005) (finding subsequent recantation of trial testimony not credible where the trial testimony was consistent with other evidence); *see also Haouari v. United States*, 510 F.3d 350, 353 (2d Cir. 2007) ("It is axiomatic that witness recantations 'must be looked upon with the utmost suspicion.'"); *United States v. Leibowitz*, 919 F.2d 482, 483 (7th Cir. 1990) ("Judges view recantation dimly."); *United States v. Nixon*, 881 F.2d 1305, 1311 (5th Cir. 1989) ("The recanting of prior testimony by a witness is ordinarily met with extreme skepticism."); *United States v. Ahern*, 612 F.2d 507, 509 (10th Cir. 1980) ("Recantation of testimony given under oath at trial is not looked upon with favor. Indeed, such is generally looked upon with downright suspicion."). Jesse's proffered "recantation testimony is even more unreliable because his trial testimony

5

implicating [Petitioner] is consistent with other evidence, while his recantation is not." *Allen*, 395 F.3d at 994. Jesse's identification of Petitioner as the driver is fully consistent with accounts of three other eyewitnesses to the shooting. (*See* 3RT at 1227, 1237, 1536-37,1544-46, 1549-50, 1570-71, 1614-16.)

At no point did Petitioner ever present to the state courts a declaration from Jesse, or any other evidence, stating that Jesse was unsure of his prior identification of Petitioner. Jesse's testimony should, therefore, be excluded as unreliable.[2] *Schlup*, 513 U.S. at 324.

**2. Patricia Sermons, Evelyn Medina, Deandre Coleman, Jeremy Coleman**

Petitioner seeks to present testimony from Patricia Sermons, Evelyn Medina, Deandre Coleman ("Deandre"), and Jeremy Coleman ("Jeremy"), each of whom "will testify that [Petitioner], among others, came to [Sermons's] house after the shooting and before Blockbuster." This testimony should be excluded as irrelevant.

---

[2] Further, Jesse's newly discovered recantation of his prior testimony, as well as the newly discovered testimony from Sermons, Medina, Deandre, and Jeremy, was never presented to the California Supreme Court. (*See* LD J, L, O, Q.) As the Ninth Circuit has stated in dismissing a federal habeas petition for failure to exhaust state remedies:

> "[Where] a federal habeas petitioner presents newly discovered evidence or other evidence not before the state courts such as to place the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it, the state courts must be given an opportunity to consider the evidence."

*Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir. 1988); *accord Nevius v. Sumner*, 852 F.2d 463, 470 (9th Cir. 1988) ("If there is evidence that should be presented to the state courts, then the attempt must first be made to present it there and to make a record. Only thereafter, under the appropriate procedural strictures, may the matter be addressed in federal court.").

Petitioner's proffer states that each witness will testify that Petitioner came to the house *after the shooting*. So stated, Petitioner acknowledges that these witnesses have nothing to offer as to his whereabouts at the time of the shooting. Rather, according to his proffer, these witnesses saw Petitioner at the house sometime after approximately 9:00 p.m. (the time of the shooting). Petitioner's own evidence (the newly analyzed videotape) shows that Petitioner was at the Blockbuster at 9:25 p.m. Thus, these witnesses would apparently testify to the fact that Petitioner stopped at the house sometime between 9:00 p.m. and 9:25 p.m., which fully supports the prosecution theory of the case that Petitioner participated in the shooting around 9:00 p.m., drove to his girlfriend's house on 98th Street,[3] and then went to Blockbuster soon after. The proposed testimony of Sermons, Medina, Deandre, and Jeremy is therefore irrelevant to the issue of whether Petitioner could have participated in the shooting and then gone to Blockbuster twenty-five minutes later.

In other words, Petitioner acknowledges that his evidence shows he was at Blockbuster by 9:25 p.m. It is undisputed that the shooting occurred around 9:00 p.m., and none of his witnesses will testify that Petitioner arrived at the house before 9:00 p.m. That leaves Petitioner with over twenty-five minutes to drive from the shooting site, stop at Sermons's house on 98th Street, which is in between the two locations, and arrive at Blockbuster. Petitioner has proffered no theory that Sermons, Medina, Deandre, or Jeremy could testify to that would render it impossible, or even highly unlikely, to make this three-mile journey in twenty-five minutes or less. Indeed, Petitioner's proffer acknowledges that he did in fact make that journey in that timeframe. It makes no difference what Petitioner did while at

---

[3] Petitioner initially alleged that he stopped at the house of his girlfriend, Evelyn Medina, after the shooting and before going to Blockbuster. (Suppl. Reply at 16.) In the evidentiary hearing witness proffer, Petitioner apparently now claims that he came to the house of his mother, Patricia Sermons, after the shooting and before going to Blockbuster.

7

Sermons's house because it is undisputed that Petitioner arrived after the shooting and left before going to Blockbuster. Accordingly, the testimony of these four witnesses is irrelevant and should be excluded.

In addition, this testimony should be excluded as unreliable. Evelyn Medina, Petitioner's ex-wife, testified at Petitioner's trial that she and Petitioner were talking outside her home on 98th Street on the day of the shooting. She did not state what time she was with Petitioner, but she stated she was made aware that there were gunshots in the area at some point. She did not testify as to Petitioner's whereabouts at the time of the shooting, and she did not testify as to his actions between the shooting and his arrival at Blockbuster. Medina testified only that she and Petitioner went to Blockbuster later that evening, which is undisputed. (5RT at 2419-22, 2425-26.)

Jeremy Coleman, Petitioner's brother, testified at Petitioner's trial that he was with Petitioner at the time of the shooting, but he did not know when the shooting occurred. Jeremy also said that his prior statement to the detective was truthful, in which he said that Petitioner dropped him off at his mother's house before the shooting. (4RT at 2113-15, 2020-21.) Neither Sermons (Petitioner's mother) nor Deandre (Petitioner's brother) testified at Petitioner's trial.

Sermons, Deandre, and Jeremy are members of Petitioner's immediate family, and Medina is Petitioner's ex-wife. Petitioner offers no explanation for why Medina never testified as to his whereabouts during and immediately after the shooting when she was called by the defense at trial. Indeed, Petitioner has not presented to any state court evidence supporting any statements from Medina or the other three witnesses concerning Petitioner's whereabouts during and immediately after the shooting. Only now, ten years later, does Petitioner attempt to present such testimony. The testimony from these four witnesses should be excluded as unreliable. *Schlup*, 513 U.S. at 324.

Petitioner's proposed witnesses—Jesse Robles, Patricia Sermons, Evelyn Medina, Deandre Coleman, and Jeremy Coleman—should each be excluded because their proffered testimony is irrelevant and unreliable. Petitioner simply seeks another chance to fish for evidence at the evidentiary hearing. Such a "fishing expedition" for new evidence is improper. *Kemp v. Ryan*, 638 F.3d 1245, 1260 (9th Cir. 2011); *see, e.g.*, *Lewis v. Ayers*, 2011 WL 2260784, *6 (E. D. Cal. 2011); *United States v. Cerna*, 2010 WL 5387694, *1 (N. D. Cal. 2010); *Ruderman v. Ryan*, 2010 WL 2757282, *15 (D. Ariz. 2010).

For the foregoing reasons, Petitioner's proposed witnesses, Jesse Robles, Patricia Sermons, Evelyn Medina, Deandre Coleman, and Jeremy Coleman, should be excluded from the evidentiary hearing.

Dated: October 4, 2013

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
DANE R. GILLETTE
Chief Assistant Attorney General
LANCE E. WINTERS
Senior Assistant Attorney General
JAMES WILLIAM BILDERBACK II
Supervising Deputy Attorney General

/s/ David E. Madeo

DAVID E. MADEO
Deputy Attorney General
*Attorneys for Respondent*

LA2010501376

9