KAMALA D. HARRIS
Attorney General of California
DANE R. GILLETTE
Chief Assistant Attorney General
LANCE E. WINTERS
Senior Assistant Attorney General
JAMES WILLIAM BILDERBACK II
Supervising Deputy Attorney General
DAVID E. MADEO
Deputy Attorney General
State Bar No. 180106
 300 South Spring Street, Suite 1702
 Los Angeles, CA  90013
 Telephone:  (213) 897-4925
 Fax:  (213) 897-6496
 E-mail:  DocketingLAAWT@doj.ca.gov
*Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOFAMA COLEMAN,** | CV 10-2343-VBF (RNB) |
| Petitioner, | **RESPONSE TO PETITIONER'S OBJECTIONS TO MAGISTRATE JUDGE'S JANUARY 8, 2014, EVIDENTIARY RULING** |
| v. | |
| **RALPH M. DIAZ, Warden,** | |
| Respondent. | The Hon. Valerie Baker Fairbank<br>U.S. District Court Judge |

# TABLE OF CONTENTS

**Page**

Introduction ..................................................................................................1

Relevant Procedural History .......................................................................2

       The magistrate's ruling on evidentiary hearing issues .........................3

Argument.....................................................................................................5

    I.    The magistrate properly excluded the testimony of Jesse Robles, Patricia Sermons, Evelyn Medina, Deandre Coleman, and Jeremy Coleman, and Victor Gomez in part, from the evidentiary hearing ..................................................................................5

        A.    The relevant law ................................................................5

        B.    The relevant evidence at trial ...........................................6

        C.    Petitioner's newly discovered evidence............................6

        D.    Petitioner's proffered evidentiary hearing evidence .................7

            1.    Jesse Robles.............................................................7

            2.    Patricia Sermons, Evelyn Medina, Deandre Coleman, Jeremy Coleman ...............................................9

            3.    Victor Gomez and Exhibit 3 .........................12

CONCLUSION ........................................................................................14

# TABLE OF AUTHORITIES

Page

**CASES**

*Ackley v. Western Conference of Teamsters*
958 F.2d 1463 (9th Cir. 1992) ................................................................. 13

*Allen v. Woodford*
395 F.3d 979 (9th Cir. 2005) ..................................................................... 9

*Carriger v. Stewart*
132 F.3d 463 (9th Cir. 1997) .............................................................. 13, 14

*Gandarela v. Johnson*
286 F.3d 1080 (9th Cir. 2002) ................................................................... 6

*Haouari v. United States*
510 F.3d 350 (2d Cir. 2007) ...................................................................... 9

*Lee v. Lampert*
653 F.3d 929 (9th Cir. 2011) ..................................................................... 5

*McQuiggin v. Perkins*
__ U.S. __, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013) ......................... 5

*Schlup v. Delo*
513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) ................. *passim*

*Sistrunk v. Armenakis*
292 F.3d 669 (9th Cir. 2002) ................................................................... 14

*Smith v. McEwen*
2012 WL 4107806 (C.D. Cal. July 30, 2012) ......................................... 11

*United States v. Ahern*
612 F.2d 507 (10th Cir. 1980) ................................................................... 9

*United States v. Leibowitz*
919 F.2d 482 (7th Cir. 1990) ..................................................................... 9

*United States v. Nixon*
881 F.2d 1305 (5th Cir. 1989) ................................................................... 9

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

AEDPA ................................................................................................................. 2

**COURT RULES**

Fed. R. Civ. P. 16(f)(1) ....................................................................................... 13

Fed. R. Civ. P. 37(c)(1) ....................................................................................... 13

# INTRODUCTION

Magistrate Judge Robert N. Block ordered an evidentiary hearing in this case to hear evidence relevant to Petitioner's claim that he is actually innocent of murder. As the Magistrate noted, "the issue to be determined at the evidentiary hearing is whether petitioner can establish by new reliable evidence that he arrived at the video store at 9:25 PM and that there was not ample time for petitioner to commit the shooting at 9:00 PM, take the route away from the scene of the shooting to which [witness] Segundo testified at trial, and make it to the video store by 9:25 PM." (Oct. 28, 2013, Order (Doc 125).)

Petitioner's proffered evidence included Exhibit 2, a "timed video of driving routes," which is ostensibly related to his actual innocence claim. But, even as it documents a longer and more circuitous route than was testified to at trial—or in any subsequent filing by Petitioner—it definitively supports Respondent's theory of the case. As such, it demonstrates that there is no material dispute as to the facts behind Petitioner's actual innocence claim, and so casts substantial doubt on whether an evidentiary hearing remains necessary in this case.

Nevertheless, in his ongoing attempt to expand the scope of the evidentiary hearing, Petitioner seeks to present evidence of an alibi defense that has no relevance to the actual innocence claim that has been framed since the outset of these proceedings. All exhibits and testimony that relate to Petitioner's activity before the shooting, or that do not address the timeline issues brought up by the new videotape evidence, are well beyond the scope of the evidentiary hearing and should be excluded as irrelevant. Moreover, the proffered testimony relating to Petitioner's whereabouts directly after the shooting is plainly unreliable. Accordingly, the Magistrate correctly excluded the testimony of Jesse Robles, Patricia Sermons, Evelyn Medina, Deandre Coleman, and Jeremy Coleman from the evidentiary hearing on his actual innocence claim. Further, the Magistrate properly excluded as irrelevant and untimely Victor Gomez's proffered testimony

relating to evidence of video demonstrations that challenge the prosecution's identification evidence at trial (Exhibit 3).

## RELEVANT PROCEDURAL HISTORY

On March 31, 2010, Petitioner filed a Petition for Writ of Habeas Corpus, alleging six claims arising from his conviction for first degree murder. On November 17, 2010, Petitioner lodged in this Court a Proposed Amended Petition for Writ of Habeas Corpus ("Amended Petition"), containing twelve additional claims. On December 21, 2010, Respondent filed an Opposition to Petitioner's motion to amend the Original Petition ("Opposition").

On January 20, 2011, Petitioner filed a Reply to Respondent's Opposition ("Reply"), alleging an actual innocence claim based on new forensic analysis of a surveillance tape. On February 10, 2011, the Magistrate ordered supplemental briefing regarding the "actual innocence" exception to the AEDPA statute of limitations. On April 4, 2011, Respondent filed a Supplemental Opposition Memorandum ("Supplemental Opposition"), responding to Petitioner's claim of actual innocence contained in his Reply. On June 7, 2011, Petitioner filed a Supplemental Reply Memorandum ("Supplemental Reply"), containing a greatly expanded claim of actual innocence and several new factual allegations. On October 19, 2011, the Magistrate concluded that an evidentiary hearing was necessary to determine Petitioner's actual innocence claim, applicable to Grounds 10 through 21 in the Amended Petition.[1]

On May 1, 2013, the Magistrate ordered Petitioner to submit his proposed witness and exhibit lists for the evidentiary hearing by September 13, 2013. (Doc

---

[1] On June 21, 2012, the Magistrate issued a Partial Report and Recommendation ("Partial R&R"), recommending that the Court deny Grounds 1 through 9 of the Amended Petition. (Doc 63.) On February 12, 2013, the Court (Judge Matz) adopted the Partial R&R and denied Grounds 1 through 9. (Doc 91.)

2

110.) On September 13, 2013, Petitioner filed his proposed witness list, including a brief summary of the expected testimony. (Doc 114.) Petitioner did not file a proposed exhibit list. On October 4, 2013, Respondent filed objections to the proposed witnesses. (Doc 116.) On October 25, 2013, Petitioner filed a second witness list and an exhibit list. (Doc 120, 121.) Petitioner filed responses on November 8 and November 12, 2013. (Doc 129, 132.) On November 22, 2013, Respondent filed Objections to Petitioner's Exhibits, Related Testimony, and Amended Witness Proffers (Doc 136.) Pursuant to the parties' stipulation, the Magistrate continued the evidentiary hearing until March 18, 2014. (Doc 138.)

**The Magistrate's Ruling on Evidentiary Hearing Issues**

On January 8, 2014, the Magistrate issued a Ruling on Respondent's Objections to Petitioner's Witness List and on Related Evidentiary Issues ("Ruling"). The Magistrate reiterated that "the gravamen of petitioner's actual innocence claim, as it has been framed throughout these proceedings, is that (a) the new videotape evidence showed that he was at the Blockbuster store at 9:25 p.m., and (b) there was not enough time for petitioner to have participated in the shooting at approximately 9:00 p.m., taken the route away from the shooting site to which Mr. Segundo had testified at trial, stop at his girlfriend's house to pick her up, and then make it to the Blockbuster video store by 9:25 p.m." (Doc 139 at 7 & 7 n. 2.)

Accordingly, the Magistrate first ruled that Petitioner may not call Jesse Robles (1) because Robles's proffered testimony would not be relevant to Petitioner's actual innocence claim; and (2) because "such recantation testimony by a now convicted felon proffered years after the fact does not qualify as "reliable" evidence of petitioner's actual innocence, particularly in light of Robles's unequivocal trial testimony identifying petitioner as the driver of the van during the shooting, which was corroborated by the trial testimony of other eyewitnesses . . . ." (Doc 139 at 7-9.)

Second, the Magistrate ruled that Petitioner may not call Jeremy Coleman, Evelyn Medina, Deandre Coleman, and Patricia Sermons. The Magistrate held that Jeremy Coleman may not testify because his "proffered testimony is essentially consistent with his trial testimony," and so "does not qualify as 'new' evidence for purposes of satisfying the *Schlup*[2] standard." (Doc 139 at 9-10.) The Magistrate excluded Evelyn Medina because only part of her proffered testimony was "new" for purposes of *Schlup* and even that part appeared to be "recently contrived" and, therefore, unreliable. (Doc 139 at 10-11.) The Magistrate also held that Deandre Coleman and Patricia Sermons may not testify because their prospective testimony is unreliable. (Doc 139 at 11-13.) The Magistrate overruled Respondent's relevance objection to these four prospective witnesses. (Doc 139 at 9.)

Finally, the Magistrate ruled that Victor Gomez, whom Petitioner disclosed late, could testify only as to certain matters. Petitioner proffers Gomez to present "video demonstrations that call into question the state's other eyewitness identifications." (Doc 139 at 13.) The Magistrate determined that Gomez's proffered testimony did not constitute rebuttal testimony. Thus, Petitioner was required to disclose this testimony, as well as Exhibit 3 ("videos of witness perspectives"), in his original witness and exhibit lists. Accordingly, the Magistrate sustained Respondent's timeliness objection to Exhibit 3 and Gomez's proffered testimony relating to that exhibit. (Doc 139 at 13.)

The Magistrate further stated that, even if Petitioner had timely disclosed this evidence, "the Court still would have excluded it because, even assuming that Gomez could lay a proper foundation for Exhibit 3 and that Exhibit 3 did have some impeachment value, this kind of impeachment evidence" was not sufficient to satisfy Petitioner's *Schlup* burden to establish actual innocence. (Doc 139 at 13-14.) The Magistrate ruled that "Gomez will only be permitted to provide

---

[2] *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).

foundational testimony for Exhibits 2, 4, and 5 (described respectively as 'timed video of driving routes,' 'demonstrative timeline,' and 'demonstrative maps'), insofar as those exhibits depict routes from the shooting site to the place where Segundo followed the van, from there to Medina's house, and from there to the Blockbuster store." (Doc 139 at 14.)

On January 23, 2014, Petitioner filed Objections to the Ruling ("Pet.'s Objections"), which this Court construed as an appeal.

## ARGUMENT

### I. THE MAGISTRATE PROPERLY EXCLUDED THE TESTIMONY OF JESSE ROBLES, PATRICIA SERMONS, EVELYN MEDINA, DEANDRE COLEMAN, AND JEREMY COLEMAN, AND VICTOR GOMEZ IN PART, FROM THE EVIDENTIARY HEARING

The Magistrate properly ruled that Petitioner could not call Jesse Robles ("Jesse"), Patricia Sermons, Evelyn Medina, Deandre Coleman ("Deandre"), and Jeremy Coleman ("Jeremy") to testify at the evidentiary hearing on his actual innocence claim. Jesse's testimony was irrelevant, and the proffered testimony from the remaining witnesses was unreliable under the standard demanded by the Supreme Court. Further, the Magistrate properly excluded Exhibit 3 and Victor Gomez's proffered testimony relating to that exhibit.

#### A. The Relevant Law

A petitioner asserting actual innocence as a gateway to defaulted claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327; *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with **new reliable evidence**—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324 (emphasis added); *see also McQuiggin*

5

*v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013). In other words, Petitioner cannot meet the threshold requirement unless he persuades the district court that, in light of the new evidence of the videotape analysis, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 329. A magistrate judge has substantial discretion in determining whether an evidentiary ruling is warranted, provided that the petitioner has raised a "colorable" claim of innocence. *See Gandarela v. Johnson*, 286 F.3d 1080, 1086-87 (9th Cir. 2002).

### B. The Relevant Evidence at Trial

Jose Robles was shot and killed at approximately 9:00 p.m. on the corner of 101st Street and Budlong Avenue in Los Angeles. Several eyewitnesses identified Petitioner as the driver of the van that carried the shooter. A surveillance videotape from a Blockbuster Video store on Western Avenue, about five to ten minutes from the crime scene, showed Petitioner in the store with the timestamp of 9:40 p.m. on the night of the shooting. The timestamp was six minutes slow, according Detective Katz's watch, indicating that Petitioner had actually appeared on it at 9:46 p.m. A cash register receipt showed that he paid for some videos at that store at 9:38 p.m. (*See* Partial R&R (Doc 63) at 11-15.)

### C. Petitioner's Newly Discovered Evidence

Petitioner's January 20, 2011, Reply included his claim that new forensic analysis of the Blockbuster Video surveillance tape demonstrated his actual innocence. After trial, Petitioner sent the security videotape to George Reis at Imaging Forensic, who "demultiplexed" the VHS tape onto a DVD format, which enabled "the security footage to be viewed in live time."[3] (Reply (Doc 17) at 9; Supp. Reply (Doc 30) at 11-13.) Petitioner claimed that it was discovered that the

---

[3] Apparently, the original screen shots displayed video from four cameras in one screen. The demultiplexing process separated them into individual screen shots so that video from each camera could be viewed in a single screen shot. (*See* Response (Doc 129), Ex. B.)

6

security video showed that Petitioner arrived at the store at 9:25 p.m., which was "'16-minutes' before the time it was concluded at trial that [he] was at the store."[4] (Reply (Doc 17) at 9, 17, 20.)

The Magistrate noted that "the issue to be determined at the evidentiary hearing is whether petitioner can establish by new reliable evidence that he arrived at the video store at 9:25 PM and that there was not ample time for petitioner to commit the shooting at 9:00 PM, take the route away from the scene of the shooting to which Mr. Segundo testified at trial, and make it to the video store by 9:25 PM." (Oct. 28, 2013, Order (Doc 125); *see also* Doc 139 at 7.)

### D. Petitioner's Proffered Evidentiary Hearing Evidence

#### 1. Jesse Robles

Jesse Robles ("Jesse"), the victim's brother, was one of four eyewitnesses to the crime who testified at Petitioner's trial. Petitioner proffers that Jesse would "testify that he is unsure of his initial identification" of Petitioner. (Pet.'s Witness List (Doc 114).) Jesse Robles's proffered testimony is irrelevant to the issue of whether Petitioner could have participated in the shooting and then gone to Blockbuster twenty-five minutes later. Jesse would apparently provide no evidence as to Petitioner's route from the shooting site to Blockbuster or his activities on the way. At most, Jesse would apparently testify that he is no longer certain that his prior multiple identifications of Petitioner at the shooting scene were correct. Such testimony has nothing to do with whether Petitioner was physically and temporally able to drive from the shooting location to Blockbuster within the new timeframe suggested by Petitioner's proffered new interpretation of the videotape evidence. Jesse's testimony should be excluded as irrelevant.

---

[4] Petitioner has acknowledged that, if the video was six minutes slow, as indicated at trial, then he would have arrived at the video store at 9:31 p.m., allowing him thirty-one minutes to travel three miles. (*See* Pet.'s Oppos. to Mot. for Reconsid. (Doc 61) at 6.)

1     Moreover, Jesse's testimony should be excluded as unreliable. The California
2  Court of Appeal summarized Jesse's trial testimony as follows:

> Jesse Robles was at the barbecue in his family's backyard when he heard two shots and raced toward the street. As he ran, he heard another 13 shots. The shooting had ended by the time he reached the gate of the driveway. He was soon joined by his friend, Carlos Lopez. Jesse, who estimated he had seen [Petitioner] (whom he knew by his moniker "Illusion") more than 50 times in the neighborhood, recognized [Petitioner] both when Drips reentered the passenger side of the van and when the van drove past him. As Jesse and Lopez stood there, they acknowledged to each other [Petitioner] was the driver. Jesse was certain the driver was [Petitioner] even though [Petitioner] usually drove a green Camry and he had never seen [Petitioner] driving a white van.
>
> Although Jesse told Lopez he recognized [Petitioner] the night of the shooting, he did not tell sheriff's deputies he knew the attackers until two days after the shooting. He claimed he wanted to avoid testifying at trial and decided to come forward only when his family asked him to do so.

20  (Partial R&R (Doc 63) at 13-14; *see* 2RT at 945-46, 958-62, 967-68; 3RT at 1319-
21  20; 4RT at 2146-47.)
22     On May 12, 2003, Jesse Robles told Sergeant Steven Katz that he recognized
23  Petitioner as the driver of the van during the shooting. (2RT at 945-46, 967-68;
24  3RT at 1319-20.) Jesse identified Petitioner as the driver of the van in a six-pack
25  photographic lineup. (2RT at 958-962; 4RT at 2146-47.) At Petitioner's trial, Jesse
26  testified that he was certain that Petitioner was the driver. (2RT at 937-43, 962.)
27     Now, ten years later, Petitioner seeks to present testimony from Jesse that
28  contradicts Jesse's prior statements. Jesse's recantation of his prior identification of

Petitioner is highly suspicious and unreliable since neither Petitioner nor Jesse has offered a cogent explanation why it took Jesse ten years to recant. *See Allen v. Woodford*, 395 F.3d 979, 994 (9th Cir. 2005) (finding subsequent recantation of trial testimony not credible where the trial testimony was consistent with other evidence); *see also Haouari v. United States*, 510 F.3d 350, 353 (2d Cir. 2007) ("It is axiomatic that witness recantations 'must be looked upon with the utmost suspicion.'"; *United States v. Leibowitz*, 919 F.2d 482, 483 (7th Cir. 1990) ("Judges view recantation dimly."); *United States v. Nixon*, 881 F.2d 1305, 1311 (5th Cir. 1989) ("The recanting of prior testimony by a witness is ordinarily met with extreme skepticism."); *United States v. Ahern*, 612 F.2d 507, 509 (10th Cir. 1980) ("Recantation of testimony given under oath at trial is not looked upon with favor. Indeed, such is generally looked upon with downright suspicion."). Jesse's proffered "recantation testimony is even more unreliable because his trial testimony implicating [Petitioner] is consistent with other evidence, while his recantation is not." *Allen*, 395 F.3d at 994. Jesse's identification of Petitioner as the driver is fully consistent with accounts of three other eyewitnesses to the shooting. (*See* Partial R&R (Doc 63) at 12-14; 3RT at 1227, 1237, 1536-37, 1544-46, 1549-50, 1570-71, 1614-16.)

Jesse's testimony should, therefore, be excluded as irrelevant and unreliable. The Magistrate corrected excluded Jesse from testifying at the evidentiary hearing.

### 2. Patricia Sermons, Evelyn Medina, Deandre Coleman, Jeremy Coleman

Petitioner seeks to present testimony from Evelyn Medina, Deandre Coleman ("Deandre"), and Jeremy Coleman ("Jeremy"), each of whom would "testify that [Petitioner] was with [him/her] at the time of the shooting and came to [Sermons's] house after the shooting and before Blockbuster." Petitioner proffered that Patricia Sermons would "testify that [Petitioner], among others, came to her house after the shooting and before Blockbuster." (Pet.'s Witness List (Doc 121).) Jeremy's

9

proffered testimony and most of Medina's proffered testimony do not constitute "new" evidence. Further, the testimony of each witness should be excluded as unreliable.

Jeremy Coleman, Petitioner's brother, testified at Petitioner's trial that he was with Petitioner at the time of the shooting, but he did not know when the shooting occurred. Jeremy also said that his prior statement to the detective was truthful, in which he said that Petitioner dropped him off at his mother's house before the shooting. (4RT at 2113-15, 2020-21.) As the Magistrate found, Jeremy's proffered testimony is essentially consistent with his trial testimony. (Doc 139 at 9-10.) Thus, it does not qualify as new evidence for purposes of satisfying the *Schlup* standard.

Evelyn Medina, Petitioner's ex-wife, testified at Petitioner's trial that she and Petitioner were talking outside her home on 98th Street on the day of the shooting. She did not state what time she was with Petitioner, but she stated she was made aware that there were gunshots in the area at some point. She did not testify as to Petitioner's whereabouts at the time of the shooting, and she did not testify as to his actions between the shooting and his arrival at Blockbuster. Medina testified only that she and Petitioner went to Blockbuster later that evening, which is undisputed. (5RT at 2419-22, 2425-26.) As the Magistrate found, the only part of Medina's proffered testimony that qualifies as "new" evidence is the additional detail of going to Sermons's house after the shooting and before Blockbuster. Medina's other testimony should be excluded. (Doc 139 at 10-11.)

Neither Sermons (Petitioner's mother) nor Deandre (Petitioner's brother) testified at Petitioner's trial.

Sermons, Deandre, and Jeremy are members of Petitioner's immediate family, and Medina is Petitioner's ex-wife. Petitioner offers no explanation for why Medina never testified as to his whereabouts during and immediately after the shooting when she was called by the defense at trial. Only now, ten years later,

10

does Petitioner attempt to present such testimony. Similarly, Petitioner does not even purport to provide an explanation for his ten-year delay in proffering this alleged "new" evidence from his brothers, mother, and ex-wife. As the Magistrate correctly ruled, the testimony from these four witnesses should be excluded as unreliable. *Schlup*, 513 U.S. at 324; *see Smith v. McEwen*, 2012 WL 4107806, at *7-8 (C.D. Cal. July 30, 2012), adopted by 2012 WL 4107812 (C.D. Cal. Sept. 17, 2012) (rejecting a *Schlup* claim without an evidentiary hearing and finding unreliable the proffered "new evidence" consisting of declarations from five witnesses (all relatives and friends of petitioner) stating that petitioner supposedly was at a party at the time of the crime because petitioner failed to offer a reasonable explanation for the nearly three year delay in presenting the evidence).

Respondent disagrees with Petitioner's claim that statements by these four witnesses are "unequivocally exculpatory." (Pet.'s Objections at 4.) It is undisputed that the shooting occurred at approximately 9:00 p.m. Petitioner alleges that the Blockbuster video shows that he arrived at the store at 9:25 p.m. (*See* Reply (Doc 17) at 9, 17, 20.) The witnesses' proffered statements that Petitioner made two stops before going to Blockbuster fail to support his actual innocence claim that it was not possible for him to commit the shooting at 9:00 p.m. and then travel approximately three miles to Blockbuster at 9:25 p.m. – especially in light of Petitioner's own evidence that shows that the entire trip, including the newly-alleged stops, took only fourteen minutes (Exhibit 2). (*See* Respondent's Objections (Doc 136) at 3-4.)

Further, Petitioner claims incorrectly that the Magistrate "at essence is denying [the testimony of Deandre and Sermons] because of untimeliness in presenting the proposed testimony to the Respondent and the Court." (Pet.'s Objections at 4-5.) The Magistrate's Ruling excluding the testimony of Deandre and Sermons was clearly based on their unreliability; this determination is supported by the following facts: (1) in his response to Respondent's objections,

11

Petitioner "did not even purport to provide a persuasive explanation for his delay in proffering this 'new' evidence from his brother"; (2) Petitioner "never claimed that his trial counsel had rendered ineffective assistance in failing to present the testimony of Deandre that petitioner stopped by Sermons's house for approximately 15 minutes on the way to the Blockbuster store"; (3) Petitioner "never claimed that his trial counsel had rendered ineffective assistance in failing to present the testimony of Deandre in support of an alibi at the time of the shooting"; and (4) "the fact that petitioner did not proffer Deandre's testimony in support of an alibi at the time of the shooting in his original witness list, but rather asserted that Deandre would testify that he was with petitioner at the time of the shooting for the first time over a month later in the face of respondent's objections to the original witness list, renders that proffered testimony suspect and detracts from its reliability." (Doc 139 at 12-13; *see also* Doc 139 at 11 (providing same reasons in excluding Medina's testimony).) While the Magistrate noted Petitioner's untimeliness regarding Deandre's proffered testimony, that fact is simply one of four supporting the Magistrate's conclusion that the proffered testimony is unreliable.

The Magistrate properly excluded Sermons, Medina, Deandre, and Jeremy from testifying at the evidentiary hearing.

### 3. Victor Gomez and Exhibit 3

Petitioner's amended witness list stated that Gomez "[w]ill provide foundation for exhibits and possibly testify as a rebuttal witness." In his Response, Petitioner stated that Gomez would present "video demonstrations that call into question the State's other eyewitness identifications." (Pet.'s Response (Doc 129) at 4.) As the Magistrate found, Exhibit 3, and Gomez's foundational testimony related to that exhibit, should be excluded as untimely and irrelevant.

On May 1, 2013, in accordance with the parties' stipulation, the Magistrate set the schedule for the submission of the witness and exhibit lists, as well as the related opposition deadlines. (Doc 110.) Petitioner failed to file an exhibit list, or

12

list Gomez as a witness, by September 13, 2013, as required by the Magistrate's Order, nor did Petitioner seek leave of court to amend his original witness list or to belatedly file his exhibit list. Instead, Petitioner simply filed his exhibit list six weeks late, on October 25, 2013. (Doc 120.) On November 13, 2013, Respondent finally received a copy of Exhibit 3.[5] Similarly, Petitioner first disclosed Gomez as a witness on October 25, 2013, in an "amended" witness list. (Doc 121.) To the extent that Gomez's testimony relates to Petitioner's case-in-chief, such testimony was proffered in an untimely manner and should therefore be excluded. *Ackley v. Western Conference of Teamsters*, 958 F.2d 1463, 1471 (9th Cir. 1992); Fed. R. Civ. P. 16(f)(1), 37(c)(1). Accordingly, the Magistrate properly sustained Respondent's untimeliness objection to Exhibit 3 and to Gomez's proffered testimony relating to that exhibit.

Moreover, this evidence is irrelevant to the issue of whether the new interpretation of the Blockbuster video demonstrates that Petitioner did not have sufficient time to commit the shooting and then go to the video store. Any identification testimony is irrelevant to whether the video evidence demands a conclusion that no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 324. As the Magistrate found:

> [E]ven assuming that Gomez could lay a proper foundation for Exhibit 3 and that Exhibit 3 did have some impeachment value, this kind of impeachment evidence does not purport to rise to the level of impeachment evidence that the Ninth Circuit found in [*Carriger v. Stewart*, 132 F.3d 463, 471-72 (9th Cir. 1997)], was sufficient to satisfy the petitioner's *Schlup* burden. Rather, petitioner's Exhibit 3 is more like the evidence proffered in support of the petitioner's attempt

---

[5] Exhibit 3 was attached to Petitioner's Response and labeled as Exhibits J and K. (Doc 129.) On November 8, 2013, Petitioner filed a Notice of Manuel Filing of CD Exhibits that included Exhibits J and K. (Doc 128.)

> to discredit prosecution witnesses that the Ninth Circuit found in
> [*Sistrunk v. Armenakis*, 292 F.3d 669, 677 (9th Cir. 2002)], was
> insufficient to satisfy the petitioner's *Schlup* burden.

(Doc 139 at 13-14.)

In *Carriger*, the petitioner presented evidence of a credible confession by a likely suspect stating that he had framed the petitioner. *Carriger*, 132 F.3d at 477-82; *see Sistrunk*, 292 F.3d at 676-77. Here, Petitioner has not proffered any evidence as remotely compelling as that in *Carriger*. In *Sistrunk*, the petitioner presented evidence of discrepancies in a prosecution witness's testimony. The Ninth Circuit found that, even though the testimony contained inaccurate statements and the new evidence had some impeachment value, it was not "so strong as to undermine confidence in the conviction." *Sistrunk*, 292 F.3d at 676-77. Similarly, any impeachment value of the "video demonstrations" in Exhibit 3 falls far short of overcoming Petitioner's *Schlup* burden.

Accordingly, the Magistrate was well within its discretion in excluding the eyewitness demonstrations video (Exhibit 3), as well as Gomez's testimony as to that evidence.

# CONCLUSION

For the foregoing reasons, the Magistrate correctly excluded the testimony of Jesse Robles, Patricia Sermons, Evelyn Medina, Deandre Coleman, and Jeremy Coleman at the evidentiary hearing on his actual innocence claim. Further, the Magistrate properly excluded Exhibit 3 and Victor Gomez's proffered testimony relating to that exhibit. Respondent respectfully requests that this Court affirm the Magistrate's Ruling.

Dated: February 6, 2014

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
DANE R. GILLETTE
Chief Assistant Attorney General
LANCE E. WINTERS
Senior Assistant Attorney General
JAMES WILLIAM BILDERBACK II
Supervising Deputy Attorney General

/s/ DAVID E. MADEO
DAVID E. MADEO
Deputy Attorney General
*Attorneys for Respondent*

LA2010501376
51451963.doc

# CERTIFICATE OF SERVICE

| Case Name: | **Jofama Coleman v. K. Clark, Warden** | No. | **CV 10-2343-VBF (RNB)** |

I hereby certify that on February 7, 2014, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**RESPONSE TO PETITIONER'S OBJECTIONS TO MAGISTRATE JUDGE'S JANUARY 8, 2014, EVIDENTIARY RULING**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on February 7, 2014, at Los Angeles, California.

| K. Amioka | /s/ K. Amioka |
| Declarant | Signature |

51452014.doc