HILARY POTASHNER (Bar No. 167060)
Acting Federal Public Defender
JESSE GESSIN (Bar No. 263889)
E-Mail: Jesse_Gessin@fd.org
Deputy Federal Public Defender
ROSE ANGULO (Bar No. 261992)
E-Mail: Rose_Angulo@fd.org
Deputy Federal Public Defender
411 West Fourth Street, Suite 7110
Santa Ana, California 92701-4598
Telephone: (714) 338-4500
Facsimile: (714) 338-4520

Attorneys for Petitioner
JOFAMA COLEMAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JOFAMA COLEMAN, | NO. CV CASE NO: CV 10-2343-VBF (RNB) |
|     Petitioner, | |
|     v. | **PETITIONER'S OBJECTIONS TO REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE; APPLICATION FOR CERTIFICATE OF APPEALABILITY** |
| RALPH M. DIAZ, Acting Warden, | |
|     Respondent. | |

# TABLE OF CONTENTS

Page

I. RECOMMENDATION I ......................................................................................2

    A.    The Magistrate Erred in Finding That Only Grounds 11 and 19 Relate
Back to the Filing of Coleman's Original Petition .....................................2

    B.    Coleman's Grounds in the Amended Petition Are Not Time Barred..........3

        1.    The Last Day to File .........................................................................4

        2.    Statutory Tolling ..............................................................................4

        3.    Equitable Tolling .............................................................................4

            a.    Factual Finding .....................................................................4

            b.    Legal Conclusion ..................................................................5

    C.    Actual Innocence .......................................................................................6

II. RECOMMENDATION II: PROCEDURAL DEFAULT OF GROUND 11 ..............6

III. RECOMMENDATION II: MERIT OF GROUND 19 .............................................6

IV. THE *RHINES* STAY ..............................................................................................9

V. CERTIFICATE OF APPEALABILITY.................................................................14

i

# TABLE OF AUTHORITIES

Page(s)

*Alston v. Macomber*,
2014 U.S. Dist. LEXIS 111268 (E.D. Cal. Aug. 11, 2014) ............................9

*Blake v. Baker*,
745 F.3d 977 (9th Cir. 2014) .................................................................9, 10

*Gomez v. United States*,
490 U.S. 858 (1989) ................................................................................... 1

*Harrison v. Campbell*,
254 Fed. App'x 644 (9th Cir. 2007) ..........................................................11

*Hunt v. Pliler*,
384 F.3d 1118 (9th Cir. 2004)...................................................................13

*Jennings v. Stephens*,
135 S. Ct. 793 (2015) ..............................................................................2, 3

*Lambright v. Stewart*,
220 F.3d 1022 (9th Cir. 2000)...........................................................14, 15

*Lewis v. LeGrand*,
2014 U.S. Dist. LEXIS 74731 (D. Nev. June 2, 2014) ...............................10

*Lott v. Mueller*,
304 F.3d 918 (9th Cir. 2002) ......................................................................5

*Mendoza v. Carey*,
449 F.3d 1065 (9th Cir. 2000).....................................................................5

*Miller-El v. Cockrell*,
537 U.S. 322 (2003) ............................................................................14, 15

*Pace v. DiGuglielmo*,
544 U.S. 408 (2005) ..................................................................................10

*Rhines v. Weber*,
125 S. Ct. 1528 (2005) .....................................................................*passim*

*Rhines v. Weber*,
408 F. Supp. 2d 844 (D.S.D. 2005)............................................................10

*Shoemaker v. Taylor*,
730 F.3d 778 (9th Cir. 2013) .....................................................................15

*Slack v. McDaniel*,
529 U.S.473 (2000) ...................................................................................14

*Swan v. Coupe*,
967 F. Supp. 2d 1008 (D. Delaware 2013)..................................................10

*Thomas v. Conway*,
2009 U.S. Dist. LEXIS 12169 (W.D.N.Y. Feb. 18, 2009)...........................10

# TABLE OF AUTHORITIES

Page(s)

*United States v. Ciampi,*
    419 F.3d 20 (1st Cir. 2005) .............................................................................3

*United States v. Gonzalez,*
    592 F.3d 675 (5th Cir. 2009) ...........................................................................3

*United States v. Marulanda,*
    226 Fed. App'x 709 (9th Cir. 2011) ................................................................3

*United States. v. Raddatz,*
    447 U.S. 667 (1980) ........................................................................................13

*Valerio v. Crawford,*
    306 F.3d 742 (9th Cir. 2002) .........................................................................14

*Whalem Hunt v. Early,*
    233 F.3d 1146 (9th Cir. 2000) .........................................................................5

*Wright v. LeGrand,*
    2014 U.S. Dist. LEXIS 94804 (D. Nev. July 10, 2014) ................................12

*Wynn v. Lee,*
    2011 U.S. Dist. LEXIS 128730 (S.D.N.Y. Sept. 7, 2011) ...........................10

## STATE CASES

*In re Clark*
    5 Cal. 4th 750 (1993) .......................................................................................4

## FEDERAL STATUTES

28 U.S.C. § 636.............................................................................................1, 13

28 U.S.C. §2253 .................................................................................................14

## FEDERAL RULES AND REGULATIONS

Fed. R. Civ. P. Rule 72 .....................................................................................13

## INTRODUCTION

Petitioner Jofama Coleman ("Coleman"), by and through his counsel, respectfully submits these Objections to the Supplemental Report and Recommendation of United States Magistrate Judge ("Report") filed on January 22, 2015.  (Doc. 171.)  Except as expressly admitted herein, Coleman denies each and every factual determination made in the Report.  Coleman specifically objects to the determination that the Motion to Amend (Doc. 12) be denied with respect to Grounds 10, 12-18, 20-21 of the proposed Amended petition and the finding that those claims are time barred; that the Motion to Amend be denied with respect to Ground 11 and the finding that claim is procedurally defaulted; and that the Motion to Amend be denied with respect to Ground 19 and the finding that claim is devoid of merit.

As demonstrated in his Post-Hearing Brief and Objections to Report and Recommendation ("Post-Hearing Brief") filed on February 9, 2011 (Doc. 161), which Coleman hereby expressly incorporates by reference, Coleman is entitled to have Grounds 10, 12-18, and 20-21 heard on the merits and to have his petition for habeas corpus relief granted.  Further, Ground 19 is meritorious warranting habeas relief.  This Court should not accept the Report's recommendation to dismiss with prejudice Coleman's Petition for Writ of Habeas Corpus.

## STANDARD OF REVIEW

This Court must exercise de novo review of all factual and legal matters to which an objection is made per Magistrates Act, Habeas Rule 8(b), the United States Constitution's Article III and the due process clause of the Fifth Amendment.  28 U.S.C. § 636(b)(1) (1994); Rules Gov. Habeas Cases, Rule 8(b)(4); *Gomez v. United States*, 490 U.S. 858, 864-69, 872 n25, 874, n28 (1989); U.S. Const. art. III.

# OBJECTIONS

## I. RECOMMENDATION I

**A.    The Magistrate Erred in Finding That Only Grounds 11 and 19 Relate Back to the Filing of Coleman's Original Petition**

The Magistrate Judge found that except for Grounds 11 and 19, none of the new claims alleged in the Amended Petition relate back to the filing of Coleman's original petition.  (Report at p. 16-22).

In his Post-Hearing Brief, Coleman argues that Grounds 12 and 14-18 relate back to Grounds 1 and 2 of the original Petition based on the theory that trial counsel's failure to effectively investigate the case is the common core of operative facts between the two sets of grounds.  (Post-Hearing Brief at p. 9-11).  Coleman also argues that Grounds 12, 15, 18, and 20-21 of the proposed Amended Petition relate back to Grounds 1 and 2 of the original Petition through the lead investigator on the case, Detective Steven Katz.  *Id*.  Coleman expressly incorporates these arguments by reference and respectfully submits that the Magistrate Judge erred in failing to find that both sets of grounds do not relate back.

In particular to the ineffective assistance of counsel for failure to investigate relation back argument, as stated in Coleman's Post-Hearing Brief, ineffective assistance of counsel should be viewed as a single claim or ground with each allegation of ineffectiveness falling under the single claim.  This legal principle was at play in a recent decision by the Supreme Court, albeit in a different context.  *See Jennings v. Stephens*, 135 S. Ct. 793 (2015).  In *Jennings*, the Supreme Court addressed whether a habeas petitioner who alleged three theories of ineffective assistance of counsel, but was only granted relief on two of the theories at the district court level, was required to cross-appeal and obtain certificate of appealability on the third theory, when the state appealed the grant of relief based on the first two theories of ineffective assistance of counsel.  The Supreme Court held that it was not necessary for the petitioner to file a cross-appeal or obtain a certificate of appealability on the third theory of ineffective

2

assistance of counsel. *Jennings*, 135 S. Ct. at 802. Should the Court view ineffective assistance of counsel as a single claim or ground, then all of the other allegations in the Amended Petition would relate back to the claim of ineffective assistance of counsel in the original Petition.

The Magistrate Judge cites to an unpublished Ninth Circuit decision and other Circuits' decisions. Report at p. 20. Turning to the unpublished decision, *United States v. Marulanda*, 226 Fed. App'x 709 (9th Cir. 2011). As stated in the Post-Hearing Brief, in *Marulanda*, the new claims were "based on independent facts, different in both time and type." *Id.* at 711. Here, the new claims are dependent on a common core of operative facts. Moreover, perhaps due to the opinion's unpublished nature, *Marulanda* does not have extensive reasoning, thereby making the analysis less helpful. As for the other Circuits' decisions, they all seem to rest on the same "approach," which is "new claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision." *United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009); *see also United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) ("a petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance."). However, Coleman's grounds assert ineffective assistant of counsel *for failure to investigate*. The failure to investigate is the common core of operative facts and is the attorney misfeasance in both sets of grounds. Accordingly, both sets of grounds relate back.

**B.   Coleman's Grounds in the Amended Petition Are Not Time Barred**

The Magistrate Judge found that Coleman's claims are time barred and not subject to statutory or equitable tolling. (Report at p. 24-34). Coleman respectfully submits that the Report erred on both theories for tolling.

### 1.    The Last Day to File

Coleman agrees that his last day to file a federal habeas petition was on June 30, 2010.

### 2.    Statutory Tolling

Coleman objects to the Report's conclusion that Coleman is not entitled to statutory tolling.  (Report at p. 24-28).  As stated in his Post-Hearing Brief, which Coleman has expressly incorporated by reference, Coleman filed his <u>substantive</u> habeas petition with the California Supreme Court on March 30, 2010.  That petition was denied on September 15, 2010.  We do not know why the Supreme Court denied the petition because there was a summary denial with only a cursory citation that states "See *In re Clark* (1993) 5 Cal. 4th 750."  Coleman respectfully asserts that an ambiguous citation to *In re Clark* should not bar statutory tolling.

### 3.    Equitable Tolling

Coleman objects to the Report's holding that Coleman is not entitled to equitable tolling.  Coleman also specifically objects to certain factual findings by the Magistrate Judge.

#### a.    Factual Finding

The Report states that "Review of the December 30, 2008 and February 12, 2009 letters from PCR counsel . . . reveals that in both letters, PCR counsel merely advised petitioner that state habeas petitions normally are filed first in the superior court and then in the Court of Appeal if superior court petition is denied, and that if denied by the Court of Appeal, petitioner could seek California Supreme Court review of that denial." (Report at p. 33).

Coleman objects to this factual characterization of the letters and continues to maintain that PCR counsel advised Coleman that he needed to file in all three courts to exhaust the claims.  (Post-Hearing Brief at p. 26).

4

### b.  Legal Conclusion

For the reasons stated in Coleman's Post-Hearing Brief at pp. 19-32, Coleman is entitled to equitable tolling, and Coleman objects to the Report's conclusion otherwise. Equitable tolling is a totality of the circumstances test.  The Report errs in considering each of the barriers Coleman faced individually.  PCR counsel failed to secure the Blockbuster Video, provided false information to Coleman and grossly misadvised him. The Magistrate Judge's determination that each misdeed should be considered separately conflicts with the Ninth Circuit's decision in *Lott v. Mueller*, 304 F.3d 918, 923-24 (9th Cir. 2002), which holds that the determination of equitable tolling may "involve the confluence of numerous factors beyond the prisoner's control."

For the reasons stated in the Post-Hearing Brief, the Report also erred in finding that PCR counsel's misconduct was garden variety.  Failure to correctly advise petitioner about the AEDPA limitations period standing alone is more than garden variety negligence. The Ninth Circuit has recognized that for purposes of determining whether an impediment constitutes an extraordinary circumstance for equitable tolling, "[a] petitioner's knowledge of the legal basis of his claims is not the same as knowledge of the procedural rules that must be complied with in order to get a hearing on the merits."  *Whalem/Hunt v. Early*, 233 F.3d 1146, 1149 (9th Cir. 2000) (Tashima, J., concurring).  In other equitable tolling cases, such as where there is a language barrier and no copy of the AEDPA in petitioner's language, courts have found that a petitioners lack of access to information about the one year statute of limitations may be grounds for equitable tolling.  An inmate's inability to obtain translation services prior to the one-year deadline, combined with a prison law library's lack of legal materials in the inmate's language can constitute extraordinary circumstances, as this could leave the inmate ignorant of the one-year deadline.  *Mendoza v. Carey*, 449 F.3d 1065, 1069 (9th Cir. 2000).

## C.    Actual Innocence

Coleman objects to the Report's finding that he has not surpassed the standard for actual innocence.  (Report at pp. 34-56).  For the reasons stated in his Post-Hearing Brief, Coleman continues to assert that he has passed the standard for the actual innocence exception.

## II.  RECOMMENDATION II: PROCEDURAL DEFAULT OF GROUND 11

The Report finds that Ground 11 is procedurally defaulted.  For the reasons stated in his Post-Hearing Brief, Coleman objects to the Report's conclusion.

## III.  RECOMMENDATION II: MERIT OF GROUND 19

The Magistrate Judge finds that Ground 19 is devoid of merit and should be denied accordingly.  Coleman respectfully objects for the reasons stated in Coleman's habeas petition to the California Court of Appeals and in Coleman's original Petition.

Trial counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms.  As shown in co-defendant Abel Soto's trial, reasonably competent counsel would have questioned Renteria about the distance between her van and the crime scene and asked her to identify her vehicle's location on the crime scene photographs.  Based on the distance between Renteria's car and the crime scene, and in light of the large work truck that was parked in front of her that would have blocked part of her view, her testimony describing what she saw would have been discredited.

Trial counsel was ineffective for failing to adequately investigate the facts, to present evidence of the distance between Renteria's car and the crime scene, and to present evidence that a person with normal eyesight would be unable to see a person's face from 128 feet away in the daylight, let alone in the driver's seat of an oncoming vehicle at night.  It was physically impossible for Renteria to have seen the driver's face well enough under the circumstances she described to be able to identify appellant as the driver three years later.  Evidence showing that a normal person of average

eyesight would not be able to see another person's face "clearly" from 100 feet away would also have discredited Segundo's testimony that he could clearly see appellant's profile when the van's dome light flashed on from the distance of five to six car lengths away.  (3RT 1572; 4RT 1859.)

According to his own declaration, trial counsel was surprised when Renteria made an in-court identification of appellant as the driver at trial.  Declaration of Ronald White, attached as Exhibit A.  Consequently, it appears he was unprepared to cross-examine her about her ability to see what she said she saw.  Because Renteria's identification of appellant was unexpected, at the very least, trial counsel should have requested that she be subject to recall because her identification of appellant as the driver testimony was damaging to the defense.  He did not.  (3RT 1253.)  Alternatively, he could have had an investigator go to the crime scene and measure the distance, conduct a visibility experiment, and present the findings during the defense case to discredit Renteria's ability to see under the circumstances she described.  Declaration of Patricia Ihara, attached as Exhibit B.  Or he could have called Sergeant Katz to testify about the distance between the Robles house and the shooting.  He did not.  There could be no tactical reason for not impeaching Renteria's testimony.

There is prejudice to Coleman.  This case involved a close credibility determination between the prosecution eyewitnesses and the defense alibi witnesses.  Jesse Robles, Carlos Lopez, and Alberto Segundo (the three other identification witnesses) had been impeached with their lies to police officers (see 2RT 983, 3RT 1547, 5RT 2438; AOB 35-36) and were all members of Chino's NC tagging crew and rivals of appellant's tagging crew.  (2RT 948, 994, 3RT 1536, 1541, 1630.)  All three had ample opportunity to confer with each other before they spoke with the police and identified appellant as the driver.  (See 2RT 982-983, 3RT 1319-1320, 1509-1510, 1547, 1625.)

Renteria was the only witness (of the four witnesses who identified appellant as the driver) who did not know appellant, was not a NC member, and who appeared to be

unbiased.  Renteria's testimony, thus bolstered the credibility of the three NC witnesses' testimonies.  The prosecutor strongly relied on that fact.  During opening statements she told the jury, "You will hear a witness by the name of Maria Renteria - who had nothing to do with either of the tagging crews in this case; she just lived at that location….like I said, she had nothing to do with any of the tagging crews in this case." (2Rt 908-909.)  During closing argument, she told the jury, "[O]ne thing that's really noteworthy about Miss Renteria, she doesn't have anything to do with anybody, so she's kind of an important witness because she confirms, first of all, that the driver of the van was a male, black…She was unable to identify out of the photographic six packs, but then, lo and behold, she comes to court and she identifies the defendant. She, like Jesse Robles, saw directly into the van with her headlights. So she confirms also that that happened and also saw the driver of the van as it drove by….it was clearly a product of what she remembered.  When she saw the defendant in person, she recognized him."  (5RT 2728-2729.)

The prosecution also repeatedly emphasized to the jury that four witnesses identified appellant as the driver.  She said, "The defense will try to make you believe that you didn't see four witnesses identify the defendant as the driver."  (5RT 2742.) "Four witnesses in this case, four witnesses identified that man there as the driver.  If it were just Albert Segundo, maybe you'd be right not to convict.  If it was Jesse Robles, maybe you'd be right not to convict, but are you seriously going to say that you don't believe four witnesses who identified him as the driver of the van?"  (5RT 2760-2761.) "How do you overcome four people saying that he is the one who did it?"  (5RT 2762.)

This was a close case because the outcome of this case was tightly balanced on the jury's evaluation of the credibility of the prosecution and defense witnesses. An indication of the closeness of this case is the lengthy jury deliberations.  Here, the jury deliberated for over two full days to reach its verdict to reach its verdict.  (5RT 2768, 3301-3302, 3601, 1CT 128, 131-132, 187) .

8

The jury's request for readback of testimony also establishes that this was a close case.  Here, the jury requested "total readbacks" of prosecution witnesses: Jesse Robles, Maria Renteria, Maria Perez, Albert Segundo, Andres Sandoval, Adrian Robles, and Carlos Lopez.  (1CT 130.)  Despite the court's comment that it would take a substantial amount of time to prepare and readback all of those testimonies, the jury had all the requested testimony readback to it.  (See 1CT 131-132.)

Had Renteria's identification of appellant been discredited as her identification of the shooter was discredited at Soto's trial, there is a reasonable probability that the jury would have reached a more favorable result.

## IV.  THE *RHINES* STAY

In a footnote, the Magistrate denies Coleman's contention that the Magistrate should have granted a *Rhines* stay, as opposed to a *Kelly* stay.  (Report at p. 15 fn7). The Magistrate's analysis hinges on the argument that Coleman could have filed a mixed petition, but then the Magistrate "would have been compelled to recommend the denial of petitioner's stay motion" for lack of good cause.  *Id*.  However, as presented in the Post-Hearing Brief, there was good cause for granting a stay pursuant to *Rhines v. Weber*, 125 S. Ct. 1528 (2005).

Coleman's trial counsel and PCR counsel provided ineffective assistance of counsel.  Coleman's failure to exhaust stems directly from PCR counsel's ineffective assistance.  These claims, especially those concerning the Blockbuster Video, should have been discovered and presented in direct appeal and the Petition for Habeas Corpus before the California Court of Appeals ("CCA").  This is the Petition PCR counsel drafted and filed.  Had that happened, then the claims would have been exhausted and timely filed with the Original Federal Habeas Petition in March of 2010.

In a recent decision by the Ninth Circuit, a district court was reversed for failing to grant a *Rhines* stay under similar circumstances.  *See Blake v. Baker*, 745 F.3d 977 (9th Cir. 2014) (finding ineffective PCR counsel is a good cause under *Rhines*); *see also Alston v. Macomber*, 2014 U.S. Dist. LEXIS 111268, at *7-8 (E.D. Cal. Aug. 11,

9

2014) (recommending that the district court grant a *Rhines* stay where the petitioner's "reliance upon the advice of counsel was reasonable and excuses his lack of diligence or ignorance. The undersigned finds petitioner has demonstrated good cause."); *Lewis v. LeGrand*, 2014 U.S. Dist. LEXIS 74731, at *7-11 (D. Nev. June 2, 2014) (finding good cause where "petitioner did not have the benefit of counsel to develop and exhaust the claim" in state court because "the Ninth Circuit further held in *Blake* that no stronger showing is required than that required to establish cause under *Martinez*, while strongly suggesting that less instead need be shown."); *Swan v. Coupe*, 967 F. Supp. 2d 1008, 1012 (D. Delaware 2013) (respondents conceded that ineffective assistance of post-conviction counsel can serve as good cause for a *Rhines* stay); *Rhines v. Weber*, 408 F. Supp. 2d 844, 848 (D.S.D. 2005) (ineffective assistance of post-conviction counsel can serve as good cause for a *Rhines* stay).

There is another rationale for good cause under *Rhines*, namely Coleman in good faith tried to follow the law.  In *Pace v. Diguglielmo*, decided after *Rhines*, the Supreme Court stated that a "petitioner trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that he was never 'properly filed,' and thus that his federal habeas petition is time barred. . . . A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted. . . . A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court."  *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005).  Several district courts have relied on this language to find good cause where the petitioner filed a "protective" federal habeas petition where the petitioner was confused as to whether his claims were properly exhausted in state court.  *Wynn v. Lee*, 2011 U.S. Dist. LEXIS 128730, at * 7 (S.D.N.Y. Sept. 7, 2011); *Thomas v. Conway*, 2009 U.S. Dist. LEXIS 12169, at *3 (W.D.N.Y. Feb. 18, 2009) (collecting cases).  Point blank, the entire reason why Coleman filed the protective petition was to hedge against a finding by the

10

California Supreme Court that his State Habeas Corpus Petition was untimely or successive, which is exactly what he was supposed to do. *Harrison v. Campbell*, 254 Fed. App'x 644, 645 (9th Cir. 2007) ("[A] party may file a 'protective petition' in federal court within the AEDPA deadline in order to ensure against an unforeseeable state court determination that a state habeas petition, which would otherwise entitle the petitioner to statutory tolling, was untimely.").

The *Rhines* stay should be granted and the claims found timely. On March 31, 2010, within the limitations period, Coleman filed a motion to stay his petition pursuant to *Rhines*. (Doc. 3.) In his Motion to Stay, Coleman listed a number of issues that remained unexhuasted: 1) Trial counsel provided ineffective assistance by failing to investigate and assert a crucial or potentially meritorious defense, surrounding the time petitioner arrived at the Blockbuster video store; 2) Trial counsel failed to conduct an investigation into the prosecution's witnesses' ability to see; 3) Trial counsel failed to put on demonstrative evidence during trial or request that the jury be allowed to observe the situation under the same identifying circumstances as each of the witnesses; 4) Trial counsel failed to file a *Pitchess* motion; 5) Trial counsel failed to attack the credibility of Carlos Lopez and Jesse Robles with the use of their past acts of criminal misconduct; 6) Trial counsel failed to object to the prosecution claiming that the Blockbuster Video was 6 minutes slow, and to the prosecutor's false and misleading statements; 7) Trial counsel failed to interview prosecution witnesses before trial for adequate trial preparation; 8) Trial counsel failed to secure the services of an investigator for full and adequate investigation and trial preparation; and 9) Trial counsel failed to secure the services of a psychologist regarding the psychological factors that generally affect the accuracy of eyewitness identifications. Motion to Stay (Doc 3 at p. 2-3.)

While the Motion to Stay certainly could have been more detailed, importantly, Coleman included as an exhibit the habeas petition that he filed in the California Supreme Court. (Doc. 4, Court's Order dated April 5, 2010 at 1-2 fn.1.) He also filed

11

the Motion to Stay concurrently with the Original Federal Habeas Petition.  (*Id.* at 1.)  The Motion to Stay, Original Federal Habeas Petition, and California Supreme Court Habeas Petition attachment should be considered **one** comprehensive *Rhines* filing.  *Wright v. LeGrand*, 2014 U.S. Dist. LEXIS 94804, at * 15 (D. Nev. July 10, 2014) (finding that a claim in an attachment to a motion for leave to amend should be considered part of the motion because "courts must liberally construe the substance of pro se filings, regardless of their form or title.").  Accordingly, the Court had notice of the claims that remained unexhausted along with the claims that were already exhausted.  This was a mixed petition for which there was good cause to issue a *Rhines* stay.

All of the claims in the Amended Petition are found in the comprehensive *Rhines* filing, including the claims based on failure to investigate the Blockbuster Video.  The California Supreme Court Habeas Petition attachment is not available on the district court docket.  Assuming the petition attached to the Motion to Stay is the same as the petition filed in the Supreme Court on March 29, 2010, in the petition Coleman attached a copy of the superior court order compelling the production of the Blockbuster Video.  Petitioner's California Supreme Court Habeas Petition (found after the petition form and before the memorandum).  Coleman also extensively discussed the ineffective assistance of trial counsel in failing to secure the video from Blockbuster and have it forensically analyzed.  Memorandum to the Supreme Court Habeas Petition at 23-34.  He further explained that his PCR counsel had to get a court order for the video and that forensic analysis needed to be undertaken.  *Id*. at 25.  It appears that he may have attached the forensic report to the Petition as Exhibit L.

On April 5, 2010, the Magistrate erred by issuing an order regarding further proceedings pertaining to the comprehensive *Rhines* filing, and on May 7, 2010, the Magistrate erroneously refused a *Rhines* stay instead granting a *Kelly* stay.  (Doc. 4, 8.)  The Magistrate should have issued a *Rhines* stay.

Even if this Court does not find that Coleman is entitled to a *Rhines* stay, the magistrate judge's order denying the stay is invalid, and thus void, under statutory law. The Federal Magistrates Act, set forth in 28 U.S.C. § 636, *et seq*., and the Federal Rules of Civil Procedure, Rule 72, require magistrate judges reviewing a dispositive motion, such as a motion for a *Rhines* stay, to make a recommendation to an Article III judge for de novo review, rather than issuing a dispositive order forthright.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72; *see also United States v. Raddatz*, 447 U.S. 667, 682-83 (1980).  Because the Magistrate Judge here did not prepare a report and recommendation, Coleman was robbed of a meaningful, timely opportunity to object to the recommendation, and the denial of the motion was never reviewed by an Article III judge.

The Ninth Circuit has indicated that a *Rhines* motion is the type of motion considered dispositive under 28 U.S.C. § 636(b)(1).  This is because the denial of a *Rhines* motion, even where a *Kelly* stay is issued instead, may result in habeas claims being forever forfeited if they are not found to relate back to the original petition.  In *Hunt v. Pliler*, the Ninth Circuit recognized that a magistrate judge's order requiring a habeas petitioner "to forfeit claims [the magistrate judge] found unexhausted or face the dismissal of the entire petition, effectively with prejudice because any newly filed petition would be barred by AEDPA's one-year statute of limitations," is a ruling on a dispositive motion and is not authorized by statute.  *Hunt v. Pliler*, 384 F.3d 1118, 1124 (9th Cir. 2004).  The effect on Coleman from the denial of his motion for a *Rhines* stay is analogous.

The Magistrate Judge's order denying the *Rhines* stay violated 28 U.S.C. § 636 and Fed. R. Civ. P. 72, and is therefore invalid.  This Court should vacate the denial of the *Rhines* stay, and grant Coleman equitable tolling from the time that it was improperly denied.

# V.  CERTIFICATE OF APPEALABILITY

For the reasons stated *supra* and in Coleman's Post-Hearing Brief, as well as Coleman's original Petition, Coleman hereby requests a certificate of appealability.

Rule 11 of the Rules Governing Section 2254 Cases requires a district judge to issue or deny a COA at the same time that he or she directs entry of a final order adverse to the applicant.   Rule 11(a).  To satisfy standard for grant of COA, applicant must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).

When a district court has relied on a procedural ground to dismiss a claim or petition—as it did here regarding timeliness and procedural default (Recommendations I and II)—this Court's decision whether to grant a COA has "two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding."  *Valerio v. Crawford*, 306 F.3d 742, 767 (9th Cir. 2002) (citing *Slack v. McDaniel*, 529 U.S.473, 484-85 (2000).  The first component is met if an appellant shows that "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right."  *Slack*, 529 U.S. at 478.  The second component is met if "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id*.  Courts are to "resolve any doubt about whether the petitioner has met the standard in his favor."  *Lambright v. Stewart*, 220 F.3d 1022, 1024-35 (9th Cir. 2000).

A "COA ruling is not the occasion for a ruling on the merit of petitioner's claim."  *Miller-El v. Cockrell*, 537 U.S. 322, 331 (2003).  The COA inquiry asks only if the District Court's decision was debatable.  *Id*. at 348.  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims.  In fact, the statute forbids it."  *Id*. at 336.  "When a court of appeals side steps this process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction."  *Id*. at 336-37; *see also Lambright v. Stewart*, 220 F.3d 1022,

1025 (9th Cir. 2000) ("At this preliminary stage, we must be careful to avoid conflating the standard for gaining permission to appeal with the standard for obtaining a writ of habeas corpus.").

Regarding Recommendation III (Claim 19) – the general COA standard applies. To obtain a COA, a petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When jurists of reason could disagree with the district court or jurists could conclude the issues presented are adequate to deserve encouragement to proceed further, this standard is satisfied. *Miller-El v. Cockrell*, 537 U.S. at 336-38. The COA standard has been described by this Court as "modest," *Lambright v. Stewart*, 220 F.3d at 1024, and "low," *Shoemaker v. Taylor*, 730 F.3d 778, 790 (9th Cir. 2013). "[T]he petitioner need not show that he should prevail on the merits." *Lambright*, 220 F.3d at 1025. In fact, "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Miller-El*, 537 U.S. at 338. At this stage, courts are to "resolve any doubt about whether the petitioner has met the . . . standard in his favor." *Lambright*, 220 F.3d at 1025.

Coleman respectfully submits that he meets the standards for a COA.


Respectfully submitted,

HILARY POTASHNER
Acting Federal Public Defender


DATED: March 5, 2015        By _____

JESSE GESSIN
ROSE ANGULO
Deputy Federal Public Defenders
Attorneys for Petitioner Jofama Coleman

# Exhibit A

## DECLARATION OF RONALD WHITE, ESQ.

I, RONALD WHITE, declare as follows:

1.    I am an attorney at law duly admitted and licensed to practice before courts of this State. I was trial counsel for Jofama Coleman in Superior Court Case No. YA059765.

2.    The facts contained herein are true of my own knowledge and if called as a witness I could testify competently thereto.

3.    The prosecution's witness Maria Renteria told the police she was parking her car when the shooting occurred in the street. She saw the driver of the van and the shooter but was unable to pick Mr. Coleman's photo out from the photo line-up.

4.    When Ms. Renteria testified at trial, she said Mr. Coleman looked like the van driver. Her identification testimony was unexpected.

5.    Abel Soto's trial took place after Mr. Coleman's trial. When Mr. Coleman informed me that Ms. Renteria's testimony was impeached at Mr. Soto's trial – she was parked much farther away from the van and behind a large truck that would have obstructed her view – I told him it would help his appeal.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 22nd day of July 2008 at Gardena, California.

Ronald White

**Exhibit A**

# Exhibit B

## DECLARATION OF PATRICIA IHARA, ESQ.

I, PATRICIA IHARA, declare as follows:

1.    I am an attorney at law duly admitted and licensed to practice before courts of this State. I was appointed to represent petitioner Jofama Coleman in his appeal from his conviction in Court of Appeal Case B202597, Superior Court Case No. YA059765.

2.    The facts contained herein are true of my own knowledge and if called as a witness I could testify competently thereto.

3.    I went to the Google homepage and clicked on maps. I typed the Robles's address [1115 W. 101st Street, Los Angeles, CA] into the search box. I then clicked on "street view." Using copies of People's Exhibits 6, 9, 58 and 59 from Abel Soto's trial, I located the Robles house. I then clicked on the white arrow and moved the street view west. I found the location where the victim was shot.

I also typed in the address across the street from the Robles house [1117 W. 101st Street, Los Angeles, CA] into the search box. I then clicked on "street view." This street scene shows the location of the street lamp on the south side of the street.

4.    I then went to the Los Angeles county assessor maps at http://maps.assessor.lacounty.gov and typed into the search box the intersection of Budlong and 101st Street. Exh. F is a true and correct copy of the plot maps showing the length and width of the lots. I compared the plot map to the "street view" on Google maps and the assessor records. I determined that lot 13 is where the Robles house was located. According to Sergeant Katz, Jose Robles was killed on the west perimeter of lot 15. The plot map shows that if Renteria was parked on the west perimeter of lot 13 and Jose Robles was shot at the west perimeter of lot 15, the closest distance between Renteria's vehicle and the white van would have been 128 feet.

# Exhibit B

5.      I found a website that shows what a person could see in the
daylight at 100 feet at www.prisonpolicy.org/zones/thousand_
feet.html. Exhibit G is a true and correct copy of the 100 feet photo from
that website.

6.      I also conducted an investigation on what a normal person
would be able to see at night.

Around 9:00 p.m., on August 12, 2008, I parked my car by a
sidewalk on a straight road and had another person drive on the wrong side
of the road facing me at a distance of about five car lengths away. There
were street lamps on both sides of the street between the other car and my
car. I could not see the face of the driver of the car at all when both
vehicles had the headlights on.

7.      When the driver turned his headlights off, I still could not see
his face because my headlights did not illuminate the interior of his vehicle
at that distance.

8.      I had the driver turn on the interior lights of his car. I could
not see his face well.

9.      I measured off 100 feet. I had someone stand *in the daylight*
100 feet away from me. I could not make out his facial features clearly
from that distance.

10.     Before I did this investigation, I had no idea how far away
100 feet is or what is visible at that distance. However, several people I
know who have participated in sports, taught children in school, or dealt
with real estate, say they know how far 100 feet is between two points. It is
my belief that had trial counsel presented evidence that Renteria was 128
feet away from the white van, it would have been within the common
knowledge and experience of some of the jurors that it is physically
impossible to get a good look at a person's face at that distance in any type

2

of light with normal vision. However, it would have been better to show the jury what is visible at 100 feet.

11.     Exhibit A is a true and correct copy of photographic exhibits from Abel Soto's trial. On Exhibit A 2 (People's Exh. No. 9) Sergeant Katz marked the location where Jose Robles was shot with a "v" surrounded with a circle. Because the mark was not visible on the copy, I marked it with a light colored sticker. I have requested transmission of the original exhibits to the Court of Appeal.

12.     Exhibits B and C are true and correct copies of the declarations I received from Jofama Coleman and Ronald White, Esq. Exhibit E are pages from the reporter's transcript of Abel Soto's trial proceedings. I did not renumber those pages because the original page numbering will facilitate comparison with the original. I have omitted pages 1829 to 1844 from Sergeant Katz's testimony.

14.     At my request, Mr. White sent me part of his trial file. I did not find any photos of the crime scene in the file. I sent two letters to Mr. White asking him if the prosecution provided the defense with crime scene photos of the vehicles in the area of the shooting. I have not received a response to this question yet.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 15th day of August, 2008 at Irvine, California.

Patricia Ihara

3